# EXHIBIT A

Click to Print                                         Printed on: 12/12/2017 15:29:55 GMT-0500 (Eastern Standard Time)

## Case History Search
Search Created:
12/12/2017 15:29:55 GMT-0500 (Eastern
Standard Time)

---

| | | | | | |
|---|---|---|---|---|---|
| **Court:** | DE Court of Chancery Civil Action | **Judge:** | Slights, Joseph | **File & ServeXpress Live Date:** | 11/14/2017 |
| **Division:** | N/A | **Case Number:** | 2017-0816-JRS | **Document(s) Filed:** | 32 |
| **Case Type:** | Declaratory Judgment | **Case Name:** | Zohar CDO 2003-1 Limited v. Croscill Home LLC, f/k/a Croscill Acquisition, LLC | **Date Range:** | All |

1-6 of 6 transactions   <<Prev   Page 1 of 1   Next>>

| Transaction | ▼Date/Time | Option | Case Number Case Name | Authorizer Organization | # | Document Type | Document Title | Review Status | Size |
|---|---|---|---|---|---|---|---|---|---|
| 61408891 | 11/30/2017 1:04 PM EST | File Only | 2017-0816-JRS Zohar CDO 2003-1 Limited v. Croscill Home LLC, f/k/a Croscill Acquisition, LLC | Kenneth J Nachbar, Morris Nichols Arsht & Tunnell LLP-Wilmington | 23 | Letter | Letter to Vice Chancellor Slights from Kenneth Nachbar requesting that the Court set a schedule for briefing on Plaintiff's Motion to Expedite • Linked to (2) | Accepted | 0.5MB |
| 61406799 | 11/29/2017 7:19 PM EST | File Only | 2017-0816-JRS Zohar CDO 2003-1 Limited v. Croscill Home LLC, f/k/a Croscill Acquisition, LLC | Kenneth J Nachbar, Morris Nichols Arsht & Tunnell LLP-Wilmington | 22 | Amended Complaint | Verified Amended Complaint for Declaratory Judgment Pursuant to 6 Del. C. Sections 18-110, -111 and 8 Del. C. Section 225 • Linked from (2) | Accepted | 0.8MB |
| | | | | | | Exhibits | Exhibit A (Redline Comparison) to Verified Amended Complaint for Declaratory Judgment Pursuant to 6 Del. C. Sections 18-110, -111 and 8 Del. C. Section 225 | Accepted | 0.4MB |

| | | | | | | Verification to Complaint | Verification of Elizabeth LaPuma as Managing Director of Alvarez & Marsal Zohar Management, LLC on behalf of Plaintiff Zohar CDO 2003-1, Limited | Accepted | 0.4MB |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Verification to Complaint | Verification of Elizabeth LaPuma as Managing Director of Alvarez & Marsal Zohar Management, LLC on behalf of Plaintiff Zohar II 2005-1 Limited | Accepted | 0.4MB |
| | | | | | | Verification to Complaint | Verification of Elizabeth LaPuma as Managing Director of Alvarez & Marsal Zohar Management, LLC on behalf of Plaintiff Zohar III, Limited | Accepted | 0.4MB |
| 61374592 | 11/17/2017 2:06 PM EST | File Only | 2017-0816-JRS Zohar CDO 2003-1 Limited v. Croscill Home LLC, f/k/a Croscill Acquisition, LLC | Lauren Neal Bennett, Morris Nichols Arsht & Tunnell LLP-Wilmington | 19 | Summons | Summons with Return of Service showing service on Lynn Tilton care of Croscill Acquisition, LLC, Denali Acquisition LLC, Dura Byer, LLC, Global Automotive Systems, LLC, Gorham Paper and Tissue, LLC, Jewel of Jane LLC, LVD Acquisition, LLC and Stila Styles, LLC pursuant to 6 Del. C. Section 18-109 • Linked to (3) | Accepted | 0.8MB |

| | | | | | 20 | Summons | Summons with Return of Service showing service on Lynn Tilton care of RM Acquisition, LLC and Snelling Holdings, LLC pursuant to 6 Del. Code Section 18-109<br>• Linked to (3) | Accepted | 0.7MB |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 21 | Statement Pursuant to Rule 4(d)(c) | Statement Pursuant to Chancery Court Rule 4(dc)<br>• Linked to (2) | Accepted | 0.1MB |
| 61368051 | 11/16/2017 9:54 AM EST | File Only | 2017-0816-JRS Zohar CDO 2003-1 Limited v. Croscill Home LLC, f/k/a Croscill Acquisition, LLC | Lauren Neal Bennett, Morris Nichols Arsht & Tunnell LLP-Wilmington | 7 | Summons | Summons with Return of Service showing service on defendant RM Acquisition, LLC pursuant to 6 Del. C. Section 18-105<br>• Linked to (4) | Accepted | 0.1MB |
| | | | | | 8 | Summons | Summons with Return of Service showing service on defendant Snelling Holdings, LLC pursuant to 6 Del. C. Section 18-105<br>• Linked to (4) | Accepted | 0.1MB |
| | | | | | 9 | Summons | Summons with Return of Service showing service on defendant IMG Holdings, Inc. pursuant to 8 Del. C. Section 225<br>• Linked to (4) | Accepted | 0.1MB |
| | | | | | 10 | Summons | Summons with Return of Service showing service on defendant Lynn Tilton pursuant to 8 Del. C. Section 225<br>• Linked to (4) | Accepted | 0.1MB |
| | | | | | 11 | Summons | Summons with Return of Service showing service on defendant Jewel of Jane LLC pursuant to 6 Del. C. Section 18-105<br>• Linked to (4) | Accepted | 0.1MB |

| 12 | Summons | Summons with Return of Service showing service on defendant Croscill Home LLC, fka Croscill Acquisition, LLC pursuant to 6 Del. C. Section 18-105<br>• Linked to (4) | Accepted | 0.1MB |
|----|---------|-------------------------------------------------------------------------|----------|-------|
| 13 | Summons | Summons with Return of Service showing service on defendant Gorham Paper and Tissue, LLC pursuant to 6 Del. C. Section 18-105<br>• Linked to (4) | Accepted | 0.1MB |
| 14 | Summons | Summons with Return of Service showing service on defendant Global Automotive Systems, LLC pursuant to 6 Del. C. Section 18-105<br>• Linked to (4) | Accepted | 0.1MB |
| 15 | Summons | Summons with Return of Service showing service on defendant Stila Styles, LLC pursuant to 6 Del. C. Section 18-105<br>• Linked to (4) | Accepted | 0.1MB |
| 16 | Summons | Summons with Return of Service showing service on defendant Dura Buyer, LLC pursuant to 6 Del. C. Section 18-105<br>• Linked to (4) | Accepted | 0.1MB |
| 17 | Summons | Summons with Return of Service showing service on defendant LVD Acquisition, LLC dba Oasis International pursuant to 6 Del. C. Section 18-105<br>• Linked to (4) | Accepted | 0.1MB |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 18 | Summons | Summons with Return of Service showing service on defendant Denali Acquisition, LLC pursuant to 6 Del. C. Section 18-105<br>• Linked to (4) | Accepted | 0.1MB |
| 61364080 | 11/15/2017 12:56 PM EST | File And Serve | 2017-0816-JRS Zohar CDO 2003-1 Limited v. Croscill Home LLC, f/k/a Croscill Acquisition, LLC | Register in Chancery, DE Court of Chancery Civil Action | 6 | Issuance of Summons | Issued (12) summonses 11.15.17 to special process server (12 copies)<br>• Linked to (1)<br>• Linked from (12) | Accepted | 1.5MB |
| 61360625 | 11/14/2017 6:21 PM EST | File Only | 2017-0816-JRS Zohar CDO 2003-1 Limited v. Croscill Home LLC, f/k/a Croscill Acquisition, LLC | Kenneth J Nachbar, Morris Nichols Arsht & Tunnell LLP-Wilmington | 1 | Complaint with 3 or More Defendants | Verified Complaint for Declaratory Judgment Pursuant to 6 Del. C. Section 18-111 and 8 Del. C.. Section 225<br>• Linked from (15) | Accepted | 0.3MB |
| | | | | | 2 | Supplemental Information Sheet | Supplemental Information Pursuant to Rule 3(a) with Statement for Good Cause | Accepted | 0.1MB |
| | | | | | 3 | Motion to Expedite | Motion for Expedited Proceedings<br>• Linked from (15) | Accepted | 0.1MB |
| | | | | | 4 | Summons Instructions | Summons Instruction Letter<br>• Linked from (16) | Accepted | 0.1MB |
| | | | | | 5 | Letter | Letter to Chancellor Bouchard from Lauren Neal Bennett requesting that matter be assigned promptly | Accepted | 0.1MB |
| | | | | | | Exhibits | Exhibit A to Verified Complaint for Declaratory Judgment Pursuant to 6 Del. C. Section 18-111 and 8 Del. C. Section 225 | Accepted | 0.3MB |

| | | | | | Verification to Complaint | Verification of Elizabeth LaPuma as Managing Director of Alvarez & Marsal Zohar Management, LLC on behalf of Plaintiff Zohar II 2005-1 Limited | Accepted | 0.1MB |
|---|---|---|---|---|---|---|---|---|
| | | | | | Verification to Complaint | Verification of Elizabeth LaPuma as Managing Director of Alvarez & Marsal Zohar Management, LLC on behalf of Plaintiff Zohar CDO 2003-1 | Accepted | 0.1MB |
| | | | | | Verification to Complaint | Verification of Elizabeth LaPuma as Managing Director of Alvarez & Marsal Zohar Management, LLC on behalf of Plaintiff Zohar III, Limited | Accepted | 0.1MB |
| | | | | | Proposed Order | [Proposed] Order Granting Motion for Expedited Proceedings | Accepted | 0.1MB |

**EFiled:  Nov 14 2017 06:21PM EST**
**Transaction ID 61360625**
**Case No. 2017-0816-**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, | |
| *Plaintiffs*, | |
| v. | |
| CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company d/b/a OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, | C.A. No. _____ <br><br> **<u>Verified Complaint</u>** |
| *Defendants*. | |

# **Table Of Contents**

Nature Of The Action ........................................................................................4

Jurisdiction ......................................................................................................7

The Parties.......................................................................................................8

Background .....................................................................................................13

I.     Formation Of The Zohar Funds And Role Of The Patriarch Managers ..........13

II.    The Zohar Funds' Creditors And Collateral ....................................................16

III.   The Zohar Funds' Preference Shareholders.....................................................18

IV.    The Zohar Funds Acquisition Of Equity In The Portfolio LLCs And
       IMG ...............................................................................................................20

V.     The Zohar Funds' Failure To Repay Noteholders And Replacement Of
       The Patriarch Managers .................................................................................21

VI.    Ms. Tilton Engages In Self-Dealing Transactions To Improperly
       Entrench Her Control Over The Zohar-Owned Portfolio LLCs.......................22

A.     Croscill Home LLC (formerly known as Croscill Acquisition, LLC) ............24
       1.    Operative 2008 Croscill LLC Agreement................................................24
       2.    2015 Amendment To The Croscill LLC Agreement..................................27

B.     Denali Acquisition LLC.................................................................................28
       1.    Operative 2008 Denali Acquisition Operating Agreement .......................28
       2.    2015 Amendment To The Denali Acquisition Operating Agreement.........30

C.     Global Automotive Systems, LLC..................................................................31
       1.    Operative 2013 GAS LLC Agreement .....................................................31
       2.    2015 Amendment To The GAS LLC Agreement.......................................33

D.     Gorham Paper and Tissue, LLC ....................................................................35
       1.    Operative 2011 Gorham LLC Agreement .................................................35
       2.    2015 Amendment To The Gorham LLC Agreement ..................................37

E.     Jewel of Jane LLC .........................................................................................38
       1.    Operative 2009 Jewel Of Jane LLC Agreement........................................38
       2.    2015 Amendment To The Jewel Of Jane LLC Agreement .........................41

F.     LVD Acquisition, LLC (doing business as Oasis International)....................42
       1.    Operative 2009 LVD/Oasis LLC Agreement............................................42
       2.    2015 Amendment To The LVD/Oasis LLC Agreement .............................44

G.     RM Acquisition, LLC ....................................................................................46

1.    Operative 2008 RM Operating Agreement ...................................................46
2.    2015 Amendment To The RM Operating Agreement ................................48

H.    Snelling Holdings, LLC .......................................................................49
1.    Operative 2007 Snelling Holdings Operating Agreement ...........................49
2.    2015 Amendment To The Snelling Holdings Operating Agreement ..........51

I.    Stila Styles, LLC ..............................................................................53
1.    Operative 2009 Stila LLC Agreement .........................................................53
2.    2015 Amendment To The Stila LLC Agreement ........................................55

J.    Dura Buyer, LLC ..............................................................................56
1.    Operative 2009 Dura Buyer LLC Agreement .............................................56
2.    2011 Amendment To The Dura Buyer LLC Agreement ............................58
3.    2015 Amendment To The Dura Buyer LLC Agreement ............................59

VII.  Ms. Tilton Engages In Self-Dealing Transactions To Improperly
Entrench Her Control Over IMG ....................................................................61

Causes Of Action .....................................................................................63

Prayer For Relief ......................................................................................75

3

Plaintiffs Zohar CDO 2003-1, Limited ("Zohar I"), Zohar II 2005-1,

Limited ("Zohar II"), and Zohar III, Limited ("Zohar III," and, collectively, the

"Zohar Funds"), through their undersigned counsel, allege for their Verified

Complaint against Defendants Croscill Home LLC (formerly known as Croscill

Acquisition, LLC) ("Croscill"), Denali Acquisition LLC ("Denali Acquisition"),

Dura Buyer, LLC ("Dura Buyer"), Global Automotive Systems, LLC ("GAS"),

Gorham Paper and Tissue, LLC ("Gorham"), Jewel of Jane LLC ("Jewel of Jane"),

LVD Acquisition, LLC (doing business as Oasis International) ("LVD/Oasis"),

RM Acquisition, LLC ("RM"), Snelling Holdings, LLC ("Snelling Holdings"),

Stila Styles, LLC ("Stila," and, collectively, the "Portfolio LLCs"), IMG Holdings,

Inc. ("IMG"), and Lynn Tilton as follows:

## Nature Of The Action

1.     This is an action brought by the Plaintiff Zohar Funds to resolve

ongoing disputes regarding their ownership and control over the Defendant

Portfolio LLCs, each a Delaware limited liability company ("LLC"), and IMG, a

Delaware corporation.  Specifically, the Zohar Funds own, collectively or

individually, all of the outstanding membership interests, including voting

interests, of nine of the ten Portfolio LLCs:  Croscill, Denali Acquisition, GAS,

Gorham, Jewel of Jane, LVD/Oasis, RM, Snelling Holdings, and Stila.  For each of

these Portfolio LLCs, one or more of the Zohar Funds are the only members named

4

under their governing limited liability company agreements or operating agreement

("LLC agreements").  The Zohar Funds also own the majority of membership

interests, including voting interests, in Dura Buyer, with an affiliate of Defendant

Lynn Tilton, Ark II CLO 2001-1, Ltd. ("Ark II"),[1] holding a minority membership

interest in Dura Buyer.  The Zohar Funds own all of the outstanding common stock

of IMG.

       2.     Ms. Tilton currently acts as the sole manager of each Portfolio

LLC and the sole director of IMG.  She has contended that, notwithstanding that

the Zohar Funds are exclusive or majority holders of the membership interests in

the Portfolio LLCs and sole owners of the outstanding common stock of IMG, they

are powerless to remove Ms. Tilton and appoint a new manager or director.  The

Zohar Funds dispute Ms. Tilton's position and bring this action for entry of an

order declaring that they may remove Ms. Tilton and replace her with a new

manager or managers for each of the Portfolio LLCs and a new director or

directors for IMG.

       3.     Ms. Tilton's contention that the Zohar Funds may not remove

her as manager for the Portfolio LLCs is predicated upon amendments to their

governing LLC agreements that she caused to be drafted and executed—in most

---

[1]   Upon information and belief, Ark II has no noteholders.  Ms. Tilton owns
Ark II outright and she uses Ark II as her personal investment vehicle.

cases, on the eve of her removal as collateral manager of the Zohar Funds—that purport to transfer certain of the Zohar Funds' membership rights, including voting rights, to entities that are wholly controlled by Ms. Tilton.  These amendments are substantively identical to the irrevocable proxies in respect of FSAR Holdings, Inc., Glenoit Universal Ltd., and UI Acquisition Holding Co. that were challenged by the Zohar Funds and tried to this Court in *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch. Ct.).  As was the case for the irrevocable proxies in that action, the amendments at issue in this action are unenforceable as they constitute blatant acts of inequitable self-dealing by Ms. Tilton.  They are also unenforceable for the additional reason that the amendments' one-way transfer of valuable rights from the Zohar Funds to Ms. Tilton's entities provided absolutely nothing of value to the Zohar Funds in return and thus fail for lack of consideration.

4.      Ms. Tilton's contention that the Zohar Funds may not remove her as director of IMG arises from irrevocable proxies that are identical to those challenged by the Zohar Funds and tried to this Court in *FSAR Holdings*.  The irrevocable proxies related to IMG are unenforceable here for the same reasons as in *FSAR Holdings*; they are blatant acts of inequitable self-dealing by Ms. Tilton that purport to irrevocably transfer, for a term of twenty years, the voting rights of

the Zohar Funds to entities she controls.  The IMG irrevocable proxies are also

invalid because they are not properly coupled with an interest.

5.      Accordingly, the Zohar Funds seek an order declaring that,

consistent with the original governing agreement for each Portfolio LLC, as

exclusive (or, for Dura Buyer, majority) holder of the membership interests of each

Portfolio LLC, the Zohar Funds may remove and replace the manager for each

Portfolio LLC at any time, with or without cause.  The Zohar Funds also seek an

order declaring that they may exercise their voting power as owners of all of

IMG's outstanding common stock to remove and replace IMG's director.

## **Jurisdiction**

6.      This Court has jurisdiction over this matter in respect of the

Portfolio LLCs under 6 *Del. C.* § 18-111 because it is an action to "interpret, apply

or enforce the provisions of a limited liability company agreement" and "the rights

or powers of, or restrictions on, the limited liability company, members or

managers."

7.      This Court has jurisdiction over this matter in respect of IMG

under 8 *Del. C.* § 225 because it is an action to determine "the right of any person

to hold or continue to hold" the office of director.

8.     This Court has the power to declare rights, status and other legal relations under 10 *Del. C.* § 6501 because an actual controversy exists between the parties.

**The Parties**

9.     Plaintiff Zohar I is a Cayman Island exempt company.  At all times relevant hereto, Zohar I has been a member of the following Portfolio LLCs, as evidenced by their LLC agreements:

| Company | Class | Percentage |
|---|---|---|
| 1.  GAS | Common Interest | 18.760% |
| 2.  LVD/Oasis | Common Interest | 14.69% |
| 3.  RM | Common Interest | 17.09050% |
|  | Series A Preferred Interest | 17.09050% |
| 4.  Snelling Holdings | Membership Interest | 22.3% |

Zohar I also owns 16.9 percent of the outstanding common stock of IMG, consisting of 1,016.5 shares.

10.     Plaintiff Zohar II is a Cayman Island exempt company.  At all times relevant hereto, Zohar II has been a member of the following Portfolio LLCs, as evidenced by their LLC agreements:

| Company | Class | Percentage |
|---------|-------|------------|
| 1.  Dura Buyer | Common Interest | 52.49% |
| 2.  GAS | Common Interest | 49.083% |
| 3.  Jewel of Jane | Common Interest | 100% |
| | Series A Preferred Interest | 100% |
| 4.  LVD/Oasis | Common Interest | 62.36% |
| 5.  RM | Common Interest | 56.96833% |
| | Series A Preferred Interest | 56.96833% |
| 6.  Snelling Holdings | Membership Interest | 63.8% |

Zohar II also owns 68.2 percent of the outstanding common stock of IMG,

consisting of 4,093.0 shares.

11.     Plaintiff Zohar III is a Cayman Island exempt company.  At all

times relevant hereto, Zohar III has been a member of the following Portfolio

LLCs, as evidenced by their LLC agreements:

| Company | Class | Percentage |
|---------|-------|------------|
| 1.  Croscill | Common Interest | 100% |
| | Series A Preferred Interest | 100% |
| 2.  Denali | Membership Interest | 100% |
| 3.  Dura Buyer | Common Interest | 25.29% |

9

| Company | Class | Percentage |
|---|---|---|
| 4. GAS | Common Interest | 32.157% |
| 5. Gorham | Common Interest | 100% |
| | Series A Preferred Interest | 100% |
| 6. LVD/Oasis | Common Interest | 22.95% |
| 7. RM | Common Interest | 25.94118% |
| | Series A Preferred Interest | 25.94118% |
| 8. Snelling Holdings | Membership Interest | 13.9% |
| 9. Stila | Common Interest | 100% |
| | Series A Preferred Interest | 100% |

Zohar III also owns 14.8 percent of the outstanding common stock of IMG, consisting of 890.5 shares.

12.     Defendant Croscill Home LLC (formerly known as Croscill Acquisition, LLC) (previously defined as "Croscill") is a Delaware limited liability company.  Croscill's governing agreement is the Limited Liability Company Agreement of Croscill Acquisition, LLC dated as of November 7, 2008 (the "Croscill LLC Agreement").

13.     Defendant Denali Acquisition LLC (previously defined as "Denali") is a Delaware limited liability company.  Denali's governing agreement

10

is the Operating Agreement of Denali Acquisition LLC dated as of June 6, 2008

(the "Denali Acquisition Operating Agreement").

14.     Defendant Dura Buyer, LLC (previously defined as "Dura

Buyer") is a Delaware limited liability company.  Dura Buyer's governing

agreement is the Limited Liability Company Agreement of Dura Buyer, LLC dated

as of November 10, 2009 (the "Dura Buyer LLC Agreement").

15.     Defendant Global Automotive Systems, LLC (previously

defined as "GAS") is a Delaware limited liability company.  GAS's governing

agreement is the Amended and Restated Limited Liability Company Agreement of

Global Automotive Systems, LLC dated as of March 9, 2013 (the "GAS LLC

Agreement").

16.     Defendant Gorham Paper and Tissue, LLC (previously defined

as "Gorham") is a Delaware limited liability company.  Gorham's governing

agreement is the Limited Liability Company Agreement of Gorham Paper and

Tissue, LLC dated as of May 13, 2011 (the "Gorham LLC Agreement").

17.     Defendant IMG Holdings, Inc. (previously defined as "IMG")

is a Delaware corporation.  IMG's registered agent is Corporation Service

Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

18.     Defendant Jewel of Jane LLC (previously defined as "Jewel of

Jane") is a Delaware limited liability company.  Jewel of Jane's governing

agreement is the Limited Liability Company Agreement of Jewel of Jane LLC

dated as of December 24, 2009 (the "Jewel of Jane LLC Agreement").

19.     Defendant LVD Acquisition, LLC (doing business as Oasis

International) (previously defined as "LVD/Oasis") is a Delaware limited liability

company.  LVD/Oasis's governing agreement is the Limited Liability Company

Agreement of LVD Acquisition, LLC dated as of March 31, 2009 (the "LVD/Oasis

LLC Agreement").

20.     Defendant RM Acquisition, LLC (previously defined as "RM")

is a Delaware limited liability company.  RM's governing agreement is the First

Amended and Restated Operating Agreement of RM Acquisition, LLC signed on

April 29, 2008, and intended to be effective for all purposes as of December 2,

2007 (the "RM Operating Agreement").

21.     Defendant Snelling Holdings, LLC (previously defined as

"Snelling Holdings") is a Delaware limited liability company.  Snelling Holding's

governing agreement is the Operating Agreement of Snelling Holdings, LLC dated

as of October 1, 2007 (the "Snelling Holdings Operating Agreement").

22.     Defendant Stila Styles, LLC (previously defined as "Stila") is a

Delaware limited liability company.  Stila's governing agreement is the Limited

Liability Company Agreement of Stila Styles, LLC dated as of April 17, 2009 (the

"Stila LLC Agreement").

23.     Defendant Lynn Tilton is, on information and belief, the principal of Patriarch and its affiliates, and is the sole manager of each of the Portfolio LLCs and sole director of IMG.[2]

## Background

## I.     Formation Of The Zohar Funds And Role Of The Patriarch Managers

24.     The Zohar Funds are collateralized loan obligation ("CLO") transactions that raised capital through the sale of notes for the ostensible purpose of investing in corporate debt and other assets.  The first Zohar Fund, Zohar I, launched in November 2003, raising approximately $530 million from the sale of notes.  Zohar II and Zohar III followed in January 2005 and April 2007, respectively, each raising approximately $1 billion from the sale of notes.

25.     Prior to March 2016, the Zohar Funds were managed by affiliates of Patriarch Partners, LLC ("Patriarch"), an investment firm owned by Ms. Tilton.  Patriarch Partners VIII, LLC was Zohar I's collateral manager, Patriarch Partners XIV, LLC was Zohar II's collateral manager, and Patriarch Partners XV, LLC was Zohar III's collateral manager.  Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, and Patriarch Partners XV, LLC are collectively referred to below as the "Patriarch Managers."

---

[2]   Tables 1 and 2, which are summaries of the Zohar Funds' percentage ownership, organized by Portfolio LLC and IMG, and relevant removal provisions are attached to this verified complaint as Exhibit A.

13

26.     The rights of the Zohar Funds' Noteholders and the obligations

of the Zohar Funds are set forth in Indentures.  The roles and obligations of the

collateral manager were set out in the Collateral Management Agreements

("CMAs") for each of the Zohar Funds.[3]  The Patriarch Managers were tasked with

managing the loans and other assets of the Zohar Funds.  The CMAs set forth a

"Standard of Care," requiring that the Collateral Manager "use reasonable care and

the same degree of skill and attention" that, among other things, is "exercised by

institutional investment managers of national standing generally in respect of

assets of the nature and character of the Collateral and for clients having similar

investment objections and restrictions."  CMAs § 2.4.[4]

27.     The CMAs also expressly prohibited any action by the

Collateral Manager that would "cause the [Zohar Funds] to violate the terms of the

Indenture," CMAs § 2.6, such as by "transfer[ring] . . . any part of the Collateral,

except as expressly permitted by th[e] Indenture," Indentures § 7.8(a)(i).

---

[3]    The CMAs are expressly made subject to the terms of the Indentures, with provisions of the Indentures controlling over conflicting provisions in the CMAs. *See* Zohar I CMA § 7.14; Zohar II CMAs, § 7.14; Zohar III CMA, § 7.13.

[4]    Citations to "CMAs" are to parallel sections in the Zohar I CMA, Zohar II CMA, and Zohar III CMA unless citation to a separate CMA is necessary. Likewise, citations to "Indentures" are to parallel sections in the Zohar I Indenture, Zohar II Indenture, and Zohar III Indenture, and citations to "Preference Share Paying Agency Agreements" are to parallel sections in the Preference Share Paying Agency Agreement for each Zohar Fund, unless a separate citation is necessary.

28.     While Section 6.2 of the CMAs acknowledges that the

Collateral Manager may have certain conflicts of interest, it does not provide

exculpation for self-dealing transactions.[5]  CMAs § 6.2.  Rather, Section 6.2(b)

provides that nothing in Section 6.2 "shall be construed as altering the duties of the

Collateral Manager as set forth in this Agreement or the Indenture nor the

requirements of any law, rule or regulation applicable to the Collateral Manager."

And Section 12.3 of the Indentures expressly provides that any transaction "if

effected with the Collateral Manager . . . or any affiliate of [the Collateral

Manager] shall be effected on terms as favorable to the Noteholders as would be

the case if such Person were not so Affiliated."  Indentures § 12.3(a).  Thus, the

Indentures expressly provide that transactions between the Zohar Funds and

Patriarch or its affiliates must be on terms no less favorable than would be obtained

in an arms-length transaction.

29.     Finally, like all investment advisers, the Patriarch Managers

owed general fiduciary duties of care and loyalty to the Zohar Funds in providing

advisory services and acting as the Zohar Funds' agent and attorney-in-fact in

---

[5]   Although the CMAs provide limited exculpation for the Collateral
Manager and certain affiliates, they do not cover "acts or omissions constituting
fraud, bad faith, willful misconduct, gross negligence or breach of fiduciary duty in
the performance, or reckless disregard, of the duties of the Collateral
Manager . . . ."  CMAs § 4.4.

administering the Zohar Funds' investment activities.  These common law and statutory fiduciary duties are in addition to the specific duties of care set forth in the CMAs.

## II.  <u>The Zohar Funds' Creditors And Collateral</u>

30.    The Zohar Funds are special purpose entities that have limited business purposes that include (i) issuing collateralized loan obligations ("Notes") and using the proceeds to acquire certain types of assets that are pledged as Collateral for the sole benefit of the Noteholders, (ii) managing the Collateral for the benefit of the Secured Parties (which includes the Noteholders and, for Zohar I and Zohar II, MBIA both as Noteholder and as Credit Enhancer), and (iii) repaying the Notes at or before their maturity from proceeds generated from the Collateral. Indentures § 7.12.  The holders of Notes issued by the Zohar Funds (and the Credit Enhancer who insured certain Notes for Zohar I and Zohar II) are the Funds' primary Secured Party creditors.

31.    The Zohar Funds' Indentures give the Secured Parties  "a continuing security interest in, and lien on" the property of the Zohar Funds. Indentures at 1.  The security interest and lien granted to the Noteholders and other Secured Parties is extremely broad, encompassing:

> all of [the Zohar Fund's] right, title and interest in, to and under, in each case, whether now owned or existing, or hereafter acquired or arising, all accounts, payment intangibles, general intangibles, letter-of-credit rights,

16

> chattel paper, electronic chattel paper, instruments,
> deposit accounts, investment property (each, as defined
> in the UCC), and any and all other property of any type
> or nature owned by it (other than Excluded
> Property) . . . .

Indentures at 1.  The "Excluded Property" as to which the Noteholders do not have

a security interest consists solely of $1,500 in cash.  Zohar I Indenture at 28; Zohar

II Indenture at 28; Zohar III Indenture at 26.

      32.    The Zohar Funds were intended to have limited duration, as the

Notes that the Funds issued had (in the case of Zohar I and Zohar II) and have (in

the case of Zohar III) a Stated Maturity date on which they must be repaid.

Indentures § 2.2(b).  The Indentures contemplate that Collateral that does not

mature prior to the Stated Maturity—essentially, all of the remaining property of

the Funds—will be sold to generate proceeds to repay the Notes.  Zohar I Indenture

§ 12.2(e)[6]; Zohar II Indenture § 12.2(e); Zohar III Indenture § 12.2(d).  Moreover,

upon an Event of Default and acceleration of the Notes—whether it is a non-

payment of interest or principal when due, or certain other Events of Default—the

Trustee is empowered to cause the sale of the Collateral if the proceeds are

sufficient to repay the Notes.  Indentures § 5.5(a)(i).  The Trustee must also sell the

Collateral upon the Event of Default and acceleration of the Notes when the

---

[6]   On June 19, 2015, MBIA and Patriarch agreed to a Fifth Supplemental
Indenture for Zohar I that amended Section 12.2(e) to permit (rather than require)
the liquidation of Collateral.

Controlling Party (or, in the case of Zohar III, the Controlling Class) directs it to—

whether the proceeds of such a sale would be sufficient to repay the Notes in full

or not.  Indentures §§ 5.4(a)(ii), 5.5(a)(ii).  Thus, the intent of the Indentures is

clear:  unless and until the Notes are repaid, the Collateral is held solely for the

benefit of the Secured Parties (primarily the Noteholders and, in the case of Zohar I

and Zohar II, MBIA as Credit Enhancer).

33.     In turn, the Noteholders have recourse only to the Collateral.

Indentures § 2.6(i).  Following realization of the Collateral, "any claims of the

Noteholders . . . shall be extinguished, and shall not thereafter revive."  Indentures

§ 2.6(i).  Thus, Secured Parties' security interest in the Collateral—and the right of

the Controlling Party or Controlling Class to cause the sale of the Collateral upon

non-payment of principal at the Stated Maturity or upon any other Event of Default

and acceleration of Notes—is not only critical to the Noteholders, but is inherent in

the Zohar Funds' basic structure.

## III.   **The Zohar Funds' Preference Shareholders**

34.     In addition to selling Notes to investors, the Zohar Funds issued

Preference Shares which are currently owned by an entity owned and controlled by

Ms. Tilton.

35.     Patriarch affiliate Octaluna, LLC holds Zohar I's Preference

Shares.  Octaluna, LLC has three classes of members:  Class A, Class B, and Class

C.  The sole Class B Member of Octaluna (which is relevant here for reasons set forth below) is the original Collateral Manager of Zohar I, Patriarch Partners VIII, LLC.  Patriarch Partners VIII, LLC is also named the Managing Member of Octaluna, LLC.

36.     Patriarch affiliate Octaluna II, LLC holds Zohar II's Preference Shares.  Octaluna II, LLC has three classes of members:  Class A, Class B, and Class C.  The sole Class B Member of Octaluna II, LLC is the original Collateral Manager of Zohar II, Patriarch Partners XIV, LLC.  Patriarch Partners XIV, LLC is also named the Managing Member of Octaluna II, LLC.

37.     Patriarch affiliate Octaluna III, LLC holds Zohar III's Preference Shares.  Octaluna III, LLC has three classes of members: Class A, Class B, and Class C.  The Class B Members of Octaluna III, LLC are Ark II (58.3 percent),  Patriarch Partners XV, LLC, the original Collateral Manager of Zohar III (25 percent), and Phoenix VIII, LLC (16.7 percent).  Patriarch XV, LLC is named the Managing Member of Octaluna III, LLC.

38.     Octaluna I, LLC, Octaluna II, LLC, and Octaluna III, LLC, are collectively referred to herein as the "Octalunas."  The Class B Members of Octalunas are collectively referred to herein as the "Octaluna Class B Members."

39.     The Preference Shareholder of each Zohar Fund is entitled only to a capped amount of dividends (that the Preference Shareholders have received)

19

and whatever cash remains after the Notes are paid in full after the sale or self-liquidation of Collateral.  The Preference Shares' final distributions (if any) are payable solely from amounts on deposit in the Preference Share Distribution Account.  Preference Share Paying Agency Agreements § 2.6(c).  Any amounts deposited in the Preference Share Distribution Account are subordinated to the Notes' interest and principal, *id.* § 2.6(d), and come from the remaining funds in the last step in the Indenture interest and principal proceeds waterfall.  Zohar I Indenture § 11.1(a)(i)(M), (a)(ii)(J); Zohar II Indenture § 11.1(a)(i)(M), (a)(ii)(J); Zohar III Indenture § 11.1(a)(i)(P), (a)(ii)(I).

## IV.     **The Zohar Funds Acquisition Of Equity In The Portfolio LLCs And IMG**

40.     Much of the Collateral acquired by the Zohar Funds consisted of loans extended to small- to mid-sized manufacturing companies.  The entire consideration for the acquisition of these loans came from funds in the Zohar Funds' accounts.  In many instances, either in the same transaction in which the Zohar Funds extended loans, or though subsequent transactions in which those loans were restructured, the Zohar Funds also acquired equity positions in the borrowers.  These equity positions were titled and beneficially owned in the Zohar Funds' names and thus constituted part of the Collateral under the Zohar Funds' Indentures that served as security for repayment of the Noteholders (or, as appropriate in respect of Zohar I and Zohar II, the Credit Enhancer).

20

41.     In the case of each of the Portfolio LLCs at issue in this action, the Zohar Funds extended one or more loans to each of the Portfolio Companies and simultaneously acquired equity interests.  In each instance, that equity was in the form of membership interests titled in the name of the Zohar Funds pursuant to the governing LLC agreement for each Portfolio LLC.  In the case of IMG, the Zohar Funds acquired common stock of IMG in a restructuring of loans extended to IMG and in a legal settlement with IMG's founders.  Those equity positions, including the rights attendant to them, constituted Collateral under the Zohar Funds' Indentures.

**V.     The Zohar Funds' Failure To Repay Noteholders And Replacement Of The Patriarch Managers**

42.     Under the management of the Patriarch Managers, the Zohar Funds performed dismally.  On November 20, 2015, Zohar I defaulted on its obligation to repay Noteholders.  Zohar I's assets were subsequently sold by the Zohar I Trustee at auction to MBIA as the highest bidder.

43.     On March 2, 2016, the Patriarch Managers resigned as Collateral Managers for the Zohar Funds.  Alvarez & Marsal Zohar Management ("AMZM") was appointed as Collateral Manager for each of the Zohar Funds.

44.     On January 20, 2017, Zohar II defaulted on its obligation to repay Noteholders and MBIA paid approximately $770 million in claims on the

21

outstanding principal and interest due to the Class A-1, Class A-2, and Class A-3 Noteholders and was subrogated to all of their rights.  It remains in default today.

45.     Zohar III faces imminent default on its obligation to repay Noteholders on April 15, 2019.

## VI.   Ms. Tilton Engages In Self-Dealing Transactions To Improperly Entrench Her Control Over The Zohar-Owned Portfolio LLCs

46.     As discussed above, the Zohar Funds' equity ownership is memorialized, among other places, in the LLC agreements setting forth the corporate governance of the Portfolio LLCs.  The LLC agreement for each Portfolio LLC also provides for the process for removing and replacing the manager of each Portfolio LLC.  In two separate self-dealing transactions, Ms. Tilton caused the Zohar Funds to amend the LLC agreement for each Portfolio LLC and purportedly forfeit valuable membership interests, including their rights to remove and replace the manager of each Portfolio LLC.

47.     In May 2011, Ms. Tilton caused the Zohar Funds to execute amendments to the LLC agreements that replaced the majority voting requirement for removal and replacement of the manager with a unanimous voting requirement.[7]  These amendments sought to secure Ms. Tilton's ability to prevent

---

[7]   This is true for eight of the Portfolio LLCs:  (1) Croscill; (2) Denali Acquisition; (3) Dura Buyer; (4) Jewel of Jane; (5) LVD/Oasis; (6) RM; (7) Snelling Holdings; and (8) Stila.  The LLC agreements for the two other

her own removal as manager of the Portfolio LLCs even if she was removed as Collateral Manager whichever Zohar Fund independently owned a majority of the membership interests and thus could have unilaterally removed Tilton.  Moreover, in each instance, the Zohar Fund that gave up its ability to unilaterally exercise majority control received no consideration for this amendment.

48.     With the exception of Dura Buyer, the Zohar Funds— individually or collectively—own 100 percent of the membership interests in the Portfolio LLCs.   Therefore, as the Zohar Funds are presently seeking in unison to remove Ms. Tilton, the imposition of a unanimous voting requirement in 2011, while improper, does not present a current impediment to the Zohar Funds' efforts, other than with regard to Dura Buyer.

49.     In September 2015, when it became clear that Zohar I was on the verge of defaulting on its obligation to repay the principal amounts of the Notes it had issued, Ms. Tilton again sought to entrench herself as manager of the Portfolio LLCs.  At the time, Ms. Tilton conceded that she had already begun taking affirmative steps to prepare for her removal as manager following the Zohar

---

Portfolio LLCs, GAS and Gorham, were executed in or after 2011.  Thus, rather than cause GAS and Gorham to execute amendments, Ms. Tilton caused GAS and Gorham to enter into LLC agreements that required a unanimous vote of the Common Members to remove and replace the manager.

I default.  One of those steps included an extreme, self-interested, defensive maneuver to entrench herself as manager of the Portfolio LLCs.

50.     Specifically, on September 22, 2015—one day after executing the irrevocable proxies at issue in *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch. Ct.)—Ms. Tilton caused the Zohar Funds to execute amendments to the LLC agreements that purportedly transferred certain of the Zohar Funds' membership rights, including the right to remove Ms. Tilton as manager, to the Octaluna Class B Members—*i.e.*, Patriarch-affiliated entities that have never held any right or interest under the LLC agreements and that were entirely owned and controlled by Ms. Tilton.  Like the irrevocable proxies, these amendments claimed to implement the "original intent" of the parties, but no such original intent existed.  Ms. Tilton signed each of these amendments on behalf of all of the parties.  Moreover, the Zohar Funds received no consideration in exchange for this supposed transfer of their valuable membership interests to the Octaluna Class B Members under the 2015 amendments.

A.     *Croscill Home LLC (formerly known as Croscill Acquisition, LLC)*

1.     **Operative 2008 Croscill LLC Agreement**

51.     Zohar III owns 100 percent of the outstanding Common Interests and Series A Preferred Interests of Croscill.  As a result, Zohar III is the

sole Common Member and Series A Preferred Member of Croscill.  Zohar III

executed the Croscill LLC Agreement, dated as of November 7, 2008.

52.    Section 1.1 of the Croscill LLC Agreement defines terms used

therein.  "Manager" means "the Person appointed by the Common Members to

serve as a Manager pursuant to Article V below.  The initial Manager is Lynn

Tilton."

53.    "Common Members" means "those Members from time to time

holding Common Interests, solely in their capacity as holders of the Common

Interests and not in any other capacity."

54.    "Majority-in-Interest of the Common Members" means "at any

particular time, Common Members whose aggregate Common Percentages exceed

fifty percent (50%) of the aggregate Common Percentages of all Common

Members at such time."

55.    "Common Percentage" means "with respect to each Common

Member, the percentage listed as such Common Member's 'Common Percentage'"

on Exhibit A, appended to the Croscill LLC Agreement.

56.    Exhibit A to the Croscill LLC Agreement lists Zohar III's

Common Percentage as 100 percent.

57.     "Series A Preferred Members" means "those Members from time to time holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

58.     "Series A Preferred Percentage" means "for each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the Croscill LLC Agreement.

59.     Exhibit A to the Croscill LLC Agreement lists Zohar III's Series A Preferred Percentage as 100 percent.

60.     Section 5.8 of the Croscill LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

61.     Section 11.1 of the Croscill LLC Agreement is an integration clause, which states:

> This Agreement, together with its Exhibits, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof. There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

26

62.     Section 11.3 permits the Croscill LLC Agreement to be "amended or modified from time to time only by the Members."

## 2.     2015 Amendment To The Croscill LLC Agreement

63.     In September 2015, facing the imminent principal payment default of Zohar I and the similarly dire financial condition of Zohar II and Zohar III, Ms. Tilton anticipated the Patriarch Managers' imminent removal or resignation as Collateral Manager of the Zohar Funds.  With this in mind, on September 22, 2015, Ms. Tilton caused Zohar III, as sole Common Member and Series A Preferred Member of Croscill, to execute "Amendment No. 4 to Limited Liability Company Agreement of Croscill Acquisition, LLC" ("Croscill Amendment Four").  Croscill Amendment Four sought to ensure Ms. Tilton would remain Manager of Croscill indefinitely by requiring her consent for her removal. No consideration supported Croscill Amendment Four.

64.     The first recital of Croscill Amendment Four claims that the "original intent" of Zohar III was to give non-party Patriarch affiliates who are not Common Members or Series A Preferred Members of Croscill—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  To manifest this supposed "original intent," Croscill Amendment Four purports to require "the

consent of all [Octaluna] Class B Members" related to Zohar III for certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

65.    In fact, no such original intent existed.  Rather, Croscill Amendment Four was a brazen attempt by Ms. Tilton to entrench herself as Manager of Croscill by conditioning her removal on her own consent.

66.    Through Croscill Amendment Four, Ms. Tilton caused Zohar III to purport to forfeit its right to remove the Manager.  Moreover, Zohar III received nothing in exchange for forfeiting this right.

B.    *Denali Acquisition LLC*

1.    **Operative 2008 Denali Acquisition Operating Agreement**

67.    Zohar III owns 100 percent of the outstanding Membership Interests of Denali Acquisition.  As a result, Zohar III is the sole Member of Denali Acquisition.  Zohar III executed the Denali Acquisition Operating Agreement, dated as of June 6, 2008.

68.    Section 1.1 of the Denali Acquisition Operating Agreement defines terms used therein.  "Manager" has the meaning given to it in Section 5.1, which states that "the powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, managers ('Managers')" and "the Managers may make all

28

decisions and take all actions for the Company not otherwise provided for in this Agreement."  Section 5.3 states, "The initial Manager of the Company shall be Lynn Tilton.  The number of Managers of the Company shall be determined by time to time by action of the Member."

69.     "Member" means "any Person executing this Agreement as of the date of this Agreement as a member or hereafter admitted to the Company as a member."

70.     "Membership Interest" means "the interests of a Member in the Company, including, without limitation, rights to distributions (liquidating or otherwise) and allocations."

71.     Zohar III is the only Person who executed the Denali Acquisition Operating Agreement as a Member and Exhibit A to the Denali Acquisition Operating Agreement lists Zohar III as the only Member.

72.     Section 5.4 of the Denali Acquisition Operating Agreement states, "The Member may, at any time and with or without cause, terminate the term of office of all or any of the Managers.  Such removal shall be effective immediately upon Member action even if successors are not elected simultaneously."

73.     Section 11.3 of the Denali Acquisition Operating Agreement is an integration clause, which states, "This Agreement constitutes the entire

29

governing agreement of the Company and supersedes all prior governing agreements of the Company, whether oral or written."

74.     Section 11.5 permits the Denali Acquisition Operating Agreement to be "amended or modified from time to time only by the Member."

## 2.     2015 Amendment To The Denali Acquisition Operating Agreement

75.     On September 22, 2015, the same date as Croscill Amendment Four and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar III, as sole Member of Denali Acquisition, to execute "Amendment No. 2 to Limited Liability Company Agreement [sic] of Denali Acquisition, LLC" ("Denali Acquisition Amendment Two").  Denali Acquisition Amendment Two sought to ensure Ms. Tilton would remain Manager of Denali Acquisition indefinitely by requiring her consent for her removal.  No consideration supported Denali Acquisition Amendment Two.

76.     Denali Acquisition Amendment Two is an exact replica of Croscill Amendment Four.  The first recital claims that the same "original intent" of Zohar III:  that it wanted to give non-party Patriarch affiliates who are not Members of Denali Acquisition—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  Like Croscill Amendment Four, Denali Acquisition

30

Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to Zohar III to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

77.     In fact, no such original intent existed.  Rather, Denali Acquisition Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of Denali Acquisition by conditioning her removal on her own consent.

78.     Through Denali Acquisition Amendment Two, Ms. Tilton caused Zohar III to purport to forfeit its right to remove the Manager.  Moreover, Zohar III received nothing in exchange for forfeiting this right.

C.     *Global Automotive Systems, LLC*

**1.     Operative 2013 GAS LLC Agreement**

79.     The Zohar Funds own 100 percent of GAS.  Zohar I owns 18.760 percent, Zohar II owns 49.083 percent, and Zohar III owns 32.157 percent of the Common Interests.  The Zohar Funds are the only Members of GAS.

80.     The Zohar Funds executed the GAS LLC Agreement on March 9, 2013.

81.     Section 1.1 of the GAS LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The Manager is Lynn Tilton."

82.     "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

83.     "All of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages equal one hundred percent (100%) of the aggregate Common Percentages of all Common Members at such time."

84.     "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage' on" Exhibit A, appended to the GAS LLC Agreement.

85.     Exhibit A to the GAS LLC Agreement listed Zohar I's Common Percentage as 18.760 percent, Zohar II's Common Percentage as 49.083 percent, and Zohar III's Common Percentage as 32.157 percent.

86.     Section 5.9 of the GAS LLC Agreement states, "The Common Members, by vote of All of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

87.     Section 11.1 of the GAS LLC Agreement is an integration

clause, which states:

> This Agreement, together with <u>Schedule A</u> hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.     There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

88.     Section 11.3 permits the GAS LLC Agreement to be "amended

or modified from time to time only upon approval by the Common Members, by

vote of All of the Common Members."

## 2.     2015 Amendment To The GAS LLC Agreement

89.     On September 22, 2015, the same date as other 2015

amendments and facing the same existential threats to her and Patriarch's roles

with Zohar Funds, Ms. Tilton caused the Zohar Funds, as Common Members of

GAS, to execute "Amendment No. 1 to Amended and Restated Limited Liability

Company Agreement of Global Automotive Systems, LLC" ("GAS Amendment

One").  GAS Amendment One sought to ensure Ms. Tilton would remain Manager

of GAS indefinitely by requiring her consent for her removal.  No consideration

supported GAS Amendment One.

33

90.    GAS Amendment One is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Common Members of GAS—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  Like the other 2015 amendments, GAS Amendment One attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

91.    In fact, no such original intent existed.  Rather, GAS Amendment One was a brazen attempt by Ms. Tilton to entrench herself as Manager of GAS by conditioning her removal on her own consent.

92.    Through GAS Amendment One, Ms. Tilton caused the Zohar Funds to forfeit their right to remove the Manager.  Moreover, the Zohar Funds received nothing in exchange for forfeiting this right.

34

D.    *Gorham Paper and Tissue, LLC*

   **1.    Operative 2011 Gorham LLC Agreement**

93.    Zohar III owns 100 percent of the outstanding Common Interests and Series A Preferred Interests of Gorham.  As a result, Zohar III is the sole Common Member and Series A Preferred Member of Gorham.  Zohar III executed the Gorham LLC Agreement, dated as of May 13, 2011.

94.    Section 1.1 of the Gorham LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

95.    "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

96.    "All of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages equal one hundred percent (100%) of the aggregate Common Percentages of all Common Members at such time."

97.    "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage' on" Exhibit A, appended to the Gorham LLC Agreement.

35

98.    Exhibit A to the Gorham LLC Agreement listed Zohar III's

Common Percentage as 100 percent.

99.    "All of the Series A Preferred Members" means "at any

particular time, Series A Preferred  Members whose aggregate Series A Preferred

Percentages equal one hundred percent (100%) of the aggregate Series A Preferred

Percentages of all Series A Preferred Members at such time."

100.   "Series A Preferred Percentage" means "with respect to each

Series A Preferred Member, the percentage listed as such Series A Preferred

Member's 'Series A Preferred Percentage' on" Exhibit A, appended to the Gorham

LLC Agreement.

101.   Exhibit A to the Gorham LLC Agreement listed Zohar III's

Series A Preferred Percentage as 100 percent.

102.   Section 5.9 of the Gorham LLC Agreement states, "The

Common Members, by vote of All of the Common Members, may, at any time and

with or without cause, remove and replace the Manager."

103.   Section 11.1 of the Gorham LLC Agreement is an integration

clause, which states:

> This Agreement, together with <u>Exhibit A</u> hereto,
> contains the entire understanding between the
> parties and supersedes any prior understanding and
> agreements between them regarding the subject
> matter hereof.   There are  no  agreements,
> arrangements or  understandings,  oral  or  written,

36

between and among the parties hereto relating to
the subject matter of this Agreement that are not
set forth or expressly referred to herein.

104.    Section 11.3 permits the Gorham LLC Agreement to be

"amended or modified from time to time only upon approval by (a) the Common

Members, by vote of All of the Common Members, and (b) the Series A Preferred

Members, by vote of All of the Series A Preferred Members."

## 2.    2015 Amendment To The Gorham LLC Agreement

105.    On September 22, 2015, the same date as other 2015

amendments and facing the same existential threats to her and Patriarch's roles

with Zohar Funds, Ms. Tilton caused Zohar III, as sole Common Member and

Series A Preferred Member of Gorham, to execute "Amendment No. 1 to Limited

Liability Company Agreement of Gorham Paper & Tissue, LLC" ("Gorham

Amendment One").  Gorham Amendment One sought to ensure Ms. Tilton would

remain Manager of Gorham indefinitely by requiring her consent for her removal.

No consideration supported Gorham Amendment One.

106.    Gorham Amendment One is an exact replica of the other 2015

amendments.  The first recital claims that the same "original intent" of Zohar III

was to give non-party Patriarch affiliates who are not Common Members of

Gorham—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II,

Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in

the Manager, directions to the Manager, dissolution of the Company and other actions." Like the other 2015 amendments, Gorham Amendment One attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to Zohar III to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

107.   In fact, no such original intent existed. Rather, Gorham Amendment One was a brazen attempt by Ms. Tilton to entrench herself as Manager of Gorham by conditioning her removal on her own consent.

108.   Through Gorham Amendment One, Ms. Tilton caused Zohar III to forfeit its right to remove the Manager. Moreover, Zohar III received nothing in exchange for forfeiting this right.

E.   *Jewel of Jane LLC*

**1.   Operative 2009 Jewel Of Jane LLC Agreement**

109.   Zohar II owns 100 percent of the outstanding Common Interests and Series A Preferred Interests of Jewel of Jane. As a result, Zohar II is the sole Common Member and Series A Preferred Member of Jewel of Jane. Zohar II executed the Jewel of Jane LLC Agreement, dated as of December 24, 2009.

110.   Section 1.1 of the Jewel of Jane LLC Agreement defines terms used therein. "Manager" means "the Person appointed by the Common Members

to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn

Tilton."

111.   "Common Members" means "those Members from time to time

holding Common Interests, solely in their capacity as holders of the Common

Interests and not in any other capacity."

112.   "Majority-in-Interest of the Common Members" means "at any

particular time, Common Members whose aggregate Common Percentages exceed

fifty percent (50%) of the aggregate Common Percentages of all Common

Members at such time."

113.   "Common Percentage" means "with respect to each Common

Member, the percentage listed as such Common Member's 'Common Percentage'"

on Exhibit A, appended to the Jewel of Jane LLC Agreement.

114.   Exhibit A to the Jewel of Jane LLC Agreement lists Zohar II's

Common Percentage as 100 percent.

115.   "Series A Preferred Members" means "those Members from

time to time holding Series A Preferred Interests, solely in their capacity as holders

of Series A Preferred Interests and not in any other capacity."

116.   "Series A Preferred Percentage" means "for each Series A

Preferred Member, the percentage listed as such Series A Preferred Member's

'Series A Preferred Percentage'" on the Exhibit A, appended to the Jewel of Jane

LLC Agreement.

117.   Exhibit A to the Jewel of Jane LLC Agreement lists Zohar II's

Series A Preferred Percentage as 100 percent.

118.   Section 5.8 of the Jewel of Jane LLC Agreement states, "The

Common Members, upon a vote of a Majority-in-Interest of the Common

Members, may, at any time and with or without cause, remove and replace the

Manager."

119.   Section 11.1 of the Jewel of Jane LLC Agreement is an

integration clause, which states:

> This Agreement, together with Exhibit A hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.   There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

120.   Section 11.3 permits the Jewel of Jane LLC Agreement to be

"amended or modified from time to time only with the consent of a Majority-in-

Interest of the Common Members" so long as the amendments do not "materially

and adversely alter[] the powers, preferences or special rights" provided to the

Series A Preferred Members or any other Membership Interests.

### 2.   2015 Amendment To The Jewel Of Jane LLC Agreement

121.   On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar II, as Common Member and Series Preferred A Member of Jewel of Jane, to execute "Amendment No. 2 to Limited Liability Company Agreement of Jewel of Jane, LLC" ("Jewel of Jane Amendment Two").[8]   Jewel of Jane Amendment Two sought to ensure Ms. Tilton would remain Manager of Jewel of Jane indefinitely by requiring her consent for her removal.   No consideration supported Jewel of Jane Amendment Two.

122.   Jewel of Jane Amendment Two is an exact replica of the other 2015 amendments.   The first recital claims that the same "original intent" of Zohar II:  that it wanted to give a non-party Patriarch affiliate—the Octaluna Class B Member related to Zohar II (*i.e.*, Patriarch Partners XIV, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."

---

[8]   An error exists in the numbering of amendments to the Jewel of Jane LLC Agreement.   An amendment titled "Amendment No. 2 to Limited Liability Company Agreement of Jewel of Jane LLC," dated May 31, 2011, extends the Redemption Date of the Series A Preferred Interests from December 24, 2014, to December 31, 2016.   A different amendment titled "Amendment No. 2 to Limited Liability Company Agreement of Jewel of Jane LLC," dated September 22, 2015, purports to transfer Zohar II's membership interests to the Octaluna Class B Members.   It is the amendment executed on September 22, 2015, that is the subject of this action.

123.   Like the other 2015 amendments, Jewel of Jane Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to Zohar II to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

124.   In fact, no such original intent existed.  Rather, Jewel of Jane Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of Jewel of Jane by conditioning her removal on her own consent.

125.   Through Jewel of Jane Amendment Two, Ms. Tilton caused Zohar II to purport to forfeit its right to remove the Manager.  Moreover, Zohar II received nothing in exchange for forfeiting this right.

F.     *LVD Acquisition, LLC (doing business as Oasis International)*

1.     **Operative 2009 LVD/Oasis LLC Agreement**

126.   The Zohar Funds own 100 percent of the outstanding Common Interests of LVD/Oasis.  Zohar I owns 14.69 percent, Zohar II owns 62.36 percent, and Zohar III owns 22.95 percent of the Common Interests of LVD/Oasis.  The Zohar Funds are the only Common Members of LVD/Oasis.  The Zohar Funds executed the LVD/Oasis LLC Agreement, dated as of March 31, 2009.

127.   Section 1.1 of the LVD/Oasis LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members

to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

128.   "Common Members" means "those Members holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

129.   "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

130.   "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the LVD/Oasis LLC Agreement.

131.   Exhibit A to the LVD/Oasis LLC Agreement lists Zohar I's Common Percentage as 14.69 percent, Zohar II's Common Percentage as 62.36 percent, and Zohar III's Common Percentage as 22.95 percent.

132.   Section 5.8 of the LVD/Oasis LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

133.   Section 11.1 of the LVD/Oasis LLC Agreement is an

integration clause, which states:

> This Agreement, together with its Exhibits, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.   There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

134.   Section 11.3 permits the LVD/Oasis LLC Agreement to be

"amended or modified from time to time only by the Members."

## 2.     2015 Amendment To The LVD/Oasis LLC Agreement

135.   On September 22, 2015, the same date as the other 2015

amendments and facing the same existential threats to her and Patriarch's roles

with Zohar Funds, Ms. Tilton caused the Zohar Funds, as the only Common

Members of LVD/Oasis, to execute "Amendment No. 2 to Limited Liability

Company Agreement of LVD Acquisition, LLC" ("LVD/Oasis Amendment

Two").   LVD/Oasis Amendment Two sought to ensure Ms. Tilton would remain

Manager of LVD/Oasis indefinitely by requiring her consent for her removal.   No

consideration supported LVD/Oasis Amendment Two.

136.   LVD/Oasis Amendment Two is an exact replica of the other

2015 amendments.   The first recital claims that the same "original intent" of the

44

Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not

Common Members of LVD/Oasis—the Octaluna Class B Members related to all of

the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC,

Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over

changes in the Manager, directions to the Manager, dissolution of the Company

and other actions."

137.   Like the other 2015 amendments, LVD/Oasis Amendment Two

attempts to implement this supposed "original intent" by purporting to require "the

consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to

carry out certain actions, including "remov[ing] or replac[ing] an existing Manager

or appoint[ing] any additional manager" or "amend[ing] this Agreement."

138.   In fact, no such original intent existed.  Rather, LVD/Oasis

Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as

Manager of LVD/Oasis by conditioning her removal on her own consent.

139.   Through LVD/Oasis Amendment Two, Ms. Tilton caused the

Zohar Funds to purport to forfeit their right to remove the Manager.  Moreover, the

Zohar Funds received nothing in exchange for forfeiting this right.

G.    *RM Acquisition, LLC*

    **1.    Operative 2008 RM Operating Agreement**

140.   The Zohar Funds own 100 percent of the outstanding Common Interests and Series A Preferred Interests of RM.  Zohar I owns 17.09050 percent, Zohar II owns 56.96833 percent, and Zohar III owns 25.94118 percent of the Common Interests and Series A Preferred Interests of RM.  The Zohar Funds are the only Common Members and Series A Preferred Members of RM.  The Zohar Funds executed the RM Operating Agreement, dated as of April 29, 2008.

141.   Section 1.1 of the RM Operating Agreement defines terms used therein.  "Manager" means "the Person appointed by the Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

142.   "Common Members" means "those Members holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

143.   "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

144.   "Common Percentage" means "with respect to each Common

Member, the percentage listed as such Common Member's 'Common Percentage'"

on Exhibit A, appended to the RM Operating Agreement.

145.   Exhibit A to the RM Operating Agreement lists Zohar I's

Common Percentage as 17.09050 percent, Zohar II's Common Percentage as

56.96833 percent, and Zohar III's Common Percentage as 25.94118 percent.

146.   "Series A Preferred Members" means "those Members holding

Series A Preferred Interests, solely in their capacity as holders of Series A

Preferred Interests and not in any other capacity."

147.   "Series A Preferred Percentage" means "for each Series A

Preferred Member, the amount listed as such Series A Preferred Member's 'Series

A Preferred Percentage'" on the Exhibit A, appended to the RM Operating

Agreement.

148.   Exhibit A to the RM Operating Agreement lists Zohar I's Series

A Preferred Percentage as 17.09050 percent, Zohar II's Series A Preferred

Percentage as 56.96833 percent, and Zohar III's Series A Preferred Percentage as

25.94118 percent.

149.   Section 5.8 of the RM Operating Agreement states, "The

Common Members, upon a vote of a Majority-in-Interest of the Common

47

Members, may, at any time and with or without cause, terminate the term of office of the Manager."

150.   Section 11.1 of the RM Operating Agreement is an integration clause, which states, "This Agreement constitutes the entire governing regulations of the Company and supersedes all prior governing rules and regulations of the Company, whether oral or written."

151.   Section 11.3 permits the RM Operating Agreement to be "amended or modified from time to time only by the Members."

### 2.   2015 Amendment To The RM Operating Agreement

152.   On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as the only Common Members and Series A Preferred Members of RM, to execute "Amendment No. 4 to First Amended and Restated Limited Liability Company Agreement [sic] of RM Acquisition, LLC" ("RM Amendment Four").  RM Amendment Four sought to ensure Ms. Tilton would remain Manager of RM indefinitely by requiring her consent for her removal.  No consideration supported RM Amendment Four.

153.   RM Amendment Four is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not

Common Members or Series A Preferred Members of RM—the Octaluna Class B

Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC,

Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix

VIII, LLC)—"control over changes in the Manager, directions to the Manager,

dissolution of the Company and other actions."  Like the other 2015 amendments,

RM Amendment Four attempts to implement this supposed "original intent" by

purporting to require "the consent of all [Octaluna] Class B Members" related to

all of the Zohar Funds to carry out certain actions, including "remov[ing] or

replac[ing] an existing Manager or appoint[ing] any additional manager" or

"amend[ing] this Agreement."

154.   In fact, no such original intent existed.  Rather, RM

Amendment Four was a brazen attempt by Ms. Tilton to entrench herself as

Manager of RM by conditioning her removal on her own consent.

155.   Through RM Amendment Four, Ms. Tilton caused the Zohar

Funds to purport to forfeit their right to remove the Manager.  Moreover, the Zohar

Funds received nothing in exchange for forfeiting this right.

H.   *Snelling Holdings, LLC*

**1.   Operative 2007 Snelling Holdings Operating Agreement**

156.   The Zohar Funds own 100 percent of the outstanding

Membership Interests of Snelling Holdings.  Zohar I owns 22.3 percent, Zohar II

owns 63.8 percent, and Zohar III owns 13.9 percent of the Membership Interests of Snelling Holdings.  The Zohar Funds are the only Members of Snelling Holdings. The Zohar Funds executed the Snelling Holdings Operating Agreement, dated as of October 1, 2007.

157.    Section 1.1 of the Snelling Holdings Operating Agreement defines terms used therein.  "Manager" means "the Person or Persons appointed by the Members to serve as a Manager pursuant to Article V below.  The initial Managers shall be Lynn Tilton and Peter Harris."[9]

158.    "Member" means "any Person executing this Agreement as a member as of the date of this Agreement or hereafter admitted to the Company as a member as provided in this Agreement. . . .  The initial Members shall be Zohar I, Zohar II, and Zohar III."

159.    "Majority-in-Interest of the Members" means "at any particular time, Members whose aggregate Percentage Interests exceed fifty percent (50%) of the aggregate Percentage Interests of all Common Members at such time."

160.    "Percentage Interests" means "with respect to each Member, the Percentage Interest listed for such Member set forth adjacent to its name in Exhibit A," appended to the Snelling Holdings Operating Agreement.

---

[9]    Upon information and belief, Ms. Tilton caused herself to be appointed sole Manager by unanimous written consent of the Zohar Funds on June 21, 2012.

161.   Exhibit A to the Snelling Holdings Operating Agreement lists Zohar I's Percentage Interest as 22.3 percent, Zohar II's Percentage Interest as 63.8 percent, and Zohar III's Percentage Interest as 13.9 percent.

162.   Section 5.8 of the Snelling Holdings Operating Agreement states, "The Members, upon a vote of a Majority-in-Interest of the Members, may, at any time and with or without cause, terminate the term of office of all or any of the Manager."

163.   Section 11.1 of the Snelling Holdings Operating Agreement is an integration clause, which states, "This Agreement constitutes the entire governing regulations of the Company and supersedes all prior governing rules and regulations of the Company, whether oral or written."

164.   Section 11.3 permits the Snelling Holdings Operating Agreement to be "amended or modified from time to time only by the Members."

## 2.   2015 Amendment To The Snelling Holdings Operating Agreement

165.   On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as the only Members of Snelling Holdings, to execute "Amendment No. 2 to Limited Liability Company Agreement [sic] of Snelling Holdings, LLC" ("Snelling Holdings Amendment Two").  Snelling Holdings Amendment Two sought to ensure Ms. Tilton would

51

remain Manager of Snelling Holdings indefinitely by requiring her consent for her removal.  No consideration supported Snelling Holdings Amendment Two.

166.   Snelling Holdings Amendment Two is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Members of Snelling Holdings—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  Like the other 2015 amendments, Snelling Holdings Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

167.   In fact, no such original intent existed.  Rather, Snelling Holdings Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of Snelling Holdings by conditioning her removal on her own consent.

168.   Through Snelling Holdings Amendment Two, Ms. Tilton caused the Zohar Funds to purport to forfeit their right to remove the Manager. Moreover, the Zohar Funds received nothing in exchange for forfeiting this right.

I.   *Stila Styles, LLC*

### 1.   Operative 2009 Stila LLC Agreement

169.   Zohar III owns 100 percent of the outstanding Common Interests and Series A Preferred Interests in Stila.  As a result, Zohar III is the sole Common Member and Series A Preferred Member of Stila.  Zohar III executed the Stila LLC Agreement, dated as of April 17, 2009.

170.   Section 1.1 of the Stila LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

171.   "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

172.   "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

173.   "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Stila LLC Agreement.

174.   Exhibit A to the Stila LLC Agreement lists Zohar III's Common Percentage as 100 percent.

175.   "Series A Preferred Members" means "those Members from time to time holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

176.   "Series A Preferred Percentage" means "with respect to each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the Stila LLC Agreement.

177.   Exhibit A to the Stila LLC Agreement lists Zohar III's Series A Preferred Percentage as 100 percent.

178.   Section 5.8 of the Stila LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

179.   Section 11.1 of the Stila LLC Agreement is an integration clause, which states:

> This Agreement, together with <u>Exhibit A</u> hereto, contains the entire understanding between the

54

> parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof. There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

180.   Section 11.3 permits the Stila LLC Agreement to be "amended or modified from time to time only by the Members."

## 2.   2015 Amendment To The Stila LLC Agreement

181.   On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar III, as sole Member of Stila, to execute "Amendment No. 3 to Limited Liability Company Agreement of Stila Styles, LLC" ("Stila Amendment Three").  Stila Amendment Three sought to ensure Ms. Tilton would remain Manager of Stila indefinitely by requiring her consent for her removal.  No consideration supported Stila Amendment Three.

182.   The first recital of Stila Amendment Three claims that the "original intent" of Zohar III was to give non-party Patriarch affiliates who are not Common Members or Series A Preferred Members of Stila—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  To manifest this

55

supposed "original intent," Stila Amendment Three purports to require "the consent of all [Octaluna] Class B Members" related to Zohar III to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

183.   In fact, no such original intent existed.  Rather, Stila Amendment Three was a brazen attempt by Ms. Tilton to entrench herself as Manager of Stila by conditioning her removal on her own consent.

184.   Through Stila Amendment Three, Ms. Tilton caused Zohar III to forfeit its right to remove the Manager.  Moreover, Zohar III received nothing in exchange for forfeiting this right.

J.   *Dura Buyer, LLC*

### 1.   **Operative 2009 Dura Buyer LLC Agreement**

185.   Dura Buyer is owned by Zohar II, Zohar III, and Patriarch affiliate Ark II.  Zohar II owns 52.5 percent of the Common Interests in Dura Buyer, Zohar III owns 25.3 percent of the Common Interests in Dura Buyer, and Ark II owns 22.2 percent of the Common Interests in Dura Buyer.

186.   Upon information and belief, Ark II has no noteholders.  Ms. Tilton owns Ark II outright and she uses Ark II as her personal investment vehicle.

187.   Zohar II, Zohar III, and Ark II executed the Dura Buyer LLC Agreement, dated as of November 10, 2009.

188.   Section 1.1 of the Dura Buyer LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

189.   "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

190.   "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

191.   "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Dura Buyer LLC Agreement.

192.   Exhibit A to the Dura Buyer LLC Agreement lists Zohar II's Common Percentage as 52.49 percent, Zohar III's Common Percentage as 25.29 percent, and Ark II's Common Percentage as 22.22 percent.

193.   Thus, Zohar II alone constitutes a Majority-in-Interest of the Common Members.

194.    Section 5.8 of the Dura Buyer LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

195.    Section 11.1 of the Dura Buyer LLC Agreement is an integration clause, which states:

> This Agreement, together with Exhibit A hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.   There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

196.    Section 11.3 permits the Dura Buyer LLC Agreement to be "amended or modified from time to time only by the Members."

## 2.    2011 Amendment To The Dura Buyer LLC Agreement

197.    Sometime in May 2011, Ms. Tilton caused Zohar II, Zohar III, and Ark II as Common Members of Dura Buyer, to execute "Amendment No. 1 to Limited Liability Company Agreement of Dura Buyer LLC" ("Dura Buyer Amendment One").  No consideration supported Dura Buyer Amendment One.

198.    Dura Buyer Amendment One added a new section 5.17 to Article V of the Denali Acquisition Operating Agreement that required unanimous

consent of the Common Members for certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

199. Through Dura Buyer Amendment One, Zohar II forfeited its right to remove the Manager at any time, with or without cause. Moreover, Zohar II received nothing in exchange for forfeiting this right.

200. Dura Buyer Amendment One is an inequitable self-dealing transaction that Ms. Tilton implemented to entrench herself as Manager of Dura Buyer. Dura Buyer Amendment One is also void for lack of consideration because Zohar II forfeited its right to remove and replace the Manager unilaterally, but received nothing in exchange.

### 3.   2015 Amendment To The Dura Buyer LLC Agreement

201. On September 22, 2015, the same date as other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar II, Zohar III, and Ark II as Common Members of Dura Buyer, to execute "Amendment No. 2 to Limited Liability Company Agreement of Dura Buyer, LLC" ("Dura Buyer Amendment Two"). Dura Buyer Amendment Two sought to ensure Ms. Tilton would remain Manager of Dura Buyer indefinitely by requiring her consent for her removal. No consideration supported Dura Buyer Amendment Two.

202.   Dura Buyer Amendment Two is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of Zohar II, Zohar III, and Ark II:  that they wanted to give non-party Patriarch affiliates who are not Common Members of Dura Buyer—the Octaluna Class B Members related to Zohar II and Zohar III (*i.e.*, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, Phoenix VIII, LLC) and the Member of Ark II (Patriarch Partners II, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."

203.   Like the other 2015 amendments, Dura Buyer Amendment Two attempts to implement this supposed "original intent" by purporting to amend the section added in 2011 by Dura Buyer Amendment One to require "the consent of all [Octaluna] Class B Members/Members" of Zohar II, Zohar III, and Ark II to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

204.   In fact, no such original intent existed.  Rather, Dura Buyer Amendment Two was a further brazen attempt by Ms. Tilton to entrench herself as Manager of Dura Buyer by conditioning her removal on her own consent.

205.   Like Dura Buyer Amendment One, through Dura Buyer Amendment Two, Ms. Tilton caused Zohar II and Zohar III to purport to forfeit

their right to remove Dura Buyer's Manager.  Zohar II and Zohar III received

nothing in exchange for forfeiting this right.

## VII.   Ms. Tilton Engages In Self-Dealing Transactions To Improperly Entrench Her Control Over IMG

206.   The Zohar Funds own all of the outstanding common stock in

IMG.  Zohar I owns 1,016.5 shares or 16.9 percent of outstanding common stock.

Zohar II owns 4,093.00 shares or 68.2 percent of outstanding common stock.

Zohar III owns 890.50 shares or 14.8 percent of outstanding common stock.

207.   Under 8 *Del. C.* § 141(k), "Any director or the entire board of

directors may be removed, with or without cause, by the holders of a majority of

the shares then entitled to vote at an election of directors . . . ."[10]  Zohar II's

ownership of 4,093 shares of IMG stock constitutes a majority of the outstanding

shares of common stock of IMG entitled to vote to remove and elect directors.

208.   On September 21, 2015, the day before Ms. Tilton caused the

Zohar Funds to execute the purported 2015 amendments to the LLC agreements of

the Portfolio LLCs, Ms. Tilton purported to cause the Zohar Funds to execute

irrevocable proxies just like the irrevocable proxies challenged by the Zohar Funds

and tried to this Court in *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No.

12946-VCS (Del. Ch. Ct.).

---

[10]   IMG does not have a classified board or cumulative voting, so neither exception requiring cause for removal listed in 8 *Del. C.* § 141(k) applies.

209.   Specifically, and just like the 2015 amendments to the LLC agreements, the second recital claims that it was the Zohar Funds' "original intent" to give non-party Patriarch affiliates who are not shareholders of IMG—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"the right to vote and act for the" Zohar Funds.

210.   Like the 2015 amendments to the LLC agreements, the IMG irrevocable proxies attempt to implement this supposed "original intent" by purporting to "authorize the [Octaluna Class B Members] to vote for the [Zohar Funds], as the [Zohar Funds'] proxy, at any and all meetings of the stockholders of the Company and, as the [Zohar Funds'] proxy, to consent or dissent without a meeting . . . including but not limited to the following matters:  (i) The election or removal of directors of the Company; (ii) Any amendments to the Company's certificate or articles of incorporation or by-laws . . . ."

211.   In fact, no such original intent existed.  Rather, the IMG irrevocable proxies were a brazen attempt by Ms. Tilton to entrench herself as director of IMG by conditioning her removal on her own consent.

212.   Through the IMG irrevocable proxies, Ms. Tilton caused Zohar II to forfeit its right to remove the director.

213.   The IMG irrevocable proxies are legally invalid because they are not coupled with an interest sufficient to support an irrevocable proxy under Delaware law.  The IMG irrevocable proxies are also equitably invalid because they are the result of a self-dealing transaction designed to entrench herself as IMG's director.

## Causes Of Action

### Count I
(Against Croscill And Lynn Tilton Under 6 *Del. C.* § 18-111)

214.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

215.   Plaintiff Zohar III is the sole Common Member of Croscill. Under the Croscill LLC Agreement, Zohar III could remove Croscill's Manager at any time, with or without cause.

216.   Through Croscill Amendment Four, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Croscill's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

217.   The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under Croscill Amendment Four and it is, therefore, legally invalid.  Croscill Amendment Four is inequitable because it is the product of conflicted, self-dealing transactions by Ms.

63

Tilton designed to entrench herself as the Manager of Croscill at the expense of Zohar III.

218.    Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* § 18-111 that Croscill Amendment Four is invalid, void, and of no force or effect, and that it may remove Croscill's Manager under the provisions of the Croscill LLC Agreement, by vote of a simple majority of Common Members.

219.    Plaintiff Zohar III has no adequate remedy at law.

## <u>Count II</u>
(Against Denali Acquisition And Lynn Tilton Under 6 *Del. C.* § 18-111)

220.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

221.    Plaintiff Zohar III is the sole Member of Denali Acquisition. Under the Denali Acquisition Operating Agreement, Zohar III could remove Denali Acquisition's Manager at any time, with or without cause.

222.    Through Denali Acquisition Amendment Two, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Denali Acquisition's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

223.    The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under Denali Acquisition Amendment Two and it is, therefore, legally invalid.  Denali Acquisition

64

Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Denali Acquisition at the expense of Zohar III.

224.   Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* § 18-111 that Denali Acquisition Amendment Two is invalid, void, and of no force or effect, and that it may remove Denali Acquisition's Manager under the provisions of the Denali Acquisition Operating Agreement, by vote of the Member.

225.   Plaintiff Zohar III has no adequate remedy at law.

### Count III
(Against GAS And Lynn Tilton Under 6 *Del. C.* § 18-111)

226.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

227.   Plaintiffs are the only Common Members of GAS.  Plaintiffs constitute All of the Common Members.  Under the GAS LLC Agreement, Plaintiffs could remove GAS's Manager at any time, with or without cause.

228.   Through GAS Amendment One, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove GAS's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

229.   The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under GAS Amendment, and it is, therefore, legally invalid.  GAS Amendment One is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of GAS at the expense of the Zohar Funds.

230.   Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* § 18-111 that GAS Amendment One is invalid, void, and of no force or effect, and that they may remove GAS's Manager under the provisions of the GAS LLC Agreement, by vote of a All of the Common Members.

231.   Plaintiffs have no adequate remedy at law.

## Count IV
(Against Gorham And Lynn Tilton Under 6 *Del. C.* § 18-111)

232.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

233.   Plaintiff Zohar III is the sole Common Member of Gorham. Zohar III constitutes All of the Common Members.  Under the Gorham LLC Agreement, Plaintiffs could remove Gorham's Manager at any time, with or without cause.

234.   Through Gorham Amendment One, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Gorham's Manager at any time,

66

with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

235. The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under Gorham Amendment One and it is, therefore, legally invalid. Gorham Amendment One is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Gorham at the expense of Zohar III.

236. Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* § 18-111 that Gorham Amendment One is invalid, void, and of no force or effect, and that it may remove Gorham's Manager under the provisions of the Gorham LLC Agreement, by vote of a All of the Common Members.

237. Plaintiff Zohar III has no adequate remedy at law.

**Count V**
(Against Jewel of Jane And Lynn Tilton Under 6 *Del. C.* § 18-111)

238. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

239. Plaintiff Zohar II is the sole Common Member of Jewel of Jane. Under the Jewel of Jane LLC Agreement, Zohar II could remove Jewel of Jane's Manager at any time, with or without cause.

240.    Through Jewel of Jane Amendment Two, Ms. Tilton purported to cause Zohar II to relinquish its right to remove Jewel of Jane's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

241.    The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under Jewel of Jane Amendment Two and it is, therefore, legally invalid.  Jewel of Jane Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Jewel of Jane at the expense of Zohar II.

242.    Plaintiff Zohar II is therefore entitled to a declaration under 6 *Del. C.* § 18-111 that Jewel of Jane Amendment Two is invalid, void, and of no force or effect, and that it may remove Jewel of Jane's Manager under the provisions of the Jewel of Jane LLC Agreement, by vote of a simple majority of Common Members.

243.    Plaintiff Zohar II has no adequate remedy at law.

### Count VI
(Against LVD/Oasis And Lynn Tilton Under 6 *Del. C.* § 18-111)

244.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

68

245.   Plaintiffs are the only Common Members of LVD/Oasis. Under the LVD/Oasis LLC Agreement, Plaintiffs could remove LVD/Oasis's Manager at any time, with or without cause.

246.   Through LVD/Oasis Amendment Two, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove LVD/Oasis's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

247.   The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under LVD/Oasis Amendment Two and it is, therefore, legally invalid.  LVD/Oasis Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of LVD/Oasis at the expense of the Zohar Funds.

248.   Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* § 18-111 that LVD/Oasis Amendment Two is invalid, void, and of no force or effect, and that they may remove LVD/Oasis's Manager under the provisions of the LVD/Oasis LLC Agreement, by vote of a simple majority of Common Members.

249.   Plaintiffs have no adequate remedy at law.

## Count VII
### (Against RM And Lynn Tilton Under 6 *Del. C.* § 18-111)

250.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

251.   Plaintiffs are the only Common Members of RM.  Under the RM Operating Agreement, Plaintiffs could remove RM's Manager at any time, with or without cause.

252.   Through RM Amendment Four, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove RM's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

253.   The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under RM Amendment Four and it is, therefore, legally invalid.  RM Amendment Four is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of RM at the expense of the Zohar Funds.

254.   Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* § 18-111 that RM Amendment Four is invalid, void, and of no force or effect, and that they may remove RM's Manager under the provisions of the RM Operating Agreement, by vote of a simple majority of Common Members.

70

255.    Plaintiffs have no adequate remedy at law.

**Count VIII**
(Against Snelling Holdings And Lynn Tilton Under 6 *Del. C.* § 18-111)

256.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

257.    Plaintiffs are the only Members of Snelling Holdings.  Under the Snelling Holdings Operating Agreement, Plaintiffs could remove Snelling Holdings' Manager at any time, with or without cause.

258.    Through Snelling Holdings Amendment Two, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove Snelling Holdings' Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

259.    The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under Snelling Holdings Amendment Two and it is, therefore, legally invalid.  Snelling Holdings Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Snelling Holdings at the expense of the Zohar Funds.

260.    Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* § 18-111 that Snelling Holdings Amendment Two is invalid, void, and of no force or effect, and that they may remove Snelling Holdings' Manager under the

71

provisions of the Snelling Holdings Operating Agreement, by vote of a simple majority of Members.

261.   Plaintiffs have no adequate remedy at law.

## Count IX
(Against Stila And Lynn Tilton Under 6 *Del. C.* § 18-111)

262.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

263.   Plaintiff Zohar III is the only Common Member of Stila.  Under the Stila LLC Agreement, Zohar III  could remove Stila's Manager at any time, with or without cause.

264.   Through Stila Amendment Three, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Stila's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

265.   The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under Stila Amendment Three and it is, therefore, legally invalid.  Stila Amendment Three is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Stila at the expense of Zohar III.

266.   Zohar III is therefore entitled to a declaration under 6 *Del. C.* § 18-111 that Stila Amendment Three is invalid, void, and of no force or effect,

72

and that it may remove Stila's Manager under the provisions of the Stila LLC

Agreement, by vote of a simple majority of Common Members.

267.   Plaintiff Zohar III has no adequate remedy at law.

## Count X
### (Against Dura Buyer And Lynn Tilton Under 6 *Del. C.* § 18-111)

268.   Plaintiffs repeat and reallege the allegations in each of the

preceding paragraphs as if fully set forth herein.

269.   Plaintiffs Zohar II and Zohar III are Common Members of Dura

Buyer.  Zohar II alone constitutes the Majority-in-Interest of the Common

Members.  Under the Dura Buyer LLC Agreement, Plaintiffs Zohar II and Zohar

III could remove Dura Buyer's Manager at any time, with or without cause.

270.   Through Dura Buyer Amendment One and Dura Buyer

Amendment Two, Ms. Tilton purported to cause Plaintiffs Zohar II and Zohar III

to relinquish their right to remove Dura Buyer's Manager at any time, with or

without cause, and to require the consent of non-Member Patriarch affiliates

owned by Ms. Tilton.

271.   The Zohar Funds received no consideration for the transfer of

their valuable membership rights, including voting rights, under Dura Buyer

Amendment One and Dura Buyer Amendment Two and these amendments are,

therefore, legally invalid.  Dura Buyer Amendment One and Dura Buyer

Amendment Two are inequitable because they are the product of conflicted, self-

73

dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Dura Buyer at the expense of Zohar II and Zohar III.

272.   Plaintiffs Zohar II and Zohar III are therefore entitled to a declaration under 6 *Del. C.* § 18-111 that Dura Buyer Amendment One and Dura Buyer Amendment Two are invalid, void, and of no force or effect, and that they may remove Dura Buyer's Manager under the provisions of the Dura Buyer LLC Agreement, by vote of a simple majority of Common Members.

273.   Plaintiffs Zohar II and Zohar III have no adequate remedy at law.

## Count XI
(Against IMG And Lynn Tilton Under 8 *Del. C.* § 225)

274.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

275.   Plaintiffs Zohar Funds own all of the outstanding common stock of IMG.  Zohar II constitutes the majority of outstanding voting stock in IMG.  Under the 8 *Del. C.* § 141(k), Plaintiff Zohar II could remove IMG's sole director at any time, with or without cause.

276.   Through the IMG irrevocable proxies, Ms. Tilton purported to cause Plaintiffs Zohar Funds to relinquish their right to remove IMG's sole director at any time, with or without cause, and to grant that right to Patriarch affiliates owned by Ms. Tilton.

74

277.   The IMG irrevocable proxies are legally invalid because they purport to be irrevocable but are not coupled with an interest sufficient under Delaware law.  The IMG irrevocable proxies are inequitable because they are the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the sole director of IMG at the expense of the Zohar Funds.

278.   Plaintiffs Zohar Funds are therefore entitled to a declaration under 8 *Del. C.* § 225 that the IMG irrevocable proxies are invalid, void, and of no force or effect, and that they may remove IMG's sole director under 8 *Del. C.* § 225, by vote of "the holders of a majority of the shares then entitled to vote at an election of directors."

279.   Plaintiffs Zohar Funds have no adequate remedy at law.

## Prayer For Relief

280.   WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request an order:

A.   Declaring that Croscill Amendment Four is invalid, void, and of no force or effect, and that Plaintiff Zohar III is therefore entitled to remove and replace Croscill's Manager under the provisions of the Croscill LLC Agreement, by vote of a simple majority of Common Members.

B.   Declaring that Denali Acquisition Amendment Two is invalid, void, and of no force or effect, and that Plaintiff Zohar III is therefore entitled to

remove and replace Denali Acquisition's Manager under the provisions of the Denali Acquisition Operating Agreement, by vote of its Member.

C.      Declaring that GAS Amendment One is invalid, void, and of no force or effect, and that Plaintiffs are therefore entitled to remove and replace GAS's Manager under the provisions of the GAS LLC Agreement, by vote of All of the Common Members.

D.      Declaring that Gorham Amendment One is invalid, void, and of no force or effect, and that Plaintiff Zohar III is therefore entitled to remove and replace Gorham's Manager under the provisions of the Gorham LLC Agreement, by vote of All of the Common Members.

E.      Declaring that Jewel of Jane Amendment Two is invalid, void, and of no force or effect, and that Plaintiff Zohar II is therefore entitled to remove and replace Jewel of Jane's Manager under the provisions of the Jewel of Jane LLC Agreement, by vote of a simple majority of Common Members.

F.      Declaring that LVD/Oasis Amendment Two is invalid, void, and of no force or effect, and that Plaintiffs are therefore entitled to remove and replace LVD/Oasis's Manager under the provisions of the LVD/Oasis LLC Agreement, by vote of a simple majority of Common Members.

G.      Declaring that RM Amendment Four is invalid, void, and of no force or effect, and that Plaintiffs are therefore entitled to remove and replace

RM's Manager under the provisions of the RM Operating Agreement, by vote of a simple majority of Common Members.

      H.      Declaring that Snelling Holdings Amendment Two is invalid, void, and of no force or effect, and that Plaintiffs are therefore entitled to remove and replace Snelling Holdings' Manager under the provisions of the Snelling Holdings Operating Agreement, by vote of a simple majority of Members.

      I.      Declaring that Stila Amendment Three is invalid, void, and of no force or effect, and that Plaintiff Zohar III is therefore entitled to remove and replace Stila's Manager under the provisions of the Stila LLC Agreement, by vote of a simple majority of Common Members.

      J.      Declaring that Dura Buyer Amendment One and Dura Buyer Amendment Two are invalid, void, and of no force or effect, and that Plaintiffs Zohar II and III are therefore entitled to remove and replace Dura Buyer's Manager under the provisions of the Dura Buyer LLC Agreement, by vote of a simple majority of Common Members.

      K.      Declaring that the IMG irrevocable proxies are invalid, void, and of no force or effect, and that Plaintiffs Zohar Funds are therefore entitled to remove and replace IMG's sole director under the provisions of the Delaware General Corporate Law, by vote of a "majority of the share then entitled to vote at an election of directors."

L.    Awarding to Plaintiffs their costs, including attorney's fees, incurred in bring this action; and

M.    Granting such other and further relief as this Court may deem appropriate.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


/s/ Kenneth J. Nachbar

OF COUNSEL :

QUINN EMANUEL
URQUHART &
SULLIVAN, LLP
Michael B. Carlinsky
Jonathan E. Pickhardt
Ellison Ward Merkel
Blair Adams
51 Madison Avenue, 22nd
Floor
New York, NY 10010

Kenneth J. Nachbar (#2067)
Megan Ward Cascio (#3785)
Lauren K. Neal (#5940)
Thomas P. Will (#6086)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200


*Attorneys for Plaintiffs*

November 14, 2017

**EFiled:  Nov 14 2017 06:21PM EST**
**Transaction ID 61360625**
**Case No. 2017-0816-**

# EXHIBIT A

## Table 1

Summary Of Portfolio LLC Ownership And Relevant Removal Provisions

| | Portfolio LLC | Membership Interest Percentage | | | | 2011 Amend. No. | 2015 Amend. No. | Class Initially Permitted To Remove Manager | Initial Percentage Needed To Remove Manager |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | Zohar I | Zohar II | Zohar III | Ark II | | | | |
| 1 | Croscill | | | 100 | | 1 | 4 | Common Members | Majority |
| 2 | Denali Acquisition | | | 100 | | 1 | 2 | Member | N/A |
| 3 | Dura Buyer | | 52.5 | 25.3 | 22.2 | 1 | 2 | Common Members | Majority |
| 4 | GAS | 18.760 | 49.083 | 32.157 | | N/A | 1 | Common Members | All |
| 5 | Gorham | | | 100 | | N/A | 1 | Common Members | All |
| 6 | Jewel of Jane | | 100 | | | 1 | 2 | Common Members | Majority |
| 7 | LVD/Oasis | 14.69 | 62.36 | 22.95 | | 1 | 2 | Common Members | Majority |
| 8 | RM | 17.1 | 57 | 25.9 | | 1 | 4 | Common Members | Majority |
| 9 | Snelling Holdings | 22.3 | 63.8 | 13.9 | | 1 | 2 | Members | Majority |
| 10 | Stila | | | 100 | | 1 | 3 | Common Members | Majority |

## Table 2

Summary Of The Zohar Funds' Ownership In IMG Holdings, Inc.

| | Corporation Name | Stock Ownership Percentage | | |
| --- | --- | --- | --- | --- |
| | | Zohar I | Zohar II | Zohar III |
| 11 | IMG | 16.9 | 68.2 | 14.8 |

T-1

**EFiled:  Nov 14 2017 06:21PM EST**
**Transaction ID 61360625**
**Case No. 2017-0816-**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, | |
| Plaintiffs, | |
| v. | |
| CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, | C.A. No. _____ |
| Defendants. | |

## MOTION FOR EXPEDITED PROCEEDINGS

Plaintiffs Zohar CDO 2003-1, Limited ("Zohar I"), Zohar II 2005-1, Limited ("Zohar II") and Zohar III, Limited ("Zohar III", and with Zohar I and Zohar II, the "Plaintiffs" or the "Zohar Funds"), by and through their undersigned counsel, hereby move the Court pursuant to Court of Chancery Rules 4, 6, 12, 26, 30 and 34 for entry of an order in the form enclosed, expediting the proceedings in this matter and providing for (i) expedited discovery, and (ii) a prompt hearing on the merits of Plaintiffs' claims.

## BACKGROUND

1.      As set forth more fully in the Verified Complaint (the "Complaint") filed herewith, Plaintiffs bring this action pursuant to 6 *Del. C.* § 18-111 to resolve ongoing disputes regarding their ownership and control over the following Defendants, each of which is a Delaware limited liability company ("LLC"):

> Croscill Home LLC ("Croscill")
> Denali Acquisition LLC ("Denali Acquisition")
> Dura Buyer, LLC ("Dura Buyer")
> Global Automotive Systems, LLC ("GAS")
> Gorham Paper and Tissue, LLC ("Gorham")
> Jewel of Jane LLC ("Jewel of Jane")
> LVD Acquisition, LLC (doing business as Oasis International) ("LVD/Oasis")
> RM Acquisition, LLC ("RM")
> Snelling Holdings, LLC ("Snelling Holdings")
> Stila Styles, LLC ("Stila,")

The above companies are referred to collectively as the "Portfolio LLCs". Plaintiffs also bring this action pursuant to 8 *Del. C.* § 225 to resolve ongoing disputes regarding their ownership of Defendant IMG Holdings, Inc. ("IMG"), which is a Delaware corporation.

2.    The Zohar Funds own, collectively or individually, all of the outstanding membership interests, including voting interests, of nine of the ten Portfolio LLCs:  Croscill, Denali Acquisition, GAS, Gorham, Jewel of Jane, LVD/Oasis, RM, Snelling Holdings, and Stila.  For each of these Portfolio LLCs, one or more of the Zohar Funds are the only members named under their governing limited liability company agreements or operating agreement ("LLC agreements").  The Zohar Funds also own the majority of membership interests, including voting interests, in Dura Buyer, with an affiliate of Defendant Lynn Tilton, Ark II CLO 2001-1, Ltd. ("Ark II"),[1] holding a minority membership interest in Dura Buyer.  The Zohar Funds own all of the outstanding common stock of IMG.

3.    Ms. Tilton currently acts as the sole manager of each Portfolio LLC and as the sole director of IMG.  She has contended that, notwithstanding that

---

[1]    Upon information and belief, Ark II has no noteholders.  Ms. Tilton owns Ark II outright and she uses Ark II as her personal investment vehicle.

the Zohar Funds are exclusive or majority holders of the membership interests in the Portfolio LLCs and sole owners of the outstanding common stock of IMG, they are powerless to remove Ms. Tilton and appoint a new manager or director. The Zohar Funds dispute Ms. Tilton's position and bring their Complaint for entry of an order declaring that they may remove Ms. Tilton and replace her with a new manager or managers for each of the Portfolio LLCs and a new director or directors for IMG.

4.      Ms. Tilton's contention that the Zohar Funds may not remove her as manager for the Portfolio LLCs is predicated upon amendments to their governing LLC agreements that she caused to be drafted and executed that purport to transfer certain of the Zohar Funds' membership rights, including voting rights, to entities that are wholly-controlled by Ms. Tilton and which are not even members of the Portfolio LLCs. These amendments are nearly identical to the irrevocable proxies in respect of FSAR Holdings, Inc., Glenoit Universal Ltd., and UI Acquisition Holding Co. that were challenged by the Zohar Funds and tried to this Court in *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch.) ("*FSAR Holdings*"), purporting to transfer control associated with the Zohar Funds' equity ownership to Tilton-controlled entities for no consideration.

The operative amendments were executed (with one exception)[2] on September 22, 2015, on the eve of Tilton's expected removal as Collateral Manager and one day after the FSAR Holdings, Inc., Glenoit Universal Ltd. and UI Acquisition Holding Co. proxies.

5.      As was the case for the irrevocable proxies in that action, the amendments at issue in this action are unenforceable as they constitute blatant acts of inequitable self-dealing by Ms. Tilton.  They are also unenforceable for the additional reason that the amendments' one-way transfer of valuable rights from the Zohar Funds to Ms. Tilton's entities provided absolutely nothing of value to the Zohar Funds in return and thus fail for lack of consideration.

6.      Ms. Tilton's contention that the Zohar Funds may not remove her as director of IMG arises from purported irrevocable proxies that are identical to those challenged by the Zohar Funds and tried before this Court in *FSAR Holdings*, and were executed the same day as the proxies there in issue.  The irrevocable proxies related to IMG are unenforceable here for the same reasons as in *FSAR Holdings*; they are blatant acts of inequitable self-dealing by Ms. Tilton that purport to irrevocably transfer, for a term of twenty years, the voting rights of

---

[2]     The dispute over Dura Buyer, LLC implicates an earlier amendment replacing the majority voting requirements of its original LLC agreement with a unanimous voting requirement.

the Zohar Funds to entities she controls.  The IMG irrevocable proxies are also invalid because they were not properly coupled with an interest.

7.     Accordingly, the Zohar Funds seek an order declaring that, consistent with the original governing agreement for each Portfolio LLC, as exclusive (or, for Dura Buyer, majority) holder of the membership interests of each Portfolio LLC, the Zohar Funds may remove and replace the manager for each Portfolio LLC at any time, with or without cause.  The Zohar Funds also seek an order declaring the purported LLC amendments and irrevocable proxies to be invalid and unenforceable, and that the Zohar Funds may exercise their voting power as owners of all of IMG's outstanding common stock to remove and replace IMG's director.

8.     Finally, there is now no doubt that an actual controversy exists between the parties, as yesterday Ms. Tilton filed lawsuits concerning three of the Portfolio LLCs at issue – Dura Buyer, GAS and Stila – claiming that she is the sole owner of, and has the right to control, those entities, and premising her claims on theories nearly identical to those she asserted in the *FSAR Holdings* matter.[3]

---

[3]     Yesterday, Tilton filed suits in three separate state courts (Michigan, California and Arizona) concerning four Portfolio Companies (three of which are Delaware entities that are the subject of Plaintiffs' Complaint). Tilton's filings raise the same ownership claims that were tried before the Court, but do not even mention the existence of this lawsuit.  Tilton's actions are a transparent attempt to evade the import of this Court's upcoming ruling by presenting the exact same arguments tried before this court to other

## ARGUMENT

9.      "Delaware courts are always receptive to expediting any type of litigation in the interests of affording justice to the parties." *Box v. Box*, 697 A.2d 395, 399 (Del. 1997).  As this Court has observed, it "follows a tradition of action 'with a certain solicitude towards . . . plaintiffs in this procedural setting and thus has followed the practice of erring on the side of expedited discovery." *Cnty. of York Emps. Ret. Plan v. Merrill Lynch & Co.*, 2008 WL 4824053, at *9 (Del. Ch. Oct. 28, 2008).

10.      The Court will grant expedited proceedings if the plaintiff shows good cause, which can be demonstrated by showing:  (1) a "sufficiently colorable claim" and (2) "a sufficient possibility of threatened irreparable injury." *Banet v. Fonds de Reg. et de Controle Café Cacao*, 2008 WL 4951054, at *1 (Del. Ch. Nov. 12, 2008) (citing *Madison Real Estae v. Geno One Fin. Place L.P.*, 2006 WL 456779, at *2 (Del. Ch. Nov. 15, 1994)).  Granting a motion to expedite is particularly appropriate where, as here, there are credible allegations that directors' actions are wrongfully impeding the right of stockholders or members to cast a meaningful vote.  *See, e.g., Telecom-SNI Investors, LLC v. Sorrento Networks,*

---

courts less familiar with the factual record developed in the case already tried before Your Honor.  Tilton's plan is not only abusive of judicial process and resources, but also fundamentally flawed from the outset because the cases purport to name the Zohar Funds as defendants despite being brought in courts that lack personal jurisdiction over the Zohar Funds.

*Inc.*, 2002 WL 1732423, at *14 (Del. Ch. July 15, 2002).  Where (as here) issues of corporate control are implicated, Section 225 actions "have routinely been accorded accelerated treatment."  Wolfe and Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery*, § 8.08(a) at 8-189-190 (2016).  The same is true for actions brought pursuant to 6 *Del. C.* §§ 18-110 and 18-111.  *See, e.g.*, *Ensing v. Ensing*, 2017 WL 880884, at *1, *4 (Del. Ch. Mar. 6, 2017) (referencing in post-trial memorandum opinion that the Court had granted the plaintiff's motion to expedite action brought pursuant to 6 *Del. C.* §§ 18-110 and 18-111).

### A.   Plaintiffs' Claims Are Colorable.

11.   In determining whether a plaintiff has pled a colorable claim, the Court accepts the allegations of the complaint as true, and "is not required or able . . . to judge the merits or even the legal sufficiency of [plaintiff's] pleadings." *Giammargo v. Snapple Beverage Corp.*, 1994 WL 672698, at *2 (Del. Ch. Nov. 15, 1994).  Colorability "simply implies a non-frivolous set of issues, [and thus] is even lower that the 'conceivability' standard applied on a motion to dismiss." *In re BioClinica, Inc. S'holder Litig.*, 2013 WL 5631233, at *1 n.1 (Del. Ch. Oct. 16, 2013).

12.   Plaintiffs have established more than colorable claims.  The Complaint alleges that the Zohar Funds are exclusive or majority holders of the

membership interests in the Portfolio LLCs, and, prior to Tilton's inequitable purported amendments to the Portfolio Companies' LLC or operating agreements, had the right to remove and replace Ms. Tilton under those agreements.   Under Delaware law, "[t]he principles governing contract interpretation are well settled." *Northwestern Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996).   "Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning."   *Id.* (citation omitted).   "In the absence of ambiguity, there is no room for interpretation or a search for the intent of the parties."   *Myers v. Myers*, 408 A.2d 279, 280 (Del. 1979).   Here, the contractual language clearly and unambiguously provided the Zohar Funds with the right to remove Ms. Tilton and replace her with a new manager or managers for each of the Portfolio LLCs.   Tilton's purported amendments to the contracts when she anticipated being removed as collateral manager were clearly inequitable and should be disregarded.

13.     Moreover, the Complaint alleges that the Zohar Funds are the sole owners of the outstanding common stock of IMG, and that, under the 8 *Del. C.* § 141(k) and IMG's unambiguous governing documents, Plaintiff Zohar II could remove IMG's sole director at any time, with or without cause.   *See supra* ¶¶ 4-6; *see also Rubicl v. Sec. Instrument Corp.*, 766 A.2d 15, 18 ("If the statute is unambiguous, there is no room for interpretation, and the plain meaning of the

words controls.") (citation omitted).   The Complaint further alleges that the IMG

irrevocable proxies are legally invalid because they are not coupled with an interest

sufficient to support an irrevocable proxy under Delaware law, and they are also

equitably invalid because they are the result of a self-dealing transaction designed

to entrench herself as IMG's director.

      B.     Plaintiffs Have Demonstrated a Sufficient Possibility of
           Threatened Irreparable Injury.

14.    Plaintiffs face imminent irreparable injury that warrants

expedited proceedings.   Irreparable harm generally refers to "harm for which there

can be no remedy at law." *AM Gen. Holdings LLC v. Renco Grp., Inc*., 2012 WL

6681994, at *4 (Del. Ch. Dec. 21, 2012).   A remedy at law is insufficient where it

will not provide the plaintiff "full, fair, and complete relief."   *Trilogy Portfolio

Co., LLC v. Brookfield Real Estate Fin. Partners, LLC*, 2012 WL 120201, at *6

(Del. Ch. Jan. 13, 2012).   Irreparable harm can occur where it would take

considerable effort to later reverse the effects of the challenged action.   *See Flight

Options Intern., Inc. v. Flight Options, LLC*, 2005 WL 6799224, at *10 (Del. Ch.

July 11, 2005).

15.    As an initial matter, actions implicating corporate control are

routinely expedited due to the irreparable harm as a result off the uncertainty of the

composition of the board.   *See e.g.*, *Elite Horse Investments Ltd. v. T3 Motion, Inc*.,

C.A. No. 10550-CB, Tr. at 75 (Del. Ch. Jan. 23, 2015) (finding that the uncertainty

of the composition of a company's board impacting the operation of the company is "plainly irreparable harm"); *Salamone v. Gorman*, 2014 WL 3905598, at *2 (Del. Ch. July 31, 2014) ("[The Company] and its shareholders would be irreparably harmed by the uncertainty concerning the composition of its legitimate board of directors."); *Pharmalytica Servs., LLC v. Agno Pharm., LLC*, 2008 WL 2721742, at *3 (Del. Ch. July 9, 2008) (finding irreparable harm in case brought pursuant to "6 *Del. C.* § 18-110, the limited liability company companion to 8 *Del. C.* § 225 governing corporations"); *In re H.F. Ahmanson & Co. v. Great W. Fin. Corp.*, 1997 WL 225696, at *3 (Del. Ch. Apr. 25, 1997) (irreparable harm "encompasses harm to the corporation's governance process"); *Bossier v. Connell*, 1986 WL11534, at *2 (Del. Ch. Oct. 7, 1986) (noting that "the purpose of 8 *Del. C.* § 225 is to grant a quick method of review of the corporate election process in order to prevent a corporation from being immobilized by controversies as to who are its proper officers or directors"). Here, absent intervention by the Court, the Defendant entities, and their members and stockholders, including Plaintiffs, will suffer irreparable harm as a matter of law due to the uncertainty of who constitutes the managers or directors of the Defendant entities.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Expedited Proceedings and provide for an expedited trial on the merits of Plaintiffs' claims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Kenneth J. Nachbar*
Kenneth J. Nachbar (#2067)
Megan Ward Cascio (#3785)
Lauren Neal Bennett (#5940)
Thomas P. Will (#6086)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
 *Attorneys for Plaintiffs*

Words: 2,349

November 14, 2017

**EFiled:  Nov 14 2017 06:21PM EST**
**Transaction ID 61360625**
**Case No. 2017-0816-**

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,<br><br>               Plaintiffs,<br><br>   v.<br><br>CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,<br><br>               Defendants. | C.A. No. _____ |

**[PROPOSED] ORDER GRANTING**
**MOTION FOR EXPEDITED PROCEEDINGS**

WHEREAS, the Court having considered Plaintiffs' Motion for Expedited Proceedings (the "Motion"), and for good cause having been shown;

IT IS ORDERED, this __ day of _____, 2017, that:

1.      Plaintiffs' Motion is GRANTED;

2.      Defendants shall file their Answer(s) to the Verified Complaint on _____ __, 2017;

3.      The parties are granted leave to engage in expedited discovery;

4.      A final trial shall commence on _____ __, 2018 at 9:30 a.m.; and

5.      The parties shall act in good faith to negotiate the schedule for the remaining activities in this action.

_____
[Vice] Chancellor

EFiled: Nov 14 2017 06:21PM EST
Transaction ID 61360625
Case No. 2017-0816-

SUPPLEMENTAL INFORMATION PURSUANT TO RULE 3(A)
OF THE RULES OF THE COURT OF CHANCERY

The information contained herein is for the use by the Court for statistical and administrative purposes only.  Nothing stated herein shall be deemed an admission by or binding upon any party.

1.  Caption of Case: Zohar CDO 2003-1, Limited, Zohar II 2005-1 Limited and Zohar III, Limited v. Croscill Home LLC f/k/a Croscill Acquisition, LLC, Denali Acquisition LLC, Dura Buyer, LLC, Global Automotive Systems, LLC, Gorham Paper and Tissue, LLC, IMG Holdings, Inc., Jewel of Jane LLC, LVD Acquisition, LLC, d/b/a Oasis International, RM Acquisition LLC, Snelling Holdings, LLC, Stila Styles, LLC and Lynn Tilton

2.  Date Filed: November 14, 2017

3.  Name and address of counsel for plaintiff(s):
    Kenneth J. Nachbar (#2067)
    Megan Ward Cascio (#3785)
    Lauren Neal Bennett (#5940)
    Thomas P. Will (#6086)
    1201 N. Market Street
    Wilmington, DE  19899-1347

4.  Short statement and nature of claim asserted:  Action under 6 *Del. C.* § 18-111 and 8 *Del. C.* § 225 to resolve ongoing disputes regarding the ownership and control of the defendant entities

5.  Substantive field of law involved (check one):

| | | |
|---|---|---|
| ___Administrative law | ___ Labor law | ___ Trusts, Wills and Estates |
| X  Commercial law | ___ Real Property | ___ Consent trust petitions |
| ___Constitutional law | ___ 348 Deed Restriction | ___ Partition |
| ___Corporation law | ___ Zoning | ___ Rapid Arbitration (Rules 96, 97) |
| ___Trade secrets/trade mark/or other intellectual property | | ___ Other |

6.  Related cases, including any Register of Wills matters (this requires copies of all documents in this matter to be filed with the Register of Wills):
    *Zohar CDO 2003-1, LLC, et al. v. Patriarch Partners, LLC, et al.*, C.A. No. 12247-VCS
    *Zohar II 2005-1, Limited, et al. v. FSAR Holdings, Inc., et al.*, C.A. No. 12946-VCS

7.  Basis of court's jurisdiction (including the citation of any statute(s) conferring jurisdiction):
    6 *Del. C.* § 18-111; 8 *Del. C.* § 225; 10 *Del. C.* § 6501

8.  If the complaint seeks preliminary equitable relief, state the specific preliminary relief sought.
    N/A

9.  If the complaint seeks a TRO, summary proceedings, a Preliminary Injunction, or Expedited Proceedings, check here X.  (If #9 is checked, a Motion to Expedite <u>must</u> accompany the transaction.)

10. If the complaint is one that in the opinion of counsel should not be assigned to a Master in the first instance, check here and attach a statement of good cause. X

*/s/ Lauren Neal Bennett*
Lauren Neal Bennett (#5940)

## STATEMENT OF GOOD CAUSE

The undersigned counsel for Plaintiffs Zohar CDO 2003-1, Limited, Zohar II 2005-1, Limited and Zohar III, Limited hereby state that there is good cause why this action should not be assigned to a Master in the first instance.  This is an action pursuant to 6 *Del. C.* § 18-111 and 8 *Del. C.* § 225 to resolve ongoing disputes regarding the ownership and control of the Defendant entities, and Plaintiffs seek expedited relief.  Plaintiffs respectfully submit that the complexity and scope of the issues presented by the action are most appropriately resolved by the Chancellor or a Vice Chancellor.

MORRIS, NICHOLS ARSHT & TUNNELL LLP


*/s/ Lauren Neal Bennett*
Kenneth J. Nachbar (#2067)
Megan Ward Cascio (#3785)
Lauren Neal Bennett (#5940)
Thomas P. Will (#6806)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorneys for Plaintiffs*

November 14, 2017

EFiled:  Nov 14 2017 06:21PM EST
Transaction ID 61360625
Case No. 2017-0816-

# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

(302) 658-9200
(302) 658-3989 FAX

Lauren Neal Bennett
302 351-9370
lbennett@mnat.com

November 14, 2017

## BY E-FILING AND HAND DELIVERY

The Honorable Andre G. Bouchard
Chancellor
Court of Chancery
500 North King Street
Wilmington, DE 19801

RE:     *Zohar CDO 2003-1, Ltd, et al. v. Croscill Home LLC, f/k/a Croscill
Acquisition, LLC, et al.*, C.A. No. _____

Dear Chancellor Bouchard:

We represent Plaintiffs Zohar CDO 2003-1, Limited, Zohar II 2005-1 Limited and Zohar III, Limited who today commenced the above-referenced action and filed a Motion for Expedited Proceedings.  Copies of these filings are enclosed.  We respectfully request that the Court assign this action at its earliest convenience so that Plaintiffs' motion may be heard.

If Your Honor has any questions, counsel are available at the Court's convenience.

The Honorable Andre G. Bouchard
November 14, 2017
Page 2

Respectfully,

*/s/ Lauren Neal Bennett*

Lauren Neal Bennett (#5940)

Words: 70

Enclosures
cc:     Register in Chancery (by e-filing)

EFiled:  Nov 14 2017 06:21PM EST
Transaction ID 61360625
Case No. 2017-0816-

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, | |
| Plaintiffs, | |
| v. | |
| CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, | C.A. No. _____ |
| Defendants. | |

STATE OF NEW YORK  )
                   )   SS:
COUNTY OF NEW YORK )

## **VERIFICATION**

I, Elizabeth LaPuma, having been duly sworn, do hereby depose and say that I am a Managing Director of Alvarez & Marsal Zohar Management, LLC ("A&M Zohar Management"), the collateral manager for plaintiff Zohar II 2005-1 Limited in this lawsuit; that I have authority to act on behalf of A&M Zohar Management which, in turn, has authority to act on behalf of Zohar II 2005-1 Limited in this matter; and that I have reviewed the foregoing Verified Complaint and that the statement set forth therein are, to the best of my knowledge, information and belief, true and correct.

_Elizabeth A. LaPuma_
Elizabeth LaPuma

SWORN TO AND SUBSCRIBED before me
this 14 day of November, 2017.

_Brie Cuffe_
Notary Public

BRIE CUFFE
Notary Public - State of New York
No. 01CU6320932
Qualified in Richmond County
My Commission Expires March 9, 2019
Certificate filed in
New York County

2

EFiled:  Nov 14 2017 06:21PM EST
Transaction ID 61360625
Case No. 2017-0816-

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, | |
| Plaintiffs, | |
| v. | |
| CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, | C.A. No. _____ |
| Defendants. | |

STATE OF NEW YORK )
) SS:
COUNTY OF NEW YORK )

## **VERIFICATION**

I, Elizabeth LaPuma, having been duly sworn, do hereby depose and say that I am a Managing Director of Alvarez & Marsal Zohar Management, LLC ("A&M Zohar Management"), the collateral manager for plaintiff Zohar CDO 2003-1, Limited in this lawsuit; that I have authority to act on behalf of A&M Zohar Management which, in turn, has authority to act on behalf of Zohar CDO 2003-1, Limited in this matter; and that I have reviewed the foregoing Verified Complaint and that the statement set forth therein are, to the best of my knowledge, information and belief, true and correct.

_____
Elizabeth LaPuma

SWORN TO AND SUBSCRIBED before me
this __14__ day of November, 2017.

_____
Notary Public

**BRIE CUFFE**
Notary Public - State of New York
No. 01CU6320932
Qualified in Richmond County
My Commission Expires March 9, 2019

Certificate filed in
New York County

2

EFiled:  Nov 14 2017 06:21PM EST
Transaction ID 61360625
Case No. 2017-0816-

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,<br><br>          Plaintiffs,<br><br>  v.<br><br>CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,<br><br>          Defendants. | C.A. No. _____ |

STATE OF NEW YORK      )
                       )    SS:
COUNTY OF NEW YORK     )

## **VERIFICATION**

I, Elizabeth LaPuma, having been duly sworn, do hereby depose and say that I am a Managing Director of Alvarez & Marsal Zohar Management, LLC ("A&M Zohar Management"), the collateral manager for plaintiff Zohar III, Limited in this lawsuit; that I have authority to act on behalf of A&M Zohar Management which, in turn, has authority to act on behalf of Zohar III, Limited in this matter; and that I have reviewed the foregoing Verified Complaint and that the statement set forth therein are, to the best of my knowledge, information and belief, true and correct.

_Elizabeth LaPuma_
Elizabeth LaPuma

SWORN TO AND SUBSCRIBED before me
this 14 day of November, 2017.

_Notary Public_
Notary Public

**BRIE CUFFE**
Notary Public - State of New York
No. 01CU6320932
Qualified in Richmond County
My Commission Expires March 9, 2019

Certificate filed in
New York County

2

EFiled:  Nov 14 2017 06:21PM EST
Transaction ID 61360625
Case No. 2017-0816-

## Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

**Lauren Neal Bennett**
302 351-9370
lbennett@mnat.com

November 14, 2017

## BY E-FILING

Register in Chancery
New Castle County Courthouse
500 North King Street, Suite 1551
Wilmington, DE  19801

RE: *Zohar CDO 2003-1, Ltd., et al. v. Croscill Home LLC, f/k/a Croscill Acquisition, LLC, et al.*, C.A. No. _____

Dear Sir/Madam:

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Croscill Home LLC, f/k/a Croscill Acquisition, LLC ("Croscill") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Register in Chancery
November 14, 2017
Page 2

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Denali Acquisition LLC ("Denali Acquisition") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Dura Buyer, LLC ("Dura Buyer") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Global Automotive Systems, LLC ("GAS") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Register in Chancery
November 14, 2017
Page 3

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Gorham Paper and Tissue, LLC ("Gorham") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Jewel of Jane LLC ("Jewel of Jane") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant LVD Acquisition, LLC, d/b/a Oasis International ("LVD/Oasis") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Register in Chancery
November 14, 2017
Page 4

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant RM Acquisition, LLC ("RM") by delivering those documents to its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Snelling Holdings, LLC ("Snelling Holdings") by delivering those documents to its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Stila Styles, LLC ("Stila") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

Register in Chancery
November 14, 2017
Page 5

Pursuant to Court of Chancery Rule 4 and 8 *Del. C.* §§ 321 and 225, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant IMG Holdings, Inc. ("IMG") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

Pursuant to Court of Chancery Rule 4, 8 *Del. C.* § 225, and 6 *Del. C.* § 18-109, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Lynn Tilton by delivering those documents to the registered agent of Croscill, Denali Acquisition, Dura Buyer, GAS, Gorham, Jewel of Jane, LVD/Oasis, Stila and IMG, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, and by delivering those documents to the registered agent of RM and Snelling Holdings, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

Register in Chancery
November 14, 2017
Page 6

        Forms of summonses will be prepared by Morris, Nichols, Arsht &

Tunnell LLP and presented to the Register in Chancery for signature and seal.

        Respectfully,

        */s/ Lauren Neal Bennett*

        Lauren Neal Bennett (#5940)

        Words: 878

**EFiled: Nov 15 2017 12:56PM EST**
**Transaction ID 61364080**
**Case No. 2017-0816-JRS**
EFiled: Nov 14 2017 06:21PM
Transaction ID 61360625
Case No. 2017-0816-

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

(302) 658-9200
(302) 658-3989 FAX

LAUREN NEAL BENNETT
302 351-9370
lbennett@mnat.com

November 14, 2017

**BY E-FILING**

*11/15/17 - issued (12) Summonses*
*to SPS (12 Copies)*

Register in Chancery
New Castle County Courthouse
500 North King Street, Suite 1551
Wilmington, DE 19801

RE: *Zohar CDO 2003-1, Ltd., et al. v. Croscill Home LLC, f/k/a Croscill Acquisition, LLC, et al.*, C.A. No. _____

Dear Sir/Madam:   *2017-0816 —*

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Croscill Home LLC, f/k/a Croscill Acquisition, LLC ("Croscill") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

Register in Chancery
November 14, 2017
Page 2

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Denali Acquisition LLC ("Denali Acquisition") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Dura Buyer, LLC ("Dura Buyer") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Global Automotive Systems, LLC ("GAS") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

Register in Chancery
November 14, 2017
Page 3

   Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Gorham Paper and Tissue, LLC ("Gorham") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

   Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Jewel of Jane LLC ("Jewel of Jane") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

   Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant LVD Acquisition, LLC, d/b/a Oasis International ("LVD/Oasis") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

Register in Chancery
November 14, 2017
Page 4

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant RM Acquisition, LLC ("RM") by delivering those documents to its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Snelling Holdings, LLC ("Snelling Holdings") by delivering those documents to its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-105, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Stila Styles, LLC ("Stila") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

Register in Chancery
November 14, 2017
Page 5

Pursuant to Court of Chancery Rule 4 and 8 *Del. C.* §§ 321 and 225, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant IMG Holdings, Inc. ("IMG") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

Pursuant to Court of Chancery Rule 4, 8 *Del. C.* § 225, and 6 *Del. C.* § 18-109, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Complaint and related suit papers requiring service in this action upon defendant Lynn Tilton by delivering those documents to the registered agent of Croscill, Denali Acquisition, Dura Buyer, GAS, Gorham, Jewel of Jane, LVD/Oasis, Stila and IMG, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, and by delivering those documents to the registered agent of RM and Snelling Holdings, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

Register in Chancery
November 14, 2017
Page 6

      Forms of summonses will be prepared by Morris, Nichols, Arsht &

Tunnell LLP and presented to the Register in Chancery for signature and seal.

                     Respectfully,

                     */s/ Lauren Neal Bennett*

                     Lauren Neal Bennett (#5940)

                     Words: 878

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company,
and ZOHAR III, LIMITED, a Cayman Island exempted company,

        Plaintiffs,

    v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC,
a Delaware limited liability company, GORHAM PAPER AND
TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS,
INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware
limited liability company, LVD ACQUISITION, LLC, a Delaware
limited liability company doing business as OASIS INTERNATIONAL,
RM ACQUISITION, LLC, a Delaware limited liability company
SNELLING HOLDINGS, LLC, a Delaware limited liability company,
STILA STYLES, LLC, a Delaware limited liability company, and
LYNN TILTON,

        Defendants.

C.A. No. 2017-0816-

*SUMMONS*
*PURSUANT*
*TO 8 DEL. C. § 225*

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

        To Summon the above-named defendant **IMG Holdings, Inc.,** pursuant to 8 *Del. C.* § 225, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

        To serve upon defendant, **IMG Holdings, Inc.,** a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

        In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated:  November 15, 2017

                                   **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted
company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted
company, and ZOHAR III, LIMITED, a Cayman Island exempted
company,

                     Plaintiffs,

      v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a
Delaware limited liability company, GLOBAL AUTOMOTIVE
SYSTEMS, LLC, a Delaware limited liability company, GORHAM
PAPER AND TISSUE, LLC, a Delaware limited liability company,
IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE
LLC, a Delaware limited liability company, LVD ACQUISITION,
LLC, a Delaware limited liability company doing business as OASIS
INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited
liability company SNELLING HOLDINGS, LLC, a Delaware limited
liability company, STILA STYLES, LLC, a Delaware limited liability
company, and LYNN TILTON,

                  Defendants.

C.A. No. 2017-0816-

*SUMMONS
PURSUANT
TO 8 DEL. C. § 225*

Please effectuate service pursuant to 8 *Del. C.* § 225 upon:

**IMG Holdings, Inc.**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorney for Plaintiff*

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company,
and ZOHAR III, LIMITED, a Cayman Island exempted company,

        Plaintiffs,

v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC,
a Delaware limited liability company, GORHAM PAPER AND
TISSUE, LLC, a Delaware limited liability company, IMG
HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a
Delaware limited liability company, LVD ACQUISITION, LLC, a
Delaware limited liability company doing business as OASIS
INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited
liability company SNELLING HOLDINGS, LLC, a Delaware limited
liability company, STILA STYLES, LLC, a Delaware limited liability
company, and LYNN TILTON,

        Defendants.

C.A. No. 2017-0816-

*SUMMONS PURSUANT TO 6 DEL. C. § 18-105*

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

       To Summon the above-named defendant **Jewel of Jane LLC**, pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

       To serve upon defendant, **Jewel of Jane LLC**, a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

       In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated:  November 15, 2017

_____
**Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,

        Plaintiffs,

   v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,

        Defendants.

C.A. No. 2017-0816-

*SUMMONS PURSUANT TO 6 DEL. C. § 18-105*

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Jewel of Jane LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorney for Plaintiff*

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and
ZOHAR III, LIMITED, a Cayman Island exempted company,

        Plaintiffs,

   v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION, LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a
Delaware limited liability company, GORHAM PAPER AND TISSUE,
LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a
Delaware corporation, JEWEL OF JANE LLC, a Delaware limited
liability company, LVD ACQUISITION, LLC, a Delaware limited
liability company doing business as OASIS INTERNATIONAL, RM
ACQUISITION, LLC, a Delaware limited liability company SNELLING
HOLDINGS, LLC, a Delaware limited liability company, STILA
STYLES, LLC, a Delaware limited liability company, and LYNN
TILTON,

        Defendants.

C.A. No. 2017-0816-

*SUMMONS*
*PURSUANT*
*TO 6 DEL. C. § 18-105*

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

    To Summon the above-named defendant **Croscill Home LLC, f/k/a Croscill
Acquisition, LLC,** pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof
upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett,
Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201
North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified
Complaint.

    To serve upon defendant, **Croscill Home LLC, f/k/a Croscill Acquisition, LLC,**
a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

    In case of your failure, within 20 days after service hereof upon you, exclusive of
the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified
Complaint, judgment by default will be rendered against you for the relief demanded in the
Verified Complaint.

Dated:  November 15, 2017

_____
**Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,

        Plaintiffs,

    v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,

        Defendants.

C.A. No. 2017-0816-

*SUMMONS PURSUANT TO 6 DEL. C. § 18-105*

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Croscill Home LLC, f/k/a Croscill Acquisition, LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and
ZOHAR III, LIMITED, a Cayman Island exempted company,

        Plaintiffs,

   v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a
Delaware limited liability company, GORHAM PAPER AND TISSUE,
LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a
Delaware corporation, JEWEL OF JANE LLC, a Delaware limited
liability company, LVD ACQUISITION, LLC, a Delaware limited
liability company doing business as OASIS INTERNATIONAL, RM
ACQUISITION, LLC, a Delaware limited liability company SNELLING
HOLDINGS, LLC, a Delaware limited liability company, STILA
STYLES, LLC, a Delaware limited liability company, and LYNN
TILTON,

        Defendants.

C.A. No. 2017-0816-

**SUMMONS
PURSUANT
TO 6 _DEL_. _C_. § 18-105**

**THE STATE OF DELAWARE
TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

      To Summon the above-named defendant **Snelling Holdings, LLC**, pursuant to 6
_Del. C._ § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the
day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney,
whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box.
1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

      To serve upon defendant, **Snelling Holdings, LLC**, a copy hereof and of the
Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

      In case of your failure, within 20 days after service hereof upon you, exclusive of
the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified
Complaint, judgment by default will be rendered against you for the relief demanded in the
Verified Complaint.

Dated:  November 15, 2017

_Karen Johnson_

**Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,

               Plaintiffs,

      v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,

               Defendants.

C.A. No. 2017-0816-

*SUMMONS PURSUANT TO 6 DEL. C. § 18-105*

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Snelling Holdings, LLC**

by serving its Registered Agent:

The Corporation Trust Company
1209 Orange Street
Wilmington, DE  19801

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company,
and ZOHAR III, LIMITED, a Cayman Island exempted company,

        Plaintiffs,

v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC,
a Delaware limited liability company, GORHAM PAPER AND
TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS,
INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware
limited liability company, LVD ACQUISITION, LLC, a Delaware
limited liability company doing business as OASIS INTERNATIONAL,
RM ACQUISITION, LLC, a Delaware limited liability company
SNELLING HOLDINGS, LLC, a Delaware limited liability company,
STILA STYLES, LLC, a Delaware limited liability company, and
LYNN TILTON,

        Defendants.

C.A. No. 2017-0816-

*SUMMONS
PURSUANT
TO 6 DEL. C. § 18-105*

**THE STATE OF DELAWARE
TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

        To Summon the above-named defendant **Gorham Paper and Tissue, LLC**,
pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant,
exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire,
plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market
Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

        To serve upon defendant, **Gorham Paper and Tissue, LLC**, a copy hereof and of
the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

        In case of your failure, within 20 days after service hereof upon you, exclusive of
the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified
Complaint, judgment by default will be rendered against you for the relief demanded in the
Verified Complaint.

Dated:  November 15, 2017

                                    **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted
company, ZOHAR II 2005-1 LIMITED, a Cayman Islands
exempted company, and ZOHAR III, LIMITED, a Cayman Island
exempted company,

                    Plaintiffs,

     v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC,
a Delaware limited liability company, DENALI ACQUISITION
LLC, a Delaware limited liability company, DURA BUYER, LLC,
a Delaware limited liability company, GLOBAL AUTOMOTIVE
SYSTEMS, LLC, a Delaware limited liability company, GORHAM
PAPER AND TISSUE, LLC, a Delaware limited liability company,
IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF
JANE LLC, a Delaware limited liability company, LVD
ACQUISITION, LLC, a Delaware limited liability company doing
business as OASIS INTERNATIONAL, RM ACQUISITION,
LLC, a Delaware limited liability company SNELLING
HOLDINGS, LLC, a Delaware limited liability company, STILA
STYLES, LLC, a Delaware limited liability company, and LYNN
TILTON,

                  Defendants.

C.A. No. 2017-0816-

*SUMMONS
PURSUANT
TO 6 DEL. C. § 18-105*

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Gorham Paper and Tissue, LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and
ZOHAR III, LIMITED, a Cayman Island exempted company,

                  Plaintiffs,

    v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a
Delaware limited liability company, GORHAM PAPER AND TISSUE,
LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a
Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability
company, LVD ACQUISITION, LLC, a Delaware limited liability company
doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a
Delaware limited liability company SNELLING HOLDINGS, LLC, a
Delaware limited liability company, STILA STYLES, LLC, a Delaware
limited liability company, and LYNN TILTON,

                  Defendants.

C.A. No. 2017-0816-

*SUMMONS
PURSUANT
TO 8 DEL. C. § 225*

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

       To Summon the above-named defendant **Lynn Tilton**, pursuant to 8 *Del. C.*
§ 225, so that, within 20 days after service hereof upon defendant, exclusive of the day of
service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose
address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347,
Wilmington, Delaware 19899, an Answer to the Verified Complaint.

       To serve upon defendant, **Lynn Tilton**, a copy hereof and of the Verified
Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

       In case of your failure, within 20 days after service hereof upon you, exclusive of
the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified
Complaint, judgment by default will be rendered against you for the relief demanded in the
Verified Complaint.

Dated: November 15, 2017

                                    **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,

               Plaintiffs,

    v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,

               Defendants.

C.A. No. 2017-0816-

*SUMMONS PURSUANT TO 8 DEL. C. § 225*

Please effectuate service pursuant to 8 *Del. C.* § 225 upon:

**Lynn Tilton**

c/o IMG Holdings, Inc.

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and
ZOHAR III, LIMITED, a Cayman Island exempted company,

        Plaintiffs,

   v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a
Delaware limited liability company, GORHAM PAPER AND TISSUE,
LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a
Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability
company, LVD ACQUISITION, LLC, a Delaware limited liability company
doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a
Delaware limited liability company SNELLING HOLDINGS, LLC, a
Delaware limited liability company, STILA STYLES, LLC, a Delaware
limited liability company, and LYNN TILTON,

        Defendants.

C.A. No. 2017-0816-

*SUMMONS*
*PURSUANT*
*TO 6 DEL. C. § 18-*
*105*

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

    To Summon the above-named defendant **RM Acquisition, LLC**, pursuant to 6
*Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the
day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney,
whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box.
1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

    To serve upon defendant, **RM Acquisition, LLC**, a copy hereof and of the
Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

    In case of your failure, within 20 days after service hereof upon you, exclusive of
the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified
Complaint, judgment by default will be rendered against you for the relief demanded in the
Verified Complaint.

Dated:  November 15, 2017

                                 **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,

        Plaintiffs,

    v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,

        Defendants.

C.A. No. 2017-0816-

*SUMMONS PURSUANT TO 6 DEL. C. § 18-105*

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**RM Acquisition, LLC**

by serving its Registered Agent:

The Corporation Trust Company
1209 Orange Street
Wilmington, DE  19801

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company,
and ZOHAR III, LIMITED, a Cayman Island exempted company,

         Plaintiffs,

  v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC,
a Delaware limited liability company, GORHAM PAPER AND
TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS,
INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware
limited liability company, LVD ACQUISITION, LLC, a Delaware
limited liability company doing business as OASIS INTERNATIONAL,
RM ACQUISITION, LLC, a Delaware limited liability company
SNELLING HOLDINGS, LLC, a Delaware limited liability company,
STILA STYLES, LLC, a Delaware limited liability company, and
LYNN TILTON,

         Defendants.

C.A. No. 2017-0816-

*SUMMONS
PURSUANT
TO 6 DEL. C. § 18-105*

**THE STATE OF DELAWARE
TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

      To Summon the above-named defendant **Global Automotive Systems, LLC**,
pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant,
exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire,
plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market
Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

      To serve upon defendant, **Global Automotive Systems, LLC**, a copy hereof and
of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

      In case of your failure, within 20 days after service hereof upon you, exclusive of
the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified
Complaint, judgment by default will be rendered against you for the relief demanded in the
Verified Complaint.

Dated:  November 15, 2017

                          **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted
company, ZOHAR II 2005-1 LIMITED, a Cayman Islands
exempted company, and ZOHAR III, LIMITED, a Cayman Island
exempted company,

        Plaintiffs,

   v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC,
a Delaware limited liability company, DENALI ACQUISITION
LLC, a Delaware limited liability company, DURA BUYER, LLC,
a Delaware limited liability company, GLOBAL AUTOMOTIVE
SYSTEMS, LLC, a Delaware limited liability company,
GORHAM PAPER AND TISSUE, LLC, a Delaware limited
liability company, IMG HOLDINGS, INC., a Delaware
corporation, JEWEL OF JANE LLC, a Delaware limited liability
company, LVD ACQUISITION, LLC, a Delaware limited liability
company doing business as OASIS INTERNATIONAL, RM
ACQUISITION, LLC, a Delaware limited liability company
SNELLING HOLDINGS, LLC, a Delaware limited liability
company, STILA STYLES, LLC, a Delaware limited liability
company, and LYNN TILTON,

        Defendants.

C.A. No. 2017-0816-

***SUMMONS
PURSUANT
TO 6 DEL. C. § 18-105***

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Global Automotive Systems, LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and
ZOHAR III, LIMITED, a Cayman Island exempted company,

        Plaintiffs,

   v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a
Delaware limited liability company, GORHAM PAPER AND TISSUE,
LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a
Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability
company, LVD ACQUISITION, LLC, a Delaware limited liability
company doing business as OASIS INTERNATIONAL, RM
ACQUISITION, LLC, a Delaware limited liability company SNELLING
HOLDINGS, LLC, a Delaware limited liability company, STILA
STYLES, LLC, a Delaware limited liability company, and LYNN
TILTON,

        Defendants.

C.A. No. 2017-0816-

*SUMMONS*
*PURSUANT*
*TO 6 DEL. C. § 18-*
*105*

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

      To Summon the above-named defendant **Stila Styles, LLC**, pursuant to 6 *Del. C.*
§ 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the day of
service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose
address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347,
Wilmington, Delaware 19899, an Answer to the Verified Complaint.

      To serve upon defendant, **Stila Styles, LLC**, a copy hereof and of the Verified
Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

      In case of your failure, within 20 days after service hereof upon you, exclusive of
the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified
Complaint, judgment by default will be rendered against you for the relief demanded in the
Verified Complaint.

Dated:  November 15, 2017

                                 **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, <br><br> Plaintiffs, <br><br> v. <br><br> CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, <br><br> Defendants. | C.A. No. 2017-0816- <br><br> ***SUMMONS PURSUANT TO 6 DEL. C. § 18-105*** |

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Stila Styles, LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and
ZOHAR III, LIMITED, a Cayman Island exempted company,

           Plaintiffs,

    v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a
Delaware limited liability company, GORHAM PAPER AND TISSUE,
LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a
Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability
company, LVD ACQUISITION, LLC, a Delaware limited liability
company doing business as OASIS INTERNATIONAL, RM
ACQUISITION, LLC, a Delaware limited liability company SNELLING
HOLDINGS, LLC, a Delaware limited liability company, STILA
STYLES, LLC, a Delaware limited liability company, and LYNN
TILTON,

           Defendants.

C.A. No. 2017-0816-

*SUMMONS*
*PURSUANT*
*TO 6 DEL. C. § 18-*
*105*

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

       To Summon the above-named defendant **Dura Buyer, LLC**, pursuant to *6 Del. C.*
§ 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the day of
service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose
address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347,
Wilmington, Delaware 19899, an Answer to the Verified Complaint.

       To serve upon defendant, **Dura Buyer, LLC**, a copy hereof and of the Verified
Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

       In case of your failure, within 20 days after service hereof upon you, exclusive of
the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified
Complaint, judgment by default will be rendered against you for the relief demanded in the
Verified Complaint.

Dated:  November 15, 2017

                            **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted
company, ZOHAR II 2005-1 LIMITED, a Cayman Islands
exempted company, and ZOHAR III, LIMITED, a Cayman Island
exempted company,

        Plaintiffs,

    v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION,
LLC, a Delaware limited liability company, DENALI
ACQUISITION LLC, a Delaware limited liability company,
DURA BUYER, LLC, a Delaware limited liability company,
GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited
liability company, GORHAM PAPER AND TISSUE, LLC, a
Delaware limited liability company, IMG HOLDINGS, INC., a
Delaware corporation, JEWEL OF JANE LLC, a Delaware
limited liability company, LVD ACQUISITION, LLC, a
Delaware limited liability company doing business as OASIS
INTERNATIONAL, RM ACQUISITION, LLC, a Delaware
limited liability company SNELLING HOLDINGS, LLC, a
Delaware limited liability company, STILA STYLES, LLC, a
Delaware limited liability company, and LYNN TILTON,

        Defendants.

C.A. No. 2017-0816-

*SUMMONS PURSUANT
TO 6 DEL. C. § 18-105*

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Dura Buyer, LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and
ZOHAR III, LIMITED, a Cayman Island exempted company,

           Plaintiffs,

    v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a
Delaware limited liability company, GORHAM PAPER AND TISSUE,
LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a
Delaware corporation, JEWEL OF JANE LLC, a Delaware limited
liability company, LVD ACQUISITION, LLC, a Delaware limited
liability company doing business as OASIS INTERNATIONAL, RM
ACQUISITION, LLC, a Delaware limited liability company SNELLING
HOLDINGS, LLC, a Delaware limited liability company, STILA
STYLES, LLC, a Delaware limited liability company, and LYNN
TILTON,

           Defendants.

C.A. No. 2017-0816-

*SUMMONS
PURSUANT
TO 6 DEL. C. § 18-105*

**THE STATE OF DELAWARE
TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

       To Summon the above-named defendant **LVD Acquisition, LLC, d/b/a Oasis International**, pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

       To serve upon defendant, **LVD Acquisition, LLC, d/b/a Oasis International**, a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

       In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated:  November 15, 2017

                                    **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,

Plaintiffs,

v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,

Defendants.

C.A. No. 2017-0816-

*SUMMONS PURSUANT TO 6 DEL. C. § 18-105*

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**LVD Acquisition, LLC, d/b/a Oasis International**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company,
and ZOHAR III, LIMITED, a Cayman Island exempted company,

        Plaintiffs,

    v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC,
a Delaware limited liability company, GORHAM PAPER AND
TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS,
INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware
limited liability company, LVD ACQUISITION, LLC, a Delaware
limited liability company doing business as OASIS INTERNATIONAL,
RM ACQUISITION, LLC, a Delaware limited liability company
SNELLING HOLDINGS, LLC, a Delaware limited liability company,
STILA STYLES, LLC, a Delaware limited liability company, and
LYNN TILTON,

        Defendants.

C.A. No. 2017-0816-

*SUMMONS*
*PURSUANT*
*TO 6 DEL. C. § 18-105*

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

      To Summon the above-named defendant **Denali Acquisition LLC**, pursuant to 6
*Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the
day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney,
whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box.
1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

      To serve upon defendant, **Denali Acquisition LLC**, a copy hereof and of the
Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

      In case of your failure, within 20 days after service hereof upon you, exclusive of
the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified
Complaint, judgment by default will be rendered against you for the relief demanded in the
Verified Complaint.

Dated:  November 15, 2017

_____
**Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, <br><br> Plaintiffs, <br><br> v. <br><br> CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, <br><br> Defendants. | C.A. No. 2017-0816- <br><br> *SUMMONS PURSUANT TO 6 DEL. C. § 18-105* |

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Denali Acquisition LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

**EFiled:  Nov 16 2017 09:54AM EST**
**Transaction ID 61368051**
**Case No. 2017-0816-JRS**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, | |

Plaintiffs,

v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,

Defendants.

C.A. No. 2017-0816-

*SUMMONS*
*PURSUANT*
*TO 6 DEL. C. § 18-105*

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

To Summon the above-named defendant **Croscill Home LLC, f/k/a Croscill Acquisition, LLC,** pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

To serve upon defendant, **Croscill Home LLC, f/k/a Croscill Acquisition, LLC,** a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated:  November 15, 2017

_____
**Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,

     Plaintiffs,

 v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,

     Defendants.

C.A. No. 2017-0816-

*SUMMONS PURSUANT TO 6 DEL. C. § 18-105*

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Croscill Home LLC, f/k/a Croscill Acquisition, LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:**    2017-0816-

**SERVED:**    CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC

**DOCUMENT:**    SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER
GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH
EXHIBIT A

**ADDRESS:**    C/O CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808

**DATE:**    11/15/17

## MANNER OF SERVICE

☒    **PERSONAL:**    ACCEPTED BY:    LYNANNE GARES (AUTHORIZED PERSON AT REGISTERED AGENT)

☐    **SUBSTITUTE:**

☐    **NO SERVICE:**

_____    SWORN TO BEFORE ME ON    11/15/17

KEVIN S. DUNN    _____

BRANDYWINE PROCESS SERVERS, LTD    NOTARY PUBLIC
PO BOX 1360
WILMINGTON DE 19899    DENORRIS ANGELO BRITT
302-475-2600    NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 16, 2018

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

EFiled: Nov 16 2017 09:54AM EST
Transaction ID 61368051
Case No. 2017-0816-JRS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, <br><br> Plaintiffs, <br><br> v. <br><br> CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, <br><br> Defendants. | C.A. No. 2017-0816- <br><br> *SUMMONS PURSUANT TO 6 DEL. C. § 18-105* |

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

To Summon the above-named defendant **Denali Acquisition LLC**, pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

To serve upon defendant, **Denali Acquisition LLC**, a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated:  November 15, 2017

_____
**Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,<br><br>    Plaintiffs,<br><br>  v.<br><br>CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,<br><br>    Defendants. | C.A. No. 2017-0816-<br><br>***SUMMONS PURSUANT TO 6 DEL. C. § 18-105*** |

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Denali Acquisition LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER --
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:**  2017-0816-

**SERVED:**  DENALI ACQUISITION LLC

**DOCUMENT:**  SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH EXHIBIT A

**ADDRESS:**  C/O CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808

**DATE:**  11/15/17

## MANNER OF SERVICE

☒  **PERSONAL:**  ACCEPTED BY:  LYNANNE GARES (AUTHORIZED PERSON AT REGISTERED AGENT)

☐  **SUBSTITUTE:**

☐  **NO SERVICE:**

KEVIN S. DUNN

BRANDYWINE PROCESS SERVERS, LTD
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

SWORN TO BEFORE ME ON   11/15/17

NOTARY PUBLIC

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 16, 2018

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

EFiled:  Nov 16 2017 09:54AM EST
Transaction ID 61368051
Case No. 2017-0816-JRS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,<br><br>       Plaintiffs,<br><br>  v.<br><br>CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,<br><br>       Defendants. | C.A. No. 2017-0816-<br><br>*SUMMONS PURSUANT TO 6 DEL. C. § 18-105* |

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

      To Summon the above-named defendant **Dura Buyer, LLC**, pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

      To serve upon defendant, **Dura Buyer, LLC**, a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

      In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated:  November 15, 2017

                                 _____
                                    **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,<br><br>               Plaintiffs,<br>   v.<br><br>CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,<br><br>              Defendants. | C.A. No. 2017-0816-<br><br>***SUMMONS PURSUANT TO 6 DEL. C. § 18-105*** |

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Dura Buyer, LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:**      2017-0816-

**SERVED:**       DURA BUYER, LLC

**DOCUMENT:**     SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER
GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH
EXHIBIT A

**ADDRESS:**      C/O CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808

**DATE:**         11/15/17

## MANNER OF SERVICE

☒     **PERSONAL:**      ACCEPTED BY:   LYNANNE GARES (AUTHORIZED PERSON AT REGISTERED AGENT)

☐     **SUBSTITUTE:**

☐     **NO SERVICE:**

KEVIN S. DUNN

BRANDYWINE PROCESS SERVERS, LTD
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

SWORN TO BEFORE ME ON   11/15/17

NOTARY PUBLIC

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 16, 2018

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

EFiled:  Nov 16 2017 09:54AM EST
Transaction ID 61368051
Case No. 2017-0816-JRS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company,
and ZOHAR III, LIMITED, a Cayman Island exempted company,

             Plaintiffs,

v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC,
a Delaware limited liability company, GORHAM PAPER AND
TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS,
INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware
limited liability company, LVD ACQUISITION, LLC, a Delaware
limited liability company doing business as OASIS INTERNATIONAL,
RM ACQUISITION, LLC, a Delaware limited liability company
SNELLING HOLDINGS, LLC, a Delaware limited liability company,
STILA STYLES, LLC, a Delaware limited liability company, and
LYNN TILTON,

             Defendants.

C.A. No. 2017-0816-

*SUMMONS
PURSUANT
TO 6 DEL. C. § 18-105*

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

      To Summon the above-named defendant **Global Automotive Systems, LLC**,
pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant,
exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire,
plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market
Street, P.O. Box 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

      To serve upon defendant, **Global Automotive Systems, LLC**, a copy hereof and
of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

      In case of your failure, within 20 days after service hereof upon you, exclusive of
the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified
Complaint, judgment by default will be rendered against you for the relief demanded in the
Verified Complaint.

Dated:  November 15, 2017

                                         **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,<br><br>          Plaintiffs,<br><br>   v.<br><br>CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,<br><br>          Defendants. | C.A. No. 2017-0816-<br><br>*SUMMONS PURSUANT TO 6 DEL. C. § 18-105* |

Please effectuate service pursuant to *6 Del. C.* § 18-105 upon:

**Global Automotive Systems, LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:**      2017-0816-

**SERVED:**       GLOBAL AUTOMOTIVE SYSTEMS, LLC

**DOCUMENT:**     SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER
                  GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH
                  EXHIBIT A

**ADDRESS:**      C/O CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808

**DATE:**         11/15/17

## MANNER OF SERVICE

☒   **PERSONAL:**     ACCEPTED BY:   LYNANNE GARES (AUTHORIZED PERSON AT REGISTERED AGENT)

☐   **SUBSTITUTE:**

☐   **NO SERVICE:**

KEVIN S. DUNN

SWORN TO BEFORE ME ON   11/15/17

NOTARY PUBLIC

BRANDYWINE PROCESS SERVERS, LTD      DENORRIS ANGELO BRITT
PO BOX 1360                          NOTARY PUBLIC
WILMINGTON DE 19899                  STATE OF DELAWARE
302-475-2600                         My Commission Expires May 16, 2018

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

EFiled: Nov 16 2017 09:54AM EST
Transaction ID 61368051
Case No. 2017-0816-JRS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, <br><br> Plaintiffs, <br><br> v. <br><br> CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, <br><br> Defendants. | C.A. No. 2017-0816- <br><br> *SUMMONS PURSUANT TO 6 DEL. C. § 18-105* |

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

To Summon the above-named defendant **Gorham Paper and Tissue, LLC**, pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

To serve upon defendant, **Gorham Paper and Tissue, LLC**, a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated:  November 15, 2017

_____
**Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,<br><br>                Plaintiffs,<br><br>   v.<br><br>CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,<br><br>                Defendants. | C.A. No. 2017-0816-<br><br>*SUMMONS PURSUANT TO 6 DEL. C. § 18-105* |

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Gorham Paper and Tissue, LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:** 2017-0816-

**SERVED:** GORHAM PAPER AND TISSUE, LLC

**DOCUMENT:** SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH EXHIBIT A

**ADDRESS:** C/O CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808

**DATE:** 11/15/17

## MANNER OF SERVICE

☒ **PERSONAL:** ACCEPTED BY: LYNANNE GARES (AUTHORIZED PERSON AT REGISTERED AGENT)

☐ **SUBSTITUTE:**

☐ **NO SERVICE:**

KEVIN S. DUNN

BRANDYWINE PROCESS SERVERS, LTD
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

SWORN TO BEFORE ME ON   11/15/17

NOTARY PUBLIC

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 16, 2018

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

**EFiled: Nov 16 2017 09:54AM EST**
**Transaction ID 61368051**
**Case No. 2017-0816-JRS**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, <br><br> Plaintiffs, <br><br> v. <br><br> CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, <br><br> Defendants. | C.A. No. 2017-0816- <br><br> *SUMMONS PURSUANT TO 8 DEL. C. § 225* |

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

To Summon the above-named defendant **IMG Holdings, Inc.**, pursuant to 8 *Del. C.* § 225, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

To serve upon defendant, **IMG Holdings, Inc.**, a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated:  November 15, 2017

_____
**Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, <br><br> Plaintiffs, <br><br> v. <br><br> CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, <br><br> Defendants. | C.A. No. 2017-0816- <br><br> *SUMMONS PURSUANT TO 8 DEL. C. § 225* |

Please effectuate service pursuant to 8 *Del. C.* § 225 upon:

**IMG Holdings, Inc.**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:**    2017-0816-

**SERVED:**    IMG HOLDINGS, INC.

**DOCUMENT:**    SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH EXHIBIT A

**ADDRESS:**    C/O CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808

**DATE:**    11/15/17

## MANNER OF SERVICE

☒    **PERSONAL:**    ACCEPTED BY:    LYNANNE GARES (AUTHORIZED PERSON AT REGISTERED AGENT)

☐    **SUBSTITUTE:**

☐    **NO SERVICE:**

KEVIN S. DUNN

BRANDYWINE PROCESS SERVERS, LTD
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

SWORN TO BEFORE ME ON   11/15/17

NOTARY PUBLIC

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 16, 2018

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX  1360  WILMINGTON, DE 19899*

EFiled:  Nov 16 2017 09:54AM EST
Transaction ID 61368051
Case No. 2017-0816-JRS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company,
and ZOHAR III, LIMITED, a Cayman Island exempted company,

    Plaintiffs,

  v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC,
a Delaware limited liability company, GORHAM PAPER AND
TISSUE, LLC, a Delaware limited liability company, IMG
HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a
Delaware limited liability company, LVD ACQUISITION, LLC, a
Delaware limited liability company doing business as OASIS
INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited
liability company SNELLING HOLDINGS, LLC, a Delaware limited
liability company, STILA STYLES, LLC, a Delaware limited liability
company, and LYNN TILTON,

    Defendants.

C.A. No. 2017-0816-

*SUMMONS PURSUANT TO 6 DEL. C. § 18-105*

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

To Summon the above-named defendant **Jewel of Jane LLC**, pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

To serve upon defendant, **Jewel of Jane LLC**, a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated:  November 15, 2017

_____
**Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted
company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted
company, and ZOHAR III, LIMITED, a Cayman Island exempted
company,

                    Plaintiffs,

   v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a
Delaware limited liability company, GLOBAL AUTOMOTIVE
SYSTEMS, LLC, a Delaware limited liability company, GORHAM
PAPER AND TISSUE, LLC, a Delaware limited liability company,
IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE
LLC, a Delaware limited liability company, LVD ACQUISITION,
LLC, a Delaware limited liability company doing business as OASIS
INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited
liability company SNELLING HOLDINGS, LLC, a Delaware limited
liability company, STILA STYLES, LLC, a Delaware limited liability
company, and LYNN TILTON,

                  Defendants.

C.A. No. 2017-0816-

*SUMMONS
PURSUANT
TO 6 DEL. C. § 18-
105*

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Jewel of Jane LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:**     2017-0816-

**SERVED:**     JEWEL OF JANE LLC

**DOCUMENT:**     SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH EXHIBIT A

**ADDRESS:**     C/O CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808

**DATE:**     11/15/17

## MANNER OF SERVICE

☒ **PERSONAL:**     ACCEPTED BY:   LYNANNE GARES (AUTHORIZED PERSON AT REGISTERED AGENT)

☐ **SUBSTITUTE:**

☐ **NO SERVICE:**

KEVIN S. DUNN

BRANDYWINE PROCESS SERVERS, LTD
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

SWORN TO BEFORE ME ON   11/15/17

NOTARY PUBLIC

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 16, 2018

*BRANDYWINE PROCESS SERVERS, LTD PO BOX 1360 WILMINGTON, DE 19899*

EFiled: Nov 16 2017 09:54AM EST
Transaction ID 61368051
Case No. 2017-0816-JRS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,<br><br>            Plaintiffs,<br><br>   v.<br><br>CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,<br><br>            Defendants. | C.A. No. 2017-0816-<br><br>***SUMMONS PURSUANT TO 6 DEL. C. § 18-105*** |

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

      To Summon the above-named defendant **LVD Acquisition, LLC, d/b/a Oasis International**, pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

      To serve upon defendant, **LVD Acquisition, LLC, d/b/a Oasis International**, a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

      In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated: November 15, 2017

                                        **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, <br><br>    Plaintiffs, <br><br> v. <br><br>CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, <br><br>    Defendants. | C.A. No. 2017-0816- <br><br>*SUMMONS PURSUANT TO 6 DEL. C. § 18-105* |

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**LVD Acquisition, LLC, d/b/a Oasis International**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:**  2017-0816-

**SERVED:**  LVD ACQUISITION, LLC d/b/a OASIS INTERNATIONAL

**DOCUMENT:**  SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER
GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH
EXHIBIT A

**ADDRESS:**  C/O CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808

**DATE:**  11/15/17

## MANNER OF SERVICE

☒  **PERSONAL:**  ACCEPTED BY:  LYNANNE GARES (AUTHORIZED PERSON AT REGISTERED AGENT)

☐  **SUBSTITUTE:**

☐  **NO SERVICE:**

KEVIN S. DUNN

BRANDYWINE PROCESS SERVERS, LTD
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

SWORN TO BEFORE ME ON   11/15/17

NOTARY PUBLIC

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 16, 2018

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

**EFiled: Nov 16 2017 09:54AM EST**
**Transaction ID 61368051**
**Case No. 2017-0816-JRS**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

---

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and
ZOHAR III, LIMITED, a Cayman Island exempted company,

 Plaintiffs,

 v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a
Delaware limited liability company, GORHAM PAPER AND TISSUE,
LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a
Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability
company, LVD ACQUISITION, LLC, a Delaware limited liability company
doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a
Delaware limited liability company SNELLING HOLDINGS, LLC, a
Delaware limited liability company, STILA STYLES, LLC, a Delaware
limited liability company, and LYNN TILTON,

 Defendants.

---

C.A. No. 2017-0816-

*SUMMONS
PURSUANT
TO 6 **DEL**. **C**. § 18-
105*

---

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

 To Summon the above-named defendant **RM Acquisition, LLC**, pursuant to 6
*Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the
day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney,
whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box.
1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

 To serve upon defendant, **RM Acquisition, LLC**, a copy hereof and of the
Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

 In case of your failure, within 20 days after service hereof upon you, exclusive of
the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified
Complaint, judgment by default will be rendered against you for the relief demanded in the
Verified Complaint.

Dated: November 15, 2017

_____
**Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted
company, ZOHAR II 2005-1 LIMITED, a Cayman Islands
exempted company, and ZOHAR III, LIMITED, a Cayman Island
exempted company,

               Plaintiffs,

v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC,
a Delaware limited liability company, DENALI ACQUISITION
LLC, a Delaware limited liability company, DURA BUYER, LLC,
a Delaware limited liability company, GLOBAL AUTOMOTIVE
SYSTEMS, LLC, a Delaware limited liability company,
GORHAM PAPER AND TISSUE, LLC, a Delaware limited
liability company, IMG HOLDINGS, INC., a Delaware
corporation, JEWEL OF JANE LLC, a Delaware limited liability
company, LVD ACQUISITION, LLC, a Delaware limited liability
company doing business as OASIS INTERNATIONAL, RM
ACQUISITION, LLC, a Delaware limited liability company
SNELLING HOLDINGS, LLC, a Delaware limited liability
company, STILA STYLES, LLC, a Delaware limited liability
company, and LYNN TILTON,

               Defendants.

C.A. No. 2017-0816-

*SUMMONS*
*PURSUANT*
*TO 6 DEL. C. § 18-105*

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**RM Acquisition, LLC**

by serving its Registered Agent:

The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:**       2017-0816-

**SERVED:**        RM ACQUISITION, LLC

**DOCUMENT:**      SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER
                   GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH
                   EXHIBIT A

**ADDRESS:**       C/O THE CORPORATION TRUST COMPANY, 1209 ORANGE STREET, WILMINGTON, DE 19801

**DATE:**          11/15/17

## MANNER OF SERVICE

☒   **PERSONAL:**      ACCEPTED BY:   AMY MCLAREN (AUTHORIZED PERSON AT REGISTERED AGENT)

☐   **SUBSTITUTE:**

☐   **NO SERVICE:**

_____

DENORRIS BRITT

BRANDYWINE PROCESS SERVERS, LTD
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

SWORN TO BEFORE ME ON   11/15/17

_____

NOTARY PUBLIC

KEVIN DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires September 14, 2020

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

EFiled:  Nov 16 2017 09:54AM EST
Transaction ID 61368051
Case No. 2017-0816-JRS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, <br><br> Plaintiffs, <br><br> v. <br><br> CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, <br><br> Defendants. | C.A. No. 2017-0816- <br><br> *SUMMONS PURSUANT TO 6 DEL. C. § 18-105* |

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

      To Summon the above-named defendant **Snelling Holdings, LLC**, pursuant to 6 *Del. C.* § 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

      To serve upon defendant, **Snelling Holdings, LLC**, a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

      In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated:  November 15, 2017

                                        _____
                                          **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, | |
| Plaintiffs, | |
| v. | C.A. No. 2017-0816- |
| CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, | *SUMMONS PURSUANT TO 6 DEL. C. § 18-105* |
| Defendants. | |

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Snelling Holdings, LLC**

by serving its Registered Agent:

The Corporation Trust Company
1209 Orange Street
Wilmington, DE  19801

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:**      2017-0816-

**SERVED:**      SNELLING HOLDINGS, LLC

**DOCUMENT:**   SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER
GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH
EXHIBIT A

**ADDRESS:**      C/O THE CORPORATION TRUST COMPANY, 1209 ORANGE STREET, WILMINGTON, DE 19801

**DATE:**      11/15/17

## MANNER OF SERVICE

☒   **PERSONAL:**      ACCEPTED BY:   AMY MCLAREN (AUTHORIZED PERSON AT REGISTERED AGENT)

☐   **SUBSTITUTE:**

☐   **NO SERVICE:**

DENORRIS BRITT

BRANDYWINE PROCESS SERVERS, LTD
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

SWORN TO BEFORE ME ON   11/15/17

NOTARY PUBLIC

KEVIN DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires September 14, 2020

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

**EFiled:  Nov 16 2017 09:54AM EST**
**Transaction ID 61368051**
**Case No. 2017-0816-JRS**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company,
ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and
ZOHAR III, LIMITED, a Cayman Island exempted company,

              Plaintiffs,

v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a
Delaware limited liability company, DENALI ACQUISITION LLC, a
Delaware limited liability company, DURA BUYER, LLC, a Delaware
limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a
Delaware limited liability company, GORHAM PAPER AND TISSUE,
LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a
Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability
company, LVD ACQUISITION, LLC, a Delaware limited liability
company doing business as OASIS INTERNATIONAL, RM
ACQUISITION, LLC, a Delaware limited liability company SNELLING
HOLDINGS, LLC, a Delaware limited liability company, STILA
STYLES, LLC, a Delaware limited liability company, and LYNN
TILTON,

              Defendants.

C.A. No. 2017-0816-

*SUMMONS*
*PURSUANT*
*TO 6 DEL. C. § 18-*
*105*

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

        To Summon the above-named defendant **Stila Styles, LLC**, pursuant to 6 *Del. C.*
§ 18-105, so that, within 20 days after service hereof upon defendant, exclusive of the day of
service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose
address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347,
Wilmington, Delaware 19899, an Answer to the Verified Complaint.

        To serve upon defendant, **Stila Styles, LLC**, a copy hereof and of the Verified
Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

        In case of your failure, within 20 days after service hereof upon you, exclusive of
the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified
Complaint, judgment by default will be rendered against you for the relief demanded in the
Verified Complaint.

Dated:  November 15, 2017

                               _____
                               **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,<br><br>               Plaintiffs,<br><br>    v.<br><br>CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,<br><br>               Defendants. | C.A. No. 2017-0816-<br><br>*SUMMONS PURSUANT TO 6 <u>DEL.</u> <u>C.</u> § 18-105* |

Please effectuate service pursuant to 6 *Del. C.* § 18-105 upon:

**Stila Styles, LLC**

by serving its Registered Agent:

Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:**      2017-0816-

**SERVED:**      STILA STYLES, LLC

**DOCUMENT:**   SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER
GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH
EXHIBIT A

**ADDRESS:**    C/O CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808

**DATE:**       11/15/17

## MANNER OF SERVICE

☒   **PERSONAL:**      ACCEPTED BY:   LYNANNE GARES (AUTHORIZED PERSON AT REGISTERED AGENT)

☐   **SUBSTITUTE:**

☐   **NO SERVICE:**

_____
KEVIN S. DUNN

SWORN TO BEFORE ME ON   11/15/17

_____
NOTARY PUBLIC

BRANDYWINE PROCESS SERVERS, LTD
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 16, 2018

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

EFiled: Nov 16 2017 09:54AM EST
Transaction ID 61368051
Case No. 2017-0816-JRS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, <br><br> Plaintiffs, <br><br> v. <br><br> CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, <br><br> Defendants. | C.A. No. 2017-0816- <br><br> *SUMMONS PURSUANT TO 8 DEL. C. § 225* |

**THE STATE OF DELAWARE**
**TO THE SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS, LTD.**

**YOU ARE COMMANDED:**

      To Summon the above-named defendant **Lynn Tilton**, pursuant to 8 *Del. C.* § 225, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

      To serve upon defendant, **Lynn Tilton**, a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

      In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated: November 15, 2017

                                         **Register in Chancery**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,<br><br>Plaintiffs,<br><br>v.<br><br>CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,<br><br>Defendants. | C.A. No. 2017-0816-<br><br>*SUMMONS PURSUANT TO 8 DEL. C. § 225* |

Please effectuate service pursuant to 8 *Del. C.* § 225 upon:

**Lynn Tilton**

c/o IMG Holdings, Inc.

Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

**CASE NO:**  2017-0816-

LYNN TILTON

**SERVED:**  c/o IMG HOLDINGS, INC.

**DOCUMENT:**  SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH EXHIBIT A

**ADDRESS:**  C/O CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808

**DATE:**  11/15/17

## MANNER OF SERVICE

☒  **PERSONAL:**      ACCEPTED BY:   LYNANNE GARES (AUTHORIZED PERSON AT REGISTERED AGENT)

☐  **SUBSTITUTE:**

☐  **NO SERVICE:**

KEVIN S. DUNN

BRANDYWINE PROCESS SERVERS, LTD.
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

SWORN TO BEFORE ME ON   11/15/17

NOTARY PUBLIC

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 16, 201?

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

EFiled: Nov 17 2017 02:06PM EST
Transaction ID 61374592

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,

        Plaintiffs,

v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,

        Defendants.

C.A. No. 2017-0816-JRS

*SUMMONS PURSUANT TO 6 DEL. C. § 18-109*

## THE STATE OF DELAWARE
## TO THE SPECIAL PROCESS SERVER:
### BRANDYWINE PROCESS SERVERS, LTD.

## YOU ARE COMMANDED:

To Summon the above-named defendant **Lynn Tilton**, pursuant to 6 *Del. C.* § 18-109, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

To serve upon defendant, **Lynn Tilton**, a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated: November 16, 2017

                                **Register in Chancery**

## CIVIL ACTION NO. 2017-0816-VCS

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,

               Plaintiffs,

v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,

               Defendants.

C.A. No. 2017-0816-VCS

*SUMMONS PURSUANT TO 6 DEL. C. § 18-109*

Please effectuate service pursuant to 6 *Del. C.* § 18-109 upon:

1. **Lynn Tilton**
   **c/o Croscill Acquisition, LLC**

2. **Lynn Tilton**
   **c/o Denali Acquisition LLC**

3. **Lynn Tilton**
   **c/o Dura Buyer, LLC**

4. **Lynn Tilton**
   **c/o Global Automotive Systems, LLC**

5. **Lynn Tilton**
   **c/o Gorham Paper and Tissue, LLC**

6. **Lynn Tilton**
   **c/o Jewel of Jane LLC**

7. **Lynn Tilton**
   **c/o LVD Acquisition, LLC**

8. **Lynn Tilton**
   **c/o Stila Styles, LLC**

   Corporation Service Company
   251 Little Falls Drive
   Wilmington, DE  19808

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER –
BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| **CASE NO:** | 2017-0816-JRS |
| **SERVED:** | LYNN TILTON c/o<br>CROSCILL ACQUISITION, LLC; DENALI ACQUISITION, LLC; DURA BUYER, LLC; GLOBAL AUTOMOTIVE SYSTEMS, LLC; GORHAM PAPER AND TISSUE, LLC; JEWEL OF JANE LLC; LVD ACQUISITION, LLC; STILA STYLES, LLC |
| **DOCUMENT:** | SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH EXHIBIT A |
| **ADDRESS:** | C/O CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808 |
| **DATE:** | 11/17/17 |

## MANNER OF SERVICE

☒ **PERSONAL:**   ACCEPTED BY:   LYNANNE GARES (AUTHORIZED PERSON AT REGISTERED AGENT)

☐ **SUBSTITUTE:**

☐ **NO SERVICE:**

KEVIN S. DUNN

BRANDYWINE PROCESS SERVERS, LTD
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

SWORN TO BEFORE ME ON   11/17/17

NOTARY PUBLIC

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
Commission Expires May 16, 2018

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

**EFiled: Nov 17 2017 02:06PM EST**
**Transaction ID 61374592**

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

C.A. No. 2017-0816-JRS

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,

               Plaintiffs,

v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,

               Defendants.

C.A. No. 2017-0816-JRS

*SUMMONS PURSUANT TO 6 DEL. C. § 18-109*

## THE STATE OF DELAWARE
## TO THE SPECIAL PROCESS SERVER:
### BRANDYWINE PROCESS SERVERS, LTD.

### YOU ARE COMMANDED:

To Summon the above-named defendant **Lynn Tilton**, pursuant to 6 *Del. C.* § 18-109, so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Lauren Neal Bennett, Esquire, plaintiff's attorney, whose address is Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, Delaware 19899, an Answer to the Verified Complaint.

To serve upon defendant, **Lynn Tilton**, a copy hereof and of the Verified Complaint and related suit papers.

TO THE ABOVE NAMED DEFENDANT:

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above, an Answer to the Verified Complaint, judgment by default will be rendered against you for the relief demanded in the Verified Complaint.

Dated: November 16, 2017

                                 **Register in Chancery**

## CIVIL ACTION NO. 2017-0816-VCS

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company,

               Plaintiffs,

    v.

CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON,

               Defendants.

C.A. No. 2017-0816-VCS

*SUMMONS PURSUANT TO 6 DEL. C. § 18-109*

Please effectuate service pursuant to 6 *Del. C.* § 18-109 upon:

    **1.**    **Lynn Tilton**
           **c/o RM Acquisition, LLC**

    **2.**    **Lynn Tilton**
           **c/o Snelling Holdings, LLC**

           The Corporation Trust Company
           1209 Orange Street
           Wilmington, DE  19801

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER – BRANDYWINE PROCESS SERVERS

Lauren Neal Bennett (#5940)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
*Attorney for Plaintiff*

# *RETURN OF SERVICE*

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| **CASE NO:** | 2017-0816-JRS |
| **SERVED:** | LYNN TILTON c/o RM ACQUISITION, LLC<br>LYNN TILTON c/o SNELLING HOLDINGS, LLC |
| **DOCUMENT:** | SUMMONS; MOTION FOR EXPEDITED PROCEEDINGS; [PROPOSED] ORDER GRANTING MOTION FOR EXPEDITED PROCEEDINGS; COMPLAINT WITH EXHIBIT A |
| **ADDRESS:** | C/O THE CORPORATION TRUST COMPANY, 1209 ORANGE STREET, WILMINGTON, DE 19801 |
| **DATE:** | 11/17/17 |

## MANNER OF SERVICE

☒ **PERSONAL:**   ACCEPTED BY:   AMY MCLAREN (AUTHORIZED PERSON AT REGISTERED AGENT)

☐ **SUBSTITUTE:**

☐ **NO SERVICE:**

_____

KEVIN S. DUNN

BRANDYWINE PROCESS SERVERS, LTD
PO BOX 1360
WILMINGTON DE 19899
302-475-2600

SWORN TO BEFORE ME ON   11/17/17

_____

NOTARY PUBLIC

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 16, 2018

*BRANDYWINE PROCESS SERVERS, LTD  PO BOX 1360  WILMINGTON, DE 19899*

**EFiled:  Nov 17 2017 02:06PM EST**
**Transaction ID 61374592**
**Case No. 2017-0816-JRS**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, | |
|      Plaintiffs, | |
|  v. | |
| CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company doing business as OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, | C.A. No. 2017-0816-JRS |
|     Defendants. | |

## <u>STATEMENT PURSUANT TO CHANCERY COURT RULE 4(dc)</u>

Plaintiffs, by and through their undersigned attorneys, hereby make

the following statement pursuant to Court of Chancery Rule 4(dc):

1.      The name and principal address of the Limited Liability

Company of which the individual defendant is a Manager is:

Croscill Home LLC
1500 North Carolina Street
Goldsboro, NC 27565

2.      The name and principal address of the Limited Liability

Company of which the individual defendant is a Manager is:

Denali Acquisition LLC
550 Wescott Street
Suite 450
Houston, TX 77007

3.      The name and principal address of the Limited Liability

Company of which the individual defendant is a Manager is:

Dura Buyer, LLC
1780 Pond Run
Auburn Hills, MI 48326

4.      The name and principal address of the Limited Liability

Company of which the individual defendant is a Manager is:

Global Automotive Systems, LLC
1780 Pond Run
Auburn Hills, MI 48326

5.     The name and principal address of the Limited Liability

Company of which the individual defendant is a Manager is:

Gorham Paper and Tissue, LLC
72 Cascade Flats
Gorham, NH 03581

6.     The name and principal address of the Limited Liability

Company of which the individual defendant is a Manager is:

Jewel of Jane LLC
801 North Brand Boulevard
Suite 500
Glendale, CA 91203

7.     The name and principal address of the Limited Liability

Company of which the individual defendant is a Manager is:

LVD Acquisition, LLC
222 East Campus View Boulevard
Columbus, OH 43235

8.     The name and principal address of the Limited Liability

Company of which the individual defendant is a Manager is:

RM Acquisition, LLC
9855 Woods Drive
Skokie, IL 60077

9.     The name and principal address of the Limited Liability

Company of which the individual defendant is a Manager is:

Snelling Holdings, LLC
4055 Valley View Lane
Suite 700
Dallas, TX 75244

10.     The name and principal address of the Limited Liability

Company of which the individual defendant is a Manager is:

Stila Styles, LLC
801 North Brand Boulevard
Suite 500
Glendale, CA 91203

11.     The name and address of the registered agent in Delaware of

RM Acquisition, LLC and Shelling Holdings, LLC, is:

The Corporation Trust Company
1209 Orange Street
Wilmington, DE  19801

12.     The name and address of the registered agent in Delaware of

Croscill Home LLC, Denali Acquisition LLC, Dura Buyer, LLC, Global

Automotive Systems, LLC, Gorham Paper and Tissue, LLC, Jewel of Jane LLC,

LVD Acquisition, LLC, and Stila Styles, LLC, is:

Corporation Service Company,
251 Little Falls Drive
Wilmington, DE 19808

13.     The last residential address known to the applicants of Lynn

Tilton is:

3575 South Ocean Boulevard
Highland Beach, FL 33487

- 4 -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Lauren Neal Bennett*
Kenneth J. Nachbar (#2067)
Megan Ward Cascio (#3785)
Lauren Neal Bennett (#5940)
Thomas P. Will (#6086)
1201 North Market Street
Wilmington, DE  19801
(302) 658-9200
  *Attorneys for Plaintiffs*

November 17, 2017

EFiled:  Nov 29 2017 07:19PM EST
Transaction ID 61406799
Case No. 2017-0816-JRS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, <br><br> *Plaintiffs*, <br><br> v. <br><br> CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company d/b/a OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, <br><br> *Defendants*. | C.A. No. 2017-0816-JRS <br><br> **Verified Amended Complaint** |

## **Table Of Contents**

Nature of the Action ...................................................................................4

Jurisdiction .................................................................................................7

The Parties .................................................................................................8

Background ...............................................................................................13

I.     Formation Of The Zohar Funds And Role Of The Patriarch Managers ..........13

II.    The Zohar Funds' Creditors And Collateral ....................................16

III.   The Zohar Funds' Preference Shareholders ....................................19

IV.    The Zohar Funds Acquisition Of Equity In The Portfolio LLCs And
       IMG ...................................................................................................21

V.     The Zohar Funds' Failure To Repay Noteholders And Replacement Of
       The Patriarch Managers ....................................................................22

VI.    Ms. Tilton Engages In Self-Dealing Transactions To Improperly
       Entrench Her Control Over The Zohar-Owned Portfolio LLCs ....................22

A.     Croscill Home LLC (formerly known as Croscill Acquisition, LLC) ............25

       1.   Operative 2008 Croscill LLC Agreement ....................................25

       2.   2015 Amendment To The Croscill LLC Agreement ..................28

       3.   Croscill's Common Members' And Series A Preferred Members'
            November 28, 2017 Written Consent ........................................29

B.     Denali Acquisition LLC ........................................................................30

       1.   Operative 2008 Denali Acquisition Operating Agreement ........30

       2.   2015 Amendment To The Denali Acquisition Operating Agreement .........32

       3.   Denali Acquisition's Members' November 28, 2017 Written Consent .......33

C.     Global Automotive Systems, LLC ........................................................34

       1.   Operative 2013 GAS LLC Agreement ........................................34

       2.   2015 Amendment To The GAS LLC Agreement ..................37

       3.   GAS's Common Members' November 28, 2017 Written Consent .............38

D.     Gorham Paper and Tissue, LLC ...........................................................39

       1.   Operative 2011 Gorham LLC Agreement ....................................39

       2.   2015 Amendment To The Gorham LLC Agreement ..................42

       3.   Gorham's Common Members' November 28, 2017 Written Consent .......43

E.     Jewel of Jane LLC ..................................................................................44

       1.   Operative 2009 Jewel Of Jane LLC Agreement .........................44

       2.   2015 Amendment To The Jewel Of Jane LLC Agreement .........47

     3.   Jewel of Jane's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent .........................................48

F.   LVD Acquisition, LLC (doing business as Oasis International)....................49

     1.   Operative 2009 LVD/Oasis LLC Agreement ...............................................49

     2.   2015 Amendment To The LVD/Oasis LLC Agreement.............................52

     3.   LVD/Oasis's Common Members' November 28, 2017 Written Consent .............................................................................................................53

G.   RM Acquisition, LLC ...............................................................................................54

     1.   Operative 2008 RM Operating Agreement ....................................................54

     2.   2015 Amendment To The RM Operating Agreement ..................................57

     3.   RM's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent............................................................58

H.   Snelling Holdings, LLC .............................................................................................59

     1.   Operative 2007 Snelling Holdings Operating Agreement ...........................59

     2.   2015 Amendment To The Snelling Holdings Operating Agreement ..........62

     3.   Snelling Holdings' Members' November 28, 2017 Written Consent..........63

I.   Stila Styles, LLC........................................................................................................64

     1.   Operative 2009 Stila LLC Agreement ...........................................................64

     2.   2015 Amendment To The Stila LLC Agreement...........................................67

     3.   Stila's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent............................................................68

J.   Dura Buyer, LLC .......................................................................................................69

     1.   Operative 2009 Dura Buyer LLC Agreement...............................................69

     2.   2011 Amendment To The Dura Buyer LLC Agreement .............................72

     3.   2015 Amendment To The Dura Buyer LLC Agreement .............................73

     4.   Dura Buyer's Common Members' November 28, 2017 Written Consent .............................................................................................................74

VII. Ms. Tilton Engages In Self-Dealing Transactions To Improperly Entrench Her Control Over IMG ....................................................................75

Causes Of Action ................................................................................................................80

Prayer For Relief.................................................................................................................93

Plaintiffs Zohar CDO 2003-1, Limited ("Zohar I"), Zohar II 2005-1, Limited ("Zohar II"), and Zohar III, Limited ("Zohar III," and, collectively, the "Zohar Funds"), through their undersigned counsel, allege for their Verified Amended Complaint against Defendants Croscill Home LLC (formerly known as Croscill Acquisition, LLC) ("Croscill"), Denali Acquisition LLC ("Denali Acquisition"), Dura Buyer, LLC ("Dura Buyer"), Global Automotive Systems, LLC ("GAS"), Gorham Paper and Tissue, LLC ("Gorham"), Jewel of Jane LLC ("Jewel of Jane"), LVD Acquisition, LLC (doing business as Oasis International) ("LVD/Oasis"), RM Acquisition, LLC ("RM"), Snelling Holdings, LLC ("Snelling Holdings"), Stila Styles, LLC ("Stila," and, collectively, the "Portfolio LLCs"), IMG Holdings, Inc. ("IMG"), and Lynn Tilton as follows:

### Nature Of The Action

1.     This is an action brought by the Plaintiff Zohar Funds to resolve ongoing disputes regarding their ownership and control over the Defendant Portfolio LLCs, each a Delaware limited liability company ("LLC"), and IMG, a Delaware corporation.  Specifically, the Zohar Funds own, collectively or individually, all of the outstanding membership interests, including voting interests, of nine of the ten Portfolio LLCs:  Croscill, Denali Acquisition, GAS, Gorham, Jewel of Jane, LVD/Oasis, RM, Snelling Holdings, and Stila.  For each of these Portfolio LLCs, one or more of the Zohar Funds are the only members named

under their governing limited liability company agreements or operating agreement

("LLC agreements").  The Zohar Funds also own the majority of membership

interests, including voting interests, in Dura Buyer, with an affiliate of Defendant

Lynn Tilton, Ark II CLO 2001-1, Ltd. ("Ark II"),[1] holding a minority membership

interest in Dura Buyer.  The Zohar Funds own all of the outstanding common stock

of IMG.

       2.     Ms. Tilton currently acts as the sole manager of each Portfolio

LLC and the sole director of IMG.  She has contended that, notwithstanding that

the Zohar Funds are exclusive or majority holders of the membership interests in

the Portfolio LLCs and sole owners of the outstanding common stock of IMG, they

are powerless to remove Ms. Tilton and appoint a new manager or director.  The

Zohar Funds dispute Ms. Tilton's position and bring this action for entry of an

order declaring that they may remove Ms. Tilton and replace her with a new

manager or managers for each of the Portfolio LLCs and a new director or

directors for IMG.

       3.     Ms. Tilton's contention that the Zohar Funds may not remove

her as manager for the Portfolio LLCs is predicated upon amendments to their

governing LLC agreements that she caused to be drafted and executed—in most

---

    [1]  Upon information and belief, Ark II has no noteholders.  Ms. Tilton owns
Ark II outright and she uses Ark II as her personal investment vehicle.

cases, on the eve of her removal as collateral manager of the Zohar Funds—that

purport to transfer certain of the Zohar Funds' membership rights, including voting

rights, to entities that are wholly controlled by Ms. Tilton.  These amendments are

substantively identical to the irrevocable proxies in respect of FSAR Holdings,

Inc., Glenoit Universal Ltd., and UI Acquisition Holding Co. that were challenged

by the Zohar Funds and tried to this Court in *Zohar II 2005-1, Ltd. v. FSAR*

*Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch. Ct.).  As was the case for the

irrevocable proxies in that action, the amendments at issue in this action are

unenforceable as they constitute blatant acts of inequitable self-dealing by Ms.

Tilton.  They are also unenforceable for the additional reason that the amendments'

one-way transfer of valuable rights from the Zohar Funds to Ms. Tilton's entities

provided absolutely nothing of value to the Zohar Funds in return and thus fail for

lack of consideration.

       4.     Ms. Tilton's contention that the Zohar Funds may not remove

her as director of IMG arises from irrevocable proxies that are identical to those

challenged by the Zohar Funds and tried to this Court in *FSAR Holdings*.  The

irrevocable proxies related to IMG are unenforceable here for the same reasons as

in *FSAR Holdings*; they are blatant acts of inequitable self-dealing by Ms. Tilton

that purport to irrevocably transfer, for a term of twenty years, the voting rights of

the Zohar Funds to entities she controls.  The IMG irrevocable proxies are also invalid because they are not properly coupled with an interest.

5.      On November 28, 2017, the Zohar Funds executed and delivered to each company written consents to remove the manager of each of the Portfolio LLCs and the director of IMG and to elect new managers for each of the Portfolio LLCs and a new director of IMG.

6.      Accordingly, the Zohar Funds seek an order declaring that, consistent with the original governing agreement for each Portfolio LLC, as exclusive (or, for Dura Buyer, majority) holder of the membership interests of each Portfolio LLC, the Zohar Funds have validly removed the manager for each Portfolio LLC and elected Alvarez & Marsal Zohar Management, LLC ("AMZM") as new manager for each Portfolio LLC.  The Zohar Funds also seek an order declaring that as owners of all of IMG's outstanding common stock they have validly removed IMG's director and elected Tom Jones, Elizabeth LaPuma and Anthony McKiernan as new directors of IMG.

## Jurisdiction

7.      This Court has jurisdiction over this matter in respect of the Portfolio LLCs under 6 *Del. C.* §§ 18-110, -111 because it is an application to determine the validity of an election and removal of a manager of a limited liability company and an action to "interpret, apply or enforce the provisions of a limited

liability company agreement" and "the rights or powers of, or restrictions on, the limited liability company, members or managers."

8.      This Court has jurisdiction over this matter in respect of IMG under 8 *Del. C.* § 225 because it is an action to determine "the right of any person to hold or continue to hold" the office of director.

9.      This Court has the power to declare rights, status and other legal relations under 10 *Del. C.* § 6501 because an actual controversy exists between the parties.

## The Parties

10.      Plaintiff Zohar I is a Cayman Island exempt company.  At all times relevant hereto, Zohar I has been a member of the following Portfolio LLCs, as evidenced by their LLC agreements:

| Company | Class | Percentage |
|---|---|---|
| 1.  GAS | Common Interest | 18.760% |
| 2.  LVD/Oasis | Common Interest | 14.69% |
| 3.  RM | Common Interest | 17.09050% |
|  | Series A Preferred Interest | 17.09050% |
| 4.  Snelling Holdings | Membership Interest | 22.3% |

Zohar I also owns 16.9 percent of the outstanding common stock of IMG, consisting of 1,016.5 shares.

8

11.     Plaintiff Zohar II is a Cayman Island exempt company.  At all times relevant hereto, Zohar II has been a member of the following Portfolio LLCs, as evidenced by their LLC agreements:

| Company | Class | Percentage |
|---------|-------|-----------|
| 1.  Dura Buyer | Common Interest | 52.49% |
| 2.  GAS | Common Interest | 49.083% |
| 3.  Jewel of Jane | Common Interest | 100% |
|  | Series A Preferred Interest | 100% |
| 4.  LVD/Oasis | Common Interest | 62.36% |
| 5.  RM | Common Interest | 56.96833% |
|  | Series A Preferred Interest | 56.96833% |
| 6.  Snelling Holdings | Membership Interest | 63.8% |

Zohar II also owns 68.2 percent of the outstanding common stock of IMG, consisting of 4,093.0 shares.

12.     Plaintiff Zohar III is a Cayman Island exempt company.  At all times relevant hereto, Zohar III has been a member of the following Portfolio LLCs, as evidenced by their LLC agreements:

| Company | Class | Percentage |
|---|---|---|
| 1. Croscill | Common Interest | 100% |
| | Series A Preferred Interest | 100% |
| 2. Denali | Membership Interest | 100% |
| 3. Dura Buyer | Common Interest | 25.29% |
| 4. GAS | Common Interest | 32.157% |
| 5. Gorham | Common Interest | 100% |
| | Series A Preferred Interest | 100% |
| 6. LVD/Oasis | Common Interest | 22.95% |
| 7. RM | Common Interest | 25.94118% |
| | Series A Preferred Interest | 25.94118% |
| 8. Snelling Holdings | Membership Interest | 13.9% |
| 9. Stila | Common Interest | 100% |
| | Series A Preferred Interest | 100% |

Zohar III also owns 14.8 percent of the outstanding common stock of IMG, consisting of 890.5 shares.

13.     Defendant Croscill Home LLC (formerly known as Croscill Acquisition, LLC) (previously defined as "Croscill") is a Delaware limited liability company.  Croscill's governing agreement is the Limited Liability Company

Agreement of Croscill Acquisition, LLC dated as of November 7, 2008 (the "Croscill LLC Agreement").

14.     Defendant Denali Acquisition LLC (previously defined as "Denali") is a Delaware limited liability company.  Denali's governing agreement is the Operating Agreement of Denali Acquisition LLC dated as of June 6, 2008 (the "Denali Acquisition Operating Agreement").

15.     Defendant Dura Buyer, LLC (previously defined as "Dura Buyer") is a Delaware limited liability company.  Dura Buyer's governing agreement is the Limited Liability Company Agreement of Dura Buyer, LLC dated as of November 10, 2009 (the "Dura Buyer LLC Agreement").

16.     Defendant Global Automotive Systems, LLC (previously defined as "GAS") is a Delaware limited liability company.  GAS's governing agreement is the Amended and Restated Limited Liability Company Agreement of Global Automotive Systems, LLC dated as of March 9, 2013 (the "GAS LLC Agreement").

17.     Defendant Gorham Paper and Tissue, LLC (previously defined as "Gorham") is a Delaware limited liability company.  Gorham's governing agreement is the Limited Liability Company Agreement of Gorham Paper and Tissue, LLC dated as of May 13, 2011 (the "Gorham LLC Agreement").

18.     Defendant IMG Holdings, Inc. (previously defined as "IMG") is a Delaware corporation.  IMG's registered agent is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

19.     Defendant Jewel of Jane LLC (previously defined as "Jewel of Jane") is a Delaware limited liability company.  Jewel of Jane's governing agreement is the Limited Liability Company Agreement of Jewel of Jane LLC dated as of December 24, 2009 (the "Jewel of Jane LLC Agreement").

20.     Defendant LVD Acquisition, LLC (doing business as Oasis International) (previously defined as "LVD/Oasis") is a Delaware limited liability company.  LVD/Oasis's governing agreement is the Limited Liability Company Agreement of LVD Acquisition, LLC dated as of March 31, 2009 (the "LVD/Oasis LLC Agreement").

21.     Defendant RM Acquisition, LLC (previously defined as "RM") is a Delaware limited liability company.  RM's governing agreement is the First Amended and Restated Operating Agreement of RM Acquisition, LLC signed on April 29, 2008, and intended to be effective for all purposes as of December 2, 2007 (the "RM Operating Agreement").

22.     Defendant Snelling Holdings, LLC (previously defined as "Snelling Holdings") is a Delaware limited liability company.  Snelling Holding's

governing agreement is the Operating Agreement of Snelling Holdings, LLC dated as of October 1, 2007 (the "Snelling Holdings Operating Agreement").

23.    Defendant Stila Styles, LLC (previously defined as "Stila") is a Delaware limited liability company.  Stila's governing agreement is the Limited Liability Company Agreement of Stila Styles, LLC dated as of April 17, 2009 (the "Stila LLC Agreement").

24.    Defendant Lynn Tilton is, on information and belief, the principal of Patriarch and its affiliates, and is the sole manager of each of the Portfolio LLCs and sole director of IMG.[2]

## Background

## I.    Formation Of The Zohar Funds And Role Of The Patriarch Managers

25.    The Zohar Funds are collateralized loan obligation ("CLO") transactions that raised capital through the sale of notes for the ostensible purpose of investing in corporate debt and other assets.  The first Zohar Fund, Zohar I, launched in November 2003, raising approximately $530 million from the sale of notes.  Zohar II and Zohar III followed in January 2005 and April 2007, respectively, each raising approximately $1 billion from the sale of notes.

---

[2]    Summaries of the Zohar Funds' percentage ownership, organized by Portfolio LLC and IMG, and relevant removal provisions are appended to this verified amended complaint as Tables 1 and 2.

26.     Prior to March 2016, the Zohar Funds were managed by affiliates of Patriarch Partners, LLC ("Patriarch"), an investment firm owned by Ms. Tilton.  Patriarch Partners VIII, LLC was Zohar I's collateral manager, Patriarch Partners XIV, LLC was Zohar II's collateral manager, and Patriarch Partners XV, LLC was Zohar III's collateral manager.  Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, and Patriarch Partners XV, LLC are collectively referred to below as the "Patriarch Managers."

27.     The rights of the Zohar Funds' Noteholders and the obligations of the Zohar Funds are set forth in Indentures.  The roles and obligations of the collateral manager were set out in the Collateral Management Agreements ("CMAs") for each of the Zohar Funds.[3]  The Patriarch Managers were tasked with managing the loans and other assets of the Zohar Funds.  The CMAs set forth a "Standard of Care," requiring that the Collateral Manager "use reasonable care and the same degree of skill and attention" that, among other things, is "exercised by institutional investment managers of national standing generally in respect of

---

[3]     The CMAs are expressly made subject to the terms of the Indentures, with provisions of the Indentures controlling over conflicting provisions in the CMAs. *See* Zohar I CMA § 7.14; Zohar II CMAs, § 7.14; Zohar III CMA, § 7.13.

14

assets of the nature and character of the Collateral and for clients having similar investment objections and restrictions."  CMAs § 2.4.[4]

28.    The CMAs also expressly prohibited any action by the Collateral Manager that would "cause the [Zohar Funds] to violate the terms of the Indenture," CMAs § 2.6, such as by "transfer[ring] . . . any part of the Collateral, except as expressly permitted by th[e] Indenture," Indentures § 7.8(a)(i).

29.    While Section 6.2 of the CMAs acknowledges that the Collateral Manager may have certain conflicts of interest, it does not provide exculpation for self-dealing transactions.[5]  CMAs § 6.2.  Rather, Section 6.2(b) provides that nothing in Section 6.2 "shall be construed as altering the duties of the Collateral Manager as set forth in this Agreement or the Indenture nor the requirements of any law, rule or regulation applicable to the Collateral Manager." And Section 12.3 of the Indentures expressly provides that any transaction "if

---

[4]    Citations to "CMAs" are to parallel sections in the Zohar I CMA, Zohar II CMA, and Zohar III CMA unless citation to a separate CMA is necessary. Likewise, citations to "Indentures" are to parallel sections in the Zohar I Indenture, Zohar II Indenture, and Zohar III Indenture, and citations to "Preference Share Paying Agency Agreements" are to parallel sections in the Preference Share Paying Agency Agreement for each Zohar Fund, unless a separate citation is necessary.

[5]    Although the CMAs provide limited exculpation for the Collateral Manager and certain affiliates, they do not cover "acts or omissions constituting fraud, bad faith, willful misconduct, gross negligence or breach of fiduciary duty in the performance, or reckless disregard, of the duties of the Collateral Manager . . . ."  CMAs § 4.4.

effected with the Collateral Manager . . . or any affiliate of [the Collateral Manager] shall be effected on terms as favorable to the Noteholders as would be the case if such Person were not so Affiliated."  Indentures § 12.3(a).  Thus, the Indentures expressly provide that transactions between the Zohar Funds and Patriarch or its affiliates must be on terms no less favorable than would be obtained in an arms-length transaction.

30.     Finally, like all investment advisers, the Patriarch Managers owed general fiduciary duties of care and loyalty to the Zohar Funds in providing advisory services and acting as the Zohar Funds' agent and attorney-in-fact in administering the Zohar Funds' investment activities.  These common law and statutory fiduciary duties are in addition to the specific duties of care set forth in the CMAs.

## II.     The Zohar Funds' Creditors And Collateral

31.     The Zohar Funds are special purpose entities that have limited business purposes that include (i) issuing collateralized loan obligations ("Notes") and using the proceeds to acquire certain types of assets that are pledged as Collateral for the sole benefit of the Noteholders, (ii) managing the Collateral for the benefit of the Secured Parties (which includes the Noteholders and, for Zohar I and Zohar II, MBIA both as Noteholder and as Credit Enhancer), and (iii) repaying the Notes at or before their maturity from proceeds generated from the Collateral.

Indentures § 7.12.  The holders of Notes issued by the Zohar Funds (and the Credit

Enhancer who insured certain Notes for Zohar I and Zohar II) are the Funds'

primary Secured Party creditors.

32.     The Zohar Funds' Indentures give the Secured Parties  "a

continuing security interest in, and lien on" the property of the Zohar Funds.

Indentures at 1.  The security interest and lien granted to the Noteholders and other

Secured Parties is extremely broad, encompassing:

> all of [the Zohar Fund's] right, title and interest in, to and
> under, in each case, whether now owned or existing, or
> hereafter acquired or arising, all accounts, payment
> intangibles, general intangibles, letter-of-credit rights,
> chattel paper, electronic chattel paper, instruments,
> deposit accounts, investment property (each, as defined
> in the UCC), and any and all other property of any type
> or nature owned by it (other than Excluded
> Property) . . . .

Indentures at 1.  The "Excluded Property" as to which the Noteholders do not have

a security interest consists solely of $1,500 in cash.  Zohar I Indenture at 28; Zohar

II Indenture at 28; Zohar III Indenture at 26.

33.     The Zohar Funds were intended to have limited duration, as the

Notes that the Funds issued had (in the case of Zohar I and Zohar II) and have (in

the case of Zohar III) a Stated Maturity date on which they must be repaid.

Indentures § 2.2(b).  The Indentures contemplate that Collateral that does not

mature prior to the Stated Maturity—essentially, all of the remaining property of

17

the Funds—will be sold to generate proceeds to repay the Notes.  Zohar I Indenture

§ 12.2(e)[6]; Zohar II Indenture § 12.2(e); Zohar III Indenture § 12.2(d).  Moreover,

upon an Event of Default and acceleration of the Notes—whether it is a non-

payment of interest or principal when due, or certain other Events of Default—the

Trustee is empowered to cause the sale of the Collateral if the proceeds are

sufficient to repay the Notes.  Indentures § 5.5(a)(i).  The Trustee must also sell the

Collateral upon the Event of Default and acceleration of the Notes when the

Controlling Party (or, in the case of Zohar III, the Controlling Class) directs it to—

whether the proceeds of such a sale would be sufficient to repay the Notes in full

or not.  Indentures §§ 5.4(a)(ii), 5.5(a)(ii).  Thus, the intent of the Indentures is

clear:  unless and until the Notes are repaid, the Collateral is held solely for the

benefit of the Secured Parties (primarily the Noteholders and, in the case of Zohar I

and Zohar II, MBIA as Credit Enhancer).

　　　　34.　　In turn, the Noteholders have recourse only to the Collateral.

Indentures § 2.6(i).  Following realization of the Collateral, "any claims of the

Noteholders . . . shall be extinguished, and shall not thereafter revive."  Indentures

§ 2.6(i).  Thus, Secured Parties' security interest in the Collateral—and the right of

---

　　　　[6]　On June 19, 2015, MBIA and Patriarch agreed to a Fifth Supplemental
Indenture for Zohar I that amended Section 12.2(e) to permit (rather than require)
the liquidation of Collateral.

the Controlling Party or Controlling Class to cause the sale of the Collateral upon non-payment of principal at the Stated Maturity or upon any other Event of Default and acceleration of Notes—is not only critical to the Noteholders, but is inherent in the Zohar Funds' basic structure.

## III.  The Zohar Funds' Preference Shareholders

35.  In addition to selling Notes to investors, the Zohar Funds issued Preference Shares which are currently owned by an entity owned and controlled by Ms. Tilton.

36.  Patriarch affiliate Octaluna, LLC holds Zohar I's Preference Shares.  Octaluna, LLC has three classes of members:  Class A, Class B, and Class C.  The sole Class B Member of Octaluna (which is relevant here for reasons set forth below) is the original Collateral Manager of Zohar I, Patriarch Partners VIII, LLC.  Patriarch Partners VIII, LLC is also named the Managing Member of Octaluna, LLC.

37.  Patriarch affiliate Octaluna II, LLC holds Zohar II's Preference Shares.  Octaluna II, LLC has three classes of members:  Class A, Class B, and Class C.  The sole Class B Member of Octaluna II, LLC is the original Collateral Manager of Zohar II, Patriarch Partners XIV, LLC.  Patriarch Partners XIV, LLC is also named the Managing Member of Octaluna II, LLC.

38.     Patriarch affiliate Octaluna III, LLC holds Zohar III's Preference Shares.  Octaluna III, LLC has three classes of members: Class A, Class B, and Class C.  The Class B Members of Octaluna III, LLC are Ark II (58.3 percent),  Patriarch Partners XV, LLC, the original Collateral Manager of Zohar III (25 percent), and Phoenix VIII, LLC (16.7 percent).  Patriarch XV, LLC is named the Managing Member of Octaluna III, LLC.

39.     Octaluna I, LLC, Octaluna II, LLC, and Octaluna III, LLC, are collectively referred to herein as the "Octalunas."  The Class B Members of Octalunas are collectively referred to herein as the "Octaluna Class B Members."

40.     The Preference Shareholder of each Zohar Fund is entitled only to a capped amount of dividends (that the Preference Shareholders have received) and whatever cash remains after the Notes are paid in full after the sale or self-liquidation of Collateral.  The Preference Shares' final distributions (if any) are payable solely from amounts on deposit in the Preference Share Distribution Account.  Preference Share Paying Agency Agreements § 2.6(c).  Any amounts deposited in the Preference Share Distribution Account are subordinated to the Notes' interest and principal, *id.* § 2.6(d), and come from the remaining funds in the last step in the Indenture interest and principal proceeds waterfall.  Zohar I Indenture § 11.1(a)(i)(M), (a)(ii)(J); Zohar II Indenture § 11.1(a)(i)(M), (a)(ii)(J); Zohar III Indenture § 11.1(a)(i)(P), (a)(ii)(I).

IV.     **The Zohar Funds Acquisition Of Equity In The Portfolio LLCs And IMG**

41.     Much of the Collateral acquired by the Zohar Funds consisted of loans extended to small- to mid-sized manufacturing companies.  The entire consideration for the acquisition of these loans came from funds in the Zohar Funds' accounts.  In many instances, either in the same transaction in which the Zohar Funds extended loans, or though subsequent transactions in which those loans were restructured, the Zohar Funds also acquired equity positions in the borrowers.  These equity positions were titled and beneficially owned in the Zohar Funds' names and thus constituted part of the Collateral under the Zohar Funds' Indentures that served as security for repayment of the Noteholders (or, as appropriate in respect of Zohar I and Zohar II, the Credit Enhancer).

42.     In the case of each of the Portfolio LLCs at issue in this action, the Zohar Funds extended one or more loans to each of the Portfolio Companies and simultaneously acquired equity interests.  In each instance, that equity was in the form of membership interests titled in the name of the Zohar Funds pursuant to the governing LLC agreement for each Portfolio LLC.  In the case of IMG, the Zohar Funds acquired common stock of IMG in a restructuring of loans extended to IMG and in a legal settlement with IMG's founders.  Those equity positions, including the rights attendant to them, constituted Collateral under the Zohar Funds' Indentures.

## V.  The Zohar Funds' Failure To Repay Noteholders And Replacement Of The Patriarch Managers

43.    Under the management of the Patriarch Managers, the Zohar Funds performed dismally.  On November 20, 2015, Zohar I defaulted on its obligation to repay Noteholders.  Zohar I's assets were subsequently sold by the Zohar I Trustee at auction to MBIA as the highest bidder.

44.    On March 2, 2016, the Patriarch Managers resigned as Collateral Managers for the Zohar Funds.  AMZM was appointed as Collateral Manager for each of the Zohar Funds.

45.    On January 20, 2017, Zohar II defaulted on its obligation to repay Noteholders and MBIA paid approximately $770 million in claims on the outstanding principal and interest due to the Class A-1, Class A-2, and Class A-3 Noteholders and was subrogated to all of their rights.  It remains in default today.

46.    Zohar III faces imminent default on its obligation to repay Noteholders on April 15, 2019.

## VI.  Ms. Tilton Engages In Self-Dealing Transactions To Improperly Entrench Her Control Over The Zohar-Owned Portfolio LLCs

47.    As discussed above, the Zohar Funds' equity ownership is memorialized, among other places, in the LLC agreements setting forth the corporate governance of the Portfolio LLCs.  The LLC agreement for each Portfolio LLC also provides for the process for removing and replacing the

22

manager of each Portfolio LLC.  In two separate self-dealing transactions, Ms.

Tilton caused the Zohar Funds to amend the LLC agreement for each Portfolio

LLC and purportedly forfeit valuable membership interests, including their rights

to remove and replace the manager of each Portfolio LLC.

48.    In May 2011, Ms. Tilton caused the Zohar Funds to execute

amendments to the LLC agreements that replaced the majority voting requirement

for removal and replacement of the manager with a unanimous voting

requirement.[7]  These amendments sought to secure Ms. Tilton's ability to prevent

her own removal as manager of the Portfolio LLCs even if she was removed as

Collateral Manager whichever Zohar Fund independently owned a majority of the

membership interests and thus could have unilaterally removed Tilton.  Moreover,

in each instance, the Zohar Fund that gave up its ability to unilaterally exercise

majority control received no consideration for this amendment.

49.    With the exception of Dura Buyer, the Zohar Funds—

individually or collectively—own 100 percent of the membership interests in the

---

[7]    This is true for eight of the Portfolio LLCs:  (1) Croscill; (2) Denali
Acquisition; (3) Dura Buyer; (4) Jewel of Jane; (5) LVD/Oasis; (6) RM;
(7) Snelling Holdings; and (8) Stila.  The LLC agreements for the two other
Portfolio LLCs, GAS and Gorham, were executed in or after 2011.  Thus, rather
than cause GAS and Gorham to execute amendments, Ms. Tilton caused GAS and
Gorham to enter into LLC agreements that required a unanimous vote of the
Common Members to remove and replace the manager.

Portfolio LLCs.   Therefore, as the Zohar Funds are presently seeking in unison to remove Ms. Tilton, the imposition of a unanimous voting requirement in 2011, while improper, does not present a current impediment to the Zohar Funds' efforts, other than with regard to Dura Buyer.

50.     In September 2015, when it became clear that Zohar I was on the verge of defaulting on its obligation to repay the principal amounts of the Notes it had issued, Ms. Tilton again sought to entrench herself as manager of the Portfolio LLCs.  At the time, Ms. Tilton conceded that she had already begun taking affirmative steps to prepare for her removal as manager following the Zohar I default.  One of those steps included an extreme, self-interested, defensive maneuver to entrench herself as manager of the Portfolio LLCs.

51.     Specifically, on September 22, 2015—one day after executing the irrevocable proxies at issue in *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch. Ct.)—Ms. Tilton caused the Zohar Funds to execute amendments to the LLC agreements that purportedly transferred certain of the Zohar Funds' membership rights, including the right to remove Ms. Tilton as manager, to the Octaluna Class B Members—*i.e.*, Patriarch-affiliated entities that have never held any right or interest under the LLC agreements and that were entirely owned and controlled by Ms. Tilton.  Like the irrevocable proxies, these amendments claimed to implement the "original intent" of the parties, but no such

24

original intent existed.  Ms. Tilton signed each of these amendments on behalf of all of the parties.  Moreover, the Zohar Funds received no consideration in exchange for this supposed transfer of their valuable membership interests to the Octaluna Class B Members under the 2015 amendments.

A.    *Croscill Home LLC (formerly known as Croscill Acquisition, LLC)*

1.    **Operative 2008 Croscill LLC Agreement**

52.    Zohar III owns 100 percent of the outstanding Common Interests and Series A Preferred Interests of Croscill.  As a result, Zohar III is the sole Common Member and Series A Preferred Member of Croscill.  Zohar III executed the Croscill LLC Agreement, dated as of November 7, 2008.

53.    Section 1.1 of the Croscill LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

54.    "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

55.    "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed

fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

56.     "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Croscill LLC Agreement.

57.     Exhibit A to the Croscill LLC Agreement lists Zohar III's Common Percentage as 100 percent.

58.     "Series A Preferred Members" means "those Members from time to time holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

59.     "Series A Preferred Percentage" means "for each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the Croscill LLC Agreement.

60.     Exhibit A to the Croscill LLC Agreement lists Zohar III's Series A Preferred Percentage as 100 percent.

61.     Section 5.8 of the Croscill LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

26

62.     Section 5.11 states, "Any action requiring the affirmative vote of the Common Members or the Series A Preferred Members under this Agreement . . . may be taken . . . by a written consent of a Majority-in-Interest of the Common Members or a Majority-in-Interest of the Series A Preferred Members, as applicable, that would have been entitled to vote at such meeting as permitted under Section 5.13."

63.     Section 5.13 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent shall have the same force and effect as a vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

64.     Section 11.1 of the Croscill LLC Agreement is an integration clause, which states:

> This Agreement, together with its Exhibits, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject

matter hereof.   There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

65.    Section 11.3 permits the Croscill LLC Agreement to be "amended or modified from time to time only by the Members."

## 2.    2015 Amendment To The Croscill LLC Agreement

66.    In September 2015, facing the imminent principal payment default of Zohar I and the similarly dire financial condition of Zohar II and Zohar III, Ms. Tilton anticipated the Patriarch Managers' imminent removal or resignation as Collateral Manager of the Zohar Funds.  With this in mind, on September 22, 2015, Ms. Tilton caused Zohar III, as sole Common Member and Series A Preferred Member of Croscill, to execute "Amendment No. 4 to Limited Liability Company Agreement of Croscill Acquisition, LLC" ("Croscill Amendment Four").  Croscill Amendment Four sought to ensure Ms. Tilton would remain Manager of Croscill indefinitely by requiring her consent for her removal. No consideration supported Croscill Amendment Four.

67.    The first recital of Croscill Amendment Four claims that the "original intent" of Zohar III was to give non-party Patriarch affiliates who are not Common Members or Series A Preferred Members of Croscill—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC,

and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the

Manager, dissolution of the Company and other actions."  To manifest this

supposed "original intent," Croscill Amendment Four purports to require "the

consent of all [Octaluna] Class B Members" related to Zohar III for certain actions,

including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any

additional manager" or "amend[ing] this Agreement."

68.     In fact, no such original intent existed.  Rather, Croscill

Amendment Four was a brazen attempt by Ms. Tilton to entrench herself as

Manager of Croscill by conditioning her removal on her own consent.

69.     Through Croscill Amendment Four, Ms. Tilton caused Zohar

III to purport to forfeit its right to remove the Manager.  Moreover, Zohar III

received nothing in exchange for forfeiting this right.

### 3.     Croscill's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent

70.     Consistent with its rights under the Croscill LLC Agreement,

on November 28, 2017, Zohar III, as Croscill's only Common Member and Series

A Preferred Member, executed and delivered to Croscill a written consent

removing Ms. Tilton as Croscill's Manager and electing AMZM as Croscill's new

Manager (the "Croscill Consent").

71.     Under Sections 5.11 and 5.13 of the Croscill LLC Agreement, the Croscill Consent is a valid action of Croscill's Common Members and Series A Preferred Members.

72.     Nevertheless, Croscill and Ms. Tilton have refused to recognize the validity of the Croscill Consent.  Upon information and belief, Croscill and Ms. Tilton take the position that Croscill Amendment Four is valid and requires the consent of the Octaluna Class B Members related to Zohar III to remove and replace Croscill's Manager.

B.     *Denali Acquisition LLC*

   **1.     Operative 2008 Denali Acquisition Operating Agreement**

73.     Zohar III owns 100 percent of the outstanding Membership Interests of Denali Acquisition.  As a result, Zohar III is the sole Member of Denali Acquisition.  Zohar III executed the Denali Acquisition Operating Agreement, dated as of June 6, 2008.

74.     Section 1.1 of the Denali Acquisition Operating Agreement defines terms used therein.  "Manager" has the meaning given to it in Section 5.1, which states that "the powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, managers ('Managers')" and "the Managers may make all decisions and take all actions for the Company not otherwise provided for in this

Agreement."  Section 5.3 states, "The initial Manager of the Company shall be

Lynn Tilton.  The number of Managers of the Company shall be determined by

time to time by action of the Member."

75.    "Member" means "any Person executing this Agreement as of

the date of this Agreement as a member or hereafter admitted to the Company as a

member."

76.    "Membership Interest" means "the interests of a Member in the

Company, including, without limitation, rights to distributions (liquidating or

otherwise) and allocations."

77.    Zohar III is the only Person who executed the Denali

Acquisition Operating Agreement as a Member and Exhibit A to the Denali

Acquisition Operating Agreement lists Zohar III as the only Member.

78.    Section 5.4 of the Denali Acquisition Operating Agreement

states, "The Member may, at any time and with or without cause, terminate the

term of office of all or any of the Managers.  Such removal shall be effective

immediately upon Member action even if successors are not elected

simultaneously."

79.    Section 11.3 of the Denali Acquisition Operating Agreement is

an integration clause, which states, "This Agreement constitutes the entire

governing agreement of the Company and supersedes all prior governing agreements of the Company, whether oral or written."

80.     Section 11.5 permits the Denali Acquisition Operating Agreement to be "amended or modified from time to time only by the Member."

## 2.    2015 Amendment To The Denali Acquisition Operating Agreement

81.     On September 22, 2015, the same date as Croscill Amendment Four and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar III, as sole Member of Denali Acquisition, to execute "Amendment No. 2 to Limited Liability Company Agreement [sic] of Denali Acquisition, LLC" ("Denali Acquisition Amendment Two").  Denali Acquisition Amendment Two sought to ensure Ms. Tilton would remain Manager of Denali Acquisition indefinitely by requiring her consent for her removal.  No consideration supported Denali Acquisition Amendment Two.

82.     Denali Acquisition Amendment Two is an exact replica of Croscill Amendment Four.  The first recital claims that the same "original intent" of Zohar III:  that it wanted to give non-party Patriarch affiliates who are not Members of Denali Acquisition—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  Like Croscill Amendment Four, Denali Acquisition

32

Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to Zohar III to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

83.     In fact, no such original intent existed.  Rather, Denali Acquisition Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of Denali Acquisition by conditioning her removal on her own consent.

84.     Through Denali Acquisition Amendment Two, Ms. Tilton caused Zohar III to purport to forfeit its right to remove the Manager.  Moreover, Zohar III received nothing in exchange for forfeiting this right.

### 3.     Denali Acquisition's Members' November 28, 2017 Written Consent

85.     Consistent with its rights under the Denali Acquisition Operating Agreement, on November 28, 2017, Zohar III, as Denali Acquisition's only Member, executed and delivered to Danali Acquisition a written consent removing Ms. Tilton as Denali Acquisition's Manager and electing AMZM as Denali Acquisition's new Manager (the "Denali Acquisition Member Action").

33

86.     Under Section 5.4 of the Denali Acquisition Operating Agreement, the Denali Acquisition Member Action is the only valid action required to remove and replace Denali Acquisition's manager.

87.     Nevertheless, Denali Acquisition and Ms. Tilton have refused to recognize the validity of the Denali Acquisition Member Action.  Upon information and belief, Denali Acquisition and Ms. Tilton take the position that Denali Acquisition Amendment Two is valid and requires the consent of the Octaluna Class B Members related to Zohar III to remove and replace Denali Acquisition's Manager.

C.     *Global Automotive Systems, LLC*

**1.     Operative 2013 GAS LLC Agreement**

88.     The Zohar Funds own 100 percent of GAS.  Zohar I owns 18.760 percent, Zohar II owns 49.083 percent, and Zohar III owns 32.157 percent of the Common Interests.  The Zohar Funds are the only Members of GAS.

89.     The Zohar Funds executed the GAS LLC Agreement on March 9, 2013.

90.     Section 1.1 of the GAS LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The Manager is Lynn Tilton."

91.    "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

92.    "All of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages equal one hundred percent (100%) of the aggregate Common Percentages of all Common Members at such time."

93.    "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage' on" Exhibit A, appended to the GAS LLC Agreement.

94.    Exhibit A to the GAS LLC Agreement listed Zohar I's Common Percentage as 18.760 percent, Zohar II's Common Percentage as 49.083 percent, and Zohar III's Common Percentage as 32.157 percent.

95.    Section 5.9 of the GAS LLC Agreement states, "The Common Members, by vote of All of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

96.    Section 5.12 states, "To be effective, any vote or other action permitted or required by this Agreement to be taken by the Common Members, unless otherwise specified herein, must be taken by the affirmative vote at a

meeting (or, in lieu thereof, as permitted under Section 5.13, by written consent) of All of the Common Members."

97.    Section 5.13 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum voting power that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent shall have the same force and effect as a vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

98.    Section 11.1 of the GAS LLC Agreement is an integration clause, which states:

> This Agreement, together with <u>Schedule A</u> hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.   There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

99.   Section 11.3 permits the GAS LLC Agreement to be "amended or modified from time to time only upon approval by the Common Members, by vote of All of the Common Members."

## 2.   2015 Amendment To The GAS LLC Agreement

100.   On September 22, 2015, the same date as other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as Common Members of GAS, to execute "Amendment No. 1 to Amended and Restated Limited Liability Company Agreement of Global Automotive Systems, LLC" ("GAS Amendment One").  GAS Amendment One sought to ensure Ms. Tilton would remain Manager of GAS indefinitely by requiring her consent for her removal.  No consideration supported GAS Amendment One.

101.   GAS Amendment One is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Common Members of GAS—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  Like the other 2015 amendments, GAS Amendment One attempts to

implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

102.    In fact, no such original intent existed.  Rather, GAS Amendment One was a brazen attempt by Ms. Tilton to entrench herself as Manager of GAS by conditioning her removal on her own consent.

103.    Through GAS Amendment One, Ms. Tilton caused the Zohar Funds to forfeit their right to remove the Manager.  Moreover, the Zohar Funds received nothing in exchange for forfeiting this right.

### 3.    GAS's Common Members' November 28, 2017 Written Consent

104.    Consistent with its rights under the GAS LLC Agreement, on November 28, 2017, the Zohar Funds, as GAS's only Common Members, executed and delivered to GAS a written consent removing Ms. Tilton as GAS's Manager and electing AMZM as GAS's new Manager (the "GAS Consent").

105.    Under Sections 5.12 and 5.13 of the GAS LLC Agreement, the GAS Consent is a valid action of GAS's Common Members.

106.    Nevertheless, GAS and Ms. Tilton have refused to recognize the validity of the GAS Consent.  Upon information and belief, GAS and Ms. Tilton take the position that GAS Amendment One is valid and requires the

38

consent of the Octaluna Class B Members related to the Zohar Funds to remove and replace GAS's Manager.

D.   *Gorham Paper and Tissue, LLC*

### 1.   Operative 2011 Gorham LLC Agreement

107.   Zohar III owns 100 percent of the outstanding Common Interests and Series A Preferred Interests of Gorham.  As a result, Zohar III is the sole Common Member and Series A Preferred Member of Gorham.  Zohar III executed the Gorham LLC Agreement, dated as of May 13, 2011.

108.   Section 1.1 of the Gorham LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

109.   "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

110.   "All of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages equal one hundred percent (100%) of the aggregate Common Percentages of all Common Members at such time."

111. "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage' on" Exhibit A, appended to the Gorham LLC Agreement.

112. Exhibit A to the Gorham LLC Agreement listed Zohar III's Common Percentage as 100 percent.

113. "All of the Series A Preferred Members" means "at any particular time, Series A Preferred Members whose aggregate Series A Preferred Percentages equal one hundred percent (100%) of the aggregate Series A Preferred Percentages of all Series A Preferred Members at such time."

114. "Series A Preferred Percentage" means "with respect to each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage' on" Exhibit A, appended to the Gorham LLC Agreement.

115. Exhibit A to the Gorham LLC Agreement listed Zohar III's Series A Preferred Percentage as 100 percent.

116. Section 5.9 of the Gorham LLC Agreement states, "The Common Members, by vote of All of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

117. Section 5.12 states, "To be effective, any vote or other action permitted or required by this Agreement to be taken by the Common Members [or

by the Series A Preferred Members], unless otherwise specified herein, must be taken by the affirmative vote at a meeting (or, in lieu thereof, as permitted under Section 5.13, by written consent) of All of the Common Members [or All of the Series A Preferred Members]."

118.    Section 5.14 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum voting power that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent shall have the same force and effect as a vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

119.    Section 11.1 of the Gorham LLC Agreement is an integration clause, which states:

> This Agreement, together with Exhibit A hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.   There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to

41

the subject matter of this Agreement that are not
set forth or expressly referred to herein.

120.   Section 11.3 permits the Gorham LLC Agreement to be

"amended or modified from time to time only upon approval by (a) the Common

Members, by vote of All of the Common Members, and (b) the Series A Preferred

Members, by vote of All of the Series A Preferred Members."

**2.     2015 Amendment To The Gorham LLC Agreement**

121.   On September 22, 2015, the same date as other 2015

amendments and facing the same existential threats to her and Patriarch's roles

with Zohar Funds, Ms. Tilton caused Zohar III, as sole Common Member and

Series A Preferred Member of Gorham, to execute "Amendment No. 1 to Limited

Liability Company Agreement of Gorham Paper & Tissue, LLC" ("Gorham

Amendment One").  Gorham Amendment One sought to ensure Ms. Tilton would

remain Manager of Gorham indefinitely by requiring her consent for her removal.

No consideration supported Gorham Amendment One.

122.   Gorham Amendment One is an exact replica of the other 2015

amendments.  The first recital claims that the same "original intent" of Zohar III

was to give non-party Patriarch affiliates who are not Common Members of

Gorham—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II,

Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in

the Manager, directions to the Manager, dissolution of the Company and other

actions."  Like the other 2015 amendments, Gorham Amendment One attempts to

implement this supposed "original intent" by purporting to require "the consent of

all [Octaluna] Class B Members" related to Zohar III to carry out certain actions,

including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any

additional manager" or "amend[ing] this Agreement."

123.   In fact, no such original intent existed.  Rather, Gorham

Amendment One was a brazen attempt by Ms. Tilton to entrench herself as

Manager of Gorham by conditioning her removal on her own consent.

124.   Through Gorham Amendment One, Ms. Tilton caused Zohar III

to forfeit its right to remove the Manager.  Moreover, Zohar III received nothing in

exchange for forfeiting this right.

### 3.   Gorham's Common Members' November 28, 2017 Written Consent

125.   Consistent with its rights under the Gorham LLC Agreement,

on November 28, 2017, Zohar III, as Gorham's only Common Member, executed

and delivered to Gorham a written consent removing Ms. Tilton as Gorham's

Manager and electing AMZM as Gorham's new Manager (the "Gorham Consent").

126.   Under Sections 5.12 and 5.14 of the Gorham LLC Agreement,

the Gorham Consent is a valid action of Gorham's Common Members.

127.   Nevertheless, Gorham and Ms. Tilton have refused to recognize

the validity of the Gorham Consent.  Upon information and belief, Gorham and

43

Ms. Tilton take the position that Gorham Amendment One is valid and requires the consent of the Octaluna Class B Members related to Zohar III to remove and replace Gorham's Manager.

     E.    *Jewel of Jane LLC*

        **1.    Operative 2009 Jewel Of Jane LLC Agreement**

     128.   Zohar II owns 100 percent of the outstanding Common Interests and Series A Preferred Interests of Jewel of Jane.  As a result, Zohar II is the sole Common Member and Series A Preferred Member of Jewel of Jane.  Zohar II executed the Jewel of Jane LLC Agreement, dated as of December 24, 2009.

     129.   Section 1.1 of the Jewel of Jane LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

     130.   "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

     131.   "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

132.  "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Jewel of Jane LLC Agreement.

133.  Exhibit A to the Jewel of Jane LLC Agreement lists Zohar II's Common Percentage as 100 percent.

134.  "Series A Preferred Members" means "those Members from time to time holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

135.  "Series A Preferred Percentage" means "for each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the Jewel of Jane LLC Agreement.

136.  Exhibit A to the Jewel of Jane LLC Agreement lists Zohar II's Series A Preferred Percentage as 100 percent.

137.  Section 5.8 of the Jewel of Jane LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

138.  Section 5.11 states that "any action requiring the affirmative vote under this Agreement of the Common Members[ or] the Series A Preferred

45

Members . . . may be taken by a vote at a meeting or, in lieu thereof, by a written

consent of a Majority-in-Interest of the Common Members[ or] a Majority-in-

Interest of the Series A Preferred Members . . . , as applicable."

139.   Section 5.13 states, "Any action permitted or required by the

Act, the Certificate or this Agreement to be taken by the Manager or the Members

at a meeting may be taken without a meeting if a consent in writing, setting forth

the action to be taken, is signed by the Manager or by the Members having not less

than the minimum number of votes that would be necessary to authorize or take

such action at a meeting at which all Members entitled to vote thereon were

present and voted, as the case may be.  Such consent will have the same force and

effect as a vote at a meeting . . . and the execution of such consent will constitute

attendance or presence in person at a meeting of the Manager or such Members, as

the case may be."

140.   Section 11.1 of the Jewel of Jane LLC Agreement is an

integration clause, which states:

> This Agreement, together with Exhibit A hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.   There  are  no  agreements, arrangements  or  understandings,  oral  or  written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

141.    Section 11.3 permits the Jewel of Jane LLC Agreement to be "amended or modified from time to time only with the consent of a Majority-in-Interest of the Common Members" so long as the amendments do not "materially and adversely alter[] the powers, preferences or special rights" provided to the Series A Preferred Members or any other Membership Interests.

## 2.    2015 Amendment To The Jewel Of Jane LLC Agreement

142.    On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar II, as Common Member and Series Preferred A Member of Jewel of Jane, to execute "Amendment No. 2 to Limited Liability Company Agreement of Jewel of Jane, LLC" ("Jewel of Jane Amendment Two").[8]   Jewel of Jane Amendment Two sought to ensure Ms. Tilton would remain Manager of Jewel of Jane indefinitely by requiring her consent for her removal.   No consideration supported Jewel of Jane Amendment Two.

---

[8]    An error exists in the numbering of amendments to the Jewel of Jane LLC Agreement.   An amendment titled "Amendment No. 2 to Limited Liability Company Agreement of Jewel of Jane LLC," dated May 31, 2011, extends the Redemption Date of the Series A Preferred Interests from December 24, 2014, to December 31, 2016.   A different amendment titled "Amendment No. 2 to Limited Liability Company Agreement of Jewel of Jane LLC," dated September 22, 2015, purports to transfer Zohar II's membership interests to the Octaluna Class B Members.   It is the amendment executed on September 22, 2015, that is the subject of this action.

143.    Jewel of Jane Amendment Two is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of Zohar II:  that it wanted to give a non-party Patriarch affiliate—the Octaluna Class B Member related to Zohar II (*i.e.*, Patriarch Partners XIV, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."

144.    Like the other 2015 amendments, Jewel of Jane Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to Zohar II to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

145.    In fact, no such original intent existed.  Rather, Jewel of Jane Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of Jewel of Jane by conditioning her removal on her own consent.

146.    Through Jewel of Jane Amendment Two, Ms. Tilton caused Zohar II to purport to forfeit its right to remove the Manager.  Moreover, Zohar II received nothing in exchange for forfeiting this right.

### 3.    Jewel of Jane's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent

147.    Consistent with its rights under the Jewel of Jane LLC Agreement, on November 28, 2017, Zohar II, as Jewel of Jane's only Common

Member and Series A Preferred Member, executed and delivered to Jewel of Jane

a written consent removing Ms. Tilton as Jewel of Jane's Manager and electing

AMZM as Jewel of Jane's new Manager (the "Jewel of Jane Consent").

148.   Under Sections 5.11 and 5.13 of the Jewel of Jane LLC

Agreement, the Jewel of Jane Consent is a valid action of Jewel of Jane's Common

Members and Series A Preferred Members.

149.   Nevertheless, Jewel of Jane and Ms. Tilton have refused to

recognize the validity of the Jewel of Jane Consent.  Upon information and belief,

Jewel of Jane and Ms. Tilton take the position that Jewel of Jane Amendment Two

is valid and requires the consent of the Octaluna Class B Members related to Zohar

II to remove and replace Jewel of Jane's Manager.

F.   *LVD Acquisition, LLC (doing business as Oasis International)*

**1.   Operative 2009 LVD/Oasis LLC Agreement**

150.   The Zohar Funds own 100 percent of the outstanding Common

Interests of LVD/Oasis.  Zohar I owns 14.69 percent, Zohar II owns 62.36 percent,

and Zohar III owns 22.95 percent of the Common Interests of LVD/Oasis.  The

Zohar Funds are the only Common Members of LVD/Oasis.  The Zohar Funds

executed the LVD/Oasis LLC Agreement, dated as of March 31, 2009.

151.   Section 1.1 of the LVD/Oasis LLC Agreement defines terms

used therein.  "Manager" means "the Person appointed by the Common Members

to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

152.   "Common Members" means "those Members holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

153.   "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

154.   "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the LVD/Oasis LLC Agreement.

155.   Exhibit A to the LVD/Oasis LLC Agreement lists Zohar I's Common Percentage as 14.69 percent, Zohar II's Common Percentage as 62.36 percent, and Zohar III's Common Percentage as 22.95 percent.

156.   Section 5.8 of the LVD/Oasis LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

157.   Section 5.11 states, "Any action requiring the affirmative vote of the Common Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common Members that would have been entitled to vote at such meeting as permitted under Section 5.12."

158.   Section 5.12 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent will have the same force and effect as a vote at a meeting . . . and the execution of such consent will constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

159.   Section 11.1 of the LVD/Oasis LLC Agreement is an integration clause, which states:

> This Agreement, together with its Exhibits, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.   There are no agreements, arrangements or understandings, oral or written,

> between and among the parties hereto relating to
> the subject matter of this Agreement that are not
> set forth or expressly referred to herein.

160.   Section 11.3 permits the LVD/Oasis LLC Agreement to be "amended or modified from time to time only by the Members."

## 2.   2015 Amendment To The LVD/Oasis LLC Agreement

161.   On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as the only Common Members of LVD/Oasis, to execute "Amendment No. 2 to Limited Liability Company Agreement of LVD Acquisition, LLC" ("LVD/Oasis Amendment Two").  LVD/Oasis Amendment Two sought to ensure Ms. Tilton would remain Manager of LVD/Oasis indefinitely by requiring her consent for her removal.  No consideration supported LVD/Oasis Amendment Two.

162.   LVD/Oasis Amendment Two is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Common Members of LVD/Oasis—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over

changes in the Manager, directions to the Manager, dissolution of the Company and other actions."

163.    Like the other 2015 amendments, LVD/Oasis Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

164.    In fact, no such original intent existed.  Rather, LVD/Oasis Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of LVD/Oasis by conditioning her removal on her own consent.

165.    Through LVD/Oasis Amendment Two, Ms. Tilton caused the Zohar Funds to purport to forfeit their right to remove the Manager.  Moreover, the Zohar Funds received nothing in exchange for forfeiting this right.

### 3.    LVD/Oasis's Common Members' November 28, 2017 Written Consent

166.    Consistent with its rights under the LVD/Oasis LLC Agreement, on November 28, 2017, the Zohar Funds, as LVD/Oasis's only Common Members, executed and delivered to LVD/Oasis a written consent removing Ms. Tilton as LVD/Oasis's Manager and electing AMZM as LVD/Oasis's new Manager (the "LVD/Oasis Consent").

167.    Under Sections 5.11 and 5.12 of the LVD/Oasis LLC Agreement, the LVD/Oasis Consent is a valid action of LVD/Oasis's Common Members.

168.    Nevertheless, LVD/Oasis and Ms. Tilton have refused to recognize the validity of the LVD/Oasis Consent.  Upon information and belief, LVD/Oasis and Ms. Tilton take the position that LVD/Oasis Amendment Two is valid and requires the consent of the Octaluna Class B Members related to the Zohar Funds to remove and replace LVD/Oasis's Manager.

G.    *RM Acquisition, LLC*

1.    **Operative 2008 RM Operating Agreement**

169.    The Zohar Funds own 100 percent of the outstanding Common Interests and Series A Preferred Interests of RM.  Zohar I owns 17.09050 percent, Zohar II owns 56.96833 percent, and Zohar III owns 25.94118 percent of the Common Interests and Series A Preferred Interests of RM.  The Zohar Funds are the only Common Members and Series A Preferred Members of RM.  The Zohar Funds executed the RM Operating Agreement, dated as of April 29, 2008.

170.    Section 1.1 of the RM Operating Agreement defines terms used therein.  "Manager" means "the Person appointed by the Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

171.    "Common Members" means "those Members holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

172.    "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

173.    "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the RM Operating Agreement.

174.    Exhibit A to the RM Operating Agreement lists Zohar I's Common Percentage as 17.09050 percent, Zohar II's Common Percentage as 56.96833 percent, and Zohar III's Common Percentage as 25.94118 percent.

175.    "Series A Preferred Members" means "those Members holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

176.    "Series A Preferred Percentage" means "for each Series A Preferred Member, the amount listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the RM Operating Agreement.

177.   Exhibit A to the RM Operating Agreement lists Zohar I's Series A Preferred Percentage as 17.09050 percent, Zohar II's Series A Preferred Percentage as 56.96833 percent, and Zohar III's Series A Preferred Percentage as 25.94118 percent.

178.   Section 5.8 of the RM Operating Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, terminate the term of office of the Manager."

179.   Section 5.11 states, "Any action requiring the affirmative vote of the Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common Members that would have been entitled to vote at such meeting."

180.   Section 5.13 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken at a meeting of the Manager and/or the Members may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or all the Members, as the case may be.  Such consent shall have the same force and effect as a unanimous vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

181.   Section 11.1 of the RM Operating Agreement is an integration clause, which states, "This Agreement constitutes the entire governing regulations of the Company and supersedes all prior governing rules and regulations of the Company, whether oral or written."

182.   Section 11.3 permits the RM Operating Agreement to be "amended or modified from time to time only by the Members."

## 2.   2015 Amendment To The RM Operating Agreement

183.   On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as the only Common Members and Series A Preferred Members of RM, to execute "Amendment No. 4 to First Amended and Restated Limited Liability Company Agreement [sic] of RM Acquisition, LLC" ("RM Amendment Four").  RM Amendment Four sought to ensure Ms. Tilton would remain Manager of RM indefinitely by requiring her consent for her removal.  No consideration supported RM Amendment Four.

184.   RM Amendment Four is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Common Members or Series A Preferred Members of RM—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC,

Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  Like the other 2015 amendments, RM Amendment Four attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

185.   In fact, no such original intent existed.  Rather, RM Amendment Four was a brazen attempt by Ms. Tilton to entrench herself as Manager of RM by conditioning her removal on her own consent.

186.   Through RM Amendment Four, Ms. Tilton caused the Zohar Funds to purport to forfeit their right to remove the Manager.  Moreover, the Zohar Funds received nothing in exchange for forfeiting this right.

### 3.   RM's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent

187.   Consistent with its rights under the RM Operating Agreement, on November 28, 2017, the Zohar Funds, as RM's only Common Members and Series A Preferred Members, executed and delivered to RM a written consent removing Ms. Tilton as RM's Manager and electing AMZM as RM's new Manager (the "RM Consent").

188.   Under Sections 5.11 and 5.13 of the RM Operating Agreement, the RM Consent is a valid action of RM's Common Members and Series A Preferred Members.

189.   Nevertheless, RM and Ms. Tilton have refused to recognize the validity of the RM Consent.  Upon information and belief, RM and Ms. Tilton take the position that RM Amendment Four is valid and requires the consent of the Octaluna Class B Members related to the Zohar Funds to remove and replace RM's Manager.

H.   *Snelling Holdings, LLC*

1.   **Operative 2007 Snelling Holdings Operating Agreement**

190.   The Zohar Funds own 100 percent of the outstanding Membership Interests of Snelling Holdings.  Zohar I owns 22.3 percent, Zohar II owns 63.8 percent, and Zohar III owns 13.9 percent of the Membership Interests of Snelling Holdings.  The Zohar Funds are the only Members of Snelling Holdings. The Zohar Funds executed the Snelling Holdings Operating Agreement, dated as of October 1, 2007.

191.   Section 1.1 of the Snelling Holdings Operating Agreement defines terms used therein.  "Manager" means "the Person or Persons appointed by

the Members to serve as a Manager pursuant to Article V below.  The initial

Managers shall be Lynn Tilton and Peter Harris."[9]

192.   "Member" means "any Person executing this Agreement as a

member as of the date of this Agreement or hereafter admitted to the Company as a

member as provided in this Agreement. . . .  The initial Members shall be Zohar I,

Zohar II, and Zohar III."

193.   "Majority-in-Interest of the Members" means "at any particular

time, Members whose aggregate Percentage Interests exceed fifty percent (50%) of

the aggregate Percentage Interests of all Common Members at such time."

194.   "Percentage Interests" means "with respect to each Member,

the Percentage Interest listed for such Member set forth adjacent to its name in

Exhibit A," appended to the Snelling Holdings Operating Agreement.

195.   Exhibit A to the Snelling Holdings Operating Agreement lists

Zohar I's Percentage Interest as 22.3 percent, Zohar II's Percentage Interest as 63.8

percent, and Zohar III's Percentage Interest as 13.9 percent.

196.   Section 5.8 of the Snelling Holdings Operating Agreement

states, "The Members, upon a vote of a Majority-in-Interest of the Members, may,

---

[9]   Upon information and belief, Ms. Tilton caused herself to be appointed
sole Manager by unanimous written consent of the Zohar Funds on June 21, 2012.

at any time and with or without cause, terminate the term of office of all or any of the Manager."

197.   Section 5.11 states, "Any action requiring the affirmative vote of the Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Members that would have been entitled to vote at such meeting."

198.   Section 5.12 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken at a meeting of the Manager and/or the Members may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by all the Managers or all the Members, as the case may be.  Such consent shall have the same force and effect as a unanimous vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Managers or Members, as the case may be."

199.   Section 11.1 of the Snelling Holdings Operating Agreement is an integration clause, which states, "This Agreement constitutes the entire governing regulations of the Company and supersedes all prior governing rules and regulations of the Company, whether oral or written."

200.   Section 11.3 permits the Snelling Holdings Operating Agreement to be "amended or modified from time to time only by the Members."

## 2.     2015 Amendment To The Snelling Holdings Operating Agreement

201.   On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as the only Members of Snelling Holdings, to execute "Amendment No. 2 to Limited Liability Company Agreement [sic] of Snelling Holdings, LLC" ("Snelling Holdings Amendment Two").  Snelling Holdings Amendment Two sought to ensure Ms. Tilton would remain Manager of Snelling Holdings indefinitely by requiring her consent for her removal.  No consideration supported Snelling Holdings Amendment Two.

202.   Snelling Holdings Amendment Two is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Members of Snelling Holdings—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  Like the other 2015 amendments, Snelling Holdings Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or

replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

203.   In fact, no such original intent existed.  Rather, Snelling Holdings Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of Snelling Holdings by conditioning her removal on her own consent.

204.   Through Snelling Holdings Amendment Two, Ms. Tilton caused the Zohar Funds to purport to forfeit their right to remove the Manager. Moreover, the Zohar Funds received nothing in exchange for forfeiting this right.

### 3.   Snelling Holdings' Members' November 28, 2017 Written Consent

205.   Consistent with its rights under the Snelling Holdings Operating Agreement, on November 28, 2017, the Zohar Funds, as Snelling Holdings' only Members, executed and delivered to Snelling Holdings a written consent removing Ms. Tilton as Snelling Holdings' Manager and electing AMZM as Snelling Holdings' new Manager (the "Snelling Holdings Consent").

206.   Under Sections 5.11 and 5.12 of the Snelling Holdings Operating Agreement, the Snelling Holdings Consent is a valid action of Snelling Holdings' Members.

207.   Nevertheless, Snelling Holdings and Ms. Tilton have refused to recognize the validity of the Snelling Holdings Consent.  Upon information and belief, Snelling Holdings and Ms. Tilton take the position that Snelling Holdings

Amendment Two is valid and requires the consent of the Octaluna Class B Members related to the Zohar Funds to remove and replace Snelling Holdings' Manager.

I.   *Stila Styles, LLC*

   **1.   Operative 2009 Stila LLC Agreement**

208.   Zohar III owns 100 percent of the outstanding Common Interests and Series A Preferred Interests in Stila.  As a result, Zohar III is the sole Common Member and Series A Preferred Member of Stila.  Zohar III executed the Stila LLC Agreement, dated as of April 17, 2009.

209.   Section 1.1 of the Stila LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

210.   "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

211.   "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

212.   "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Stila LLC Agreement.

213.   Exhibit A to the Stila LLC Agreement lists Zohar III's Common Percentage as 100 percent.

214.   "Series A Preferred Members" means "those Members from time to time holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

215.   "Series A Preferred Percentage" means "with respect to each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the Stila LLC Agreement.

216.   Exhibit A to the Stila LLC Agreement lists Zohar III's Series A Preferred Percentage as 100 percent.

217.   Section 5.8 of the Stila LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

218.   Section 5.11 states, "Any action requiring the affirmative vote of the Common Members or the Series A Preferred Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written

consent of a Majority-in-Interest of the Common Members or a Majority-in-Interest of the Series A Preferred Members, as applicable, that would have been entitled to vote at such meeting as permitted under Section 5.13."

219.   Section 5.13 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent will have the same force and effect as a unanimous vote at a meeting . . . and the execution of such consent will constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

220.   Section 11.1 of the Stila LLC Agreement is an integration clause, which states:

> This Agreement, together with Exhibit A hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.   There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

221.   Section 11.3 permits the Stila LLC Agreement to be "amended or modified from time to time only by the Members."

**2.     2015 Amendment To The Stila LLC Agreement**

222.   On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar III, as sole Member of Stila, to execute "Amendment No. 3 to Limited Liability Company Agreement of Stila Styles, LLC" ("Stila Amendment Three").  Stila Amendment Three sought to ensure Ms. Tilton would remain Manager of Stila indefinitely by requiring her consent for her removal.  No consideration supported Stila Amendment Three.

223.   The first recital of Stila Amendment Three claims that the "original intent" of Zohar III was to give non-party Patriarch affiliates who are not Common Members or Series A Preferred Members of Stila—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  To manifest this supposed "original intent," Stila Amendment Three purports to require "the consent of all [Octaluna] Class B Members" related to Zohar III to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

67

224.    In fact, no such original intent existed.  Rather, Stila Amendment Three was a brazen attempt by Ms. Tilton to entrench herself as Manager of Stila by conditioning her removal on her own consent.

225.    Through Stila Amendment Three, Ms. Tilton caused Zohar III to forfeit its right to remove the Manager.  Moreover, Zohar III received nothing in exchange for forfeiting this right.

### 3.    Stila's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent

226.    Consistent with its rights under the Stila LLC Agreement, on November 28, 2017, Zohar III, as Stila's only Common Member and Series A Preferred Member, executed and delivered to Stila a written consent removing Ms. Tilton as Stila's Manager and electing AMZM as Stila's new Manager (the "Stila Consent").

227.    Under Sections 5.11 and 5.13 of the Stila LLC Agreement, the Stila Consent is a valid action of Stila's Common Members and Series A Preferred Members.

228.    Nevertheless, Stila and Ms. Tilton have refused to recognize the validity of the Stila Consent.  Upon information and belief, Stila and Ms. Tilton take the position that Stila Amendment Three is valid and requires the consent of the Octaluna Class B Members related to Zohar III to remove and replace Stila's Manager.

68

J.  *Dura Buyer, LLC*

**1.  Operative 2009 Dura Buyer LLC Agreement**

229.   Dura Buyer is owned by Zohar II, Zohar III, and Patriarch affiliate Ark II.  Zohar II owns 52.5 percent of the Common Interests in Dura Buyer, Zohar III owns 25.3 percent of the Common Interests in Dura Buyer, and Ark II owns 22.2 percent of the Common Interests in Dura Buyer.

230.   Upon information and belief, Ark II has no noteholders.  Ms. Tilton owns Ark II outright and she uses Ark II as her personal investment vehicle.

231.   Zohar II, Zohar III, and Ark II executed the Dura Buyer LLC Agreement, dated as of November 10, 2009.

232.   Section 1.1 of the Dura Buyer LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

233.   "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

234.   "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed

69

fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

235.   "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Dura Buyer LLC Agreement.

236.   Exhibit A to the Dura Buyer LLC Agreement lists Zohar II's Common Percentage as 52.49 percent, Zohar III's Common Percentage as 25.29 percent, and Ark II's Common Percentage as 22.22 percent.

237.   Thus, Zohar II alone constitutes a Majority-in-Interest of the Common Members.

238.   Section 5.8 of the Dura Buyer LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

239.   Section 5.11 states, "Any action requiring the affirmative vote of the Common Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common Members that would have been entitled to vote at such meeting as permitted under Section 5.12."

240.    Section 5.12 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent will have the same force and effect as a unanimous vote at a meeting . . . and the execution of such consent will constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

241.    Section 11.1 of the Dura Buyer LLC Agreement is an integration clause, which states:

> This Agreement, together with Exhibit A hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.  There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

242.    Section 11.3 permits the Dura Buyer LLC Agreement to be "amended or modified from time to time only by the Members."

## 2.    2011 Amendment To The Dura Buyer LLC Agreement

243.    Sometime in May 2011, Ms. Tilton caused Zohar II, Zohar III, and Ark II as Common Members of Dura Buyer, to execute "Amendment No. 1 to Limited Liability Company Agreement of Dura Buyer LLC" ("Dura Buyer Amendment One").  No consideration supported Dura Buyer Amendment One.

244.    Dura Buyer Amendment One added a new section 5.17 to Article V of the Denali Acquisition Operating Agreement that required unanimous consent of the Common Members for certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

245.    Through Dura Buyer Amendment One, Zohar II forfeited its right to remove the Manager at any time, with or without cause.  Moreover, Zohar II received nothing in exchange for forfeiting this right.

246.    Dura Buyer Amendment One is an inequitable self-dealing transaction that Ms. Tilton implemented to entrench herself as Manager of Dura Buyer.  Dura Buyer Amendment One is also void for lack of consideration because Zohar II forfeited its right to remove and replace the Manager unilaterally, but received nothing in exchange.

72

### 3.    2015 Amendment To The Dura Buyer LLC Agreement

247.   On September 22, 2015, the same date as other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar II, Zohar III, and Ark II as Common Members of Dura Buyer, to execute "Amendment No. 2 to Limited Liability Company Agreement of Dura Buyer, LLC" ("Dura Buyer Amendment Two"). Dura Buyer Amendment Two sought to ensure Ms. Tilton would remain Manager of Dura Buyer indefinitely by requiring her consent for her removal.  No consideration supported Dura Buyer Amendment Two.

248.   Dura Buyer Amendment Two is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of Zohar II, Zohar III, and Ark II:  that they wanted to give non-party Patriarch affiliates who are not Common Members of Dura Buyer—the Octaluna Class B Members related to Zohar II and Zohar III (*i.e.*, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, Phoenix VIII, LLC) and the Member of Ark II (Patriarch Partners II, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."

249.   Like the other 2015 amendments, Dura Buyer Amendment Two attempts to implement this supposed "original intent" by purporting to amend the section added in 2011 by Dura Buyer Amendment One to require "the consent of

73

all [Octaluna] Class B Members/Members" of Zohar II, Zohar III, and Ark II to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

250.   In fact, no such original intent existed.  Rather, Dura Buyer Amendment Two was a further brazen attempt by Ms. Tilton to entrench herself as Manager of Dura Buyer by conditioning her removal on her own consent.

251.   Like Dura Buyer Amendment One, through Dura Buyer Amendment Two, Ms. Tilton caused Zohar II and Zohar III to purport to forfeit their right to remove Dura Buyer's Manager.  Zohar II and Zohar III received nothing in exchange for forfeiting this right.

### 4.   Dura Buyer's Common Members' November 28, 2017 Written Consent

252.   Consistent with its rights under the Dura Buyer LLC Agreement, on November 28, 2017, Zohar II and Zohar III, as the Majority-in-Interest of the Common Members of Dura Buyer, executed and delivered to Dura Buyer a written consent removing Ms. Tilton as Dura Buyer's Manager and electing AMZM as Dura Buyer's new Manager (the "Dura Buyer Consent").

253.   Under Sections 5.11 and 5.12 of the Dura Buyer LLC Agreement, the Dura Buyer Consent is a valid action of Dura Buyer's Common Members.

254.   Nevertheless, Dura Buyer and Ms. Tilton have refused to recognize the validity of the Dura Buyer Consent.  Upon information and belief, Dura Buyer and Ms. Tilton take the position that Dura Buyer Amendments One and Two are valid and require the consent of the Octaluna Class B Members related to Zohar II and Zohar III to remove and replace Dura Buyer's Manager.

## VII.   Ms. Tilton Engages In Self-Dealing Transactions To Improperly Entrench Her Control Over IMG

255.   The Zohar Funds own all of the outstanding common stock in IMG.  Zohar I owns 1,016.5 shares or 16.9 percent of outstanding common stock. Zohar II owns 4,093.00 shares or 68.2 percent of outstanding common stock. Zohar III owns 890.50 shares or 14.8 percent of outstanding common stock.

256.   Under 8 *Del. C.* § 141(k), "Any director or the entire board of directors may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors . . . ."[10]  Zohar II's ownership of 4,093 shares of IMG stock constitutes a majority of the outstanding shares of common stock of IMG entitled to vote to remove and elect directors.

257.   On September 21, 2015, the day before Ms. Tilton caused the Zohar Funds to execute the purported 2015 amendments to the LLC agreements of the Portfolio LLCs, Ms. Tilton purported to cause the Zohar Funds to execute

---

[10]   IMG does not have a classified board or cumulative voting, so neither exception requiring cause for removal listed in 8 *Del. C.* § 141(k) applies.

irrevocable proxies just like the irrevocable proxies challenged by the Zohar Funds and tried to this Court in *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch. Ct.).

258.   Specifically, and just like the 2015 amendments to the LLC agreements, the second recital claims that it was the Zohar Funds' "original intent" to give non-party Patriarch affiliates who are not shareholders of IMG—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"the right to vote and act for the" Zohar Funds.

259.   Like the 2015 amendments to the LLC agreements, the IMG irrevocable proxies attempt to implement this supposed "original intent" by purporting to "authorize the [Octaluna Class B Members] to vote for the [Zohar Funds], as the [Zohar Funds'] proxy, at any and all meetings of the stockholders of the Company and, as the [Zohar Funds'] proxy, to consent or dissent without a meeting . . . including but not limited to the following matters:  (i) The election or removal of directors of the Company; (ii) Any amendments to the Company's certificate or articles of incorporation or by-laws . . . ."

260.   In fact, no such original intent existed.  Rather, the IMG irrevocable proxies were a brazen attempt by Ms. Tilton to entrench herself as director of IMG by conditioning her removal on her own consent.

261.   Through the IMG irrevocable proxies, Ms. Tilton caused Zohar II to forfeit its right to remove the director.

262.   The IMG irrevocable proxies are legally invalid because they are not coupled with an interest sufficient to support an irrevocable proxy under Delaware law.  The IMG irrevocable proxies are also equitably invalid because they are the result of a self-dealing transaction designed to entrench herself as IMG's director.

263.   Section 228(a) of the Delaware General Corporation Law provides:

> Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting which all shares entitled to vote thereon were present and voted an shall be delivered to the corporation by delivery to its registered office in this State, its principal place of business or an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to a corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

264.   IMG's Certificate of Incorporation does not prohibit stockholder action by written consent.

265.   IMG elects directors by a vote of the majority of the outstanding common stock.

266.   On November 28, 2017, the Zohar Funds, as owners of all of the outstanding common stock in IMG, executed and delivered to IMG a written consent removing Ms. Tilton as IMG's director and electing Tom Jones, Elizabeth LaPuma and Anthony McKiernan as IMG's new directors (the "IMG Consent").

267.   Under 8 *Del. C.* § 228 and settled Delaware law, the IMG Consent was effective upon its delivery to IMG on November 28, 2017, and IMG's former director was removed and replaced as director of IMG by Tom Jones, Elizabeth LaPuma and Anthony McKiernan.

268.   Nevertheless, IMG and Ms. Tilton have refused to recognize the validity of the IMG Consent.  Upon information and belief, IMG and Ms. Tilton take the position that the irrevocable proxies are valid and trasfer the voting rights of the Zohar Funds to the Octaluna Class B Members related to the Zohar Funds.

## Causes Of Action

### Count I
(Against Croscill And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

269.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

270.   Plaintiff Zohar III is the sole Common Member of Croscill. Under the Croscill LLC Agreement, Zohar III could remove Croscill's Manager at any time, with or without cause.

271.   Through Croscill Amendment Four, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Croscill's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

272.   Zohar III received no consideration for the transfer of its valuable membership rights, including voting rights, under Croscill Amendment Four and it is, therefore, legally invalid.  Croscill Amendment Four is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Croscill at the expense of Zohar III.

273.   Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Croscill Amendment Four is invalid, void, and of no force or effect, that it removed Ms. Tilton as Croscill's Manager under the provisions of the Croscill LLC Agreement, by vote of a simple majority of

Common Members, and that its election of AMZM as Croscill's new Manager is valid.

274.   Plaintiff Zohar III has no adequate remedy at law.

## Count II
(Against Denali Acquisition And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

275.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

276.   Plaintiff Zohar III is the sole Member of Denali Acquisition. Under the Denali Acquisition Operating Agreement, Zohar III could remove Denali Acquisition's Manager at any time, with or without cause.

277.   Through Denali Acquisition Amendment Two, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Denali Acquisition's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

278.   Zohar III received no consideration for the transfer of its valuable membership rights, including voting rights, under Denali Acquisition Amendment Two and it is, therefore, legally invalid.  Denali Acquisition Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Denali Acquisition at the expense of Zohar III.

279.   Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Denali Acquisition Amendment Two is invalid, void, and of no force or effect, that it removed Ms. Tilton as Denali Acquisition's Manager under the provisions of the Denali Acquisition Operating Agreement, by Member action, and that its election of AMZM as Denali Acquisition's new Manager is valid.

280.   Plaintiff Zohar III has no adequate remedy at law.

### Count III
(Against GAS And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

281.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

282.   Plaintiffs are the only Common Members of GAS.  Plaintiffs constitute All of the Common Members.  Under the GAS LLC Agreement, Plaintiffs could remove GAS's Manager at any time, with or without cause.

283.   Through GAS Amendment One, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove GAS's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

284.   The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under GAS Amendment, and it is, therefore, legally invalid.  GAS Amendment One is inequitable because it

is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of GAS at the expense of the Zohar Funds.

285.   Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that GAS Amendment One is invalid, void, and of no force or effect, that they removed Ms. Tilton as GAS's Manager under the provisions of the GAS LLC Agreement, by vote of a All of the Common Members, and that their election of AMZM as GAS's new Manager is valid.

286.   Plaintiffs have no adequate remedy at law.

### Count IV
(Against Gorham And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

287.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

288.   Plaintiff Zohar III is the sole Common Member of Gorham. Zohar III constitutes All of the Common Members.  Under the Gorham LLC Agreement, Plaintiffs could remove Gorham's Manager at any time, with or without cause.

289.   Through Gorham Amendment One, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Gorham's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

290.   Zohar III received no consideration for the transfer of its valuable membership rights, including voting rights, under Gorham Amendment One and it is, therefore, legally invalid.  Gorham Amendment One is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Gorham at the expense of Zohar III.

291.   Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Gorham Amendment One is invalid, void, and of no force or effect, that it removed Ms. Tilton as Gorham's Manager under the provisions of the Gorham LLC Agreement, by vote of a All of the Common Members, and that its election of AMZM as Gorham's new Manager is valid.

292.   Plaintiff Zohar III has no adequate remedy at law.

### Count V
(Against Jewel of Jane And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

293.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

294.   Plaintiff Zohar II is the sole Common Member of Jewel of Jane. Under the Jewel of Jane LLC Agreement, Zohar II could remove Jewel of Jane's Manager at any time, with or without cause.

295.   Through Jewel of Jane Amendment Two, Ms. Tilton purported to cause Zohar II to relinquish its right to remove Jewel of Jane's Manager at any

time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

296.   Zohar II received no consideration for the transfer of its valuable membership rights, including voting rights, under Jewel of Jane Amendment Two and it is, therefore, legally invalid.  Jewel of Jane Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Jewel of Jane at the expense of Zohar II.

297.   Plaintiff Zohar II is therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Jewel of Jane Amendment Two is invalid, void, and of no force or effect, that it removed Ms. Tilton as Jewel of Jane's Manager under the provisions of the Jewel of Jane LLC Agreement, by vote of a simple majority of Common Members, and that its election of AMZM as Jewel of Jane's new Manager is valid.

298.   Plaintiff Zohar II has no adequate remedy at law.

**<u>Count VI</u>**
(Against LVD/Oasis And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

299.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

300.   Plaintiffs are the only Common Members of LVD/Oasis. Under the LVD/Oasis LLC Agreement, Plaintiffs could remove LVD/Oasis's Manager at any time, with or without cause.

301.   Through LVD/Oasis Amendment Two, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove LVD/Oasis's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

302.   The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under LVD/Oasis Amendment Two and it is, therefore, legally invalid.  LVD/Oasis Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of LVD/Oasis at the expense of the Zohar Funds.

303.   Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that LVD/Oasis Amendment Two is invalid, void, and of no force or effect, that they removed Ms. Tilton as LVD/Oasis's Manager under the provisions of the LVD/Oasis LLC Agreement, by vote of a simple majority of Common Members, and that their election of AMZM as LVD/Oasis's new Manager is valid.

304.   Plaintiffs have no adequate remedy at law.

## Count VII

(Against RM And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

305.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

306.   Plaintiffs are the only Common Members of RM.  Under the RM Operating Agreement, Plaintiffs could remove RM's Manager at any time, with or without cause.

307.   Through RM Amendment Four, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove RM's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

308.   The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under RM Amendment Four and it is, therefore, legally invalid.  RM Amendment Four is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of RM at the expense of the Zohar Funds.

309.   Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that RM Amendment Four is invalid, void, and of no force or effect, that they removed Ms. Tilton as RM's Manager under the provisions of the

RM Operating Agreement, by vote of a simple majority of Common Members, and that their election of AMZM as RM's new Manager is valid.

310.    Plaintiffs have no adequate remedy at law.

## **Count VIII**
(Against Snelling Holdings And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

311.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

312.    Plaintiffs are the only Members of Snelling Holdings.  Under the Snelling Holdings Operating Agreement, Plaintiffs could remove Snelling Holdings' Manager at any time, with or without cause.

313.    Through Snelling Holdings Amendment Two, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove Snelling Holdings' Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

314.    The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under Snelling Holdings Amendment Two and it is, therefore, legally invalid.  Snelling Holdings Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Snelling Holdings at the expense of the Zohar Funds.

315.   Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Snelling Holdings Amendment Two is invalid, void, and of no force or effect, that they removed Ms. Tilton as Snelling Holdings' Manager under the provisions of the Snelling Holdings Operating Agreement, by vote of a simple majority of Members, and that their election of AMZM as Snelling Holdings' new Manager is valid.

316.   Plaintiffs have no adequate remedy at law.

### Count IX
(Against Stila And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

317.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

318.   Plaintiff Zohar III is the only Common Member of Stila.  Under the Stila LLC Agreement, Zohar III  could remove Stila's Manager at any time, with or without cause.

319.   Through Stila Amendment Three, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Stila's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

320.   Zohar III received no consideration for the transfer of its valuable membership rights, including voting rights, under Stila Amendment Three and it is, therefore, legally invalid.  Stila Amendment Three is inequitable because

it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Stila at the expense of Zohar III.

321.   Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Stila Amendment Three is invalid, void, and of no force or effect, that it removed Ms. Tilton as Stila's Manager under the provisions of the Stila LLC Agreement, by vote of a simple majority of Common Members, and that its election of AMZM as Stila's new Manager is valid.

322.   Plaintiff Zohar III has no adequate remedy at law.

## Count X
### (Against Dura Buyer And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

323.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

324.   Plaintiffs Zohar II and Zohar III are Common Members of Dura Buyer.  Zohar II alone constitutes the Majority-in-Interest of the Common Members.  Under the Dura Buyer LLC Agreement, Plaintiffs Zohar II and Zohar III could remove Dura Buyer's Manager at any time, with or without cause.

325.   Through Dura Buyer Amendment One and Dura Buyer Amendment Two, Ms. Tilton purported to cause Plaintiffs Zohar II and Zohar III to relinquish their right to remove Dura Buyer's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

326.    Zohar II and Zohar III received no consideration for the transfer of their valuable membership rights, including voting rights, under Dura Buyer Amendment One and Dura Buyer Amendment Two and these amendments are, therefore, legally invalid.  Dura Buyer Amendment One and Dura Buyer Amendment Two are inequitable because they are the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Dura Buyer at the expense of Zohar II and Zohar III.

327.    Plaintiffs Zohar II and Zohar III are therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Dura Buyer Amendment One and Dura Buyer Amendment Two are invalid, void, and of no force or effect, that they removed Ms. Tilton as Dura Buyer's Manager under the provisions of the Dura Buyer LLC Agreement, by vote of a simple majority of Common Members, and that their election of AMZM as Dura Buyer's new Manager is valid.

328.    Plaintiffs Zohar II and Zohar III have no adequate remedy at law.

### Count XI
(Against IMG And Lynn Tilton Under 8 *Del. C.* § 225)

329.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

330.    Plaintiffs Zohar Funds own all of the outstanding common stock of IMG.  Zohar II constitutes the majority of outstanding voting stock in

90

IMG.  Under the 8 *Del. C.* § 141(k), Plaintiff Zohar II could remove IMG's sole director at any time, with or without cause.

331.   Through the IMG irrevocable proxies, Ms. Tilton purported to cause Plaintiffs Zohar Funds to relinquish their right to remove IMG's sole director at any time, with or without cause, and to grant that right to Patriarch affiliates owned by Ms. Tilton.

332.   The IMG irrevocable proxies are legally invalid because they purport to be irrevocable but are not coupled with an interest sufficient under Delaware law.  The IMG irrevocable proxies are inequitable because they are the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the sole director of IMG at the expense of the Zohar Funds.

333.   Plaintiffs Zohar Funds are therefore entitled to a declaration under 8 *Del. C.* § 225 that the IMG irrevocable proxies are invalid, void, and of no force or effect, that they removed IMG's sole director under 8 *Del. C.* § 225, by vote of "the holders of a majority of the shares then entitled to vote at an election of directors," and that their election of Tom Jones, Elizabeth LaPuma and Anthony McKiernan as IMG's new directors is valid.

334.   Plaintiffs Zohar Funds have no adequate remedy at law.

**Prayer For Relief**

335.   WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request an order:

A.      Declaring that Croscill Amendment Four is invalid, void, and of no force or effect, and that Plaintiff Zohar III validly removed and replaced Croscill's Manager under the provisions of the Croscill LLC Agreement, by vote of a simple majority of Common Members.

B.      Declaring that Denali Acquisition Amendment Two is invalid, void, and of no force or effect, and that Plaintiff Zohar III validly removed and replaced Denali Acquisition's Manager under the provisions of the Denali Acquisition Operating Agreement, by vote of its Member.

C.      Declaring that GAS Amendment One is invalid, void, and of no force or effect, and that Plaintiffs validly removed and replaced GAS's Manager under the provisions of the GAS LLC Agreement, by vote of All of the Common Members.

D.      Declaring that Gorham Amendment One is invalid, void, and of no force or effect, and that Plaintiff Zohar III validly removed and replaced Gorham's Manager under the provisions of the Gorham LLC Agreement, by vote of All of the Common Members.

E.      Declaring that Jewel of Jane Amendment Two is invalid, void, and of no force or effect, and that Plaintiff Zohar II validly removed and replaced Jewel of Jane's Manager under the provisions of the Jewel of Jane LLC Agreement, by vote of a simple majority of Common Members.

F.      Declaring that LVD/Oasis Amendment Two is invalid, void, and of no force or effect, and that Plaintiffs validly removed and replaced LVD/Oasis's Manager under the provisions of the LVD/Oasis LLC Agreement, by vote of a simple majority of Common Members.

G.      Declaring that RM Amendment Four is invalid, void, and of no force or effect, and that Plaintiffs validly removed and replaced RM's Manager under the provisions of the RM Operating Agreement, by vote of a simple majority of Common Members.

H.      Declaring that Snelling Holdings Amendment Two is invalid, void, and of no force or effect, and that Plaintiffs validly removed and replaced Snelling Holdings' Manager under the provisions of the Snelling Holdings Operating Agreement, by vote of a simple majority of Members.

I.      Declaring that Stila Amendment Three is invalid, void, and of no force or effect, and that Plaintiff Zohar III validly removed and replaced Stila's Manager under the provisions of the Stila LLC Agreement, by vote of a simple majority of Common Members.

J.      Declaring that Dura Buyer Amendment One and Dura Buyer Amendment Two are invalid, void, and of no force or effect, and that Plaintiffs Zohar II and III validly removed and replaced Dura Buyer's Manager under the provisions of the Dura Buyer LLC Agreement, by vote of a simple majority of Common Members.

K.      Declaring that the IMG irrevocable proxies are invalid, void, and of no force or effect, and that Plaintiffs Zohar Funds validly removed and replaced IMG's sole director under the provisions of the Delaware General Corporate Law, by vote of a "majority of the share then entitled to vote at an election of directors."

L.      Awarding to Plaintiffs their costs, including attorney's fees, incurred in bring this action; and

M.      Granting such other and further relief as this Court may deem appropriate.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Kenneth J. Nachbar*

OF COUNSEL :                     Kenneth J. Nachbar (#2067)
                                 Megan Ward Cascio (#3785)
 QUINN EMANUEL                   Lauren K. Neal (#5940)
 URQUHART &                      Thomas P. Will (#6086)
 SULLIVAN, LLP                   1201 N. Market Street
Michael B. Carlinsky            P.O. Box 1347
Jonathan E. Pickhardt           Wilmington, DE 19899-1347
Ellison Ward Merkel             (302) 658-9200
Blair Adams                       *Attorneys for Plaintiffs*
51 Madison Avenue, 22nd
Floor
New York, NY 10010

November 29, 2017

95

**Table 1**

Summary Of Portfolio LLC Ownership And Relevant Removal Provisions

| | Portfolio LLC | Membership Interest Percentage | | | | 2011 Amend. No. | 2015 Amend. No. | Class Initially Permitted To Remove Manager | Initial Percentage Needed To Remove Manager |
|---|---|---|---|---|---|---|---|---|---|
| | | Zohar I | Zohar II | Zohar III | Ark II | | | | |
| 1 | Croscill | | | 100 | | 1 | 4 | Common Members | Majority |
| 2 | Denali Acquisition | | | 100 | | 1 | 2 | Member | N/A |
| 3 | Dura Buyer | | 52.5 | 25.3 | 22.2 | 1 | 2 | Common Members | Majority |
| 4 | GAS | 18.760 | 49.083 | 32.157 | | N/A | 1 | Common Members | All |
| 5 | Gorham | | | 100 | | N/A | 1 | Common Members | All |
| 6 | Jewel of Jane | | 100 | | | 1 | 2 | Common Members | Majority |
| 7 | LVD/Oasis | 14.69 | 62.36 | 22.95 | | 1 | 2 | Common Members | Majority |
| 8 | RM | 17.1 | 57 | 25.9 | | 1 | 4 | Common Members | Majority |
| 9 | Snelling Holdings | 22.3 | 63.8 | 13.9 | | 1 | 2 | Members | Majority |
| 10 | Stila | | | 100 | | 1 | 3 | Common Members | Majority |

**Table 2**

Summary Of The Zohar Funds' Ownership In IMG Holdings, Inc.

| | Corporation Name | Stock Ownership Percentage | | |
|---|---|---|---|---|
| | | Zohar I | Zohar II | Zohar III |
| 11 | IMG | 16.9 | 68.2 | 14.8 |

**EFiled:  Nov 29 2017 07:19PM EST**
**Transaction ID 61406799**
**Case No. 2017-0816-JRS**

# EXHIBIT A

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, *Plaintiffs*, v. CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company d/b/a OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, *Defendants*. | C.A. No. 2017-0816-JRS <u>**Verified Amended Complaint**</u> |

# Table Of Contents

Nature Of The Action ...................................................................................4

Jurisdiction ................................................................................................7

The Parties...................................................................................................8

Background ..............................................................................................13

I.     Formation Of The Zohar Funds And Role Of The Patriarch Managers..........13

II.    The Zohar Funds' Creditors And Collateral ...................................................16

III.   The Zohar Funds' Preference Shareholders............................................~~18~~19

IV.    The Zohar Funds Acquisition Of Equity In The Portfolio LLCs And IMG ~~20~~21

V.     The Zohar Funds' Failure To Repay Noteholders And Replacement Of
       The Patriarch Managers .......................................................................~~21~~22

VI.    Ms. Tilton Engages In Self-Dealing Transactions To Improperly
       Entrench Her Control Over The Zohar-Owned Portfolio LLCs.....................22

A.     Croscill Home LLC (formerly known as Croscill Acquisition, LLC) ........~~24~~25

       1.  Operative 2008 Croscill LLC Agreement ..............................................~~24~~25

       2.  2015 Amendment To The Croscill LLC Agreement ...............................~~27~~28

       3.  Croscill's Common Members' And Series A Preferred Members'
           November 28, 2017 Written Consent..................................................29

B.     Denali Acquisition LLC.............................................................~~28~~30

       1.  Operative 2008 Denali Acquisition Operating Agreement.....................~~28~~30

       2.  2015 Amendment To The Denali Acquisition Operating Agreement .....~~30~~32

       3.  Denali Acquisition's Members' November 28, 2017 Written Consent.......33

C.     Global Automotive Systems, LLC...........................................................~~31~~34

       1.  Operative 2013 GAS LLC Agreement....................................................~~31~~34

       2.  2015 Amendment To The GAS LLC Agreement ...................................~~33~~37

       3.  GAS's Common Members' November 28, 2017 Written Consent ............38

D.     Gorham Paper and Tissue, LLC ..............................................................~~35~~39

       1.  Operative 2011 Gorham LLC Agreement...............................................~~35~~39

       2.  2015 Amendment To The Gorham LLC Agreement...............................~~37~~42

       3.  Gorham's Common Members' November 28, 2017 Written Consent........43

E.     Jewel of Jane LLC...................................................................................~~38~~44

       1.  Operative 2009 Jewel Of Jane LLC Agreement ....................................~~38~~44

       2.  2015 Amendment To The Jewel Of Jane LLC Agreement ....................~~41~~47

3.   Jewel of Jane's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent...........................................48

F.   LVD Acquisition, LLC (doing business as Oasis International)................4249

1.   Operative 2009 LVD/Oasis LLC Agreement .........................................4249

2.   2015 Amendment To The LVD/Oasis LLC Agreement.........................4452

3.   LVD/Oasis's Common Members' November 28, 2017 Written Consent .........................................................................................................53

G.   RM Acquisition, LLC ...............................................................................4654

1.   Operative 2008 RM Operating Agreement .............................................4654

2.   2015 Amendment To The RM Operating Agreement .............................4857

3.   RM's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent...........................................58

H.   Snelling Holdings, LLC ............................................................................4959

1.   Operative 2007 Snelling Holdings Operating Agreement ......................4959

2.   2015 Amendment To The Snelling Holdings Operating Agreement ......5162

3.   Snelling Holdings' Members' November 28, 2017 Written Consent.........63

I.   Stila Styles, LLC .......................................................................................5364

1.   Operative 2009 Stila LLC Agreement.....................................................5364

2.   2015 Amendment To The Stila LLC Agreement.....................................5567

3.   Stila's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent.........................................................68

J.   Dura Buyer, LLC .......................................................................................5669

1.   Operative 2009 Dura Buyer LLC Agreement..........................................5669

2.   2011 Amendment To The Dura Buyer LLC Agreement .........................5872

3.   2015 Amendment To The Dura Buyer LLC Agreement .........................5973

4.   Dura Buyer's Common Members' November 28, 2017 Written Consent .........................................................................................................74

VII. Ms. Tilton Engages In Self-Dealing Transactions To Improperly Entrench Her Control Over IMG ...................................................................6175

Causes Of Action ...................................................................................................6380

Prayer For Relief.....................................................................................................7593

Plaintiffs Zohar CDO 2003-1, Limited ("Zohar I"), Zohar II 2005-1, Limited ("Zohar II"), and Zohar III, Limited ("Zohar III," and, collectively, the "Zohar Funds"), through their undersigned counsel, allege for their Verified Amended Complaint against Defendants Croscill Home LLC (formerly known as Croscill Acquisition, LLC) ("Croscill"), Denali Acquisition LLC ("Denali Acquisition"), Dura Buyer, LLC ("Dura Buyer"), Global Automotive Systems, LLC ("GAS"), Gorham Paper and Tissue, LLC ("Gorham"), Jewel of Jane LLC ("Jewel of Jane"), LVD Acquisition, LLC (doing business as Oasis International) ("LVD/Oasis"), RM Acquisition, LLC ("RM"), Snelling Holdings, LLC ("Snelling Holdings"), Stila Styles, LLC ("Stila," and, collectively, the "Portfolio LLCs"), IMG Holdings, Inc. ("IMG"), and Lynn Tilton as follows:

## Nature Of The Action

1.     This is an action brought by the Plaintiff Zohar Funds to resolve ongoing disputes regarding their ownership and control over the Defendant Portfolio LLCs, each a Delaware limited liability company ("LLC"), and IMG, a Delaware corporation.  Specifically, the Zohar Funds own, collectively or individually, all of the outstanding membership interests, including voting interests, of nine of the ten Portfolio LLCs:  Croscill, Denali Acquisition, GAS, Gorham, Jewel of Jane, LVD/Oasis, RM, Snelling Holdings, and Stila.  For each of these Portfolio LLCs, one or more of the Zohar Funds are the only members named under their governing

limited liability company agreements or operating agreement ("LLC agreements"). The Zohar Funds also own the majority of membership interests, including voting interests, in Dura Buyer, with an affiliate of Defendant Lynn Tilton, Ark II CLO 2001-1, Ltd. ("Ark II"),[1] holding a minority membership interest in Dura Buyer. The Zohar Funds own all of the outstanding common stock of IMG.

2.    Ms. Tilton currently acts as the sole manager of each Portfolio LLC and the sole director of IMG.  She has contended that, notwithstanding that the Zohar Funds are exclusive or majority holders of the membership interests in the Portfolio LLCs and sole owners of the outstanding common stock of IMG, they are powerless to remove Ms. Tilton and appoint a new manager or director.  The Zohar Funds dispute Ms. Tilton's position and bring this action for entry of an order declaring that they may remove Ms. Tilton and replace her with a new manager or managers for each of the Portfolio LLCs and a new director or directors for IMG.

3.    Ms. Tilton's contention that the Zohar Funds may not remove her as manager for the Portfolio LLCs is predicated upon amendments to their governing LLC agreements that she caused to be drafted and executed—in most cases, on the eve of her removal as collateral manager of the Zohar Funds—that purport to transfer certain of the Zohar Funds' membership rights, including voting

---

[1]    Upon information and belief, Ark II has no noteholders.  Ms. Tilton owns

rights, to entities that are wholly controlled by Ms. Tilton.  These amendments are substantively identical to the irrevocable proxies in respect of FSAR Holdings, Inc., Glenoit Universal Ltd., and UI Acquisition Holding Co. that were challenged by the Zohar Funds and tried to this Court in *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch. Ct.).  As was the case for the irrevocable proxies in that action, the amendments at issue in this action are unenforceable as they constitute blatant acts of inequitable self-dealing by Ms. Tilton.  They are also unenforceable for the additional reason that the amendments' one-way transfer of valuable rights from the Zohar Funds to Ms. Tilton's entities provided absolutely nothing of value to the Zohar Funds in return and thus fail for lack of consideration.

4.    Ms. Tilton's contention that the Zohar Funds may not remove her as director of IMG arises from irrevocable proxies that are identical to those challenged by the Zohar Funds and tried to this Court in *FSAR Holdings*.  The irrevocable proxies related to IMG are unenforceable here for the same reasons as in *FSAR Holdings*; they are blatant acts of inequitable self-dealing by Ms. Tilton that purport to irrevocably transfer, for a term of twenty years, the voting rights of the Zohar Funds to entities she controls.  The IMG irrevocable proxies are also invalid because they are not properly coupled with an interest.

---

Ark II outright and she uses Ark II as her personal investment vehicle.

5.     On November 28, 2017, the Zohar Funds executed and delivered to each company written consents to remove the manager of each of the Portfolio LLCs and the director of IMG and to elect new managers for each of the Portfolio LLCs and a new director of IMG.

6.     5. Accordingly, the Zohar Funds seek an order declaring that, consistent with the original governing agreement for each Portfolio LLC, as exclusive (or, for Dura Buyer, majority) holder of the membership interests of each Portfolio LLC, the Zohar Funds may remove and replace have validly removed the manager for each Portfolio LLC at any time, with or without cause and elected Alvarez & Marsal Zohar Management, LLC ("AMZM") as new manager for each Portfolio LLC.  The Zohar Funds also seek an order declaring that they may exercise their voting power as owners of all of IMG's outstanding common stock to remove and replace they have validly removed IMG's director and elected Tom Jones, Elizabeth LaPuma and Anthony McKiernan as new directors of IMG.

## Jurisdiction

7.     6. This Court has jurisdiction over this matter in respect of the Portfolio LLCs under 6 *Del. C.* §§§ 18-110, -111 because it is an application to determine the validity of an election and removal of a manager of a limited liability company and an action to "interpret, apply or enforce the provisions of a limited

liability company agreement" and "the rights or powers of, or restrictions on, the limited liability company, members or managers."

8.   7. This Court has jurisdiction over this matter in respect of IMG under 8 *Del. C.* § 225 because it is an action to determine "the right of any person to hold or continue to hold" the office of director.

9.   8. This Court has the power to declare rights, status and other legal relations under 10 *Del. C.* § 6501 because an actual controversy exists between the parties.

**The Parties**

10.   9. Plaintiff Zohar I is a Cayman Island exempt company.  At all times relevant hereto, Zohar I has been a member of the following Portfolio LLCs, as evidenced by their LLC agreements:

| Company | Class | Percentage |
|---|---|---|
| 1.  GAS | Common Interest | 18.760% |
| 2.  LVD/Oasis | Common Interest | 14.69% |
| 3.  RM | Common Interest | 17.09050% |
|  | Series A Preferred Interest | 17.09050% |
| 4.  Snelling Holdings | Membership Interest | 22.3% |

Zohar I also owns 16.9 percent of the outstanding common stock of IMG, consisting of 1,016.5 shares.

       11.   10. Plaintiff Zohar II is a Cayman Island exempt company.  At all times relevant hereto, Zohar II has been a member of the following Portfolio LLCs, as evidenced by their LLC agreements:

| Company | Class | Percentage |
|---------|-------|-----------|
| 1.  Dura Buyer | Common Interest | 52.49% |
| 2.  GAS | Common Interest | 49.083% |
| 3.  Jewel of Jane | Common Interest | 100% |
| | Series A Preferred Interest | 100% |
| 4.  LVD/Oasis | Common Interest | 62.36% |
| 5.  RM | Common Interest | 56.96833% |
| | Series A Preferred Interest | 56.96833% |
| 6.  Snelling Holdings | Membership Interest | 63.8% |

Zohar II also owns 68.2 percent of the outstanding common stock of IMG, consisting of 4,093.0 shares.

       12.   11. Plaintiff Zohar III is a Cayman Island exempt company.  At all times relevant hereto, Zohar III has been a member of the following Portfolio LLCs, as evidenced by their LLC agreements:

9

| Company | Class | Percentage |
|---|---|---|
| 1. Croscill | Common Interest | 100% |
| | Series A Preferred Interest | 100% |
| 2. Denali | Membership Interest | 100% |
| 3. Dura Buyer | Common Interest | 25.29% |
| 4. GAS | Common Interest | 32.157% |
| 5. Gorham | Common Interest | 100% |
| | Series A Preferred Interest | 100% |
| 6. LVD/Oasis | Common Interest | 22.95% |
| 7. RM | Common Interest | 25.94118% |
| | Series A Preferred Interest | 25.94118% |
| 8. Snelling Holdings | Membership Interest | 13.9% |
| 9. Stila | Common Interest | 100% |
| | Series A Preferred Interest | 100% |

Zohar III also owns 14.8 percent of the outstanding common stock of IMG,

consisting of 890.5 shares.

13. 12. Defendant Croscill Home LLC (formerly known as Croscill

Acquisition, LLC) (previously defined as "Croscill") is a Delaware limited liability

company.  Croscill's governing agreement is the Limited Liability Company

Agreement of Croscill Acquisition, LLC dated as of November 7, 2008 (the "Croscill LLC Agreement").

14.   ~~13.~~ Defendant Denali Acquisition LLC (previously defined as "Denali") is a Delaware limited liability company.  Denali's governing agreement is the Operating Agreement of Denali Acquisition LLC dated as of June 6, 2008 (the "Denali Acquisition Operating Agreement").

15.   ~~14.~~ Defendant Dura Buyer, LLC (previously defined as "Dura Buyer") is a Delaware limited liability company.  Dura Buyer's governing agreement is the Limited Liability Company Agreement of Dura Buyer, LLC dated as of November 10, 2009 (the "Dura Buyer LLC Agreement").

16.   ~~15.~~ Defendant Global Automotive Systems, LLC (previously defined as "GAS") is a Delaware limited liability company.  GAS's governing agreement is the Amended and Restated Limited Liability Company Agreement of Global Automotive Systems, LLC dated as of March 9, 2013 (the "GAS LLC Agreement").

17.   ~~16.~~ Defendant Gorham Paper and Tissue, LLC (previously defined as "Gorham") is a Delaware limited liability company.  Gorham's governing agreement is the Limited Liability Company Agreement of Gorham Paper and Tissue, LLC dated as of May 13, 2011 (the "Gorham LLC Agreement").

11

18.   17. Defendant IMG Holdings, Inc. (previously defined as "IMG") is a Delaware corporation.  IMG's registered agent is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

19.   18. Defendant Jewel of Jane LLC (previously defined as "Jewel of Jane") is a Delaware limited liability company.  Jewel of Jane's governing agreement is the Limited Liability Company Agreement of Jewel of Jane LLC dated as of December 24, 2009 (the "Jewel of Jane LLC Agreement").

20.   19. Defendant LVD Acquisition, LLC (doing business as Oasis International) (previously defined as "LVD/Oasis") is a Delaware limited liability company.  LVD/Oasis's governing agreement is the Limited Liability Company Agreement of LVD Acquisition, LLC dated as of March 31, 2009 (the "LVD/Oasis LLC Agreement").

21.   20. Defendant RM Acquisition, LLC (previously defined as "RM") is a Delaware limited liability company.  RM's governing agreement is the First Amended and Restated Operating Agreement of RM Acquisition, LLC signed on April 29, 2008, and intended to be effective for all purposes as of December 2, 2007 (the "RM Operating Agreement").

22.   21. Defendant Snelling Holdings, LLC (previously defined as "Snelling Holdings") is a Delaware limited liability company.  Snelling Holding's

governing agreement is the Operating Agreement of Snelling Holdings, LLC dated as of October 1, 2007 (the "Snelling Holdings Operating Agreement").

23.   22. Defendant Stila Styles, LLC (previously defined as "Stila") is a Delaware limited liability company.  Stila's governing agreement is the Limited Liability Company Agreement of Stila Styles, LLC dated as of April 17, 2009 (the "Stila LLC Agreement").

24.   23. Defendant Lynn Tilton is, on information and belief, the principal of Patriarch and its affiliates, and is the sole manager of each of the Portfolio LLCs and sole director of IMG.[2]

## **Background**

## I.   **Formation Of The Zohar Funds And Role Of The Patriarch Managers**

25.   24. The Zohar Funds are collateralized loan obligation ("CLO") transactions that raised capital through the sale of notes for the ostensible purpose of investing in corporate debt and other assets.  The first Zohar Fund, Zohar I, launched in November 2003, raising approximately $530 million from the sale of notes. Zohar II and Zohar III followed in January 2005 and April 2007, respectively, each raising approximately $1 billion from the sale of notes.

---

[2]   Tables 1 and 2, which are summariesSummaries of the Zohar Funds' percentage ownership, organized by Portfolio LLC and IMG, and relevant removal provisions are attachedappended to this verified amended complaint as Exhibit A.Tables 1 and 2.

26.   ~~25.~~ Prior to March 2016, the Zohar Funds were managed by affiliates of Patriarch Partners, LLC ("Patriarch"), an investment firm owned by Ms. Tilton.  Patriarch Partners VIII, LLC was Zohar I's collateral manager, Patriarch Partners XIV, LLC was Zohar II's collateral manager, and Patriarch Partners XV, LLC was Zohar III's collateral manager.  Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, and Patriarch Partners XV, LLC are collectively referred to below as the "Patriarch Managers."

27.   ~~26.~~ The rights of the Zohar Funds' Noteholders and the obligations of the Zohar Funds are set forth in Indentures.  The roles and obligations of the collateral manager were set out in the Collateral Management Agreements ("CMAs") for each of the Zohar Funds.[3]  The Patriarch Managers were tasked with managing the loans and other assets of the Zohar Funds.  The CMAs set forth a "Standard of Care," requiring that the Collateral Manager "use reasonable care and the same degree of skill and attention" that, among other things, is "exercised by institutional investment managers of national standing generally in respect of assets

---

[3]   The CMAs are expressly made subject to the terms of the Indentures, with provisions of the Indentures controlling over conflicting provisions in the CMAs. *See* Zohar I CMA § 7.14; Zohar II CMAs, § 7.14; Zohar III CMA, § 7.13.

14

of the nature and character of the Collateral and for clients having similar investment objections and restrictions." CMAs § 2.4.[4]

28. 27. The CMAs also expressly prohibited any action by the Collateral Manager that would "cause the [Zohar Funds] to violate the terms of the Indenture," CMAs § 2.6, such as by "transfer[ring] . . . any part of the Collateral, except as expressly permitted by th[e] Indenture," Indentures § 7.8(a)(i).

29. 28. While Section 6.2 of the CMAs acknowledges that the Collateral Manager may have certain conflicts of interest, it does not provide exculpation for self-dealing transactions.[5] CMAs § 6.2. Rather, Section 6.2(b) provides that nothing in Section 6.2 "shall be construed as altering the duties of the Collateral Manager as set forth in this Agreement or the Indenture nor the requirements of any law, rule or regulation applicable to the Collateral Manager." And Section 12.3 of the Indentures expressly provides that any transaction "if

---

[4] Citations to "CMAs" are to parallel sections in the Zohar I CMA, Zohar II CMA, and Zohar III CMA unless citation to a separate CMA is necessary. Likewise, citations to "Indentures" are to parallel sections in the Zohar I Indenture, Zohar II Indenture, and Zohar III Indenture, and citations to "Preference Share Paying Agency Agreements" are to parallel sections in the Preference Share Paying Agency Agreement for each Zohar Fund, unless a separate citation is necessary.

[5] Although the CMAs provide limited exculpation for the Collateral Manager and certain affiliates, they do not cover "acts or omissions constituting fraud, bad faith, willful misconduct, gross negligence or breach of fiduciary duty in the

effected with the Collateral Manager . . . or any affiliate of [the Collateral Manager] shall be effected on terms as favorable to the Noteholders as would be the case if such Person were not so Affiliated."  Indentures § 12.3(a).  Thus, the Indentures expressly provide that transactions between the Zohar Funds and Patriarch or its affiliates must be on terms no less favorable than would be obtained in an arms-length transaction.

30.  ~~29.~~ Finally, like all investment advisers, the Patriarch Managers owed general fiduciary duties of care and loyalty to the Zohar Funds in providing advisory services and acting as the Zohar Funds' agent and attorney-in-fact in administering the Zohar Funds' investment activities.  These common law and statutory fiduciary duties are in addition to the specific duties of care set forth in the CMAs.

## II.   The Zohar Funds' Creditors And Collateral

31.  ~~30.~~ The Zohar Funds are special purpose entities that have limited business purposes that include (i) issuing collateralized loan obligations ("Notes") and using the proceeds to acquire certain types of assets that are pledged as Collateral for the sole benefit of the Noteholders, (ii) managing the Collateral for the benefit of the Secured Parties (which includes the Noteholders and, for Zohar I

performance, or reckless disregard, of the duties of the Collateral Manager . . . ." CMAs § 4.4.

and Zohar II, MBIA both as Noteholder and as Credit Enhancer), and (iii) repaying the Notes at or before their maturity from proceeds generated from the Collateral. Indentures § 7.12.  The holders of Notes issued by the Zohar Funds (and the Credit Enhancer who insured certain Notes for Zohar I and Zohar II) are the Funds' primary Secured Party creditors.

32.   31. The Zohar Funds' Indentures give the Secured Parties  "a continuing security interest in, and lien on" the property of the Zohar Funds. Indentures at 1.  The security interest and lien granted to the Noteholders and other Secured Parties is extremely broad, encompassing:

> all of [the Zohar Fund's] right, title and interest in, to and under, in each case, whether now owned or existing, or hereafter acquired or arising, all accounts, payment intangibles, general intangibles, letter-of-credit rights, chattel paper, electronic chattel paper, instruments, deposit accounts, investment property (each, as defined in the UCC), and any and all other property of any type or nature owned by it (other than Excluded Property) . . . .

Indentures at 1.  The "Excluded Property" as to which the Noteholders do not have a security interest consists solely of $1,500 in cash.  Zohar I Indenture at 28; Zohar II Indenture at 28; Zohar III Indenture at 26.

33.   32. The Zohar Funds were intended to have limited duration, as the Notes that the Funds issued had (in the case of Zohar I and Zohar II) and have (in the case of Zohar III) a Stated Maturity date on which they must be repaid. Indentures § 2.2(b).  The Indentures contemplate that Collateral that does not mature

17

prior to the Stated Maturity—essentially, all of the remaining property of the Funds—will be sold to generate proceeds to repay the Notes.  Zohar I Indenture § 12.2(e)[6]; Zohar II Indenture § 12.2(e); Zohar III Indenture § 12.2(d).  Moreover, upon an Event of Default and acceleration of the Notes—whether it is a non-payment of interest or principal when due, or certain other Events of Default—the Trustee is empowered to cause the sale of the Collateral if the proceeds are sufficient to repay the Notes.  Indentures § 5.5(a)(i).  The Trustee must also sell the Collateral upon the Event of Default and acceleration of the Notes when the Controlling Party (or, in the case of Zohar III, the Controlling Class) directs it to—whether the proceeds of such a sale would be sufficient to repay the Notes in full or not.  Indentures §§ 5.4(a)(ii), 5.5(a)(ii).  Thus, the intent of the Indentures is clear: unless and until the Notes are repaid, the Collateral is held solely for the benefit of the Secured Parties (primarily the Noteholders and, in the case of Zohar I and Zohar II, MBIA as Credit Enhancer).

34.  33. In turn, the Noteholders have recourse only to the Collateral.  Indentures § 2.6(i).  Following realization of the Collateral, "any claims of the Noteholders . . . shall be extinguished, and shall not thereafter revive."  Indentures §

---

[6]   On June 19, 2015, MBIA and Patriarch agreed to a Fifth Supplemental Indenture for Zohar I that amended Section 12.2(e) to permit (rather than require) the liquidation of Collateral.

2.6(i).  Thus, Secured Parties' security interest in the Collateral—and the right of the

Controlling Party or Controlling Class to cause the sale of the Collateral upon

non-payment of principal at the Stated Maturity or upon any other Event of Default

and acceleration of Notes—is not only critical to the Noteholders, but is inherent in

the Zohar Funds' basic structure.

### III.  The Zohar Funds' Preference Shareholders

35.   34. In addition to selling Notes to investors, the Zohar Funds

issued Preference Shares which are currently owned by an entity owned and

controlled by Ms. Tilton.

36.   35. Patriarch affiliate Octaluna, LLC holds Zohar I's Preference

Shares.  Octaluna, LLC has three classes of members:  Class A, Class B, and Class

C.  The sole Class B Member of Octaluna (which is relevant here for reasons set

forth below) is the original Collateral Manager of Zohar I, Patriarch Partners VIII,

LLC.  Patriarch Partners VIII, LLC is also named the Managing Member of

Octaluna, LLC.

37.   36. Patriarch affiliate Octaluna II, LLC holds Zohar II's

Preference Shares.  Octaluna II, LLC has three classes of members:  Class A, Class

B, and Class C.  The sole Class B Member of Octaluna II, LLC is the original

Collateral Manager of Zohar II, Patriarch Partners XIV, LLC.  Patriarch Partners

XIV, LLC is also named the Managing Member of Octaluna II, LLC.

38. 37. Patriarch affiliate Octaluna III, LLC holds Zohar III's Preference Shares.  Octaluna III, LLC has three classes of members: Class A, Class B, and Class C.  The Class B Members of Octaluna III, LLC are Ark II (58.3 percent),  Patriarch Partners XV, LLC, the original Collateral Manager of Zohar III (25 percent), and Phoenix VIII, LLC (16.7 percent).  Patriarch XV, LLC is named the Managing Member of Octaluna III, LLC.

39. 38. Octaluna I, LLC, Octaluna II, LLC, and Octaluna III, LLC, are collectively referred to herein as the "Octalunas."  The Class B Members of Octalunas are collectively referred to herein as the "Octaluna Class B Members."

40. 39. The Preference Shareholder of each Zohar Fund is entitled only to a capped amount of dividends (that the Preference Shareholders have received) and whatever cash remains after the Notes are paid in full after the sale or self-liquidation of Collateral.  The Preference Shares' final distributions (if any) are payable solely from amounts on deposit in the Preference Share Distribution Account.  Preference Share Paying Agency Agreements § 2.6(c).  Any amounts deposited in the Preference Share Distribution Account are subordinated to the Notes' interest and principal, *id.* § 2.6(d), and come from the remaining funds in the last step in the Indenture interest and principal proceeds waterfall.  Zohar I Indenture § 11.1(a)(i)(M), (a)(ii)(J); Zohar II Indenture § 11.1(a)(i)(M), (a)(ii)(J); Zohar III Indenture § 11.1(a)(i)(P), (a)(ii)(I).

IV.   **The Zohar Funds Acquisition Of Equity In The Portfolio LLCs And IMG**

41.   ~~40.~~ Much of the Collateral acquired by the Zohar Funds consisted of loans extended to small- to mid-sized manufacturing companies.  The entire consideration for the acquisition of these loans came from funds in the Zohar Funds' accounts.  In many instances, either in the same transaction in which the Zohar Funds extended loans, or though subsequent transactions in which those loans were restructured, the Zohar Funds also acquired equity positions in the borrowers.  These equity positions were titled and beneficially owned in the Zohar Funds' names and thus constituted part of the Collateral under the Zohar Funds' Indentures that served as security for repayment of the Noteholders (or, as appropriate in respect of Zohar I and Zohar II, the Credit Enhancer).

42.   ~~41.~~ In the case of each of the Portfolio LLCs at issue in this action, the Zohar Funds extended one or more loans to each of the Portfolio Companies and simultaneously acquired equity interests.  In each instance, that equity was in the form of membership interests titled in the name of the Zohar Funds pursuant to the governing LLC agreement for each Portfolio LLC.  In the case of IMG, the Zohar Funds acquired common stock of IMG in a restructuring of loans extended to IMG and in a legal settlement with IMG's founders.  Those equity positions, including the rights attendant to them, constituted Collateral under the Zohar Funds' Indentures.

21

## V.   The Zohar Funds' Failure To Repay Noteholders And Replacement Of The Patriarch Managers

43.   42. Under the management of the Patriarch Managers, the Zohar Funds performed dismally.  On November 20, 2015, Zohar I defaulted on its obligation to repay Noteholders.  Zohar I's assets were subsequently sold by the Zohar I Trustee at auction to MBIA as the highest bidder.

44.   43. On March 2, 2016, the Patriarch Managers resigned as Collateral Managers for the Zohar Funds.  Alvarez & Marsal Zohar Management ("AMZM") was appointed as Collateral Manager for each of the Zohar Funds.

45.   44. On January 20, 2017, Zohar II defaulted on its obligation to repay Noteholders and MBIA paid approximately $770 million in claims on the outstanding principal and interest due to the Class A-1, Class A-2, and Class A-3 Noteholders and was subrogated to all of their rights.  It remains in default today.

46.   45. Zohar III faces imminent default on its obligation to repay Noteholders on April 15, 2019.

## VI.   Ms. Tilton Engages In Self-Dealing Transactions To Improperly Entrench Her Control Over The Zohar-Owned Portfolio LLCs

47.   46. As discussed above, the Zohar Funds' equity ownership is memorialized, among other places, in the LLC agreements setting forth the corporate governance of the Portfolio LLCs.  The LLC agreement for each Portfolio LLC also provides for the process for removing and replacing the manager of each

Portfolio LLC.  In two separate self-dealing transactions, Ms. Tilton caused the

Zohar Funds to amend the LLC agreement for each Portfolio LLC and purportedly

forfeit valuable membership interests, including their rights to remove and replace

the manager of each Portfolio LLC.

48.  47. In May 2011, Ms. Tilton caused the Zohar Funds to execute

amendments to the LLC agreements that replaced the majority voting requirement

for removal and replacement of the manager with a unanimous voting requirement.[7]

These amendments sought to secure Ms. Tilton's ability to prevent her own removal

as manager of the Portfolio LLCs even if she was removed as Collateral Manager

whichever Zohar Fund independently owned a majority of the membership interests

and thus could have unilaterally removed Tilton.  Moreover, in each instance, the

Zohar Fund that gave up its ability to unilaterally exercise majority control received

no consideration for this amendment.

49.  48. With the exception of Dura Buyer, the Zohar

Funds—individually or collectively—own 100 percent of the membership interests

---

[7]   This is true for eight of the Portfolio LLCs:  (1) Croscill; (2) Denali
Acquisition; (3) Dura Buyer; (4) Jewel of Jane; (5) LVD/Oasis; (6) RM; (7) Snelling
Holdings; and (8) Stila.  The LLC agreements for the two other Portfolio LLCs,
GAS and Gorham, were executed in or after 2011.  Thus, rather than cause GAS and
Gorham to execute amendments, Ms. Tilton caused GAS and Gorham to enter into
LLC agreements that required a unanimous vote of the Common Members to
remove and replace the manager.

in the Portfolio LLCs.   Therefore, as the Zohar Funds are presently seeking in unison to remove Ms. Tilton, the imposition of a unanimous voting requirement in 2011, while improper, does not present a current impediment to the Zohar Funds' efforts, other than with regard to Dura Buyer.

50.   49. In September 2015, when it became clear that Zohar I was on the verge of defaulting on its obligation to repay the principal amounts of the Notes it had issued, Ms. Tilton again sought to entrench herself as manager of the Portfolio LLCs.  At the time, Ms. Tilton conceded that she had already begun taking affirmative steps to prepare for her removal as manager following the Zohar I default.  One of those steps included an extreme, self-interested, defensive maneuver to entrench herself as manager of the Portfolio LLCs.

51.   50. Specifically, on September 22, 2015—one day after executing the irrevocable proxies at issue in *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch. Ct.)—Ms. Tilton caused the Zohar Funds to execute amendments to the LLC agreements that purportedly transferred certain of the Zohar Funds' membership rights, including the right to remove Ms. Tilton as manager, to the Octaluna Class B Members—*i.e.*, Patriarch-affiliated entities that have never held any right or interest under the LLC agreements and that were entirely owned and controlled by Ms. Tilton.  Like the irrevocable proxies, these amendments claimed to implement the "original intent" of the parties, but no such

original intent existed.  Ms. Tilton signed each of these amendments on behalf of all of the parties.  Moreover, the Zohar Funds received no consideration in exchange for this supposed transfer of their valuable membership interests to the Octaluna Class B Members under the 2015 amendments.

A.   *Croscill Home LLC (formerly known as Croscill Acquisition, LLC)*

1.   **Operative 2008 Croscill LLC Agreement**

52.   ~~51.~~ Zohar III owns 100 percent of the outstanding Common Interests and Series A Preferred Interests of Croscill.  As a result, Zohar III is the sole Common Member and Series A Preferred Member of Croscill.  Zohar III executed the Croscill LLC Agreement, dated as of November 7, 2008.

53.   ~~52.~~ Section 1.1 of the Croscill LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

54.   ~~53.~~ "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

55.   ~~54.~~ "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages

25

exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

56. ~~55.~~ "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Croscill LLC Agreement.

57. ~~56.~~ Exhibit A to the Croscill LLC Agreement lists Zohar III's Common Percentage as 100 percent.

58. ~~57.~~ "Series A Preferred Members" means "those Members from time to time holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

59. ~~58.~~ "Series A Preferred Percentage" means "for each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the Croscill LLC Agreement.

60. ~~59.~~ Exhibit A to the Croscill LLC Agreement lists Zohar III's Series A Preferred Percentage as 100 percent.

61. ~~60.~~ Section 5.8 of the Croscill LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

62.     Section 5.11 states, "Any action requiring the affirmative vote of the Common Members or the Series A Preferred Members under this Agreement . . . may be taken . . . by a written consent of a Majority-in-Interest of the Common Members or a Majority-in-Interest of the Series A Preferred Members, as applicable, that would have been entitled to vote at such meeting as permitted under Section 5.13."

63.     Section 5.13 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent shall have the same force and effect as a vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

64.     61. Section 11.1 of the Croscill LLC Agreement is an integration clause, which states:

> This Agreement, together with its Exhibits, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject

27

matter hereof.   There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

65.   62. Section 11.3 permits the Croscill LLC Agreement to be "amended or modified from time to time only by the Members."

## 2.   **2015 Amendment To The Croscill LLC Agreement**

66.   63. In September 2015, facing the imminent principal payment default of Zohar I and the similarly dire financial condition of Zohar II and Zohar III, Ms. Tilton anticipated the Patriarch Managers' imminent removal or resignation as Collateral Manager of the Zohar Funds.  With this in mind, on September 22, 2015, Ms. Tilton caused Zohar III, as sole Common Member and Series A Preferred Member of Croscill, to execute "Amendment No. 4 to Limited Liability Company Agreement of Croscill Acquisition, LLC" ("Croscill Amendment Four").  Croscill Amendment Four sought to ensure Ms. Tilton would remain Manager of Croscill indefinitely by requiring her consent for her removal.  No consideration supported Croscill Amendment Four.

67.   64. The first recital of Croscill Amendment Four claims that the "original intent" of Zohar III was to give non-party Patriarch affiliates who are not Common Members or Series A Preferred Members of Croscill—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC, and

Phoenix VIII, LLC)—"control over changes in the Manager, directions to the

Manager, dissolution of the Company and other actions."  To manifest this supposed

"original intent," Croscill Amendment Four purports to require "the consent of all

[Octaluna] Class B Members" related to Zohar III for certain actions, including

"remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional

manager" or "amend[ing] this Agreement."

68.   65. In fact, no such original intent existed.  Rather, Croscill

Amendment Four was a brazen attempt by Ms. Tilton to entrench herself as Manager

of Croscill by conditioning her removal on her own consent.

69.   66. Through Croscill Amendment Four, Ms. Tilton caused Zohar

III to purport to forfeit its right to remove the Manager.  Moreover, Zohar III

received nothing in exchange for forfeiting this right.

### 3.    Croscill's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent

70.    Consistent with its rights under the Croscill LLC Agreement, on

November 28, 2017, Zohar III, as Croscill's only Common Member and Series A

Preferred Member, executed and delivered to Croscill a written consent removing

Ms. Tilton as Croscill's Manager and electing AMZM as Croscill's new Manager

(the "Croscill Consent").

29

71.     Under Sections 5.11 and 5.13 of the Croscill LLC Agreement, the Croscill Consent is a valid action of Croscill's Common Members and Series A Preferred Members.

72.     Nevertheless, Croscill and Ms. Tilton have refused to recognize the validity of the Croscill Consent.  Upon information and belief, Croscill and Ms. Tilton take the position that Croscill Amendment Four is valid and requires the consent of the Octaluna Class B Members related to Zohar III to remove and replace Croscill's Manager.

B.    *Denali Acquisition LLC*

1.    **Operative 2008 Denali Acquisition Operating Agreement**

73.    67. Zohar III owns 100 percent of the outstanding Membership Interests of Denali Acquisition.  As a result, Zohar III is the sole Member of Denali Acquisition.  Zohar III executed the Denali Acquisition Operating Agreement, dated as of June 6, 2008.

74.    68. Section 1.1 of the Denali Acquisition Operating Agreement defines terms used therein.  "Manager" has the meaning given to it in Section 5.1, which states that "the powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, managers ('Managers')" and "the Managers may make all decisions and take all actions for the Company not otherwise provided for in this Agreement."

30

Section 5.3 states, "The initial Manager of the Company shall be Lynn Tilton.  The number of Managers of the Company shall be determined by time to time by action of the Member."

75.    69. "Member" means "any Person executing this Agreement as of the date of this Agreement as a member or hereafter admitted to the Company as a member."

76.    70. "Membership Interest" means "the interests of a Member in the Company, including, without limitation, rights to distributions (liquidating or otherwise) and allocations."

77.    71. Zohar III is the only Person who executed the Denali Acquisition Operating Agreement as a Member and Exhibit A to the Denali Acquisition Operating Agreement lists Zohar III as the only Member.

78.    72. Section 5.4 of the Denali Acquisition Operating Agreement states, "The Member may, at any time and with or without cause, terminate the term of office of all or any of the Managers.  Such removal shall be effective immediately upon Member action even if successors are not elected simultaneously."

79.    73. Section 11.3 of the Denali Acquisition Operating Agreement is an integration clause, which states, "This Agreement constitutes the entire governing agreement of the Company and supersedes all prior governing agreements of the Company, whether oral or written."

31

80.   74. Section 11.5 permits the Denali Acquisition Operating

Agreement to be "amended or modified from time to time only by the Member."

### 2.   2015 Amendment To The Denali Acquisition Operating Agreement

81.   75. On September 22, 2015, the same date as Croscill

Amendment Four and facing the same existential threats to her and Patriarch's roles

with Zohar Funds, Ms. Tilton caused Zohar III, as sole Member of Denali

Acquisition, to execute "Amendment No. 2 to Limited Liability Company

Agreement [sic] of Denali Acquisition, LLC" ("Denali Acquisition Amendment

Two").  Denali Acquisition Amendment Two sought to ensure Ms. Tilton would

remain Manager of Denali Acquisition indefinitely by requiring her consent for her

removal.  No consideration supported Denali Acquisition Amendment Two.

82.   76. Denali Acquisition Amendment Two is an exact replica of

Croscill Amendment Four.  The first recital claims that the same "original intent" of

Zohar III:  that it wanted to give non-party Patriarch affiliates who are not Members

of Denali Acquisition—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark

II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in

the Manager, directions to the Manager, dissolution of the Company and other

actions."  Like Croscill Amendment Four, Denali Acquisition Amendment Two

attempts to implement this supposed "original intent" by purporting to require "the

consent of all [Octaluna] Class B Members" related to Zohar III to carry out certain

actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

83. ~~77.~~ In fact, no such original intent existed.  Rather, Denali Acquisition Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of Denali Acquisition by conditioning her removal on her own consent.

84. ~~78.~~ Through Denali Acquisition Amendment Two, Ms. Tilton caused Zohar III to purport to forfeit its right to remove the Manager.  Moreover, Zohar III received nothing in exchange for forfeiting this right.

### 3.   Denali Acquisition's Members' November 28, 2017 Written Consent

85. Consistent with its rights under the Denali Acquisition Operating Agreement, on November 28, 2017, Zohar III, as Denali Acquisition's only Member, executed and delivered to Danali Acquisition a written consent removing Ms. Tilton as Denali Acquisition's Manager and electing AMZM as Denali Acquisition's new Manager (the "Denali Acquisition Member Action").

86. Under Section 5.4 of the Denali Acquisition Operating Agreement, the Denali Acquisition Member Action is the only valid action required to remove and replace Denali Acquisition's manager.

87. Nevertheless, Denali Acquisition and Ms. Tilton have refused to recognize the validity of the Denali Acquisition Member Action.  Upon information and belief, Denali Acquisition and Ms. Tilton take the position that Denali

33

Acquisition Amendment Two is valid and requires the consent of the Octaluna Class
B Members related to Zohar III to remove and replace Denali Acquisition's
Manager.

    C.    *Global Automotive Systems, LLC*

        1.    **Operative 2013 GAS LLC Agreement**

88.  ~~79.~~ The Zohar Funds own 100 percent of GAS.  Zohar I owns 18.760 percent, Zohar II owns 49.083 percent, and Zohar III owns 32.157 percent of the Common Interests.  The Zohar Funds are the only Members of GAS.

89.  ~~80.~~ The Zohar Funds executed the GAS LLC Agreement on March 9, 2013.

90.  ~~81.~~ Section 1.1 of the GAS LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The Manager is Lynn Tilton."

91.  ~~82.~~ "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

92.  ~~83.~~ "All of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages equal one hundred percent (100%) of the aggregate Common Percentages of all Common Members at such time."

34

93.   84. "Common Percentage" means "with respect to each

Common Member, the percentage listed as such Common Member's 'Common

Percentage' on" Exhibit A, appended to the GAS LLC Agreement.

94.   85. Exhibit A to the GAS LLC Agreement listed Zohar I's

Common Percentage as 18.760 percent, Zohar II's Common Percentage as 49.083

percent, and Zohar III's Common Percentage as 32.157 percent.

95.   86. Section 5.9 of the GAS LLC Agreement states, "The

Common Members, by vote of All of the Common Members, may, at any time and

with or without cause, remove and replace the Manager."

96.   Section 5.12 states, "To be effective, any vote or other action

permitted or required by this Agreement to be taken by the Common Members,

unless otherwise specified herein, must be taken by the affirmative vote at a meeting

(or, in lieu thereof, as permitted under Section 5.13, by written consent) of All of the

Common Members."

97.   Section 5.13 states, "Any action permitted or required by the

Act, the Certificate or this Agreement to be taken by the Manager or the Members at

a meeting may be taken without a meeting if a consent in writing, setting forth the

action to be taken, is signed by the Manager or by the Members having not less than

the minimum voting power that would be necessary to authorize or take such action

at a meeting at which all Members entitled to vote thereon were present and voted, as

the case may be.  Such consent shall have the same force and effect as a vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

98.   87. Section 11.1 of the GAS LLC Agreement is an integration clause, which states:

> This Agreement, together with <u>Schedule A</u> hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.  There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

99.   88. Section 11.3 permits the GAS LLC Agreement to be "amended or modified from time to time only upon approval by the Common Members, by vote of All of the Common Members."

### 2.   2015 Amendment To The GAS LLC Agreement

100.   89. On September 22, 2015, the same date as other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as Common Members of GAS, to execute "Amendment No. 1 to Amended and Restated Limited Liability Company Agreement of Global Automotive Systems, LLC" ("GAS Amendment One").  GAS

Amendment One sought to ensure Ms. Tilton would remain Manager of GAS indefinitely by requiring her consent for her removal.  No consideration supported GAS Amendment One.

101.  90. GAS Amendment One is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Common Members of GAS—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  Like the other 2015 amendments, GAS Amendment One attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

102.  91. In fact, no such original intent existed.  Rather, GAS Amendment One was a brazen attempt by Ms. Tilton to entrench herself as Manager of GAS by conditioning her removal on her own consent.

103.  ~~92.~~ Through GAS Amendment One, Ms. Tilton caused the Zohar

Funds to forfeit their right to remove the Manager.  Moreover, the Zohar Funds

received nothing in exchange for forfeiting this right.

### 3.    GAS's Common Members' November 28, 2017 Written Consent

104.   Consistent with its rights under the GAS LLC Agreement, on

November 28, 2017, the Zohar Funds, as GAS's only Common Members, executed

and delivered to GAS a written consent removing Ms. Tilton as GAS's Manager and

electing AMZM as GAS's new Manager (the "GAS Consent").

105.   Under Sections 5.12 and 5.13 of the GAS LLC Agreement, the

GAS Consent is a valid action of GAS's Common Members.

106.   Nevertheless, GAS and Ms. Tilton have refused to recognize the

validity of the GAS Consent.  Upon information and belief, GAS and Ms. Tilton

take the position that GAS Amendment One is valid and requires the consent of the

Octaluna Class B Members related to the Zohar Funds to remove and replace GAS's

Manager.

D.   *Gorham Paper and Tissue, LLC*

### 1.   Operative 2011 Gorham LLC Agreement

107.  ~~93.~~ Zohar III owns 100 percent of the outstanding Common

Interests and Series A Preferred Interests of Gorham.  As a result, Zohar III is the

sole Common Member and Series A Preferred Member of Gorham.  Zohar III

executed the Gorham LLC Agreement, dated as of May 13, 2011.

108.  94. Section 1.1 of the Gorham LLC Agreement defines terms

used therein.  "Manager" means "the Person appointed by the Common Members to

serve as a Manager pursuant to Article V below.  The initial Manager is Lynn

Tilton."

109.  95. "Common Members" means "those Members from time to

time holding Common Interests, solely in their capacity as holders of the Common

Interests and not in any other capacity."

110.  96. "All of the Common Members" means "at any particular

time, Common Members whose aggregate Common Percentages equal one hundred

percent (100%) of the aggregate Common Percentages of all Common Members at

such time."

111.  97. "Common Percentage" means "with respect to each

Common Member, the percentage listed as such Common Member's 'Common

Percentage' on" Exhibit A, appended to the Gorham LLC Agreement.

112.  98. Exhibit A to the Gorham LLC Agreement listed Zohar III's

Common Percentage as 100 percent.

113.  99. "All of the Series A Preferred Members" means "at any

particular time, Series A Preferred  Members whose aggregate Series A Preferred

39

Percentages equal one hundred percent (100%) of the aggregate Series A Preferred Percentages of all Series A Preferred Members at such time."

114.   ~~100.~~ "Series A Preferred Percentage" means "with respect to each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage' on" Exhibit A, appended to the Gorham LLC Agreement.

115.   ~~101.~~ Exhibit A to the Gorham LLC Agreement listed Zohar III's Series A Preferred Percentage as 100 percent.

116.   ~~102.~~ Section 5.9 of the Gorham LLC Agreement states, "The Common Members, by vote of All of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

117.   Section 5.12 states, "To be effective, any vote or other action permitted or required by this Agreement to be taken by the Common Members [or by the Series A Preferred Members], unless otherwise specified herein, must be taken by the affirmative vote at a meeting (or, in lieu thereof, as permitted under Section 5.13, by written consent) of All of the Common Members [or All of the Series A Preferred Members]."

118.   Section 5.14 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the

40

action to be taken, is signed by the Manager or by the Members having not less than the minimum voting power that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent shall have the same force and effect as a vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

119. 103. Section 11.1 of the Gorham LLC Agreement is an integration clause, which states:

> This Agreement, together with Exhibit A hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.   There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

120. 104. Section 11.3 permits the Gorham LLC Agreement to be "amended or modified from time to time only upon approval by (a) the Common Members, by vote of All of the Common Members, and (b) the Series A Preferred Members, by vote of All of the Series A Preferred Members."

## 2. 2015 Amendment To The Gorham LLC Agreement

121. ~~105.~~ On September 22, 2015, the same date as other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar III, as sole Common Member and Series A Preferred Member of Gorham, to execute "Amendment No. 1 to Limited Liability Company Agreement of Gorham Paper & Tissue, LLC" ("Gorham Amendment One").  Gorham Amendment One sought to ensure Ms. Tilton would remain Manager of Gorham indefinitely by requiring her consent for her removal.  No consideration supported Gorham Amendment One.

122. ~~106.~~ Gorham Amendment One is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of Zohar III was to give non-party Patriarch affiliates who are not Common Members of Gorham—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  Like the other 2015 amendments, Gorham Amendment One attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to Zohar III to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

42

123.   ~~107.~~ In fact, no such original intent existed.  Rather, Gorham Amendment One was a brazen attempt by Ms. Tilton to entrench herself as Manager of Gorham by conditioning her removal on her own consent.

124.   ~~108.~~ Through Gorham Amendment One, Ms. Tilton caused Zohar III to forfeit its right to remove the Manager.  Moreover, Zohar III received nothing in exchange for forfeiting this right.

### 3.   Gorham's Common Members' November 28, 2017 Written Consent

125.   Consistent with its rights under the Gorham LLC Agreement, on November 28, 2017, Zohar III, as Gorham's only Common Member, executed and delivered to Gorham a written consent removing Ms. Tilton as Gorham's Manager and electing AMZM as Gorham's new Manager (the "Gorham Consent").

126.   Under Sections 5.12 and 5.14 of the Gorham LLC Agreement, the Gorham Consent is a valid action of Gorham's Common Members.

127.   Nevertheless, Gorham and Ms. Tilton have refused to recognize the validity of the Gorham Consent.  Upon information and belief, Gorham and Ms. Tilton take the position that Gorham Amendment One is valid and requires the consent of the Octaluna Class B Members related to Zohar III to remove and replace Gorham's Manager.

E.     *Jewel of Jane LLC*

1.     **Operative 2009 Jewel Of Jane LLC Agreement**

128.   ~~109.~~ Zohar II owns 100 percent of the outstanding Common Interests and Series A Preferred Interests of Jewel of Jane.  As a result, Zohar II is the sole Common Member and Series A Preferred Member of Jewel of Jane.  Zohar II executed the Jewel of Jane LLC Agreement, dated as of December 24, 2009.

129.   ~~110.~~ Section 1.1 of the Jewel of Jane LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

130.   ~~111.~~ "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

131.   ~~112.~~ "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

132.   ~~113.~~ "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Jewel of Jane LLC Agreement.

44

133.   ~~114.~~ Exhibit A to the Jewel of Jane LLC Agreement lists Zohar II's Common Percentage as 100 percent.

134.   ~~115.~~ "Series A Preferred Members" means "those Members from time to time holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

135.   ~~116.~~ "Series A Preferred Percentage" means "for each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the Jewel of Jane LLC Agreement.

136.   ~~117.~~ Exhibit A to the Jewel of Jane LLC Agreement lists Zohar II's Series A Preferred Percentage as 100 percent.

137.   ~~118.~~ Section 5.8 of the Jewel of Jane LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

138.   Section 5.11 states that "any action requiring the affirmative vote under this Agreement of the Common Members[ or] the Series A Preferred Members . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common Members[ or] a Majority-in-Interest of the Series A Preferred Members . . . , as applicable."

139.   Section 5.13 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent will have the same force and effect as a vote at a meeting . . . and the execution of such consent will constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

140.   119. Section 11.1 of the Jewel of Jane LLC Agreement is an integration clause, which states:

> This Agreement, together with Exhibit A hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.  There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

141.   120. Section 11.3 permits the Jewel of Jane LLC Agreement to be "amended or modified from time to time only with the consent of a Majority-in-Interest of the Common Members" so long as the amendments do not

"materially and adversely alter[] the powers, preferences or special rights" provided to the Series A Preferred Members or any other Membership Interests.

### 2.   2015 Amendment To The Jewel Of Jane LLC Agreement

142. ~~121.~~ On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar II, as Common Member and Series Preferred A Member of Jewel of Jane, to execute "Amendment No. 2 to Limited Liability Company Agreement of Jewel of Jane, LLC" ("Jewel of Jane Amendment Two").[8] Jewel of Jane Amendment Two sought to ensure Ms. Tilton would remain Manager of Jewel of Jane indefinitely by requiring her consent for her removal. No consideration supported Jewel of Jane Amendment Two.

143. ~~122.~~ Jewel of Jane Amendment Two is an exact replica of the other 2015 amendments. The first recital claims that the same "original intent" of Zohar II: that it wanted to give a non-party Patriarch affiliate—the Octaluna Class B

---

[8]   An error exists in the numbering of amendments to the Jewel of Jane LLC Agreement. An amendment titled "Amendment No. 2 to Limited Liability Company Agreement of Jewel of Jane LLC," dated May 31, 2011, extends the Redemption Date of the Series A Preferred Interests from December 24, 2014, to December 31, 2016. A different amendment titled "Amendment No. 2 to Limited Liability Company Agreement of Jewel of Jane LLC," dated September 22, 2015, purports to transfer Zohar II's membership interests to the Octaluna Class B Members. It is the amendment executed on September 22, 2015, that is the subject of this action.

Member related to Zohar II (*i.e.*, Patriarch Partners XIV, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."

144.   ~~123.~~ Like the other 2015 amendments, Jewel of Jane Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to Zohar II to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

145.   ~~124.~~ In fact, no such original intent existed.  Rather, Jewel of Jane Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of Jewel of Jane by conditioning her removal on her own consent.

146.   ~~125.~~ Through Jewel of Jane Amendment Two, Ms. Tilton caused Zohar II to purport to forfeit its right to remove the Manager.  Moreover, Zohar II received nothing in exchange for forfeiting this right.

### 3.   Jewel of Jane's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent

147.   Consistent with its rights under the Jewel of Jane LLC Agreement, on November 28, 2017, Zohar II, as Jewel of Jane's only Common Member and Series A Preferred Member, executed and delivered to Jewel of Jane a written consent removing Ms. Tilton as Jewel of Jane's Manager and electing AMZM as Jewel of Jane's new Manager (the "Jewel of Jane Consent").

148.   Under Sections 5.11 and 5.13 of the Jewel of Jane LLC Agreement, the Jewel of Jane Consent is a valid action of Jewel of Jane's Common Members and Series A Preferred Members.

149.   Nevertheless, Jewel of Jane and Ms. Tilton have refused to recognize the validity of the Jewel of Jane Consent.  Upon information and belief, Jewel of Jane and Ms. Tilton take the position that Jewel of Jane Amendment Two is valid and requires the consent of the Octaluna Class B Members related to Zohar II to remove and replace Jewel of Jane's Manager.

F.   *LVD Acquisition, LLC (doing business as Oasis International)*

   1.   **Operative 2009 LVD/Oasis LLC Agreement**

150.   126. The Zohar Funds own 100 percent of the outstanding Common Interests of LVD/Oasis.  Zohar I owns 14.69 percent, Zohar II owns 62.36 percent, and Zohar III owns 22.95 percent of the Common Interests of LVD/Oasis.  The Zohar Funds are the only Common Members of LVD/Oasis.  The Zohar Funds executed the LVD/Oasis LLC Agreement, dated as of March 31, 2009.

151.   127. Section 1.1 of the LVD/Oasis LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

49

152.   128. "Common Members" means "those Members holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

153.   129. "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

154.   130. "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the LVD/Oasis LLC Agreement.

155.   131. Exhibit A to the LVD/Oasis LLC Agreement lists Zohar I's Common Percentage as 14.69 percent, Zohar II's Common Percentage as 62.36 percent, and Zohar III's Common Percentage as 22.95 percent.

156.   132. Section 5.8 of the LVD/Oasis LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

157.   Section 5.11 states, "Any action requiring the affirmative vote of the Common Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common

Members that would have been entitled to vote at such meeting as permitted under Section 5.12."

158.   Section 5.12 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent will have the same force and effect as a vote at a meeting . . . and the execution of such consent will constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

159.   ~~133.~~ Section 11.1 of the LVD/Oasis LLC Agreement is an integration clause, which states:

> This Agreement, together with its Exhibits, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.  There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

160.   134. Section 11.3 permits the LVD/Oasis LLC Agreement to be "amended or modified from time to time only by the Members."

2.   **2015 Amendment To The LVD/Oasis LLC Agreement**

161.   135. On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as the only Common Members of LVD/Oasis, to execute "Amendment No. 2 to Limited Liability Company Agreement of LVD Acquisition, LLC" ("LVD/Oasis Amendment Two"). LVD/Oasis Amendment Two sought to ensure Ms. Tilton would remain Manager of LVD/Oasis indefinitely by requiring her consent for her removal.  No consideration supported LVD/Oasis Amendment Two.

162.   136. LVD/Oasis Amendment Two is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Common Members of LVD/Oasis—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."

163.   137. Like the other 2015 amendments, LVD/Oasis Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

164.   138. In fact, no such original intent existed.  Rather, LVD/Oasis Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of LVD/Oasis by conditioning her removal on her own consent.

165.   139. Through LVD/Oasis Amendment Two, Ms. Tilton caused the Zohar Funds to purport to forfeit their right to remove the Manager.  Moreover, the Zohar Funds received nothing in exchange for forfeiting this right.

### 3.   LVD/Oasis's Common Members' November 28, 2017 Written Consent

166.   Consistent with its rights under the LVD/Oasis LLC Agreement, on November 28, 2017, the Zohar Funds, as LVD/Oasis's only Common Members, executed and delivered to LVD/Oasis a written consent removing Ms. Tilton as LVD/Oasis's Manager and electing AMZM as LVD/Oasis's new Manager (the "LVD/Oasis Consent").

167.   Under Sections 5.11 and 5.12 of the LVD/Oasis LLC Agreement, the LVD/Oasis Consent is a valid action of LVD/Oasis's Common Members.

168.   Nevertheless, LVD/Oasis and Ms. Tilton have refused to recognize the validity of the LVD/Oasis Consent.  Upon information and belief, LVD/Oasis and Ms. Tilton take the position that LVD/Oasis Amendment Two is valid and requires the consent of the Octaluna Class B Members related to the Zohar Funds to remove and replace LVD/Oasis's Manager.

G.   *RM Acquisition, LLC*

1.   **Operative 2008 RM Operating Agreement**

169.   ~~140.~~ The Zohar Funds own 100 percent of the outstanding Common Interests and Series A Preferred Interests of RM.  Zohar I owns 17.09050 percent, Zohar II owns 56.96833 percent, and Zohar III owns 25.94118 percent of the Common Interests and Series A Preferred Interests of RM.  The Zohar Funds are the only Common Members and Series A Preferred Members of RM.  The Zohar Funds executed the RM Operating Agreement, dated as of April 29, 2008.

170.   ~~141.~~ Section 1.1 of the RM Operating Agreement defines terms used therein.  "Manager" means "the Person appointed by the Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

171.   ~~142.~~ "Common Members" means "those Members holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

172.   143. "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

173.   144. "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the RM Operating Agreement.

174.   145. Exhibit A to the RM Operating Agreement lists Zohar I's Common Percentage as 17.09050 percent, Zohar II's Common Percentage as 56.96833 percent, and Zohar III's Common Percentage as 25.94118 percent.

175.   146. "Series A Preferred Members" means "those Members holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

176.   147. "Series A Preferred Percentage" means "for each Series A Preferred Member, the amount listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the RM Operating Agreement.

177.   148. Exhibit A to the RM Operating Agreement lists Zohar I's Series A Preferred Percentage as 17.09050 percent, Zohar II's Series A Preferred Percentage as 56.96833 percent, and Zohar III's Series A Preferred Percentage as 25.94118 percent.

178.   ~~149.~~ Section 5.8 of the RM Operating Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, terminate the term of office of the Manager."

179.   Section 5.11 states, "Any action requiring the affirmative vote of the Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common Members that would have been entitled to vote at such meeting."

180.   Section 5.13 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken at a meeting of the Manager and/or the Members may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or all the Members, as the case may be. Such consent shall have the same force and effect as a unanimous vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

181.   ~~150.~~ Section 11.1 of the RM Operating Agreement is an integration clause, which states, "This Agreement constitutes the entire governing regulations of the Company and supersedes all prior governing rules and regulations of the Company, whether oral or written."

182.  ~~151.~~ Section 11.3 permits the RM Operating Agreement to be "amended or modified from time to time only by the Members."

### 2.    2015 Amendment To The RM Operating Agreement

183.  ~~152.~~ On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as the only Common Members and Series A Preferred Members of RM, to execute "Amendment No. 4 to First Amended and Restated Limited Liability Company Agreement [sic] of RM Acquisition, LLC" ("RM Amendment Four").  RM Amendment Four sought to ensure Ms. Tilton would remain Manager of RM indefinitely by requiring her consent for her removal.  No consideration supported RM Amendment Four.

184.  ~~153.~~ RM Amendment Four is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Common Members or Series A Preferred Members of RM—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  Like the other 2015 amendments, RM Amendment Four attempts to implement this supposed "original intent" by

purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

185.   ~~154.~~ In fact, no such original intent existed.  Rather, RM Amendment Four was a brazen attempt by Ms. Tilton to entrench herself as Manager of RM by conditioning her removal on her own consent.

186.   ~~155.~~ Through RM Amendment Four, Ms. Tilton caused the Zohar Funds to purport to forfeit their right to remove the Manager.  Moreover, the Zohar Funds received nothing in exchange for forfeiting this right.

### 3.   RM's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent

187.   Consistent with its rights under the RM Operating Agreement, on November 28, 2017, the Zohar Funds, as RM's only Common Members and Series A Preferred Members, executed and delivered to RM a written consent removing Ms. Tilton as RM's Manager and electing AMZM as RM's new Manager (the "RM Consent").

188.   Under Sections 5.11 and 5.13 of the RM Operating Agreement, the RM Consent is a valid action of RM's Common Members and Series A Preferred Members.

189.   Nevertheless, RM and Ms. Tilton have refused to recognize the validity of the RM Consent.  Upon information and belief, RM and Ms. Tilton take the position that RM Amendment Four is valid and requires the consent of the Octaluna Class B Members related to the Zohar Funds to remove and replace RM's Manager.

H.   *Snelling Holdings, LLC*

1.   **Operative 2007 Snelling Holdings Operating Agreement**

190.   ~~156.~~ The Zohar Funds own 100 percent of the outstanding Membership Interests of Snelling Holdings.  Zohar I owns 22.3 percent, Zohar II owns 63.8 percent, and Zohar III owns 13.9 percent of the Membership Interests of Snelling Holdings.  The Zohar Funds are the only Members of Snelling Holdings. The Zohar Funds executed the Snelling Holdings Operating Agreement, dated as of October 1, 2007.

191.   ~~157.~~ Section 1.1 of the Snelling Holdings Operating Agreement defines terms used therein.  "Manager" means "the Person or Persons appointed by the Members to serve as a Manager pursuant to Article V below.  The initial Managers shall be Lynn Tilton and Peter Harris."[9]

---

[9]   Upon information and belief, Ms. Tilton caused herself to be appointed sole Manager by unanimous written consent of the Zohar Funds on June 21, 2012.

59

192.   158. "Member" means "any Person executing this Agreement as a member as of the date of this Agreement or hereafter admitted to the Company as a member as provided in this Agreement. . . .  The initial Members shall be Zohar I, Zohar II, and Zohar III."

193.   159. "Majority-in-Interest of the Members" means "at any particular time, Members whose aggregate Percentage Interests exceed fifty percent (50%) of the aggregate Percentage Interests of all Common Members at such time."

194.   160. "Percentage Interests" means "with respect to each Member, the Percentage Interest listed for such Member set forth adjacent to its name in Exhibit A," appended to the Snelling Holdings Operating Agreement.

195.   161. Exhibit A to the Snelling Holdings Operating Agreement lists Zohar I's Percentage Interest as 22.3 percent, Zohar II's Percentage Interest as 63.8 percent, and Zohar III's Percentage Interest as 13.9 percent.

196.   162. Section 5.8 of the Snelling Holdings Operating Agreement states, "The Members, upon a vote of a Majority-in-Interest of the Members, may, at any time and with or without cause, terminate the term of office of all or any of the Manager."

197.   Section 5.11 states, "Any action requiring the affirmative vote of the Members under this Agreement . . . may be taken by a vote at a meeting or, in

lieu thereof, by a written consent of a Majority-in-Interest of the Members that would have been entitled to vote at such meeting."

198.   Section 5.12 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken at a meeting of the Manager and/or the Members may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by all the Managers or all the Members, as the case may be.  Such consent shall have the same force and effect as a unanimous vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Managers or Members, as the case may be."

199.   163. Section 11.1 of the Snelling Holdings Operating Agreement is an integration clause, which states, "This Agreement constitutes the entire governing regulations of the Company and supersedes all prior governing rules and regulations of the Company, whether oral or written."

200.   164. Section 11.3 permits the Snelling Holdings Operating Agreement to be "amended or modified from time to time only by the Members."

2.   **2015 Amendment To The Snelling Holdings Operating Agreement**

201.   165. On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as the only Members of Snelling Holdings, to execute "Amendment No. 2 to Limited Liability Company Agreement

61

[sic] of Snelling Holdings, LLC" ("Snelling Holdings Amendment Two").  Snelling Holdings Amendment Two sought to ensure Ms. Tilton would remain Manager of Snelling Holdings indefinitely by requiring her consent for her removal.  No consideration supported Snelling Holdings Amendment Two.

202.   166. Snelling Holdings Amendment Two is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Members of Snelling Holdings—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  Like the other 2015 amendments, Snelling Holdings Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

203.   167. In fact, no such original intent existed.  Rather, Snelling Holdings Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of Snelling Holdings by conditioning her removal on her own consent.

204.   168. Through Snelling Holdings Amendment Two, Ms. Tilton caused the Zohar Funds to purport to forfeit their right to remove the Manager. Moreover, the Zohar Funds received nothing in exchange for forfeiting this right.

### 3.    Snelling Holdings' Members' November 28, 2017 Written Consent

205.   Consistent with its rights under the Snelling Holdings Operating Agreement, on November 28, 2017, the Zohar Funds, as Snelling Holdings' only Members, executed and delivered to Snelling Holdings a written consent removing Ms. Tilton as Snelling Holdings' Manager and electing AMZM as Snelling Holdings' new Manager (the "Snelling Holdings Consent").

206.   Under Sections 5.11 and 5.12 of the Snelling Holdings Operating Agreement, the Snelling Holdings Consent is a valid action of Snelling Holdings' Members.

207.   Nevertheless, Snelling Holdings and Ms. Tilton have refused to recognize the validity of the Snelling Holdings Consent.  Upon information and belief, Snelling Holdings and Ms. Tilton take the position that Snelling Holdings Amendment Two is valid and requires the consent of the Octaluna Class B Members related to the Zohar Funds to remove and replace Snelling Holdings' Manager.

I.      *Stila Styles, LLC*

1.      **Operative 2009 Stila LLC Agreement**

208.    ~~169.~~ Zohar III owns 100 percent of the outstanding Common Interests and Series A Preferred Interests in Stila.  As a result, Zohar III is the sole Common Member and Series A Preferred Member of Stila.  Zohar III executed the Stila LLC Agreement, dated as of April 17, 2009.

209.    ~~170.~~ Section 1.1 of the Stila LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

210.    ~~171.~~ "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

211.    ~~172.~~ "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

212.    ~~173.~~ "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Stila LLC Agreement.

213.   ~~174.~~ Exhibit A to the Stila LLC Agreement lists Zohar III's Common Percentage as 100 percent.

214.   ~~175.~~ "Series A Preferred Members" means "those Members from time to time holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

215.   ~~176.~~ "Series A Preferred Percentage" means "with respect to each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the Stila LLC Agreement.

216.   ~~177.~~ Exhibit A to the Stila LLC Agreement lists Zohar III's Series A Preferred Percentage as 100 percent.

217.   ~~178.~~ Section 5.8 of the Stila LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

218.   Section 5.11 states, "Any action requiring the affirmative vote of the Common Members or the Series A Preferred Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common Members or a Majority-in-Interest of the Series A Preferred Members, as applicable, that would have been entitled to vote at such meeting as permitted under Section 5.13."

219.   Section 5.13 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent will have the same force and effect as a unanimous vote at a meeting . . . and the execution of such consent will constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

220.   179. Section 11.1 of the Stila LLC Agreement is an integration clause, which states:

> This Agreement, together with Exhibit A hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.  There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

221.   180. Section 11.3 permits the Stila LLC Agreement to be "amended or modified from time to time only by the Members."

66

## 2.   2015 Amendment To The Stila LLC Agreement

222.   181. On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar III, as sole Member of Stila, to execute "Amendment No. 3 to Limited Liability Company Agreement of Stila Styles, LLC" ("Stila Amendment Three").  Stila Amendment Three sought to ensure Ms. Tilton would remain Manager of Stila indefinitely by requiring her consent for her removal.  No consideration supported Stila Amendment Three.

223.   182. The first recital of Stila Amendment Three claims that the "original intent" of Zohar III was to give non-party Patriarch affiliates who are not Common Members or Series A Preferred Members of Stila—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."  To manifest this supposed "original intent," Stila Amendment Three purports to require "the consent of all [Octaluna Class B Members]" related to Zohar III to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

224.  ~~183.~~ In fact, no such original intent existed.  Rather, Stila Amendment Three was a brazen attempt by Ms. Tilton to entrench herself as Manager of Stila by conditioning her removal on her own consent.

225.  ~~184.~~ Through Stila Amendment Three, Ms. Tilton caused Zohar III to forfeit its right to remove the Manager.  Moreover, Zohar III received nothing in exchange for forfeiting this right.

### 3.    Stila's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent

226.  Consistent with its rights under the Stila LLC Agreement, on November 28, 2017, Zohar III, as Stila's only Common Member and Series A Preferred Member, executed and delivered to Stila a written consent removing Ms. Tilton as Stila's Manager and electing AMZM as Stila's new Manager (the "Stila Consent").

227.  Under Sections 5.11 and 5.13 of the Stila LLC Agreement, the Stila Consent is a valid action of Stila's Common Members and Series A Preferred Members.

228.  Nevertheless, Stila and Ms. Tilton have refused to recognize the validity of the Stila Consent.  Upon information and belief, Stila and Ms. Tilton take the position that Stila Amendment Three is valid and requires the consent of the Octaluna Class B Members related to Zohar III to remove and replace Stila's Manager.

J.   *Dura Buyer, LLC*

1.   **Operative 2009 Dura Buyer LLC Agreement**

229.   185. Dura Buyer is owned by Zohar II, Zohar III, and Patriarch affiliate Ark II.  Zohar II owns 52.5 percent of the Common Interests in Dura Buyer, Zohar III owns 25.3 percent of the Common Interests in Dura Buyer, and Ark II owns 22.2 percent of the Common Interests in Dura Buyer.

230.   186. Upon information and belief, Ark II has no noteholders. Ms. Tilton owns Ark II outright and she uses Ark II as her personal investment vehicle.

231.   187. Zohar II, Zohar III, and Ark II executed the Dura Buyer LLC Agreement, dated as of November 10, 2009.

232.   188. Section 1.1 of the Dura Buyer LLC Agreement defines terms used therein.  "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

233.   189. "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

234.   190. "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages

69

exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

235.   191. "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Dura Buyer LLC Agreement.

236.   192. Exhibit A to the Dura Buyer LLC Agreement lists Zohar II's Common Percentage as 52.49 percent, Zohar III's Common Percentage as 25.29 percent, and Ark II's Common Percentage as 22.22 percent.

237.   193. Thus, Zohar II alone constitutes a Majority-in-Interest of the Common Members.

238.   194. Section 5.8 of the Dura Buyer LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

239.   Section 5.11 states, "Any action requiring the affirmative vote of the Common Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common Members that would have been entitled to vote at such meeting as permitted under Section 5.12."

240.   Section 5.12 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at

70

a meeting may be taken without a meeting if a consent in writing, setting forth the

action to be taken, is signed by the Manager or by the Members having not less than

the minimum number of votes that would be necessary to authorize or take such

action at a meeting at which all Members entitled to vote thereon were present and

voted, as the case may be.  Such consent will have the same force and effect as a

unanimous vote at a meeting . . . and the execution of such consent will constitute

attendance or presence in person at a meeting of the Manager or such Members, as

the case may be."

241.   ~~195.~~ Section 11.1 of the Dura Buyer LLC Agreement is an

integration clause, which states:

> This Agreement, together with <u>Exhibit A</u> hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.  There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

242.   ~~196.~~ Section 11.3 permits the Dura Buyer LLC Agreement to be

"amended or modified from time to time only by the Members."

## 2.    2011 Amendment To The Dura Buyer LLC Agreement

243.   ~~197.~~ Sometime in May 2011, Ms. Tilton caused Zohar II, Zohar

III, and Ark II as Common Members of Dura Buyer, to execute "Amendment No. 1

to Limited Liability Company Agreement of Dura Buyer LLC" ("Dura Buyer Amendment One").  No consideration supported Dura Buyer Amendment One.

244.  198. Dura Buyer Amendment One added a new section 5.17 to Article V of the Denali Acquisition Operating Agreement that required unanimous consent of the Common Members for certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

245.  199. Through Dura Buyer Amendment One, Zohar II forfeited its right to remove the Manager at any time, with or without cause.  Moreover, Zohar II received nothing in exchange for forfeiting this right.

246.  200. Dura Buyer Amendment One is an inequitable self-dealing transaction that Ms. Tilton implemented to entrench herself as Manager of Dura Buyer.  Dura Buyer Amendment One is also void for lack of consideration because Zohar II forfeited its right to remove and replace the Manager unilaterally, but received nothing in exchange.

3.     **2015 Amendment To The Dura Buyer LLC Agreement**

247.  201. On September 22, 2015, the same date as other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar II, Zohar III, and Ark II as Common Members of Dura Buyer, to execute "Amendment No. 2 to Limited Liability

Company Agreement of Dura Buyer, LLC" ("Dura Buyer Amendment Two").  Dura Buyer Amendment Two sought to ensure Ms. Tilton would remain Manager of Dura Buyer indefinitely by requiring her consent for her removal.  No consideration supported Dura Buyer Amendment Two.

248.   202. Dura Buyer Amendment Two is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of Zohar II, Zohar III, and Ark II:  that they wanted to give non-party Patriarch affiliates who are not Common Members of Dura Buyer—the Octaluna Class B Members related to Zohar II and Zohar III (*i.e.*, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, Phoenix VIII, LLC) and the Member of Ark II (Patriarch Partners II, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."

249.   203. Like the other 2015 amendments, Dura Buyer Amendment Two attempts to implement this supposed "original intent" by purporting to amend the section added in 2011 by Dura Buyer Amendment One to require "the consent of all [Octaluna] Class B Members/Members" of Zohar II, Zohar III, and Ark II to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

250.  ~~204.~~ In fact, no such original intent existed.  Rather, Dura Buyer Amendment Two was a further brazen attempt by Ms. Tilton to entrench herself as Manager of Dura Buyer by conditioning her removal on her own consent.

251.  ~~205.~~ Like Dura Buyer Amendment One, through Dura Buyer Amendment Two, Ms. Tilton caused Zohar II and Zohar III to purport to forfeit their right to remove Dura Buyer's Manager.  Zohar II and Zohar III received nothing in exchange for forfeiting this right.

### 4.  Dura Buyer's Common Members' November 28, 2017 Written Consent

252.  Consistent with its rights under the Dura Buyer LLC Agreement, on November 28, 2017, Zohar II and Zohar III, as the Majority-in-Interest of the Common Members of Dura Buyer, executed and delivered to Dura Buyer a written consent removing Ms. Tilton as Dura Buyer's Manager and electing AMZM as Dura Buyer's new Manager (the "Dura Buyer Consent").

253.  Under Sections 5.11 and 5.12 of the Dura Buyer LLC Agreement, the Dura Buyer Consent is a valid action of Dura Buyer's Common Members.

254.  Nevertheless, Dura Buyer and Ms. Tilton have refused to recognize the validity of the Dura Buyer Consent.  Upon information and belief, Dura Buyer and Ms. Tilton take the position that Dura Buyer Amendments One and

Two are valid and require the consent of the Octaluna Class B Members related to Zohar II and Zohar III to remove and replace Dura Buyer's Manager.

## VII. Ms. Tilton Engages In Self-Dealing Transactions To Improperly Entrench Her Control Over IMG

255. ~~206.~~ The Zohar Funds own all of the outstanding common stock in IMG.  Zohar I owns 1,016.5 shares or 16.9 percent of outstanding common stock.  Zohar II owns 4,093.00 shares or 68.2 percent of outstanding common stock.  Zohar III owns 890.50 shares or 14.8 percent of outstanding common stock.

256. ~~207.~~ Under 8 *Del. C.* § 141(k), "Any director or the entire board of directors may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors . . . ."[10]  Zohar II's ownership of 4,093 shares of IMG stock constitutes a majority of the outstanding shares of common stock of IMG entitled to vote to remove and elect directors.

257. ~~208.~~ On September 21, 2015, the day before Ms. Tilton caused the Zohar Funds to execute the purported 2015 amendments to the LLC agreements of the Portfolio LLCs, Ms. Tilton purported to cause the Zohar Funds to execute irrevocable proxies just like the irrevocable proxies challenged by the Zohar Funds

---

[10]   IMG does not have a classified board or cumulative voting, so neither exception requiring cause for removal listed in 8 *Del. C.* § 141(k) applies.

and tried to this Court in *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch. Ct.).

258. 209. Specifically, and just like the 2015 amendments to the LLC agreements, the second recital claims that it was the Zohar Funds' "original intent" to give non-party Patriarch affiliates who are not shareholders of IMG—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"the right to vote and act for the" Zohar Funds.

259. 210. Like the 2015 amendments to the LLC agreements, the IMG irrevocable proxies attempt to implement this supposed "original intent" by purporting to "authorize the [Octaluna Class B Members] to vote for the [Zohar Funds], as the [Zohar Funds'] proxy, at any and all meetings of the stockholders of the Company and, as the [Zohar Funds'] proxy, to consent or dissent without a meeting . . . including but not limited to the following matters:  (i) The election or removal of directors of the Company; (ii) Any amendments to the Company's certificate or articles of incorporation or by-laws . . . ."

260. 211. In fact, no such original intent existed.  Rather, the IMG irrevocable proxies were a brazen attempt by Ms. Tilton to entrench herself as director of IMG by conditioning her removal on her own consent.

261.  212. Through the IMG irrevocable proxies, Ms. Tilton caused Zohar II to forfeit its right to remove the director.

262.  213. The IMG irrevocable proxies are legally invalid because they are not coupled with an interest sufficient to support an irrevocable proxy under Delaware law.  The IMG irrevocable proxies are also equitably invalid because they are the result of a self-dealing transaction designed to entrench herself as IMG's director.

263.  Section 228(a) of the Delaware General Corporation Law provides:

> Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting which all shares entitled to vote thereon were present and voted and shall be delivered to the corporation by delivery to its registered office in this State, its principal place of business or an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to a corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

264.   IMG's Certificate of Incorporation does not prohibit stockholder action by written consent.

265.   IMG elects directors by a vote of the majority of the outstanding common stock.

266.   On November 28, 2017, the Zohar Funds, as owners of all of the outstanding common stock in IMG, executed and delivered to IMG a written consent removing Ms. Tilton as IMG's director and electing Tom Jones, Elizabeth LaPuma and Anthony McKiernan as IMG's new directors (the "IMG Consent").

267.   Under 8 *Del. C.* § 228 and settled Delaware law, the IMG Consent was effective upon its delivery to IMG on November 28, 2017, and IMG's former director was removed and replaced as director of IMG by Tom Jones, Elizabeth LaPuma and Anthony McKiernan.

268.   Nevertheless, IMG and Ms. Tilton have refused to recognize the validity of the IMG Consent.  Upon information and belief, IMG and Ms. Tilton take the position that the irrevocable proxies are valid and trasfer the voting rights of the Zohar Funds to the Octaluna Class B Members related to the Zohar Funds.

## Causes Of Action

### Count I
(Against Croscill And Lynn Tilton Under 6 *Del. C.* §§§ 18-110, -111)

269.   214. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

78

270. 215. Plaintiff Zohar III is the sole Common Member of Croscill. Under the Croscill LLC Agreement, Zohar III could remove Croscill's Manager at any time, with or without cause.

271. 216. Through Croscill Amendment Four, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Croscill's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

272. 217. The Zohar Funds III received no consideration for the transfer of their its valuable membership rights, including voting rights, under Croscill Amendment Four and it is, therefore, legally invalid.  Croscill Amendment Four is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Croscill at the expense of Zohar III.

273. 218. Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* §§§ 18-110, -111 that Croscill Amendment Four is invalid, void, and of no force or effect, and that it may remove removed Ms. Tilton as Croscill's Manager under the provisions of the Croscill LLC Agreement, by vote of a simple majority of Common Members, and that its election of AMZM as Croscill's new Manager is valid.

274. 219. Plaintiff Zohar III has no adequate remedy at law.

## **Count II**

(Against Denali Acquisition And Lynn Tilton Under 6 *Del. C.* §§§ 18-110, -111)

275. 220. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

276. 221. Plaintiff Zohar III is the sole Member of Denali Acquisition.  Under the Denali Acquisition Operating Agreement, Zohar III could remove Denali Acquisition's Manager at any time, with or without cause.

277. 222. Through Denali Acquisition Amendment Two, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Denali Acquisition's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

278. 223. The Zohar FundsIII received no consideration for the transfer of theirits valuable membership rights, including voting rights, under Denali Acquisition Amendment Two and it is, therefore, legally invalid.  Denali Acquisition Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Denali Acquisition at the expense of Zohar III.

279. 224. Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* §§§ 18-110, -111 that Denali Acquisition Amendment Two is invalid, void, and of no force or effect, and that it may removeremoved Ms. Tilton as Denali

80

Acquisition's Manager under the provisions of the Denali Acquisition Operating

Agreement, by ~~vote of the~~ Member action, and that its election of AMZM as Denali

Acquisition's new Manager is valid.

280.   ~~225.~~ Plaintiff Zohar III has no adequate remedy at law.

### Count III
(Against GAS And Lynn Tilton Under 6 *Del. C.* ~~§~~§§ 18-110, -111)

281.   ~~226.~~ Plaintiffs repeat and reallege the allegations in each of the

preceding paragraphs as if fully set forth herein.

282.   ~~227.~~ Plaintiffs are the only Common Members of GAS.

Plaintiffs constitute All of the Common Members.  Under the GAS LLC Agreement,

Plaintiffs could remove GAS's Manager at any time, with or without cause.

283.   ~~228.~~ Through GAS Amendment One, Ms. Tilton purported to

cause Plaintiffs to relinquish their right to remove GAS's Manager at any time, with

or without cause, and to require the consent of non-Member Patriarch affiliates

owned by Ms. Tilton.

284.   ~~229.~~ The Zohar Funds received no consideration for the transfer

of their valuable membership rights, including voting rights, under GAS

Amendment, and it is, therefore, legally invalid.  GAS Amendment One is

inequitable because it is the product of conflicted, self-dealing transactions by Ms.

Tilton designed to entrench herself as the Manager of GAS at the expense of the Zohar Funds.

285. 230. Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that GAS Amendment One is invalid, void, and of no force or effect, and that they may remove removed Ms. Tilton as GAS's Manager under the provisions of the GAS LLC Agreement, by vote of a All of the Common Members, and that their election of AMZM as GAS's new Manager is valid.

286. 231. Plaintiffs have no adequate remedy at law.

### Count IV
(Against Gorham And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

287. 232. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

288. 233. Plaintiff Zohar III is the sole Common Member of Gorham. Zohar III constitutes All of the Common Members.  Under the Gorham LLC Agreement, Plaintiffs could remove Gorham's Manager at any time, with or without cause.

289. 234. Through Gorham Amendment One, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Gorham's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

290.  235. The Zohar FundsIII received no consideration for the transfer of theirits valuable membership rights, including voting rights, under Gorham Amendment One and it is, therefore, legally invalid.  Gorham Amendment One is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Gorham at the expense of Zohar III.

291.  236. Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* §§§ 18-110, -111 that Gorham Amendment One is invalid, void, and of no force or effect, and that it may removeremoved Ms. Tilton as Gorham's Manager under the provisions of the Gorham LLC Agreement, by vote of a All of the Common Members, and that its election of AMZM as Gorham's new Manager is valid.

292.  237. Plaintiff Zohar III has no adequate remedy at law.

## Count V
(Against Jewel of Jane And Lynn Tilton Under 6 *Del. C.* §§§ 18-110, -111)

293.  238. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

294.  239. Plaintiff Zohar II is the sole Common Member of Jewel of Jane.  Under the Jewel of Jane LLC Agreement, Zohar II could remove Jewel of Jane's Manager at any time, with or without cause.

295. 240. Through Jewel of Jane Amendment Two, Ms. Tilton purported to cause Zohar II to relinquish its right to remove Jewel of Jane's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

296. 241. The Zohar FundsII received no consideration for the transfer of theirits valuable membership rights, including voting rights, under Jewel of Jane Amendment Two and it is, therefore, legally invalid.  Jewel of Jane Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Jewel of Jane at the expense of Zohar II.

297. 242. Plaintiff Zohar II is therefore entitled to a declaration under 6 *Del. C.* §§§ 18-110, -111 that Jewel of Jane Amendment Two is invalid, void, and of no force or effect, and that it may removeremoved Ms. Tilton as Jewel of Jane's Manager under the provisions of the Jewel of Jane LLC Agreement, by vote of a simple majority of Common Members, and that its election of AMZM as Jewel of Jane's new Manager is valid.

298. 243. Plaintiff Zohar II has no adequate remedy at law.

84

**Count VI**
(Against LVD/Oasis And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

299. ~~244.~~ Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

300. ~~245.~~ Plaintiffs are the only Common Members of LVD/Oasis. Under the LVD/Oasis LLC Agreement, Plaintiffs could remove LVD/Oasis's Manager at any time, with or without cause.

301. ~~246.~~ Through LVD/Oasis Amendment Two, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove LVD/Oasis's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

302. ~~247.~~ The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under LVD/Oasis Amendment Two and it is, therefore, legally invalid.  LVD/Oasis Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of LVD/Oasis at the expense of the Zohar Funds.

303. ~~248.~~ Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that LVD/Oasis Amendment Two is invalid, void, and of no force or effect, ~~and~~ that they ~~may remove~~removed Ms. Tilton as LVD/Oasis's

85

Manager under the provisions of the LVD/Oasis LLC Agreement, by vote of a simple majority of Common Members, and that their election of AMZM as LVD/Oasis's new Manager is valid.

304. 249. Plaintiffs have no adequate remedy at law.

**Count VII**
(Against RM And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

305. 250. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

306. 251. Plaintiffs are the only Common Members of RM.  Under the RM Operating Agreement, Plaintiffs could remove RM's Manager at any time, with or without cause.

307. 252. Through RM Amendment Four, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove RM's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

308. 253. The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under RM Amendment Four and it is, therefore, legally invalid.  RM Amendment Four is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton

designed to entrench herself as the Manager of RM at the expense of the Zohar Funds.

309. 254. Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* §§§ 18-110, -111 that RM Amendment Four is invalid, void, and of no force or effect, and that they may remove removed Ms. Tilton as RM's Manager under the provisions of the RM Operating Agreement, by vote of a simple majority of Common Members, and that their election of AMZM as RM's new Manager is valid.

310. 255. Plaintiffs have no adequate remedy at law.

## Count VIII
(Against Snelling Holdings And Lynn Tilton Under 6 *Del. C.* §§§ 18-110, -111)

311. 256. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

312. 257. Plaintiffs are the only Members of Snelling Holdings. Under the Snelling Holdings Operating Agreement, Plaintiffs could remove Snelling Holdings' Manager at any time, with or without cause.

313. 258. Through Snelling Holdings Amendment Two, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove Snelling Holdings' Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

314. 259. The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under Snelling Holdings Amendment Two and it is, therefore, legally invalid.  Snelling Holdings Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Snelling Holdings at the expense of the Zohar Funds.

315. 260. Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* §§§ 18-110, -111 that Snelling Holdings Amendment Two is invalid, void, and of no force or effect, and that they may remove removed Ms. Tilton as Snelling Holdings' Manager under the provisions of the Snelling Holdings Operating Agreement, by vote of a simple majority of Members, and that their election of AMZM as Snelling Holdings' new Manager is valid.

316. 261. Plaintiffs have no adequate remedy at law.

### Count IX
(Against Stila And Lynn Tilton Under 6 *Del. C.* §§§ 18-110, -111)

317. 262. Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

318. 263. Plaintiff Zohar III is the only Common Member of Stila. Under the Stila LLC Agreement, Zohar III  could remove Stila's Manager at any time, with or without cause.

319. ~~264.~~ Through Stila Amendment Three, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Stila's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

320. ~~265. The~~ Zohar ~~Funds~~III received no consideration for the transfer of ~~their~~its valuable membership rights, including voting rights, under Stila Amendment Three and it is, therefore, legally invalid.  Stila Amendment Three is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Stila at the expense of Zohar III.

321. ~~266.~~ Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* ~~§~~§§ 18-110, -111 that Stila Amendment Three is invalid, void, and of no force or effect, ~~and~~ that it ~~may remove~~removed Ms. Tilton as Stila's Manager under the provisions of the Stila LLC Agreement, by vote of a simple majority of Common Members, and that its election of AMZM as Stila's new Manager is valid.

322. ~~267.~~ Plaintiff Zohar III has no adequate remedy at law.

## Count X
(Against Dura Buyer And Lynn Tilton Under 6 *Del. C.* ~~§~~§§ 18-110, -111)

323. ~~268.~~ Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

324. 269. Plaintiffs Zohar II and Zohar III are Common Members of Dura Buyer.  Zohar II alone constitutes the Majority-in-Interest of the Common Members.  Under the Dura Buyer LLC Agreement, Plaintiffs Zohar II and Zohar III could remove Dura Buyer's Manager at any time, with or without cause.

325. 270. Through Dura Buyer Amendment One and Dura Buyer Amendment Two, Ms. Tilton purported to cause Plaintiffs Zohar II and Zohar III to relinquish their right to remove Dura Buyer's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

326. 271. The Zohar FundsII and Zohar III received no consideration for the transfer of their valuable membership rights, including voting rights, under Dura Buyer Amendment One and Dura Buyer Amendment Two and these amendments are, therefore, legally invalid.  Dura Buyer Amendment One and Dura Buyer Amendment Two are inequitable because they are the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Dura Buyer at the expense of Zohar II and Zohar III.

327. 272. Plaintiffs Zohar II and Zohar III are therefore entitled to a declaration under 6 *Del. C.* §§§ 18-110, -111 that Dura Buyer Amendment One and Dura Buyer Amendment Two are invalid, void, and of no force or effect, and that they may removeremoved Ms. Tilton as Dura Buyer's Manager under the provisions

of the Dura Buyer LLC Agreement, by vote of a simple majority of Common

Members, and that their election of AMZM as Dura Buyer's new Manager is valid.

328. 273. Plaintiffs Zohar II and Zohar III have no adequate remedy at

law.

## Count XI
(Against IMG And Lynn Tilton Under 8 *Del. C.* § 225)

329. 274. Plaintiffs repeat and reallege the allegations in each of the

preceding paragraphs as if fully set forth herein.

330. 275. Plaintiffs Zohar Funds own all of the outstanding common

stock of IMG.  Zohar II constitutes the majority of outstanding voting stock in IMG.

Under the 8 *Del. C.* § 141(k), Plaintiff Zohar II could remove IMG's sole director at

any time, with or without cause.

331. 276. Through the IMG irrevocable proxies, Ms. Tilton purported

to cause Plaintiffs Zohar Funds to relinquish their right to remove IMG's sole

director at any time, with or without cause, and to grant that right to Patriarch

affiliates owned by Ms. Tilton.

332. 277. The IMG irrevocable proxies are legally invalid because

they purport to be irrevocable but are not coupled with an interest sufficient under

Delaware law.  The IMG irrevocable proxies are inequitable because they are the

product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the sole director of IMG at the expense of the Zohar Funds.

333. 278. Plaintiffs Zohar Funds are therefore entitled to a declaration under 8 *Del. C.* § 225 that the IMG irrevocable proxies are invalid, void, and of no force or effect, and that they may remove removed IMG's sole director under 8 *Del. C.* § 225, by vote of "the holders of a majority of the shares then entitled to vote at an election of directors." "," and that their election of Tom Jones, Elizabeth LaPuma and Anthony McKiernan as IMG's new directors is valid.

334. 279. Plaintiffs Zohar Funds have no adequate remedy at law.

**Prayer For Relief**

335. 280. WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request an order:

A.   Declaring that Croscill Amendment Four is invalid, void, and of no force or effect, and that Plaintiff Zohar III is therefore entitled to remove validly removed and replace replaced Croscill's Manager under the provisions of the Croscill LLC Agreement, by vote of a simple majority of Common Members.

B.   Declaring that Denali Acquisition Amendment Two is invalid, void, and of no force or effect, and that Plaintiff Zohar III is therefore entitled to remove validly removed and replace replaced Denali Acquisition's Manager under

the provisions of the Denali Acquisition Operating Agreement, by vote of its

Member.

      C.    Declaring that GAS Amendment One is invalid, void, and of no

force or effect, and that Plaintiffs ~~are therefore entitled to remove~~<u>validly removed</u>

and ~~replace~~<u>replaced</u> GAS's Manager under the provisions of the GAS LLC

Agreement, by vote of All of the Common Members.

      D.    Declaring that Gorham Amendment One is invalid, void, and of

no force or effect, and that Plaintiff Zohar III ~~is therefore entitled to remove~~<u>validly

removed</u> and ~~replace~~<u>replaced</u> Gorham's Manager under the provisions of the

Gorham LLC Agreement, by vote of All of the Common Members.

      E.    Declaring that Jewel of Jane Amendment Two is invalid, void,

and of no force or effect, and that Plaintiff Zohar II ~~is therefore entitled to

remove~~<u>validly removed</u> and ~~replace~~<u>replaced</u> Jewel of Jane's Manager under the

provisions of the Jewel of Jane LLC Agreement, by vote of a simple majority of

Common Members.

      F.    Declaring that LVD/Oasis Amendment Two is invalid, void, and

of no force or effect, and that Plaintiffs ~~are therefore entitled to remove~~<u>validly

removed</u> and ~~replace~~<u>replaced</u> LVD/Oasis's Manager under the provisions of the

LVD/Oasis LLC Agreement, by vote of a simple majority of Common Members.

G.     Declaring that RM Amendment Four is invalid, void, and of no force or effect, and that Plaintiffs ~~are therefore entitled to remove~~ validly removed and ~~replace~~ replaced RM's Manager under the provisions of the RM Operating Agreement, by vote of a simple majority of Common Members.

H.     Declaring that Snelling Holdings Amendment Two is invalid, void, and of no force or effect, and that Plaintiffs ~~are therefore entitled to remove~~ validly removed and ~~replace~~ replaced Snelling Holdings' Manager under the provisions of the Snelling Holdings Operating Agreement, by vote of a simple majority of Members.

I.     Declaring that Stila Amendment Three is invalid, void, and of no force or effect, and that Plaintiff Zohar III ~~is therefore entitled to remove~~ validly removed and ~~replace~~ replaced Stila's Manager under the provisions of the Stila LLC Agreement, by vote of a simple majority of Common Members.

J.     Declaring that Dura Buyer Amendment One and Dura Buyer Amendment Two are invalid, void, and of no force or effect, and that Plaintiffs Zohar II and III ~~are therefore entitled to remove~~ validly removed and ~~replace~~ replaced Dura Buyer's Manager under the provisions of the Dura Buyer LLC Agreement, by vote of a simple majority of Common Members.

K.     Declaring that the IMG irrevocable proxies are invalid, void, and of no force or effect, and that Plaintiffs Zohar Funds ~~are therefore entitled to~~

94

~~remove~~*validly removed* and ~~replace~~*replaced* IMG's sole director under the provisions of the Delaware General Corporate Law, by vote of a "majority of the share then entitled to vote at an election of directors."

      L.   Awarding to Plaintiffs their costs, including attorney's fees, incurred in bring this action; and

      M.   Granting such other and further relief as this Court may deem appropriate.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Kenneth J. Nachbar*

OF COUNSEL :

QUINN EMANUEL
  URQUHART &
  SULLIVAN, LLP
Michael B. Carlinsky
Jonathan E. Pickhardt
Ellison Ward Merkel
Blair Adams
51 Madison Avenue, 22nd
  Floor
New York, NY 10010

Kenneth J. Nachbar (#2067)
Megan Ward Cascio (#3785)
Lauren K. Neal (#5940)
Thomas P. Will (#6086)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Attorneys for Plaintiffs*

~~November 14, 2017~~

November 29, 2017

**Table 1**
Summary Of Portfolio LLC Ownership And Relevant Removal Provisions

|  | Portfolio LLC | Membership Interest Percentage | | | | 2011 Amend. No. | 2015 Amend. No. | Class Initially Permitted To Remove Manager | Initial Percentage Needed To Remove Manager |
|---|---|---|---|---|---|---|---|---|---|
|  |  | Zohar I | Zohar II | Zohar III | Ark II |  |  |  |  |
| 1 | Croscill |  |  | 100 |  | 1 | 4 | Common Members | Majority |
| 2 | Denali Acquisition |  |  | 100 |  | 1 | 2 | Member | N/A |
| 3 | Dura Buyer |  | 52.5 | 25.3 | 22.2 | 1 | 2 | Common Members | Majority |
| 4 | GAS | 18.760 | 49.083 | 32.157 |  | N/A | 1 | Common Members | All |
| 5 | Gorham |  |  | 100 |  | N/A | 1 | Common Members | All |
| 6 | Jewel of Jane |  | 100 |  |  | 1 | 2 | Common Members | Majority |
| 7 | LVD/Oasis | 14.69 | 62.36 | 22.95 |  | 1 | 2 | Common Members | Majority |
| 8 | RM | 17.1 | 57 | 25.9 |  | 1 | 4 | Common Members | Majority |
| 9 | Snelling Holdings | 22.3 | 63.8 | 13.9 |  | 1 | 2 | Members | Majority |
| 10 | Stila |  |  | 100 |  | 1 | 3 | Common Members | Majority |

**Table 2**
Summary Of The Zohar Funds' Ownership In IMG Holdings, Inc.

|  | Corporation Name | Stock Ownership Percentage | | |
|---|---|---|---|---|
|  |  | Zohar I | Zohar II | Zohar III |
| 11 | IMG | 16.9 | 68.2 | 14.8 |

Document comparison by Workshare 9.5 on Wednesday, November 29, 2017
6:28:33 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://WIL-DMS/WILM/11442620/1 |
| Description | #11442620v1<WILM> - Zohar - (11.14 case) Verified Complaint |
| Document 2 ID | interwovenSite://WIL-DMS/WILM/11476460/1 |
| Description | #11476460v1<WILM> - Zohar/Croscill - Verified Amended Complaint |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 565 |
| Deletions | 401 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 968 |

EFiled:  Nov 29 2017 07:19PM EST
Transaction ID 61406799
Case No. 2017-0816-JRS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a Cayman Island exempted company, ZOHAR II 2005-1 LIMITED, a Cayman Islands exempted company, and ZOHAR III, LIMITED, a Cayman Island exempted company, <br><br>         *Plaintiffs,* <br><br>     v. <br><br> CROSCILL HOME LLC, f/k/a CROSCILL ACQUISITION, LLC, a Delaware limited liability company, DENALI ACQUISITION LLC, a Delaware limited liability company, DURA BUYER, LLC, a Delaware limited liability company, GLOBAL AUTOMOTIVE SYSTEMS, LLC, a Delaware limited liability company, GORHAM PAPER AND TISSUE, LLC, a Delaware limited liability company, IMG HOLDINGS, INC., a Delaware corporation, JEWEL OF JANE LLC, a Delaware limited liability company, LVD ACQUISITION, LLC, a Delaware limited liability company d/b/a OASIS INTERNATIONAL, RM ACQUISITION, LLC, a Delaware limited liability company SNELLING HOLDINGS, LLC, a Delaware limited liability company, STILA STYLES, LLC, a Delaware limited liability company, and LYNN TILTON, <br><br>         *Defendants.* | C.A. No. 2017-0816-JRS |

STATE OF NEW YORK )
                          )    SS:

COUNTY OF NEW YORK )

## VERIFICATION

I, Elizabeth LaPuma, having been duly sworn, do hereby depose and say that I am a Managing Director of Alvarez & Marsal Zohar Management, LLC ("A&M Zohar Management"), the collateral manager for plaintiff Zohar CDO 2003-1, Limited in this lawsuit; that I have authority to act on behalf of A&M Zohar Management which, in turn, has authority to act on behalf of Zohar CDO 2003-1, Limited in this matter; and that I have reviewed the foregoing Amended Verified Complaint and that the statement set forth therein are, to the best of my knowledge, information and belief, true and correct.

_____
Elizabeth LaPuma

SWORN TO AND SUBSCRIBED before me
this 29 day of November, 2017.

_____
Notary Public

**BRIE CUFFE**
Notary Public - State of New York
No. 01CU6320932
Qualified in Richmond County
My Commission Expires March 9, 2019
Certificate filed in
New York County

2

**EFiled: Nov 29 2017 07:19PM EST**
**Transaction ID 61406799**
**Case No. 2017-0816-JRS**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a<br>  Cayman Island exempted company,<br>ZOHAR II 2005-1 LIMITED, a<br>  Cayman Islands exempted company,<br>  and<br>ZOHAR III, LIMITED, a Cayman<br>  Island exempted company,<br><br>          *Plaintiffs*,<br><br>    v.<br><br>CROSCILL HOME LLC, f/k/a<br>  CROSCILL ACQUISITION, LLC,<br>  a Delaware limited liability<br>  company,<br>DENALI ACQUISITION LLC, a<br>  Delaware limited liability company,<br>DURA BUYER, LLC, a Delaware<br>  limited liability company,<br>GLOBAL AUTOMOTIVE<br>  SYSTEMS, LLC, a Delaware<br>  limited liability company,<br>GORHAM PAPER AND TISSUE,<br>  LLC, a Delaware limited liability<br>  company,<br>IMG HOLDINGS, INC., a Delaware<br>  corporation,<br>JEWEL OF JANE LLC, a Delaware<br>  limited liability company,<br>LVD ACQUISITION, LLC, a<br>  Delaware limited liability company<br>  d/b/a OASIS INTERNATIONAL,<br>RM ACQUISITION, LLC, a Delaware<br>  limited liability company<br>SNELLING HOLDINGS, LLC, a<br>  Delaware limited liability company,<br>STILA STYLES, LLC, a Delaware<br>  limited liability company, and<br>LYNN TILTON,<br><br>          *Defendants*. | C.A. No. 2017-0816-JRS |

STATE OF NEW YORK          )
                           )    SS:
COUNTY OF NEW YORK         )

## **VERIFICATION**

I, Elizabeth LaPuma, having been duly sworn, do hereby depose and say that I am a Managing Director of Alvarez & Marsal Zohar Management, LLC ("A&M Zohar Management"), the collateral manager for plaintiff Zohar III, Limited in this lawsuit; that I have authority to act on behalf of A&M Zohar Management which, in turn, has authority to act on behalf of Zohar III, Limited in this matter; and that I have reviewed the foregoing Amended Verified Complaint and that the statement set forth therein are, to the best of my knowledge, information and belief, true and correct.

_____
Elizabeth LaPuma

SWORN TO AND SUBSCRIBED before me
this _29_ day of November, 2017.

_____
Notary Public

**BRIE CUFFE**
Notary Public - State of New York
No. 01CU6320932
Qualified in Richmond County
My Commission Expires March 9, 2019
Certificate filed in
New York County

2

**EFiled: Nov 29 2017 07:19PM EST**
**Transaction ID 61406799**
**Case No. 2017-0816-JRS**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, a<br>  Cayman Island exempted company,<br>ZOHAR II 2005-1 LIMITED, a<br>  Cayman Islands exempted company,<br>  and<br>ZOHAR III, LIMITED, a Cayman<br>  Island exempted company,<br><br>                *Plaintiffs*,<br><br>    v.<br><br>CROSCILL HOME LLC, f/k/a<br>  CROSCILL ACQUISITION, LLC,<br>  a Delaware limited liability<br>  company,<br>DENALI ACQUISITION LLC, a<br>  Delaware limited liability company,<br>DURA BUYER, LLC, a Delaware<br>  limited liability company,<br>GLOBAL AUTOMOTIVE<br>  SYSTEMS, LLC, a Delaware<br>  limited liability company,<br>GORHAM PAPER AND TISSUE,<br>  LLC, a Delaware limited liability<br>  company,<br>IMG HOLDINGS, INC., a Delaware<br>  corporation,<br>JEWEL OF JANE LLC, a Delaware<br>  limited liability company,<br>LVD ACQUISITION, LLC, a<br>  Delaware limited liability company<br>  d/b/a OASIS INTERNATIONAL,<br>RM ACQUISITION, LLC, a Delaware<br>  limited liability company<br>SNELLING HOLDINGS, LLC, a<br>  Delaware limited liability company,<br>STILA STYLES, LLC, a Delaware<br>  limited liability company, and<br>LYNN TILTON,<br><br>                *Defendants*. | C.A. No. 2017-0816-JRS |

STATE OF NEW YORK     )
                      )     SS:
COUNTY OF NEW YORK    )

## VERIFICATION

I, Elizabeth LaPuma, having been duly sworn, do hereby depose and say that I am a Managing Director of Alvarez & Marsal Zohar Management, LLC ("A&M Zohar Management"), the collateral manager for plaintiff Zohar II 2005-1 Limited in this lawsuit; that I have authority to act on behalf of A&M Zohar Management which, in turn, has authority to act on behalf of Zohar II 2005-1 Limited in this matter; and that I have reviewed the foregoing Amended Verified Complaint and that the statement set forth therein are, to the best of my knowledge, information and belief, true and correct.

_____
Elizabeth LaPuma

SWORN TO AND SUBSCRIBED before me
this 29 day of November, 2017.

_____
Notary Public

**BRIE CUFFE**
Notary Public - State of New York
No. 01CU6320932
Qualified in Richmond County
My Commission Expires March 9, 2019
Certificate filed in
New York County

2

EFiled:  Nov 30 2017 09:35AM EST
Transaction ID 61407359
Case No. 2017-0816-JRS

## MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

LAUREN NEAL BENNETT
302 351-9370
lbennett@mnat.com

November 30, 2017

## BY E-FILING

Register in Chancery
New Castle County Courthouse
500 North King Street, Suite 1551
Wilmington, DE  19801

RE: *Zohar CDO 2003-1, Ltd., et al. v. Croscill Home LLC, f/k/a Croscill Acquisition, LLC, et al.*, C.A. No. _____

Dear Sir/Madam:

Pursuant to Court of Chancery Rule 4, 6 *Del. C.* §§ 18-105 and 18-110, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant Croscill Home LLC, f/k/a Croscill Acquisition, LLC ("Croscill") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Register in Chancery
November 30, 2017
Page 2

Pursuant to Court of Chancery Rule 4, 6 *Del. C.* §§ 18-105 and 18-110, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant Denali Acquisition LLC ("Denali Acquisition") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Pursuant to Court of Chancery Rule 4, 6 *Del. C.* §§ 18-105 and 18-110, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant Dura Buyer, LLC ("Dura Buyer") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Pursuant to Court of Chancery Rule 4, 6 *Del. C.* §§ 18-105 and 18-110, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant Global Automotive Systems, LLC ("GAS") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Register in Chancery
November 30, 2017
Page 3

Pursuant to Court of Chancery Rule 4, 6 *Del. C.* §§ 18-105 and 18-110, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant Gorham Paper and Tissue, LLC ("Gorham") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Pursuant to Court of Chancery Rule 4, 6 *Del. C.* §§ 18-105 and 18-110, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant Jewel of Jane LLC ("Jewel of Jane") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Pursuant to Court of Chancery Rule 4, 6 *Del. C.* §§ 18-105 and 18-110, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant LVD Acquisition, LLC, d/b/a Oasis International ("LVD/Oasis") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Register in Chancery
November 30, 2017
Page 4

Pursuant to Court of Chancery Rule 4, 6 *Del. C.* §§ 18-105 and 18-110, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant RM Acquisition, LLC ("RM") by delivering those documents to its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

Pursuant to Court of Chancery Rule 4, 6 *Del. C.* §§ 18-105 and 18-110, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant Snelling Holdings, LLC ("Snelling Holdings") by delivering those documents to its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

Pursuant to Court of Chancery Rule 4, 6 *Del. C.* §§ 18-105 and 18-110, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant Stila Styles, LLC ("Stila") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

Register in Chancery
November 30, 2017
Page 5

Pursuant to Court of Chancery Rule 4, 8 *Del. C.* §§ 225 and 321, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant IMG Holdings, Inc. ("IMG") by delivering those documents to its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Pursuant to Court of Chancery Rule 4 and 8 *Del. C.* § 225, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant Lynn Tilton by delivering those documents to the registered agent of IMG, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.

Pursuant to Court of Chancery Rule 4 and 6 *Del. C.* § 18-110, a special process server from Brandywine Process Servers, Ltd. will be serving true and correct copies of the Verified Amended Complaint and related suit papers requiring service in this action upon defendant Lynn Tilton by delivering those documents to the registered agent of Croscill, Denali Acquisition, Dura Buyer, GAS, Gorham, Jewel of Jane, LVD/Oasis, and Stila, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808, and by delivering those

Register in Chancery
November 30, 2017
Page 6

documents to the registered agent of RM and Snelling Holdings, The Corporation

Trust Company, 1209 Orange Street, Wilmington, DE  19801.

      Forms of summonses will be prepared by Morris, Nichols, Arsht &

Tunnell LLP and presented to the Register in Chancery for signature and seal.

      Respectfully,

      */s/ Lauren Neal Bennett*

      Lauren Neal Bennett (#5940)

      Words: 960

**EFiled:  Nov 30 2017 01:04PM EST**
**Transaction ID 61408891**
**Case No. 2017-0816-JRS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

KENNETH J. NACHBAR
(302) 351-9294
knachbar@mnat.com

November 30, 2017

**BY EFILING**

The Honorable Joseph R. Slights, III
Vice Chancellor
Court of Chancery
414 Federal Street
Dover, DE  19901

> Re:   Zohar CDO 2003-1, Limited, et al. v.
>         Croscill Home LLC, et al.; C.A. No. 2017-0816-JRS

Dear Vice Chancellor Slights:

Plaintiffs filed the referenced action on November 14, 2017, seeking a

declaration as to ownership and control of eleven Delaware entities, and filed a

Motion to Expedite at the same time.  On the same day, we emailed courtesy

copies of the papers to Abrams & Bayliss and Gibson, Dunn & Crutcher.

The Honorable Joseph R. Slights, III
November 30, 2017
Page 2

   The ownership issues raised in the complaint are also the subject of

pending counterclaims filed by Ms. Tilton in the Section 225 action[1] before Your

Honor and raise similar issues to those tried before Your Honor in that action in

April and May.   The day before our filing of the present complaint, entities

affiliated with Ms. Tilton had filed mirror-image actions in Michigan (relating to

Defendants Global Automotive Systems, LLC and Dura Buyer, LLC), California

(relating to Defendant Stila Styles, LLC) and Arizona (relating to non-Defendant

MD Helicopters, Inc.). After receiving our motion to expedite in this case, Ms.

Tilton and her affiliates have now moved to expedite the non-Delaware cases.

   On November 28, Plaintiffs acted by written consent to replace the

managers or directors of each of the entities that are defendants in the present

action. Yesterday, Plaintiffs filed an amended complaint seeking relief pursuant to

6 Del. C. § 18-110 (with respect to the LLC entities) and 8 Del. C. § 228 (with

respect to the sole corporate defendant, IMG Holdings, Inc.) determining that

Plaintiffs have acted properly and effectively to replace the manager or director of

each of the entities. Copies of the Amended Complaint have been emailed to

Abrams & Bayliss and Gibson, Dunn & Crutcher, and the Amended Complaint is

---

[1]   *Zohar II 2005-1 Limited, et al. v. FSAR Holdings, Inc., et al.*, Del. Ch. No. 12946-VCS.

The Honorable Joseph R. Slights, III
November 30, 2017
Page 3

being formally served today. The current action therefore is in essentially the same posture as the Section 225 action was when it was filed.

Because actions to determine the proper managers or directors of Delaware entities are summary proceedings that should be heard on an expedited basis, Plaintiffs respectfully request that the Court set a schedule for further briefing on and determination of Plaintiffs' Motion to Expedite. Plaintiffs also hope that the hearing can address appropriate status quo orders.

We are available should Your Honor have any questions.

Respectfully,

Kenneth J. Nachbar (#2067)

Words: 370

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PATRIARCH PARTNERS XV, LLC and
OCTALUNA LLC,

                         Plaintiffs,

            v.

U.S. BANK NATIONAL ASSOCIATION and
MBIA INSURANCE CORPORATION,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No.   654819/2016

**SUMMONS**

Date Filed:   09/12/2016

TO THE ABOVE-NAMED DEFENDANTS:

       YOU ARE HEREBY SUMMONED and required to serve upon Plaintiffs' attorney an

answer to the verified complaint in this action within twenty days after the service of this

summons, exclusive of the day of service, or within thirty days after the service is complete if

this summons is not personally delivered to you within the State of New York.  In case of your

failure to appear or answer, judgment will be taken against you by default, in accordance with

the verified complaint herein.

       Plaintiffs designate New York County as the place of venue.  Venue is properly based in

this Court under CPLR 503.

Dated: New York, New York
September 12, 2016

GIBSON, DUNN & CRUTCHER LLP

By: _____

Randy M. Mastro
Mark Kirsch
Robert F. Serio

200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000

*Attorneys for Plaintiffs*

To:   U.S. BANK NATIONAL ASSOCIATION
100 Wall Street, Suite 1600
New York, New York  10005

MBIA INSURANCE CORPORATION
1 Manhattanville Road
Suite 301
Purchase, NY 10577

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                       :

PATRIARCH PARTNERS XV, LLC and
OCTALUNA LLC,                      :

            Plaintiffs,          :

                                         :   Index No.  __654819__  /2016

      v.                         :

                                         :   **VERIFIED COMPLAINT**

U.S. BANK NATIONAL ASSOCIATION and
MBIA INSURANCE CORPORATION,     :

                                         :

           Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

         Plaintiffs Patriarch Partners XV, LLC ("Patriarch XV") and Octaluna LLC ("Octaluna"

and, together with Patriarch XV, "Plaintiffs"), by their attorneys Gibson, Dunn & Crutcher LLP,

for their Complaint against defendants U.S. Bank National Association ("U.S. Bank" or the

"Trustee") and MBIA Insurance Corporation ("MBIA") (collectively, "Defendants") allege as

follows:

<u>**NATURE OF THE ACTION**</u>

     1.      This suit seeks to prevent an indenture trustee, defendant U.S. Bank (the

"Trustee"), from rigging a September 15, 2016 sale of collateral backing defaulted debt to

blatantly favor defendant MBIA, one of three creditors to which the Trustee owes fiduciary

duties. Plaintiffs Patriarch XV and Octaluna are the other two creditors to whom the Trustee

owes a fiduciary duty, and whose interests the Trustee ignores entirely at the behest of its master

MBIA. Patriarch XV and Octaluna will be irreparably injured by a sale process designed by

MBIA and implemented by the Trustee to ensure that proceeds solely pay the debt owed to

MBIA – and indeed, deliver a windfall to MBIA well in excess of what it is owed – without

regard to the interests of Patriarch XV and Octaluna, which will be left with nothing but empty pockets and their far greater interests extinguished. The Proposed Sale, involving 132 distinct financial assets and 53 distinct financial entities in 24 distinct industries, has been scheduled on an absurdly short notice to the public of only 20 calendar days, has been restricted for no reason to a very narrow segment of potential investors, and has been limited to a bulk sale of all assets. This sham sale process is designed and virtually guaranteed to deliver collateral worth far more than MBIA's $149 million claim into MBIA's hands at a below-market price and without MBIA having to make any cash outlay for the assets. Only a temporary restraining order, followed by a preliminary and then permanent injunction, can prevent Patriarch XV and Octaluna from sustaining irreparable harm from this sham sale process.

2.     Patriarch XV, Octaluna and MBIA are holders of different classes of notes of a defaulted Collateralized Loan Obligation fund, Zohar I.   MBIA owns the most senior notes. MBIA came to own the notes after paying insurance claims of $149 million to their original owners. MBIA cares only about its self-interest, ensuring that the sale is structured in such a way that by making a "credit bid" against its $149 million claim, MBIA will obtain all of the Collateral in return for extinguishing that claim. And it will do so without having to transfer a single dollar to anyone for these valuable assets. Meanwhile, Patriarch XV and Octaluna, which are entitled to everything other than that $149 million – including *at least* $286 million in outstanding notes – will be left empty-handed and receive nothing. For the Trustee to countenance such a scheme evidences shocking disregard for its fiduciary duties.

3.     MBIA has an additional interest in ensuring that it obtains all the Collateral for itself, that the "price" it "pays" is far below market, and that its cash outlay is zero. Specifically, MBIA is a mere four months away from having to cover an almost $800 million insurance claim

2

when notes come due in January 2017 for Zohar II, a fund similar to Zohar I that also is expected to default without payment of the notes at maturity. But MBIA recently admitted to the public that it does not have the resources or capacity to pay the anticipated Zohar II claims and that the New York State Department of Financial Services could take control of the company. *See* Ex. 5 at 7.[1] That means MBIA in short order will be in rehabilitation or liquidation, and that the executives who led MBIA to the edge of the cliff will be out of jobs. In other words, MBIA is drowning in debt, and it plainly sees the Zohar I Collateral as a life raft that can help it stave off a government takeover if it can steal that Collateral now.

4.      As the holder of the senior outstanding notes, MBIA is deemed the "Controlling Party" under the relevant indenture,[2] and it has the power to direct the Trustee, as it did, to begin a sale process. But the Trustee has a fiduciary duty to *all* Noteholders, and thus a sale process cannot be lawful without honoring scrupulously the fiduciary duties owed to Patriarch XV and Octaluna. Far from fulfilling its fiduciary duties, the Trustee has literally ignored them for the benefit of one creditor alone, MBIA. Proving itself MBIA's mere catspaw, the Trustee announced a sale process that is transparent in its purpose to deliver a single result – the collateral to MBIA at a below-market price with no cash outlay.

5.      The first disqualifying flaw in the sale process is its timing. The Collateral consists of 132 distinct financial assets relating to 53 distinct financial entities in 24 distinct industries. These assets are largely illiquid. They are complex. They are diverse. It is

---

[1] All citations in the form "Ex. __" refer to Exhibits to the Affirmation of Mark A. Kirsch dated September 12, 2016 ("Kirsch Affirmation").

[2] The relevant indenture (the "Indenture"), annexed as Exhibit 2 to the Kirsch Affirmation, is dated as of November 13, 2003 among Zohar CDP 2003-1, Limited, Zohar CDP 2003-1, Corp., Zohar CDP 2003-1, LLC, MBIA, as Credit Enhancer, CDC Financial Products Inc., as Class A-1 Note Agent, and U.S. Bank, as Trustee.

3

ridiculous on its face to schedule the sale of such assets only 20 calendar days after the announcement of the sale, not to mention that the 20 days includes three weekends, one of which was extended for a national holiday.  A commercially reasonable amount of time for potential bidders to evaluate the Collateral would be months.  By truncating the evaluation process of an extremely complex portfolio to 14 business days, MBIA gets exactly what it wants – likely no other bidders, ensuring that its no-cash, below-market price bid will be accepted by the Trustee, and that MBIA has a better chance of surviving in January 2017 when it will have to pay out $800 million in claims.

6.      The second disqualifying flaw in the process is that the Trustee, working to deliver the collateral to its string-puller MBIA at a "fire sale" price, announced that it would reject any bid that was not for all of the Collateral.  No partial bids will be allowed.  This is obviously not a commercially reasonable approach, not least because it eliminates a viable alternative that the value of the assets sold individually likely would be greater than the value of all assets sold as a whole.

7.      When the first two disqualifying flaws in the sale process are taken together – 14 business days to evaluate 132 distinct financial assets on a take-it-or-leave-it basis – it is clear that what MBIA and the Trustee have managed to do is ensure there will be no other bidders for the collateral.

8.      The third disqualifying flaw of the sale process is that it evidences an improper attempt by MBIA to steal equity in the "Portfolio Companies" that borrowed from the Fund and that are majority-owned by Octaluna and certain of its affiliates.  This equity actually is *not* "Collateral" within the meaning of the Indenture.  But the sale announcement is loosely worded, referring to "Other Collateral" being sold as well, in an apparent attempt to permit MBIA to

4

claim later that the sale included unspecified Portfolio Company equity too. Ex. 3. Essentially, MBIA is not content to take the Collateral alone; it also intends to try to steal Portfolio Company equity along with the Collateral to the tune of hundreds of millions of dollars.

9.      The fourth disqualifying flaw of the sale process – underscoring that the planned short-notice, "take-it-or-leave-it" sale of highly complex assets is merely a sham – is that there is virtually no marketing plan for the assets, and that the Trustee has done essentially nothing to market the assets to prospective bidders. It is commercially unreasonable for a Trustee, obligated to act for the benefit of *all* Noteholders by endeavoring to maximize proceeds of a collateral sale, instead to put all of these assets on the auction block for bulk purchase without any marketing effort whatsoever beyond the bare announcement of the impending sale. Again, MBIA and the Trustee have designed a sham process structured to deliver assets worth far more than MBIA's $149 million claim into MBIA's hands at a below-market price, and without competition from other bidders.

10.     The fifth disqualifying flaw of the sham sale process is that, by design, the process will not maximize the yield on sale of the assets but, instead, will deliver a windfall to MBIA well in excess of its indebtedness, to the deliberate exclusion of Patriarch XV and Octaluna, which will end up with nothing.

11.     Finally, the faithless Trustee, at the direction of MBIA, has gone beyond just structuring a sham sale process; it has outright denied Patriarch XV and Octaluna their rights under the Indenture to review relevant books and records of the Trustee regarding the Proposed Sale of the Collateral, and to discuss their concerns with the Trustee. This denial of their contractual rights impairs their ability to properly evaluate a potential purchase of the Collateral, much less to challenge this sale, which is obviously why the Trustee refuses to honor the terms

5

of the Indenture. This misconduct by the Trustee, rendering Patriarch XV and Octaluna unable to review books and records and meet with the Trustee, as is their absolute right, is both shocking and causing these Plaintiffs irreparable harm.

12.     In sum, Patriarch XV and Octaluna have been abused by a fiduciary who has behaved as anything but, favoring one creditor (MBIA) to the exclusion of Plaintiffs, and whose mistreatment will continue without this Court's emergency intervention. MBIA's own financial distress is at the heart of its desperate attempt to save itself, in effect, by stealing the Collateral and thereby divesting Plaintiffs – the only other creditors – of all rights to the Collateral and depriving them of any recovery ever on their investments. Indeed, if this Court does not stop the sale, Defendants surely will argue in later litigation that Plaintiffs' rights in connection with their notes, including the right to recover damages, were extinguished fully by the sale. That is the very definition of irreparable harm. Even if Defendants failed to defeat future litigation on that ground, Plaintiffs would still be subject to irreparable harm, as MBIA's looming insolvency likely would foreclose satisfaction of any damages award. MBIA's attempted money grab will also put a cloud over Octaluna and its affiliates' equity holdings in the Portfolio Companies at a critical time for the companies and Plaintiffs alike. In other words, these Plaintiffs face irreparable harms without immediate injunctive relief.[3] Indeed, MBIA seeks to snatch this Collateral at a below-market price inconceivable in a real sale process. And a real sale process is all Patriarch XV and Octaluna are asking this Court for – not to prevent a sale process, but to

---

[3] As detailed herein, the Trustee's and MBIA's breaches that require an emergency remedy include: the Trustee's breaches of Section 6.1(f) and 5.4(c) of the Indenture; the Trustee's violation—aided and abetted by MBIA—of the Trustee's fiduciary duty of undivided loyalty to all trust beneficiaries; the Trustee's violation of Article 9 of the New York Uniform Commercial Code ("UCC"), that mandates that "[e]very aspect" of the Trustee's proposed sale of the Collateral, "including the method, manner, time, place, and other terms, must be commercially reasonable," UCC § 9-610(b); MBIA's breach of Section 5.13(a) of the Indenture; and MBIA's and the Trustee's breach of their implied duties of good faith and fair dealing under the Indenture.

ensure that a commercially reasonable sale process is in place that will provide an opportunity to maximize the yield on the sale of the Collateral.

13.     In order to maximize the yield, the Trustee should be ordered to provide an adequate period of time for potential bidders to evaluate the Collateral.  The Trustee must make commercially reasonable efforts to market the sale or at least provide relevant information to potentially interested parties.  The Trustee must permit the widest variety of investors to bid that legally can do so, and not limit the bidding to "Qualified Institutional Buyers."  The Trustee also must permit bids on individual assets, not just all-or-nothing bids.  Moreover, the Trustee cannot be permitted to sell equity interests in the Portfolio Companies as purported "Other Collateral" when such interests are not "Collateral" at all under the Indenture.  And the Trustee must permit Patriarch XV and Octaluna to review books and records, as required under the Indenture.

14.     To be clear, Patriarch XV and Octaluna do *not* seek to prevent the sale process. Rather, they seek only to ensure a commercially reasonable sale process fair to all bidders and investors. And they seek expedited discovery to further expose this process for what it is – a sham designed to steer a windfall to MBIA as it struggles to avoid financial collapse. Accordingly, Plaintiffs respectfully request that this Court put a halt to this "fire sale" process now and require the Trustee to conduct a commercially reasonable auction.

## THE PARTIES

15.     Plaintiff Patriarch XV is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in New York County, New York.  It is owned, through affiliated entities, by Lynn Tilton ("Tilton").

16.    Plaintiff Octaluna, LLC ("Octaluna") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in New York County, New York.  It is owned, through affiliated entities, by Ms. Tilton.

17.    Defendant U.S. Bank is a national banking association with offices in New York County, New York.  U.S. Bank is the Trustee under the Indenture.

18.    Defendant MBIA is the world's largest monoline insurer incorporated in New York and with its principal place of business located in Purchase, New York.  MBIA is a wholly-owned subsidiary of MBIA Inc., and primarily operates MBIA Inc.'s structured finance and international insurance business.

## JURISDICTION AND VENUE

19.    The Court has personal jurisdiction over MBIA as a stock insurance company organized under the laws of the State of New York, and because MBIA resides and transacts business in the State of New York and a substantial part of the claims asserted herein occurred in the State of New York.  The causes of action asserted herein arise out of and/or relate in substantial part to MBIA's transaction of business in the State of New York.

20.    This court has personal jurisdiction over U.S. Bank because U.S. Bank resides and transacts business in the State of New York, and a substantial part of the claims asserted herein occurred in the State of New York.  The causes of action asserted herein arise out of and/or relate in substantial part to U.S. Bank's transaction of business in the State of New York.

21.    Venue properly lies in this Court pursuant to the applicable provisions of the Civil Practice Law and Rules, including, but not limited to, CPLR §503.

8

## **FACTUAL BACKGROUND**

### I.   **PATRIARCH AND THE ZOHAR FUNDS**

#### A.   **Patriarch**

1.      In 2000, Lynn Tilton founded Patriarch Partners, LLC ("Patriarch Partners"), a family office investment firm focused on restructuring and rebuilding distressed American companies, and continues to serve as its CEO.  Through Patriarch Partners and its affiliates, Ms. Tilton has restructured and built many companies, including well-known, iconic American brands like Rand McNally, Stila Cosmetics, Dura Automotive, and MD Helicopters.

#### B.   **The Zohar Funds**

2.      Beginning in 2003, Ms. Tilton created three investment funds—Zohar CDO 2003-1 ("Zohar I"), Zohar II 2005-1 ("Zohar II"), and Zohar III, Limited ("Zohar III") (collectively, the "Zohar Funds")—that are structured as collateralized loan obligations ("CLOs").  The Zohar Funds' principal investment strategy, unique in their class, is to make loans to the Portfolio Companies, which are deeply distressed, and implement a turnaround strategy to build value for the funds and their Noteholders. Ms. Tilton guides the management of these Portfolio Companies in her role as Manager and/or CEO, and Patriarch Partners' affiliates provide operational and management services, and work day-to-day on company business.

22.      As CLOs, the Zohar Funds raised cash by issuing debt to outside investors, or noteholders, to fund the loans to the Portfolio Companies that, in turn, generate cash flows and pay back the CLOs' investors over time with interest.  Thus, the Zohar Funds' collateral comprises numerous loans to the Portfolio Companies, not readily marketable registered or rated securities.

### C.   MBIA

23.     MBIA is the world's largest "monoline" insurer.  MBIA Insurance wrote financial guaranty policies covering a variety of structured finance securities, including notes issued by CLOs.  Under a CLO insurance policy, MBIA guarantees that noteholders will receive scheduled payments of interest on each interest payment date and principal payments in full at maturity in the event of a payment default by the CLO issuer.  In other words, if the issuer could not pay back noteholders, MBIA would.  As compensation for MBIA's insurance, the CLO issuer pays MBIA a premium.

24.     MBIA has been involved with the Zohar Funds since their inception.  In 2002, MBIA requested that Patriarch Partners assume the management of seven collateralized debt obligations ("CDOs") to help MBIA resolve a massive insurance exposure—and significant expected financial shortfall with respect to paying out on policies; in exchange, MBIA agreed to underwrite financial guaranty insurance on the senior classes of notes of a new CLO to be created by Patriarch Partners and managed by Patriarch Partners VIII, LLC ("Patriarch VIII"), namely Zohar I (the "Zohar I Transaction").  MBIA issued that policy in November 2003, contemporaneously with the execution of the Indenture, with which MBIA and its counsel were intimately involved.  Ex. 14.

25.     By 2004, Patriarch Partners began work on a new CLO, Zohar II, which would lend alongside Zohar I and closed in January 2005.  In April 2007, Patriarch Partners created another CLO fund, Zohar III.  Although the maturities of Zohar I, Zohar II and Zohar III are different, they have overlapping interests in many of the same Portfolio Companies.

26.     Ms. Tilton was (and remains) deeply, personally invested in the success of the Zohar strategy:  She is the ultimate equity holder of each Zohar Fund, has a large personal

investment in the Zohar I Notes, by virtue of her ownership of Patriarch XV and Octaluna, and has infused hundreds of millions of dollars into the Portfolio Companies.

### C.    The Zohar I Securities

27.    Although Zohar I issued four classes of notes pursuant to the Indenture—Class A-1 Notes, Class A-2 Notes, Class A-3 Notes and Class B Notes—and equity in the form of "preference shares," only two beneficiaries of the fund remain today: MBIA and Plaintiffs.

28.    Zohar I was obligated on the approximately $149 million outstanding principal amount of the Class A-1 and A-2 Notes (the "A-1 and A-2 Notes"). Under MBIA's insurance policy, in the event of a default, MBIA was obligated to pay the Class A-1 and A-2 Notes for all the outstanding principal as well as accrued but unpaid interest, if any, on the maturity date. The Indenture further provides that following a default and the payment under its policy, MBIA is subrogated to the Noteholders' payment rights, as well as other contractual rights.

29.    Upon Zohar I's default, the Class A-1 Noteholder was paid the principal and interest due to it by MBIA in November 2015. An MBIA affiliate had always held the A-2 Notes. MBIA paid the outstanding principal and interest to its affiliate last November as well. As a result, MBIA is now subrogated to all of the rights of the A-1 and A-2 Noteholders and entitled to reimbursement of the amounts paid to them. Moreover, until MBIA is fully repaid, the Class A-1 and A-2 Notes remain "Outstanding" under the terms of the Indenture, and MBIA is deemed to be the "Holder" of those Notes.

30.    All of the remaining Zohar I securities are owned by Plaintiffs—and none are insured.

    a.    **Class A-3 Notes:**  Zohar I is also obligated on an approximately $286.5 million outstanding principal amount of Class A-3 floating rate notes ("Class A-3 Notes"). Patriarch XV purchased the Class A-3 Notes from the previous holder in March 2015. Although MBIA insured the Class A-3 Notes under a separate

11

supplemental insurance policy executed in November 2003, on information and belief, MBIA and the prior holder of the Class A-3 Notes agreed to commute that policy at some point prior to 2012.

 b. **Class B Notes:** Zohar I is obligated on certain Class B Notes in the face amount of $150 million, which are held by Octaluna.

 c. **Preference Shares:** Zohar I also issued certain preference shares (the "Preference Shares"), which Octaluna purchased for $20 million and still holds.

31. The table below sets out the current ownership structure of the Zohar Notes and their remaining balances. As depicted in the table, MBIA controls the Class A-1 and A-2 Notes as subrogee; Patriarch XV controls the Class A-3 Notes, and Octaluna controls the Class B Notes (as well as the Preference Shares).

| Class | Outstanding Amount | Beneficial Owner | Consent and Control Rights |
|---|---|---|---|
| Class A-1 | $122,762,295.24 | MBIA, as subrogee | Controlled by MBIA |
| Class A-2 | $26,189,289.64 | MBIA, as subrogee | Controlled by MBIA |
| Class A-3 | $286,445,355.42 | Patriarch XV | Controlled by Patriarch |
| Class B | $150,000,000 | Octaluna | Controlled by Patriarch |

 **D.** **MBIA As Credit Enhancer and Controlling Party**

32. As insurer of the Class A-1 and Class A-2 Notes, MBIA is designated as the "Credit Enhancer" under the Indenture. As Credit Enhancer, MBIA also qualifies as the "Controlling Party," unless and until the occurrence of a "Credit Enhancement Event"—which is defined to include events such as (1) the commencement by the Credit Enhancer of "any case or proceeding under any provision or chapter of the Bankruptcy Code or any other similar Federal or state law relating to insolvency, bankruptcy, rehabilitation, liquidation or reorganization"; (2) the entry against the Credit Enhancer of a "final and nonappealable" order for relief "under the Bankruptcy Code or any other similar Federal or state law relating to insolvency, bankruptcy, rehabilitation, liquidation or reorganization"; and (3) the entry by a court of competent jurisdiction, the New York Department of Insurance, or any "other competent regulatory

12

authority" of a "final and nonappealable order, judgment or decree" appointing "a custodian, trustee, agent or receiver for the Credit Enhancer or for all or any material portion of its property" or "authorizing the taking of possession by a custodian, trustee, agent or receiver of the Credit Enhancer" or a "material portion" of its property.  Indenture § 1.1.

33.    As Controlling Party, MBIA is empowered to direct the Trustee to undertake various actions in accordance with the Indenture, including, but not limited to, the right to direct the Trustee to sell or foreclose upon the Zohar I collateral, subject to certain limitations, including that any such direction "shall not conflict with any rule of law." *Id.* § 5.13.

## II.    As MBIA's Financial Distress Mounts, It Nonetheless Refuses to Restructure Zohar I and II

34.    Upon information and belief, MBIA's precarious financial state reflects years of deterioration dating back at least to the Financial Crisis.  For example, in 2008 and 2009, Moody's and S&P downgraded MBIA's credit rating in a series of reports, noting that in the wake of the Financial Crisis, MBIA would "face diminished public finance and structured finance new business flow and declining financial flexibility," Ex. 15 at 2, that continuing deterioration in the structured-finance markets would put pressure on MBIA's capital adequacy, and that there was an "expectation of greater losses on [MBIA's] mortgage related exposure," Ex. 16 at 1.  Indeed, the market for CDOs shut down, and ultimately, MBIA stopped issuing insurance on structured products altogether.

35.    By early 2015, however, with the maturity of the Zohar I Notes months away, market observers began to observe that MBIA's exposure to the Zohar Funds was a significant contributing factor to its declining fortunes.  This is especially true due to MBIA's exposure to the Zohar II Notes—which is roughly *five times* greater than its Zohar I exposure.  Specifically,

MBIA insured the Zohar II Class A-1 and A-2 Notes with an outstanding balance of approximately $775.6 million under substantially similar policies as Zohar I.

36.     For example, on March 3, 2015, Moody's announced that it had put MBIA's financial strength rating on "negative" outlook due to "the heightened risk in the Zohar I and II CLO notes that MBIA [] insures" and its belief that, "absent a successful remediation, these exposures could result in meaningful strain on [MBIA's] capital and liquidity profiles." Ex. 17 at 1. Moody's clarified, however, that MBIA's exposure to Zohar I was "manageable," while warning that "failure to reach a global settlement on all Zohar deals would expose MBIA . . . to meaningful claim payments and losses on the much larger Zohar II CLO." *Id.*

37.     Moody's fears have now been realized. On August 8, 2016, MBIA admitted in its quarterly report that it "does not currently have a sufficient amount of liquid assets to pay all or a substantial amount" of the impending claim on the Zohar II Notes, and that if this State's insurance regulator, the New York State Department of Financial Services ("DFS"), "at any time concludes that MBIA . . . does not have, or will be unable to raise sufficient liquid assets to pay its expected claims in a timely manner, it could . . . put MBIA . . . . into a rehabilitation or liquidation proceeding." Ex. 5 at 7. It also warned investors: "The determination to commence such a proceeding or issue such an order is not within the control of the company." *Id.* The next day, MBIA executives were pressed during an investor call about "the status of regulator discussions regarding possible regulatory action, receivership or of some sort of stop payment" and the timeline for that decision. MBIA's President and Chief Operating Officer, Bill Fallon, acknowledged "constant contact with [DFS]." Ex. 6. These admissions about MBIA's looming liquidity crisis are a stark reversal of its prior representations that it would be able to pay its Zohar II-related obligations.

38.     Moreover, if MBIA is placed into receivership or rehabilitation, it automatically will be disqualified as the Controlling Party—and will lose all rights to control the timing and manner of any collateral sale.  This is why, on information and belief, MBIA is determined to effect the sale now.

## IV.     MBIA's History of Disputes with Plaintiffs and Their Affiliates

39.     The instant complaint is not the first, nor the only current litigation between MBIA (or its proxies) and Plaintiffs or their affiliates concerning the Zohar Funds.  Rather, the clash between MBIA on the one hand—a failing financial institution—and Plaintiffs and their affiliates, on the other hand, is currently being played out in numerous forums.  Although those cases, like this one, center on MBIA's bad faith, Plaintiffs do not believe that the allegations in those proceedings are material or necessary to the issues to be decided in this action.

40.     It is important to note, however, that beginning in or around 2012, Ms. Tilton consistently tried to negotiate a restructuring of Zohar I and II with MBIA.  For more than three years, Ms. Tilton made various proposals that included 1) extending maturity dates; 2) repurchasing of all the notes; and 3) subordinating the Class A-3 Notes to all of MBIA's interests.  In addition, Ms. Tilton proposed that MBIA waive certain fund performance tests under the Indenture and the Zohar II indenture so that she could sell the most successful Portfolio Companies, generating proceeds that would have benefitted those funds' Noteholders without violating the indentures.  On each and every one of those occasions, MBIA either ignored the proposal, delayed the conversation, or ultimately refused it outright.

41.     On information and belief, MBIA had no intention to participate in a consensual restructuring of the Zohar Funds to maximize value for all affected Noteholders; rather, it was already plotting to allow Zohar I to default and then attempt to grab for itself valuable equity in

15

the Portfolio Companies that it does not own.  Indeed, during a November 2015 earnings call,

MBIA's CEO Joseph "Jay" Brown told investors that, among the dozens of Portfolio Companies

"involved in the Zohar transactions," "[m]ore than a couple of dozen are generating very positive

EBITDA and could be sold in an orderly manner over the next two or three years."  Brown

reflected that such sales "should allow us to minimize any liquidity impact on MBIA Corp. and

*eventually then have some residual value which we can maximize for . . . [MBIA's] surplus note*

*holders*." Ex. 18 (emphasis added).  In other words, even before Zohar I's default, MBIA had

planned to enrich itself and its investors, to Plaintiffs' detriment, with the equity value in the

Portfolio Companies.

      42.    On information and belief, MBIA also caused Alvarez & Marsal Zohar

Management LLC ("A&M"), which succeeded certain Patriarch entities as collateral manager for

the Zohar Funds in March 2016, after the Patriarch entities resigned, to instigate the Zohar

Funds' Delaware Chancery Court litigation against Patriarch Partners, Patriarch VIII, Patriarch

Partners XIV, LLC, and Patriarch XV (the "Delaware Litigation").  As MBIA acknowledged on

a March 2016 earnings call and several witnesses testified at the trial of the Delaware Litigation

(as to which oral argument on post-trial briefing is currently scheduled), MBIA, as Controlling

Party for Zohar I and II, hired A&M.  *See* Ex. 19.  Since its retention, however, A&M has

devoted far greater effort to litigating against Patriarch XV and other Patriarch entities than it has

to managing the collateral.  In particular, A&M, at the behest of MBIA, has used the Delaware

Litigation to obtain documents about certain "upside equity interests" of the Zohar Funds that

will benefit Noteholders when that upside is received, with the apparent goal of fostering future

litigation, in which it will contend that those interests constitute collateral that can be sold for

MBIA's benefit. But now, with a viable threat of receivership looming, MBIA could wait no more to launch its bid to grab that equity for itself.

## V.     MBIA Schemes to Grab the Collateral at a September 15 Fire Sale.

43.     On June 27, 2016, MBIA, acting as the Controlling Party under the Indenture, directed the Trustee to sell and liquidate all of the Collateral (the "Direction"). Ex. 20. In the same letter, MBIA notified the Trustee of its intention to credit bid for the Collateral in connection with the Sale. In other words, MBIA intends to exchange its $149 million credit from its payments to the Class A-1 and A-2 Noteholders to buy the Collateral. MBIA is *not* offering any cash to Zohar I for all of its Collateral. This would mean that on the Trustee's supposed watch, Plaintiffs would get nothing, while MBIA would get *everything* for the pre-determined price of $149 million, even though the value of the collateral – which includes tens of millions in cash accounts – is far more than that.

44.     The Trustee did not inform Plaintiffs of either the Direction to sell or MBIA's intention to credit bid for the Collateral until two weeks later, on July 11, 2016 (the "Notice"). Ex. 21.

45.     On July 13, 2016, the day after Plaintiffs received the Notice from the Trustee, Plaintiffs wrote a letter to the Trustee. Ex. 7. Plaintiffs reminded the Trustee that it owed fiduciary obligations to all Noteholders and that, in the exercise of those obligations, it must provide "sufficient notice to permit their full and fair investigation of and participation in such sale and the related public auction." *Id.* at 1. Plaintiffs also reminded the Trustee that it had a duty to "seek to maximize the recovery for all holders of Notes—and not just the Controlling Party—in any such sale." *Id.* at 1. Moreover, Plaintiffs cautioned that the Trustee "be especially scrupulous in fulfilling its fiduciary duties where the party giving it direction is, in effect,

conflicted by its interest in litigating certain claims and/or providing material support to others involved in disputes with [Plaintiffs and their affiliates]." *Id.* at 1-2.

46.    The Trustee waited two weeks to respond. When it did, on July 27, 2016, it asserted that "it is not under an obligation to maximize returns for the noteholders," but assured Plaintiffs that the Trustee would conduct a "commercially reasonable sale." Ex. 8. Because the Trustee turned a blind eye to the fact that MBIA's directions were designed solely to reap a windfall and avoid MBIA's financial collapse, the Trustee's contentions that it was acting prudently and in good faith ring hollow. This fact was amply confirmed when the Trustee ultimately scheduled the sale with a patently inadequate amount of time for potential bidders to evaluate the assets, failed to market the sale, limited the number of potential bidders for no reason, and insisted that bidders had to take everything or nothing. Indeed, despite the Trustee's assurances, the sale process it decreed is the antithesis of commercially reasonable.

47.    Plaintiffs' fears about the Trustee's conduct were exacerbated when Plaintiffs received no further notices or correspondence about the timing and manner of the Sale for two months. Accordingly, on August 22, 2016, Plaintiffs again wrote to the Trustee, demanding, pursuant to Plaintiffs' inspection rights under Section 6.1 of the Indenture, that the Trustee provide, "in writing, information concerning the status of the liquidation, the manner of the sale, the actions taken so far with respect to the sale, a copy of marketing materials and action documents, [and] the name of the liquidation agent," as well as an explanation as to why Plaintiffs had not yet received such information (the "August 22 Letter"). Ex. 9 at 1. The Trustee did not respond. The Trustee also ignored further correspondence from Patriarch XV on August 22 and 23 objecting to the Trustee's decision to withhold distribution of interest payments due to it on that date. Exs. 10, 11.

18

48.     Instead, on Friday, August 26, 2016, Patriarch XV and Octaluna received the Trustee's Notification of Disposition of Collateral Assets (the "Sale Notification"), dated August 26, Ex. 3, and learned that the sale would occur on September 15, 2016 – a mere 20 days later. Of those 20 days, seven are weekend days or a holiday (Labor Day). In other words, late on a Friday at the end of August, the Trustee issued a notification of a sale of collateral – as noted, 132 distinct financial assets relating to 53 distinct financial entities in 24 distinct industries, all of which had to be purchased together or not at all – that would occur on the 14th business day following the notice.

49.     That same day, the Trustee purportedly also issued the Notice of Public Sale and Invitation to Bid (the "Invitation"). Ex. 4. Plaintiffs did not even receive the Invitation until August 29, 2016, just 17 days before the September 15 scheduled sale (the "Proposed Sale").

50.     The Sale Notification and the Invitation state that U.S. Bank, as Trustee to the Indenture, intends to conduct a public sale "of all (but not less than all)" the Collateral pursuant to the Indenture; that such sale will take place on September 15, 2016; and that "information . . . about the public sale or the Collateral" can be requested by Duff & Phelps Securities, LLC (the "Liquidation Agent."). Ex. 3 at 6; Ex. 4 at 1. Thus, although the Sale Notification and the Invitation reflect the date and time of the sale and identify the Liquidation Agent, they contain none of the other information that Plaintiffs demanded, including any details of the marketing plan for the sale, or even confirmation that there is any plan at all.

51.     On information and belief, MBIA directed the Trustee to offer the Collateral on an "all (but not less than all)" basis. Under that direction, the Trustee now asserts that it will auction 132 specific loan and equity interests that the Trustee represents are collateral under the Indenture.

19

52.      However, according to the Sale Notification and the Invitation, the winning

bidder also will receive something more: all of the Issuer's "right, title and interest" in "any and

all other Collateral," including "accounts, payment intangibles, general intangibles, letter-of-

credit rights, chattel paper, electronic chattel paper, instruments, deposit accounts and investment

property (each, as defined in the UCC)," as well as "any ownership, security interest, economic

or other interest, right or entitlement in any entity, whether represented or documented through

shares, equity, options, warrants, member interest or otherwise" (collectively, and as defined in

the Sale Notification, the "Other Collateral"). Ex. 3 at 6; Ex. 4 at 1.  In fact, the Invitation makes

clear that the "Collateral" and "Other Collateral"—a term that does not mirror the Indenture's

definition of "Collateral" and is not otherwise found in that document—encompass "all assets of

the Issuer," other than minor assets defined under the Indenture as "Excluded Property."  Ex. 3 at

6; Ex. 4 at 6.  The Invitation further states that even to the extent that there are assets that fall

*outside* the vast scope of "Collateral" and "Other Collateral," such as "commercial tort claims,"

the winning bidder is entitled to those assets too.  *Id.*

53.      Accordingly, on information and belief, MBIA is attempting to cause the Trustee

to auction equity interests that do not constitute Collateral.

54.      The Invitation also references the ongoing Delaware Litigation (*see* paragraph 42

*infra*) that, according to the Trustee, "seek[s] documents from [Patriarch VIII, Patriarch XIV,

and Patriarch XV] related to the Collateral that were not turned over after [its] resignation", and

that "could include information about the Collateral that supplements or conflicts with the

information about the Collateral that is currently available to the Trustee and described here."

Ex. 4 at 9.  The Invitation never explains why a sale must happen now, as A&M, the current

collateral manager, asserts that there is uncertainty over what does and does not qualify as

Collateral.  On information and belief, MBIA is attempting to cause the Trustee to auction equity interests that do not constitute Collateral while concealing that fact from other unsuspecting potential bidders.

55.     The proposed September 15 sale of the Collateral is commercially unreasonable because, among other things:

- The Trustee issued a sale notification and invitation to bid in late August, just before Labor Day weekend, when many Americans vacation and European finance firms are largely inactive, due to summer holidays;

- Permissible bidders are limited by the Trustee to a small group of "qualified institutional buyers";

- The Trustee afforded bidders a mere three weeks to evaluate 132 highly illiquid, diverse, and complex assets that will require significant diligence to assess and value;

- The Trustee has not submitted any details of its marketing plan, or even confirmation that it has any plan at all;

- The Trustee offered the collateral on an "all (but not less than all)" basis, rather than allowing the sale of smaller pieces of the Collateral, further limiting the pool potential buyers, and excluding the possibility that sale of Collateral in smaller pieces could generate a greater return than would be obtained through an all-or-nothing-at-all approach; and

- On information and belief, the Trustee is prepared to accept MBIA's credit bid for the Collateral in connection with the Sale, even though MBIA has announced that it may go into receivership.

56.     On August 30, 2016, the day after Plaintiffs received the Invitation, Plaintiffs, through counsel, again wrote to the Trustee (the "August 30 Letter").  Ex. 12.  Plaintiffs noted that the Sale Notification and Invitation contain none of the information that Plaintiffs demanded (and to which Plaintiffs are entitled under Section 6.1(f) of the Indenture), and reiterated that the timing and manner of the sale are commercially unreasonable.  Accordingly, Plaintiffs demanded that the Trustee withdraw the Sale Notification so that the Trustee could develop a commercially reasonable plan for the marketing and sale of the Collateral, collect and provide for Plaintiffs'

inspection all books and records concerning the Sale (including records identifying the assets the Trustee understands to constitute "Other Collateral" as defined in the Sale Notification), and make the appropriate personnel of the Trustee available to discuss Sale issues with Plaintiffs pursuant to Section 6.1(f) of the Indenture.

57.    The Trustee responded to the August 22 Letter and the August 30 Letter on September 2, 2016 (the "September 2 Letter"), denying any breach of any applicable duties by the Trustee, and rejecting Plaintiffs' contention that the timing and manner of the Sale are commercially unreasonable. Ex. 13. The Trustee further rejected the requests set forth in Plaintiffs' August 30 Letter, asserting that there was no basis to withdraw the Sale Notification, that Plaintiffs' right to inspect books and records relating to the Notes does not extend to communications regarding the Sale, and advising that the Trustee's personnel would not be made available to Plaintiffs. The Trustee also denied that it has any documents pertaining to "Other Collateral," and further denied that there was any "factual support" for Plaintiffs' assertion that MBIA could end up in receivership, despite MBIA's own public acknowledgment of the same. *See id.* at 3. Perhaps most incredibly, the Trustee questioned how Plaintiffs "would be harmed by MBIA acquiring the Collateral assets, since such a conveyance would presumably improve MBIA's financial condition." *Id.* at 3 n.5.

58.    The Proposed sale amounts to little more than a naked attempt to transfer the collateral directly into MBIA's coffers for pennies on the dollar (except that MBIA will not even lay out the pennies)– and to sell assets that do not and cannot qualify as Collateral, in no small part because they belong to Octaluna and its affiliates. Therefore, Plaintiffs have no choice but to seek temporary, preliminary, and permanent injunctive relief from this Court, enjoining the

September 15 collateral auction and any other collateral sale because of the following violations

of contractual, fiduciary, and/or statutory duties owed to Plaintiffs by MBIA and the Trustee:

a.   The Trustee's breach of Section 6.1(f) of the Indenture, under which Plaintiffs have the right to inspect books and records "relating to the Notes" and "to discuss the Trustee's actions, as such actions relate to the Trustee's duties with respect to the Notes, with the Trustee's officers and employees";

b.   The Trustee's breach of Section 5.4(c) of the Indenture, which provides that any Noteholder "may bid for and purchase the Collateral or any part thereof";

c.   The Trustee's violation—aided and abetted by MBIA—of the Trustee's fiduciary duty of undivided loyalty to all trust beneficiaries;

d.   The Trustee's violation of Article 9 of the New York Uniform Commercial Code ("UCC"), which mandates that "[e]very aspect" of the Trustee's proposed sale of the Collateral, "including the method, manner, time, place, and other terms, must be commercially reasonable," UCC § 9-610(b);

e.   MBIA's breach of Section 5.13(a) of the Indenture, which provides that an instruction from the Controlling Party to the Trustee "shall not conflict with any rule of law"; and

f.   MBIA's and the Trustee's breach of their implied duties of good faith and fair dealing under the Indenture, which embraces a pledge that no party will do anything that will have the effect of destroying or injuring the right of another party to receive the fruits of the contract.

## VI.   Plaintiffs and Their Affiliates Will Be Irreparably Harmed If the Sale is Effected

59.   If the Proposed Sale takes place, as planned, on September 15, Plaintiffs and their

affiliates will suffer immediate irreparable harm.

60.   As an initial matter, the Proposed Sale irreparably will violate Plaintiffs' rights

under the Indenture.  Since March 2016, the Trustee has refused to distribute, or provide any

information about, any waterfall payments of interest since *March.*  Plaintiffs do not even know

how much cash is held by Zohar I (or the two other Zohar funds) today.  Yet the Trustee's

behavior in connection with the Proposed Sale is even more inexplicable.  To date, the Trustee

23

has refused to allow Plaintiffs to inspect its books and records relating to the Proposed Sale or to discuss their objections to the Proposed Sale with the Trustee, as are their rights under section 6.1(f) of the Indenture. Plaintiffs' inability to review that information prevents them from valuing the assets that comprise the Collateral before the Proposed Sale. Further, if the Proposed Sale were not being conducted subject to the Trustee's improper "all or nothing" requirement, Octaluna or its affiliates would bid for individual Collateral assets. The loss of that business opportunity is itself an irreparable harm, which is only compounded by the violation of Octaluna's express rights as a Noteholder, under Section 5.4(c) of the Indenture, to "bid for and purchase the Collateral *or any part thereof*."

61.     More significantly, the Proposed Sale would allow MBIA to reap a windfall at Plaintiffs' expense by using a credit bid to obtain the Collateral (including significant cash) at a fire-sale price, rather than allowing Zohar I to sell Collateral assets through a commercially reasonable sale that would recoup the fair value of those assets. If MBIA's plan succeeds, MBIA will own *all* the Collateral in Zohar I—and Defendants undoubtedly will argue that such sale fully and forever extinguishes Plaintiffs' rights to or interest in the Collateral.

62.     In particular, Defendants likely will contend that the Proposed Sale binds all Noteholders, including Plaintiffs and MBIA, "divest[s] all right, title and interest whatsoever, either at law or in equity, of each of them in and to the property sold," and serves as "a perpetual bar, both at law or in equity, against each of them . . . and against any and all Persons claiming through or under them. Indenture § 5.4(c). Thus, if the sale goes forward, Defendants will argue in any later litigation Plaintiffs bring to recoup their losses that MBIA's ownership of the Collateral terminates Plaintiffs' rights to repayment of the Class A-3 Notes and Class B Notes, respectively, and to any and all payments owed to them under the waterfall, *see* Indenture §§

24

11.1, 11.2. The extinction of all Plaintiffs' rights and interests as Noteholders, without any recourse, is the very definition of irreparable harm—and the damages that Plaintiffs would suffer, were this to occur, are not readily ascertainable.

63.    Even if Defendants failed to defeat future litigation on that ground, Plaintiffs would still be subject to irreparable harm: Due to MBIA's admitted financial distress, the Collateral likely would end up in the hands of the New York State Department of Financial Services through a receivership, or distributed to MBIA's creditors following its liquidation. Indeed, on information and belief, MBIA's current financial condition has deteriorated to the point that it is presently insolvent or threatened by imminent insolvency, such that the New York State Department of Financial Services has lawful grounds to seek an order of rehabilitation or receivership against MBIA, N.Y. Ins. Law §§ 7402, 7404, that would constitute a "Credit Enhancement Event" under the Indenture resulting in MBIA's loss of contractual status as the "Controlling Party" of Zohar I. *See* Indenture (definition of "Credit Enhancement Event"). Plaintiffs understand, on information and belief, that the Department of Financial Services is actively examining MBIA's financial state.

64.    Moreover, if MBIA, enabled by the Trustee, successfully credit bids for the Collateral, it also "may hold, retain, possess or dispose of such property in its . . . own absolute right without accountability." Indenture § 5.4(c). That means that all the Collateral, unless covered by a valid transfer restriction, would be transferred to MBIA's balance sheet without a meaningful competitive bid and with unfettered rights to transfer to others.

65.    Further, with the impending maturity of Zohar II, it would be optimal for Octaluna and certain of its affiliates to monetize successful Portfolio Companies to maximize value for all Zohar fund beneficiaries, including, but not limited to, the Zohar I Noteholders. But

a September 15 sale would instantly place a cloud of uncertainty over all the affected Portfolio

Companies, impeding Octaluna and its affiliates' ability to restore, maintain, and monetize value

to the Portfolio Companies or transfer its own equity at a critical juncture for Plaintiffs, their

affiliates, and the Companies.  No reasonable fund or businessperson would buy controlling

equity in a Portfolio Company when MBIA (or anyone else who later acquires that collateral

from MBIA) may later claim that equity is within the collateral purportedly acquired in this

auction.  As a result, Portfolio Companies in which Octaluna or its affiliates have invested

hundreds of millions of dollars may be claimed to have been sold, in whole or in part, without

their consent, and Octaluna and its affiliates' ability to sell such assets would be effectively

immobilized following the sale, causing it to lose opportunities of incalculable value.

66.     Finally, the Sale Notice explicitly references the Delaware Litigation, stating that

the outcome of that case may affect the Collateral that is being auctioned.  This maneuver reveals

that MBIA is attempting to cause the Trustee to auction Octaluna's and its affiliates' equity

interests (that are not Collateral) before MBIA or any other party brings an action for declaratory

relief in any court seeking a ruling on that issue, much less any court determines if the Trustee is

authorized to do so.

67.     MBIA's continued bad faith and fraudulent acts—which the Trustee is facilitating

in violation of its own duties—thus threaten Plaintiffs with catastrophic and irreversible

harm.  The sole solution is to temporarily, preliminarily, and permanently enjoin the proposed

sale from going forward, and similarly enjoin MBIA from directing and the Trustee from

conducting any future sale process that fails to adhere to the requirements of UCC Article 9 and

the Trustee's and MBIA's contractual and/or fiduciary obligations to Plaintiffs.

## FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty Against the Trustee)

68.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 66 above, as if fully set forth herein.

69.     As the indenture trustee of Zohar I, the Trustee owes fiduciary duties to all trust beneficiaries, including, without limitation, Plaintiffs in their respective capacities as holder of the Zohar I A-3 Notes, B Notes, and Preference Shares.

70.     An Event of Default under the Zohar I Indenture occurred in November 2015 and has not been cured.

71.     Because Zohar I is in default pursuant to the terms of the Indenture, the Trustee's fiduciary duties include a duty of undivided loyalty to all trust beneficiaries.  Following an event of default, the Trustee must prudently and in good faith exercise its contractual rights and powers in order to secure the basic purpose of the Indenture—namely, the repayment of the underlying obligation.

72.     The Trustee has breached its fiduciary duties to Plaintiffs by taking steps toward effecting its Proposed Sale of the Collateral on terms inconsistent with its duty to implement the basic purpose of the Indenture:  the repayment of the underlying obligation to all trust beneficiaries, including Plaintiffs.  Specifically, the Trustee has breached its fiduciary duties to Plaintiffs by taking steps toward effecting its Proposed Sale of the Collateral on terms that improperly would minimize competitive bidding for the Collateral and depress the price at which a potential sale may be consummated, and that thereby would ensure that MBIA is afforded an opportunity to acquire the Collateral for its own benefit—at the expense of other trust beneficiaries (*i.e.*, Plaintiffs)—at a depressed price that is substantially less than the fair value of the Collateral.

27

73.     Moreover, even though Plaintiffs have sent the Trustee letters objecting to the Proposed Sale, the Trustee threatens to further breach its fiduciary duties to Plaintiffs by proceeding to consummate the Proposed Sale of the Collateral on such improper terms.

74.     Upon information and belief, if the Trustee's Proposed Sale of the Collateral is permitted to go forward, Plaintiffs and their affiliates will suffer immediate irreparable harm, including, but not limited to, the destruction of Plaintiffs' interests in the Zohar I Notes and the Collateral, frustration of Octaluna and its affiliates' efforts and ability to maximize the value of the Portfolio Companies and freely transfer interests in those companies, and economic harm that will not be susceptible of accurate measurement.

75.     Plaintiffs lack any adequate remedy at law.

76.     Therefore, Plaintiffs respectfully request a temporary restraining order and an order granting preliminary and permanent injunctive relief to restrain and enjoin the Trustee from consummating the Proposed Sale of the Collateral and/or any other proposed future disposition of the Collateral on terms that are not in all respects commercially reasonable.

## SECOND CAUSE OF ACTION
### (Aiding and Abetting Breach of Fiduciary Duty Against MBIA)

77.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 76 above, as if fully set forth herein.

78.     As alleged in paragraphs 43 through 58 of this Complaint, the Trustee has breached its fiduciary duties to Plaintiffs by taking steps toward effecting its Proposed Sale of the Collateral, and threatens to further breach its fiduciary duties by proceeding to consummate its Proposed Sale of the Collateral.

79.     MBIA has, and at all relevant times had, knowledge of the Trustee's breach and of the threatened further breaches of its fiduciary duties to Plaintiffs.  Indeed, on information and

28

belief, MBIA specifically instructed the Trustee to conduct its Proposed Sale of the Collateral on terms that improperly minimize competitive bidding for the Collateral and depress the price at which a potential sale may be consummated, in order to ensure that MBIA obtains the Collateral for its own benefit—at the expense of other trust beneficiaries (i.e., Plaintiffs)—at a depressed price that is substantially less than the fair value of the Collateral. Moreover, although MBIA has been informed that the Trustee's Proposed Sale of the Collateral is being undertaken on terms that violate the Trustee's fiduciary duties to Plaintiffs, MBIA has not taken any steps to instruct or direct the Trustee to suspend, alter, or terminate its Proposed Sale of the Collateral.

80.     MBIA has substantially assisted the Trustee in breaching its fiduciary duties to Plaintiffs by knowingly instructing the Trustee to conduct its Proposed Sale of the Collateral on terms that would result in a breach of the Trustee's fiduciary duties to Plaintiffs, and/or by failing to instruct or direct the Trustee to suspend, alter, or terminate its Proposed Sale of the Collateral, thereby enabling the breach to occur.

81.     MBIA is doing so as part of its express plan to obtain the Collateral for itself at a fire-sale price, and later sell such Collateral at its higher, fair value for MBIA's sole benefit.

82.     Upon information and belief, if the Trustee's Proposed Sale of the Collateral is permitted to go forward, Plaintiffs and their affiliates will suffer immediate irreparable harm, including, but not limited to, the destruction of Plaintiffs' interests in the Zohar I Notes and the Collateral, frustration of Octaluna's and its affiliates' efforts and ability to maximize the value of the Portfolio Companies and freely transfer interests in those companies, and economic harm that will not be susceptible of accurate measurement. Plaintiffs lack any adequate remedy at law.

83.     Therefore, Plaintiffs respectfully request a temporary restraining order and an order granting preliminary and permanent injunctive relief to restrain and enjoin MBIA from

permitting the Trustee to consummate the Proposed Sale of the Collateral and likewise enjoin any other proposed future disposition of the Collateral, except on terms that are consistent with the Trustee's fiduciary duties to Plaintiffs in their capacities as Noteholder and Preference Shareholder under the Indenture.

### THIRD CAUSE OF ACTION
### (Violation of UCC §§ 9-610 Against the Trustee)

84.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 83 above, as if fully set forth herein.

85.    Any sale by the Trustee of the Collateral must be undertaken in compliance with Article 9 of the New York Uniform Commercial Code (the "UCC").

86.    "Every aspect" of the Trustee's Proposed Sale of the Collateral, "including the method, manner, time, place, and other terms, must be commercially reasonable." UCC § 9-610(b).

87.    A sale of property such as the Collateral at issue in this case "is made in a commercially reasonable manner if the disposition is made . . . in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." *Id.* § 9-627(b)(3).

88.    The method, manner, time, place, and/or other terms of the Trustee's Proposed Sale of the Collateral are not "commercially reasonable."

89.    Upon information and belief, the Trustee's Proposed Sale of the Collateral is designed to minimize competitive bidding for the Collateral, depress the price at which a potential sale may be consummated, and thereby ensure that MBIA is afforded an opportunity to acquire the Collateral for its own account at a depressed price that is substantially less than the objective fair value of the Collateral.

90.     Upon information and belief, if the Trustee's Proposed Sale of the Collateral is permitted to go forward, Plaintiffs and their affiliates will suffer immediate irreparable harm, including, but not limited to, the destruction of Plaintiffs' interests in the Zohar I Notes and the Collateral, frustration of Octaluna and its affiliates' efforts and ability to maximize the value of the Portfolio Companies and freely transfer interests in those companies, and economic harm that will not be susceptible of accurate measurement.  Plaintiffs lack any adequate remedy at law.

91.     Therefore, Plaintiffs respectfully request a temporary restraining order and an order granting preliminary and permanent injunctive relief to restrain and enjoin the Trustee from consummating the Proposed Sale of the Collateral and/or any other proposed future disposition of the Collateral on terms that are not in all respects commercially reasonable.

### FOURTH CAUSE OF ACTION
### (Breach of Contract Against MBIA and the Trustee)

92.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 91 above, as if fully set forth herein.

93.     Section 5.13 of the Indenture provides that MBIA, in its present capacity as "the Controlling Party[,] shall have the right to cause the institution of . . . and direct the time, method and place of conducting any Proceeding for any remedy available to the Trustee," including but not limited to "a Sale of the Collateral . . . pursuant to, and in accordance with, Sections 5.4 and 5.5 [of the Indenture]."  Indenture § 5.13; *id.* § 5.13(d).

94.     Section 5.13 of the Indenture further provides that any such direction to the Trustee to conduct a Sale of the Collateral or other Proceeding for any remedy available to the Trustee "shall not conflict with any rule of law."  Indenture § 5.13(a).

31

95.     "Th[e] Indenture and each note and all matters arising out of or relating to th[e] Indenture and each note shall be construed in accordance with and governed by the laws of the State of New York." Indenture § 18.9.

96.     Each provision of Article 9 of the New York UCC constitutes a "rule of law" for purposes of construing the Indenture and the parties' rights and obligations thereunder. Accordingly, MBIA's "right to cause the institution of . . . and direct the time, method and place of . . . a Sale of the Collateral" is subject to the contractual limitation that "such direction shall not conflict with" Article 9 of the New York UCC.  Indenture § 5.13; *id.* § 5.13(d).

97.     Any sale by the Trustee of the Collateral must be undertaken in compliance with Article 9 of the New York Uniform Commercial Code (the "UCC").

98.     "Every aspect" of the Trustee's Proposed Sale of the Collateral, "including the method, manner, time, place, and other terms, must be commercially reasonable." UCC § 9-610(b).

99.     A sale of property such as the Collateral at issue in this case "is made in a commercially reasonable manner if the disposition is made . . . in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." *Id.* § 9-627(b)(3).

100.     The method, manner, time, place, and/or other terms of the Trustee's Proposed Sale of the Collateral are not commercially reasonable.

101.     Upon information and belief, the Trustee's Proposed Sale of the Collateral is designed to minimize competitive bidding for the Collateral, depress the price at which a potential sale may be consummated, and thereby ensure that MBIA is afforded an opportunity to

acquire the Collateral for its own account at a depressed price that is substantially less than the objective fair value of the Collateral.

102.    Upon information and belief, MBIA has directed the Trustee to conduct the Proposed Sale of the Collateral in accordance with such terms that are not commercially reasonable, and the Trustee has agreed to conduct the Proposed Sale on those unreasonable terms. Accordingly, MBIA has breached Section 5.13(a) of the Indenture by failing to ensure that its directions to the Trustee to conduct a Sale of the Collateral "shall not conflict with any rule of law"—namely, the applicable provisions of Article 9 of the New York UCC—and the Trustee is in breach of said provision by agreeing to sell the Collateral on terms likewise conflict with applicable law.

103.    In addition, section 5.4(c) of the Indenture expressly provides that, "[u]pon any sale, whether made under power of sale hereby given or by virtue of judicial proceedings, any Noteholder or Noteholders or other Secured Party may bid for and purchase the Collateral *or any part thereof.*" Indenture § 5.4(c) (emphasis added). Thus, by directing and/or permitting a Proposed Sale process to be conducted that purports to permit only bids for "all (but not less than all)" of the Collateral, the Trustee and MBIA have breached—and threaten to further breach—section 5.4(c) of the Indenture.

104.    Plaintiffs, in their capacities as a Noteholder and the Preference Shareholder of Zohar I, have duly performed all of their contractual obligations under the Indenture.

105.    Upon information and belief, if the Trustee's Proposed Sale of the Collateral is permitted to go forward, Plaintiffs and their affiliates will suffer immediate irreparable harm, including, but not limited to, the destruction of Plaintiffs' interests in the Zohar I Notes and the Collateral, frustration of Octaluna's and its affiliates' efforts and ability to maximize the value of

33

the Portfolio Companies and freely transfer interests in those companies, and economic harm that will not be susceptible of accurate measurement.

106.    Plaintiffs lack any adequate remedy at law.

107.    Therefore, Plaintiffs respectfully request a temporary restraining order and an order granting preliminary and permanent injunctive relief to restrain and enjoin MBIA from permitting the Trustee to consummate the Proposed Sale of the Collateral and/or any other proposed future disposition of the Collateral on terms that are not in all respects commercially reasonable, to compel MBIA to instruct the Trustee not to consummate any Sale of the Collateral except on terms that are in all respects commercially reasonable, and to enjoin the Trustee from consummating any Sale of the Collateral except on terms that are in all respects commercially reasonable.

## FIFTH CAUSE OF ACTION
### (Breach of Contract Against the Trustee)

108.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 107 above, as if fully set forth herein.

109.    Section 6.1(f) of the Indenture provides that the Trustee "shall, upon reasonable (but no less than three Business Days') prior written notice to the Trustee, permit any representative of a Holder of a Note . . . , during the Trustee's normal business hours, to examine all books of account, records, reports and other papers of the Trustee relating to the Notes, to make copies and extracts therefrom . . . and to discuss the Trustee's actions, as such actions relate to the Trustee's duties with respect to the Notes, with the Trustee's officers and employees responsible for carrying out the Trustee's duties with respect to the Notes."

34

110.     Plaintiffs have repeatedly requested in writing that the Trustee provide Plaintiffs with access to books and records concerning the Proposed Sale and associated marketing efforts, and make the Trustee's officers available to discuss those matters with Plaintiffs' representatives.

111.     The Trustee has failed to provide Plaintiffs with access to its relevant books and records, or to allow Plaintiffs' representatives to discuss issues relating to the Proposed Sale and related marketing efforts with the Trustee's officers, as required by Section 6.1(f) of the Indenture.

112.     Plaintiffs, in their capacities as a Noteholder and the Preference Shareholder of Zohar I, have duly performed all of its contractual obligations under the Indenture.

113.     Upon information and belief, if the Trustee's Proposed Sale of the Collateral is permitted to go forward before Plaintiffs are provided access to the books and records and discussions with the Trustee's officers to which it is entitled, Plaintiffs and their affiliates will suffer immediate irreparable harm, including, but not limited to, the destruction of Plaintiffs' interests in the Zohar I Notes and the Collateral, frustration of Octaluna's and its affiliates' efforts and ability to maximize the value of the Portfolio Companies and freely transfer interests in those companies, and economic harm that will not be susceptible of accurate measurement. Plaintiffs lack any adequate remedy at law.

114.     Therefore, Plaintiffs respectfully request a temporary restraining order and an order granting preliminary and permanent injunctive relief to compel the Trustee to provide Plaintiffs access to the books and records and discussions with the Trustee's officers to which they are entitled, and to restrain and enjoin the Trustee from consummate the Proposed Sale of the Collateral and/or any other proposed future disposition of the Collateral before Plaintiffs are

provided access to the books and records and discussions with the Trustee's officers to which they are entitled.

### SIXTH CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith**
**and Fair Dealing Against MBIA and the Trustee)**

115.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 114 above, as if fully set forth herein.

116.    The Indenture is a valid contractual instrument governed by the laws of New York.

117.    Plaintiffs, in their capacities as a Noteholder and the Preference Shareholder of Zohar I, have duly performed all of its contractual obligations under the Indenture.

118.    As a contractual instrument governed by the laws of New York, the Indenture contains an implied covenant of good faith and fair dealing, which embraces a pledge that no party will do anything that will have the effect of destroying or injuring the right of another party to receive the fruits of the contract. A party breaches the implied covenant of good faith and fair dealing when it acts in a manner that, although not expressly forbidden by any contractual provision, would deprive another party of the right to receive the benefits under their agreement.

119.    Upon information and belief, the Trustee's Proposed Sale of the Collateral is designed to minimize competitive bidding for the Collateral, depress the price at which a potential sale may be consummated, and thereby ensure that MBIA is afforded an opportunity to acquire the Collateral for its own account at a depressed price that is substantially less than the objective fair value of the Collateral. As such, the Trustee's Proposed Sale of the Collateral, if consummated, would deprive Plaintiffs of their rights to receive the benefits to which they are entitled under the Indenture.

120.     Upon information and belief, MBIA has directed the Trustee to conduct the Proposed Sale of the Collateral in accordance with such terms that, if consummated, would deprive Plaintiffs of their rights to receive the benefits to which they are entitled under the Indenture, and the Trustee has acceded to MBIA's instructions—or, in the alternative, has independently chosen to conduct the Proposed Sale on improper terms—despite having been put on notice that the Proposed Sale would constitute a breach of various duties owed to Plaintiffs.

121.     Upon information and belief, if the Trustee's Proposed Sale of the Collateral is permitted to go forward, Plaintiffs and their affiliates will suffer immediate irreparable harm, including, but not limited to, the destruction of Plaintiffs' interests in the Zohar I Notes and the Collateral, frustration of Octaluna's and its affiliates' efforts and ability to maximize the value of the Portfolio Companies and freely transfer interests in those companies, and economic harm that will not be susceptible of accurate measurement.

122.     By directing and/or permitting the Proposed Sale of the Collateral to go forward on the improper terms described in this Complaint, MBIA and the Trustee have breached, and threaten to further breach, the implied covenant of good faith and fair dealing contained in the Indenture.

123.     Plaintiffs lack any adequate remedy at law.

124.     Therefore, Plaintiffs respectfully request a temporary restraining order and an order granting preliminary and permanent injunctive relief to restrain and enjoin MBIA from permitting the Trustee to consummate the Proposed Sale of the Collateral and/or any other proposed future disposition of the Collateral on terms that would deprive Plaintiffs of their right to receive the benefits to which they are entitled under the Indenture, and to compel MBIA to

37

instruct the Trustee not to consummate any Sale of the Collateral on terms that would deprive

Plaintiffs of their right to receive the benefits to which they are entitled under the Indenture.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs respectfully demand judgment in its favor against Defendants as follows:

a.   Granting Plaintiffs a preliminarily injunction, pending trial and determination of Plaintiffs' application for a permanent injunction, enjoining and restraining Defendants, their agents, servants, employees, officers, attorneys, and all other persons in active concert or participation with them, from (i) proceeding in any way with and/or consummating the Trustee's Proposed Sale of the Collateral; (ii) directing and/or instructing any person (including but not limited to any liquidation agent appointed by the Trustee) to proceed in any way with and/or consummate the Trustee's Proposed Sale of the Collateral; (iii) proceeding in any way with and/or consummating any future proposed sale of the Collateral or any part thereof; or (iv) directing and/or instructing any person to proceed in any way with and/or consummate any future proposed sale of the Collateral;

b.   Compelling the Trustee to provide Plaintiffs with all books and records concerning the Proposed Sale and any related marketing efforts;

c.   Granting Plaintiffs expedited discovery in connection with their preliminary injunction application in advance of any hearing on that application; and

d.   Granting Plaintiffs such other relief as this Court deems just and proper.

Dated: New York, New York
        September 12, 2016

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: _____
        Randy M. Mastro
        Mark Kirsch
        Robert F. Serio

200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000

*Attorneys for Plaintiffs*

39

## VERIFICATION

STATE OF NEW YORK    )
                           )     ss:
COUNTY OF NEW YORK  )

LYNN TILTON, being duly sworn, deposes and says:

I am the Manager of Plaintiff Patriarch Partners XV LLC, one of the Plaintiffs in this action, which is united in interest and pleads together with Plaintiff Octaluna LLC. I have read the foregoing Verified Complaint and know the contents thereof. The matters set forth therein are true and correct to the best of my knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

LYNN TILTON

SWORN TO AND SUBSCRIBED before
me on this 12 day of September, 2016.

Notary Public

Printed Name:_____

RICKIE CHANG
Notary Public, State of New York
No. 01CH6128282
Qualified in New York County
Commission Expires June 6, 2017

My Commission Expires: _____

42 of 42

# EXHIBIT C



Global Corporate Trust Services
214 N. Tryon Street, 26th Floor
Charlotte, North Carolina 28202

**NOTICE OF PUBLIC SALE AND INVITATION TO BID**

August 26, 2016

You are invited to bid on all of the collateral described below (the "Collateral"), which will be sold at a public sale, as indicated below.  The sale will be held by U.S. Bank National Association ("U.S. Bank"), not in its individual capacity, but solely as trustee (the "Trustee") under that certain Indenture, dated as of November 13, 2003 (as amended or supplemented, the "Indenture"), by and among Zohar CDO 2003-1, Limited, as Issuer (the "Issuer"), Zohar CDO 2003-1, Corp., as Co-Issuer, Zohar CDO 2003-1, LLC, as Zohar Subsidiary, MBIA Insurance Corporation, as Credit Enhancer, CDC Financial Products Inc., as Class A-1 Note Agent, and the Trustee. Capitalized terms used herein and not otherwise defined shall have the meanings assigned thereto in the Indenture.

The Trustee has retained Duff & Phelps Securities, LLC ("Duff & Phelps") to act as its liquidation agent (the "Liquidation Agent") for the Collateral. To request more information from the Liquidation Agent about the public sale of the Collateral, including how to submit bids in connection with the sale, please contact Duff & Phelps by telephone at 212-523-0355 or by e-mail at CL.ZOHARBIDS@DUFFANDPHELPS.COM, or by mail addressed to Duff & Phelps Securities, LLC, 55 East 52nd Street, Floor 31, New York, NY 10055, Attention:  Zohar Bids.

The Conditions of the Public Sale Are as Follows:

1.   Collateral.  The Collateral that will be sold at the public sale is all (but not less than all) of the following:[1]

| Public Sale: Thursday, September 15, 2016,  12:00 p.m. ET | | | | | | | |
|---|---|---|---|---|---|---|---|
| Loan Interests | | | | | | | |
| # | Issuer | Issue | Asset Type | Current Par Amount (Issue Currency) | Total Commitment | Current Coupon | Maturity Date |
| 1. | 180s, LLC & 180s Canada Corporation | Fully Funded Term B | Delayed Draw Loan | 2,240,328.00 | 2,242,328.00 | 2 | 4/15/2019 |
| 2. | 180s, LLC & 180s Canada Corporation | Tranche A Revolver | Revolving Credit | 16,600,000.00 | 16,600,000.00 | 2.49565 | 4/15/2019 |
| 3. | American Doors, LLC | Term Loan | Term Loan | 115,751.42 | 115,751.42 | 0.99565 | 4/15/2019 |
| 4. | American Doors, LLC | Term Loan C | Term Loan | 8,315,638.01 | 8,315,638.01 | 0.99565 | 4/15/2019 |
| 5. | American LaFrance | Delayed Draw Term Loans | Delayed Draw Loan | 509,019.73 | 509,019.73 | 0.197 | 10/31/2015 |

[1] Information is current as of August 25, 2016 and is subject to change.  The information relating to each item of Collateral is for reference purposes only and is qualified in its entirety by reference to the related governing documents and the additional qualifications described in this Notice of Public Sale and Invitation to Bid.

| # | Issuer | Issue | Asset Type | Current Par Amount (Issue Currency) | Total Commitment | Current Coupon | Maturity Date |
|---|--------|-------|------------|-------------------------------------|------------------|----------------|---------------|
| 6. | American LaFrance | Fully Funded DD Term Loan A | Term Loan | 1,784,456.80 | 1,784,456.80 | 0.434 | 10/31/2015 |
| 7. | American LaFrance | Revolver | Revolving Credit | 451,290.39 | 451,290.40 | 1 | 10/31/2015 |
| 8. | American LaFrance | Term Loan 1 | Term Loan | 414,121.55 | 414,121.55 | 1 | 10/31/2015 |
| 9. | American LaFrance | Term Loan 2 | Term Loan | 42,240,641.22 | 42,240,641.22 | 1 | 10/31/2015 |
| 10. | Amweld International LLC | Delayed Draw | Delayed Draw | 80,160.09 | 80,160.09 | 0 | 6/28/2016 |
| 11. | Amweld International LLC | Term Loan B | Term Loan | 5,758,739.62 | 5,758,739.62 | 0 | 10/31/2015 |
| 12. | Best Textiles Acquisition, LLC | Revolver | Revolving Credit | 5,000,000.00 | 5,000,000.00 | 2.49565 | 4/15/2019 |
| 13. | Bomar Industries International, Inc. | Revolver 2 | Revolving Credit | 3,200,000.00 | 3,200,000.00 | 0 | 6/30/2013 |
| 14. | Bomar Industries International, Inc. | Tranche A Term Loan | Term Loan | 10,000,000.00 | 10,000,000.00 | 0 | 6/30/2013 |
| 15. | Bomar Industries International, Inc. | Tranche B Term Loan | Term Loan | 3,806,930.16 | 3,806,930.16 | 0 | 6/30/2013 |
| 16. | Croscil Home | Revolver | Revolving Credit | 10,000,000.00 | 10,000,000.00 | 6.7565 | 4/15/2019 |
| 17. | Duro Textiles, LLC | Fully Funded Term Loan G | Delayed Draw Loan | 1,049,259.65 | 1,049,259.65 | 1.9388 | 4/15/2019 |
| 18. | Duro Textiles, LLC | Term B Loan | Term Loan | 7,500,000.00 | 7,500,000.00 | 1.9388 | 4/15/2019 |
| 19. | Duro Textiles, LLC | Term Loan | Term Loan | 8,000,000.00 | 8,000,000.00 | 1.9388 | 4/15/2019 |
| 20. | Duro Textiles, LLC | Term Loan K1 | Term Loan | 1,888,000.99 | 1,888,000.99 | 1.9388 | 4/15/2019 |
| 21. | East Alliance Limited | Term Loan A | Term Loan | 11,928,348.24 | 11,928,348.24 | 2.8334 | 12/31/2016 |
| 22. | Emag Solutions, LLC | Revolver | Revolving Credit | 4,062,500.04 | 4,062,500.04 | 7.49565 | 4/15/2019 |
| 23. | Fetco Home Decor, Inc. | Exchanged Security | Term Loan | 2,757,727.26 | 2,757,727.26 | 0.1702 | 4/15/2019 |
| 24. | Fetco Home Decor, Inc. | Term Loan | Term Loan | 1,082,661.77 | 1,082,661.77 | 8.49565 | 4/15/2019 |
| 25. | Galey & Lord, LLC | Fully Funded Term Loan | Term Loan | 3,000,000.00 | 3,000,000.00 | 1.49565 | 4/15/2019 |
| 26. | Galey & Lord, LLC | Revolver | Revolving Loan | 1,180,176.25 | 1,180,176.25 | 1.49565 | 4/15/2019 |
| 27. | Galey & Lord, LLC | Term Loan | Term Loan | 25,263,396.84 | 25,263,396.84 | 1.49565 | 4/15/2019 |
| 28. | Galey & Lord, LLC | Term Loan E | Term Loan | 1,600,000.00 | 1,600,000.00 | 1.49565 | 4/15/2019 |
| 29. | Galey & Lord, LLC | Term Loan K | Term Loan | 689,999.01 | 689,999.01 | 1.45665 | 4/15/2019 |
| 30. | Galey & Lord, LLC | Term Loan M | Term Loan | 800,000.00 | 800,000.00 | 1.49565 | 4/15/2019 |
| 31. | Global Automotive Systems, LLC | Term Loan | Term Loan | 9,100,000.00 | 9,100,000.00 | 5.99565 | 4/15/2019 |
| 32. | Global Automotive Systems, LLC | Term Loan A | Term Loan | 21,727,855.40 | 21,727,855.40 | 5.99565 | 4/15/2019 |
| 33. | Hartwell Industries, Inc. | DELAYED DRAW TERM LOAN C | Delayed Draw Loan | 1,500,000.00 | 1,500,000.00 | 2.99565 | 4/15/2019 |
| 34. | Hartwell Industries, Inc. | New Revolver | Revolving Credit | 1,927,636.19 | 1,927,639.96 | 2.99565 | 4/15/2019 |
| 35. | Hartwell Industries, Inc. | New Term Loan 2 | Term Loan | 15,060,304.48 | 15,060,304.48 | 2.96655 | 4/15/2019 |
| 36. | Hartwell Industries, Inc. | Term Loan A-1 | Term Loan | 500,000.00 | 500,000.00 | 2.99565 | 4/15/2019 |

| # | Issuer | Issue | Asset Type | Current Par Amount (Issue Currency) | Total Commitment | Current Coupon | Maturity Date |
|---|--------|-------|-----------|-------------------------------------|------------------|----------------|---------------|
| 37. | Heritage Aviation, Ltd. | Delayed Draw Term Loan A | Delayed Draw Loan | 9,860,000.00 | 9,970,000.00 | 4 | 4/15/2019 |
| 38. | Heritage Aviation, Ltd. | Term Loan | Term Loan | 1,000,000.00 | 1,000,000.00 | 4.45665 | 4/15/2019 |
| 39. | Iconic American Trucks | Iconic American Trucks T/L B | Term Loan | 7,217,681.53 | 7,217,681.53 | | 3/31/2019 |
| 40. | IMG Holdings, Inc. | Fully Funded Term Loan | Term Loan | 555,360.00 | 555,360.00 | 4.49565 | 4/15/2019 |
| 41. | IMG Holdings, Inc. | Revolver A | Revolving Credit | 3,999,999.97 | 4,000,000.00 | 4.49565 | 4/15/2019 |
| 42. | IMG Holdings, Inc. | Revolving Credit C | Revolving Credit | 2,000,000.35 | 2,000,000.35 | 4.49565 | 4/15/2019 |
| 43. | IMG Holdings, Inc. | Term E | Term Loan | 144,640.00 | 144,640.00 | 4.49565 | 4/15/2019 |
| 44. | IMG Holdings, Inc. | Term Loan 1A | Term Loan | 2,004,585.76 | 2,004,585.76 | 4.49565 | 4/15/2019 |
| 45. | IMG Holdings, Inc. | Term Loan 1B | Term Loan | 2,174,795.68 | 2,174,795.68 | 4.49565 | 4/15/2019 |
| 46. | IMG Holdings, Inc. | Term Loan D | Term Loan | 300,000.00 | 300,000.00 | 4.49565 | 4/15/2019 |
| 47. | Intera Group, Inc. | Exchanged Security | Note | 6,374,815.23 | 6,374,815.23 | 0 | 12/31/2016 |
| 48. | Intera Group, Inc. | Fully Funded Term C | Delayed Draw Loan | 2,486,494.53 | 2,586,494.53 | 0 | 10/31/2016 |
| 49. | Intera Group, Inc. | Restructured Term Loan | Term Loan | 869,031.69 | 869,031.69 | 0 | 10/31/2016 |
| 50. | Intera Group, Inc. | Term Loan C | Term Loan | 158,501.65 | 158,501.65 | 0 | 10/31/2016 |
| 51. | Intrepid USA | Intrepid USA R/C | Revolving Credit | 9,280,002.89 | 9,280,002.89 | 8 | 4/15/2019 |
| 52. | Intrepid USA | Term Loan B | Term Loan | 3,860,066.01 | 3,860,066.01 | 8 | 4/15/2019 |
| 53. | LVD Acquisition, LLC | Term Loan | Term Loan | 9,303,993.33 | 9,303,993.33 | 4.49565 | 4/15/2019 |
| 54. | MD Helicopters, Inc. | Sub Note Term Loan | Term Loan | 11,255,271.08 | 11,255,271.08 | 2.4255 | 5/15/2019 |
| 55. | MD Helicopters, Inc. | Term A | Term Loan | 12,873,602.92 | 12,873,602.92 | 3.4388 | 4/15/2019 |
| 56. | MD Helicopters, Inc. | Term Loan | Term Loan | 25,551,724.14 | 25,551,724.14 | 3.4388 | 4/15/2019 |
| 57. | MD Helicopters, Inc. | Term Loan B | Term Loan | 16,116,674.23 | 16,116,674.23 | 3.4388 | 4/15/2019 |
| 58. | MD Helicopters, Inc. | Tranche A-3 | Term Loan | 700,000.00 | 700,000.00 | 3.4388 | 4/15/2019 |
| 59. | MD Helicopters, Inc. | Tranche A-7 | Term Loan | 1,200,000.00 | 1,200,000.00 | 3.4388 | 4/15/2019 |
| 60. | Natura Water, Inc. | Fully Funded Term B | Term Loan | 1,500,000.00 | 1,500,000.00 | 5.49565 | 4/15/2019 |
| 61. | Natura Water, Inc. | Fully Funded Term C | Term Loan | 2,200,000.00 | 2,200,000.00 | 5.49565 | 4/15/2019 |
| 62. | Natura Water, Inc. | Fully Funded Term Loan E | Term Loan | 300,000.00 | 300,000.00 | 5.49565 | 4/15/2019 |
| 63. | NetVersant Acquisition, LLC | Restructured Revolver A | Revolving Credit | 277,490.69 | 277,490.69 | 1.45665 | 4/15/2019 |
| 64. | NetVersant Acquisition, LLC | Restructured Term Loan | Term Loan | 41,585,556.76 | 41,585,556.76 | 1.45665 | 4/15/2019 |
| 65. | NetVersant Solutions, Inc. | Restructured Revolver B | Revolving Credit | 2,102,385.30 | 2,102,385.31 | 1.45665 | 4/15/2019 |
| 66. | Petry Media Corporation | Priming Revolver | Revolving Credit | 9,212,536.60 | 9,219,801.44 | 10 | 10/31/2017 |
| 67. | Petry Media Corporation | Priming Term Loan | Term Loan | 210,397.61 | 210,397.61 | 10 | 10/31/2016 |
| 68. | Petry Media Corporation | Term Loan C | Term Loan | 1,380,775.74 | 1,380,775.74 | 10 | 10/31/2016 |

3

| # | Issuer | Issue | Asset Type | Current Par Amount (Issue Currency) | Total Commitment | Current Coupon | Maturity Date |
|---|--------|-------|-----------|----------------------------------|-----------------|---------------|--------------|
| 69. | Petry Media Corporation | Term Loan E | Term Loan | 770,092.44 | 770,092.44 | 10 | 10/31/2016 |
| 70. | Rapid Rack Industries, Inc. | Term Loan | Term Loan | 4,121,507.10 | 4,121,507.10 | 0 | 10/31/2015 |
| 71. | Red Shield Acquisition LLC | Revolver 2 | Revolving Credit | 5,000,000.00 | 5,000,000.00 | | 10/31/2016 |
| 72. | Red Shield Acquisition LLC | Term Loan | Delayed Draw Loan | 5,722,548.98 | 5,722,548.98 | | 10/31/2016 |
| 73. | Remco Maintenance, LLC | Revolver | Revolving Credit | 2,500,000.00 | 2,500,000.00 | 10 | 4/15/2019 |
| 74. | Remco Maintenance, LLC | Term Loan | Term Loan | 3,362,670.50 | 3,362,670.50 | 10 | 4/15/2019 |
| 75. | RM Acquisition, LLC | Preferred Security | Term Loan | 8,545,250.00 | 8,545,250.00 | 0.45445 | 5/15/2019 |
| 76. | RM Acquisition, LLC | Revolver | Revolving Credit | 2,205,882.33 | 2,205,882.35 | 10 | 4/15/2019 |
| 77. | RM Acquisition, LLC | Term Loan | Term Loan | 5,823,529.41 | 5,823,529.41 | 6.33 | 4/15/2019 |
| 78. | S.O. Acquisition, LLC | Fully Funded Term A | Term Loan | 4,500,000.00 | 4,500,000.00 | 6.4388 | 4/15/2019 |
| 79. | S.O. Acquisition, LLC | Fully Funded Term Loan C | Term Loan | 350,000.00 | 350,000.00 | 6.49565 | 4/15/2019 |
| 80. | Silverack, LLC | Silverack R/C A | Revolving Credit | 6,000,000.00 | 6,000,000.00 | 2.49565 | 4/15/2019 |
| 81. | Silverack, LLC | Silverack T/L A | Term Loan | 3,395,487.02 | 3,395,487.02 | 2.49565 | 4/15/2019 |
| 82. | Snelling Medical Staffing | Term Loan | Term Loan | 223,000.00 | 223,000.00 | 9 | 4/15/2019 |
| 83. | Transcare Corporation | Tranche B Term Loan | Term Loan | 3,500,000.00 | 3,500,000.00 | 2.49565 | 4/15/2019 |
| 84. | Trim Trends, LLC | Term Loan A | Term Loan | 6,555,380.26 | 6,555,380.26 | 5.99565 | 4/15/2019 |
| 85. | Vulcan Engineering Corporation | Revolver | Revolving Credit | 1, 428,571.43 | 2,000,000.00 | 9 | 4/15/2019 |
| 86. | Xinhua Sports & Entertainment | Additional Term Loan | Term Loan | 2,394,288.89 | 2,394,288.89 | 2 | 10/21/2012 |
| 87. | Xinhua Sports & Entertainment | Convertible Term Loan | Term Loan | 13,060,228.45 | 13,060,228.45 | 2 | 10/21/2012 |
| 88. | Xpient Solutions, LLC | Exchanged Security | Term Loan | 318,427.84 | 318,427.84 | 4.19775 | 11/30/2019 |
| 89. | Zohar SS Acquisition, LLC | Exchanged Security | Term Loan | 2,564,102.60 | 2,564,102.60 | 2 | 5/15/2019 |
| 90. | Zohar SS Acquisition, LLC | Preferred Stock | Term Loan | 256,410.26 | 256,410.26 | 9 | 5/15/2019 |
| 91. | Zohar SS Acquisition, LLC | Term Loan | Term Loan | 7,652,549.20 | 7,652,549.20 | 9 | 4/15/2019 |

| Equity Interests | | |
|---|---|---|
| # | Issuer Name | Type | Commitment Settled |
|---|-------------|------|--------------------|
| 92. | Automated Ductwork Manufacturing Company | Common | 100.00 |
| 93. | Felagastyring EHF | Common Stock | 63,100.00 |
| 94. | Fetco Home Decor, Inc. | Common1 | 51,263.00 |
| 95. | Fetco Home Decor, Inc. | Common2 | 25,000.00 |
| 96. | Fetco Home Decor, Inc. | Common 315619ZA7 | 76,263.00 |
| 97. | Fetco Home Decor, Inc. | Pref 315619ZB5 | 13,488.00 |
| 98. | Fetco Home Decor, Inc. | Common 315619ZC3 | 60,000.00 |
| 99. | Fetco Home Decor, Inc. | Preferred | 14,090.00 |

| | Equity Interests | | |
|---|---|---|---|
| # | Issuer Name | Type | Commitment Settled |
| 100. | Fetco International Hong Kong Limited | Common | 9,997.00 |
| 101. | Galey & Lord, Inc. | Common Stock | 687,547.00 |
| 102. | Galey & Lord, Inc. | Series A Preferred Interest 8/18/2012 | 39,010,000.00 |
| 103. | Glenoit Universal, Ltd. | Common Stock Class A | 12,967.00 |
| 104. | Glenoit Universal, Ltd. | Class B Common Stock | 3,527.00 |
| 105. | Glenoit Universal, Ltd. | Class A Common Stock | 12,967.00 |
| 106. | Glenoit Universal, Ltd. | Common CL B | 3,527.00 |
| 107. | Hartwell Industries, Inc. | Common CL A | 194,512.00 |
| 108. | HyperActive Technologies, Inc. | Common Stock | 85,334.00 |
| 109. | IMG Holdings, Inc. | Common Stock | 757.00 |
| 110. | Intera Group, Inc. | Preferred Stock | 5,069.42 |
| 111. | Intera Group, Inc. | Common Stock | 839.09 |
| 112. | Intera Group, Inc. | Common Stock | 839.09 |
| 113. | MD Helicopters, Inc. | Common Stock | 235.00 |
| 114. | Metalforming Technologies, Inc. | Common Stock | 175,889.00 |
| 115. | Opening Specialties and Supply Inc. | Common | 2,267.00 |
| 116. | PHC Holding Corp | Class A Common Stock | 83,460.13 |
| 117. | PHC Holding Corp | Class C Common Stock | 85,880.75 |
| 118. | PHC Holding Corp | Common | 100.00 |
| 119. | PHC Holding Corp | Class B Common Stock | 112,047.09 |
| 120. | PHC Holding Corp | Preferred Stock | 114,178.19 |
| 121. | Pleasants Hardware Company | Common CL A | 1,000.00 |
| 122. | Spectrum International Holdings, Inc. | Common | 286,103,870.07 |
| 123. | Textile Holdings, Inc. | Common | 400,000.00 |
| 124. | U.F. Holdings, Inc. | Preferred Stock | 53,810.00 |
| 125. | UF Holdings Inc. | Common | 196,020.00 |
| 126. | UI Acquisition Holding Company | Class A Common Stock | TBD[2] |
| 127. | UI Acquisition Holding Company | Class B Common Stock | TBD[2] |
| 128. | Vorumerkjastyring EHF | Common Stock | 63,100.00 |
| 129. | W.W. Holdings, LLC | Common Stock | 4,787.00 |
| 130. | Western Forest Products, Inc. | Common | 45,327.00 |
| 131. | W.W. Versat Acquisition Corporation | Common Stock | 100.00 |
| 132. | Xinhua Sports & Entertainment Limited | Common | 41,992.00 |

In addition to the foregoing Collateral, the winning bidder for all (but not less than all) of the Collateral will receive all of the Issuer's right, title and interest in, to and under (in each case wherever situated or located) any and all other Collateral, known or unknown, including without

---

[2] Please refer to copies of the stock certificates for UI Acquisition Holding Co. available for review at the Liquidation Agent

limitation all other property, rights, claims and assets of any type or nature owned by the Issuer (other than the Excluded Property), including, without limitation, (A) accounts, payment intangibles, general intangibles, letter-of-credit rights, chattel paper, electronic chattel paper, instruments, deposit accounts and investment property (each, as defined in the UCC), (B) any ownership, security interest, economic or other interest, right or entitlement in any entity, whether represented or documented through shares, equity, options, warrants, member interests or otherwise, and (C) all actions, causes of action, claims and demands, whatsoever, in law, equity, admiralty or otherwise, of every kind and nature, disclosed or undisclosed, known or unknown, asserted or unasserted, from the beginning of the world until the end of time (collectively, the "**Other Collateral**").  For the avoidance of doubt, the Collateral and the Other Collateral are intended to comprise all assets of the Issuer (other than Excluded Property) and to the extent that any additional assets (other than Excluded Property) ("**Other Assets**") are not included within the definitions of Collateral and Other Collateral, the winning bidder shall obtain title to such Other Assets to the extent the Trustee has the right and ability to transfer such Other Assets, including, but not limited to, and for the avoidance of any doubt, any commercial tort claims; provided however that all of the Accounts established by the Trustee pursuant to the Indenture and all funds on deposit in such Accounts shall in no event be included in the sale of the Collateral, the Other Collateral or the Other Assets.  The Trustee and the Liquidation Agent make no representation or warranty as to (i) whether any Other Collateral or Other Assets exist or, (ii) if any such Other Collateral or Other Assets exist, the value of or rights associated with any such Other Collateral or Other Assets.

2.      Place, Date and Time of the Public Sale.  The place, date and time of the sale will be as follows:

| DATE AND TIME |
|---|
| Public Sale: **Thursday, September 15, 12:00 p.m. ET** |
| **PLACE** |
| The sale will be held at: Duff & Phelps Securities 55 East 52nd Street, Floor 31 New York, NY 10055 |

*ONLY PERSONS WHO SATISFY THE FOLLOWING REQUIREMENTS WILL BE PERMITTED TO BID AT THE PUBLIC SALE*

3.      Conditions of Sale.  The conditions of the public sale are as follows:

(a)      Each bid must be submitted to the Liquidation Agent, either in person or using the email address noted above, and must include a signed copy of the Bid Sheet attached hereto as Exhibit A, together with an "All or None" bid on Annex I to the Bid Sheet.  No bid will be accepted unless it is accompanied by a Bid Sheet, signed by the applicable bidder, and received by the Liquidation Agent prior to the completion of the applicable public sale.  Bidding for the public sale will be held

open for 30 minutes following the time identified above, or such longer time as determined by the Liquidation Agent or the Trustee.

(b)     Bidders shall provide a single bid to purchase the entire portfolio of assets as designated in the Bid Sheet (the "Portfolio" or the "Collateral") on an "All or None" basis. Each bid for the Portfolio shall be in a price format set out in US dollars and shall be the offer by such bidder to purchase the Portfolio upon payment by such bidder of such US dollar amount price.

(c)     The Collateral will be awarded only to the highest qualified bidder. The Trustee reserves the right to reject any bid which it deems to have been made by a bidder which is unable to satisfy the requirements imposed by the Trustee upon prospective bidders in connection with the public sales or to whom in the Trustee's sole judgment a sale may not lawfully be made. The Trustee shall not be obligated to make any sale and reserves the right to sell the Collateral at a subsequent public or private sale.

(d)     Subject to Section 3(f) below, the winning bid will be the qualified bid which results in the highest settlement amount.

(e)     In the event that two or more bidders submit bids for equal amounts and such bids are the highest bid amounts received (not including any bids received pursuant to Section 3(f) below) (a "tie bid"), the Liquidation Agent, at its sole discretion, may request such bidders to submit an additional bid from which the highest bid amount for the Portfolio will be determined. In the event a tie bid remains following the conclusion of bidding, including any additional bidding as described in the preceding sentence, the winning bid (subject to Section 3(f) below) will be the earliest submitted bid.

(f)     Each Holder of a Class B Note and each Holder of a Class C Note issued pursuant to the Indenture is entitled to receive at least five Business Days' prior notice of a sale of the Collateral (describing the Collateral to be sold and the sale amount therefore in reasonable detail), and any Holder of a Class B Note or a Class C Note may arrange for a Person to purchase such Collateral, within three Business Days of such notice, in an amount equal to or more favorable to the Issuer than the amount described in such notice. By submitting a bid, a bidder acknowledges that, to the extent such bidder is the highest qualified bidder, such bidder may not be awarded the Collateral because of the right of a Holder of a Class B Note or a Class C Note to arrange for a Person to purchase the Collateral (within the time period described above) for an amount equal to or more favorable to the Issuer than the bid submitted by such highest qualified bidder.

(g)     Some or all of the securities constituting part of the Collateral may not have been and will not be registered under the Securities Act of 1933, as amended (the "Act"), or any applicable state securities laws and may not be sold or transferred without registration under such Act and applicable state securities law or the availability of valid exemptions from such registration requirements. In addition to such securities

laws transfer restrictions on resale, some or all of the Collateral may be subject to transfer restrictions under the governing documents for such items of Collateral and/or other restrictions under applicable law, including but not limited to restrictions related to the United States Investment Company Act of 1940 (as amended, the "<u>Investment Company Act</u>") and the United States Employee Retirement Income Security Act of 1974 (as amended, "<u>ERISA</u>"), each as amended from time to time.

(h)     To the extent a bidder is interested in bidding on the Collateral, please contact the Liquidation Agent to receive any information with respect to the Collateral which may be in the possession of the Trustee (or obtained by the Liquidation Agent from Collateral Manager via the Trustee) but not otherwise publicly available.  In order to receive such information, each prospective bidder must first execute and return to the Liquidation Agent the Investor Representations and Confidentiality Agreement in the form of <u>Exhibit B</u> attached hereto.  Such information may include documents or financial information in the possession of the Trustee relating to the Collateral, which information may include payment reports in the possession of the Trustee relating to the Collateral or notices received by the Trustee regarding any defaults (and/or remedies exercised in connection with any defaults) which may have occurred in the underlying transactions.  Neither the Trustee nor the Liquidation Agent makes any representation, express or implied, with respect to the accuracy, adequacy or completeness for its purposes of any information that any bidder may receive in connection with any bid on the Collateral.

(i)     Certain of the Collateral includes Loan Interests or Equity Interests in respect of companies affiliated with the former Collateral Manager for the Issuer (and its affiliates), and such Collateral may be subject to certain transfer restrictions.  Loan Interests may be subject to transfer restrictions identified in the related Underlying Instruments and such Underlying Instruments may provide for certain eligibility requirements for transferees of such Loan Interests.  Equity Interests may be subject to restrictions on transfer in the articles of organization of the issuer of such Equity Interest or in shareholder agreements or pledge agreements applicable to such Equity Interests.  In addition, the transfer of certain of the Equity Interests may require the delivery of an opinion of legal counsel as to the applicability of, or exemption from, relevant securities laws in respect of such transfer.    The Trustee makes no representation, express or implied, with respect to the applicability of any transfer restrictions to any item of Collateral or whether any information made available by the Trustee or the Liquidation Agent to a bidder accurately or adequately describes any applicable transfer restrictions. There also exists ongoing litigation (i) between Patriarch Partners Agency Services, LLC ("<u>PPAS</u>") and the Issuer and the current Collateral Manager in an action styled *Patriarch Partners Agency Services, LLC v. Zohar CDO 2003-1, Ltd. et al.* 16-cv-04488-VM (S.D.N.Y.) (the "<u>PPAS Litigation</u>") and (ii) between the Issuer and the former Collateral Manager in an action styled *Zohar CDO 2003-1 et al v. Patriarch Partners, LLC* (Del. C. Ch.), Case No. 12247-VCS (the "<u>Delaware Litigation</u>") that impacts the Collateral and its transferability.  In particular, the PPAS Litigation includes claims by PPAS that the Issuer's replacement of PPAS as Administrative Agent under certain Underlying Instruments

with the current Collateral Manger was ineffective because PPAS's appointment as Administrative Agent had been irrevocable.  It is possible that the transferability of some or all of the Underlying Instruments at issue in the PPAS Litigation will be impacted by the outcome of those claims.  In addition, the Delaware Litigation includes claims by the Issuer seeking documents from the former Collateral Manager related to the Collateral that were not turned over after the former Collateral Manager's resignation.  It is possible that the documents being sought could include information about the Collateral that supplements or conflicts with the information about the Collateral that is currently available to the Trustee and described herein.

(j)     THE COLLATERAL WILL BE OFFERED AND SOLD BY THE TRUSTEE ON AN "AS IS AND WHERE IS" BASIS, AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES (WHETHER EXPRESSED OR IMPLIED) OF ANY KIND MADE BY ANY SECURED PARTY, THE TRUSTEE, THE LIQUIDATION AGENT OR ANY OTHER PERSON ACTING FOR OR ON BEHALF OF THE TRUSTEE, AND WITHOUT ANY RECOURSE WHATSOEVER AGAINST ANY SUCH PERSON.

(k)     The highest qualified bidder for which the Collateral is awarded, by submission of its bid, is deemed to represent and warrant that such bidder is qualified to become a transferee of the Collateral under all transfer restrictions applicable to such Collateral.

(l)     The Trustee will accept bids only from those persons to whom in its sole judgment such sale may lawfully be made; provided, however, that the acceptance of any such bid shall not constitute any determination on the part of the Trustee that the bidder is a permitted transferee of any of the Collateral.  Any person submitting a bid is hereby deemed to represent that (i) the Collateral is being acquired for the account of the bidder and not with a view to resale or distribution except in compliance with applicable securities laws, and (ii) the bidder shall not resell a security constituting part of the Collateral without compliance with the registration requirements of the Act, the regulations of the Securities and Exchange Commission promulgated thereunder and applicable state securities laws or pursuant to valid exemptions therefrom.

(m)     A bid by any person will be deemed to be a representation (and such person shall be required to so represent on any Bid Sheet submitted by such person) that such bidder (i) is a "qualified institutional buyer" as such term is defined in Rule 144A(a)(i) promulgated under the Act, (ii) has sufficient knowledge and experience in business and financial matters to evaluate properly the merits and risks of investment in the Collateral, (iii) has had such access to information concerning the Collateral as such bidder deems necessary to make an informed investment decision and, based on that information, has independently (and without reliance on the Trustee, Liquidation Agent or the Issuer) made its own analysis and decision to bid on the Collateral, (iv) has such knowledge and experience and has made investments of a similar nature so as to be aware of the risks and uncertainties related to an investment in such Collateral, (v) has sufficient financial ability and net worth to bear the economic risks involved in investment

in such Collateral, (vi) acknowledges that no representation, express or implied, is made with respect to the accuracy, adequacy or completeness for its purposes of any information that such bidder may receive in connection with any bid on the Collateral, and (vii) confirms that the sale of the Collateral to the bidder will not violate the Act as a result of actions taken by the bidder or any breach of the representations contained herein or in the Bid Sheet and such bidder is qualified to become a transferee of such Collateral under all transfer restrictions applicable to such Collateral.  Further, such bidder may be required to establish that it is able to bear the economic risks involved in investment in the Collateral.

(n)     Bids must be for the entire Portfolio.  Partial bids will not be accepted.

(o)     Your bid should be your "best and final" bid.  Except as otherwise set forth herein, you will not be notified of other bids prior to the determination of the winning bid nor (subject to Section 3(e) and 3(f)) will any bidder be given the opportunity to submit a subsequent higher bid.

(p)     Reserve levels may apply.

(q)     All bids submitted must be irrevocable and unconditional and held open for no less than six (6) Business Days.

(r)     Upon notification to the winning bidder, the winning bidder shall be required to deliver to the Trustee a signed counterpart of the purchase agreement (the "Purchase Agreement") substantially in the form attached hereto as Exhibit C.  The terms of such sale shall be (except in the case of a winning "Credit Bid" by the Credit Enhancer as described in subsection (t) below) payment of funds in cash or by certified or cashier's check or wire transfer after the acceptance of such bid and in accordance with the terms of the Purchase Agreement.  The winning bidder will be responsible for preparing and facilitating the execution of all necessary assignment and transfer documents, including all requirements applicable to any transfer restrictions to which the items of Collateral may be subject.

(s)     The Trustee reserves the right to offer the Collateral in any other commercially reasonable manner.  The Trustee may adjourn or cancel the public sale of any or all of the Collateral or cause any such sale to be adjourned, recessed and/or reconvened from time to time, without further written notice or further publicity, by announcement at the time and place appointed for such sale or at any adjournment, recess and/or reconvening and, without further written notice or publication, such sale may be held at the time and place to which it may have been so adjourned.

(t)     Under certain circumstances, the Credit Enhancer may receive credit for the outstanding amount of the Credit Enhancer's Credit Enhancement Liabilities in connection with its bid on the Collateral.

(u)     No sale will be completed until the winning bidder completes its purchase as provided herein and, in the case of any failure to complete a purchase, the Trustee may without further notice accept the next highest bid from a qualified bidder.

(v)     The Trustee reserves the right to amend, supplement or otherwise change the terms and conditions of the sale.

Additional Information May Be Obtained

Additional information concerning the Collateral and matters pertaining to the public sale may be obtained from the Liquidation Agent by contacting Duff & Phelps by telephone at 212-523-0355 or by e-mail at CL.ZOHARBIDS@DUFFANDPHELPS.COM, or by mail addressed to Duff & Phelps Securities, 55 East 52nd Street, Floor 31, New York, NY 10055, Attention: Zohar Bids.  The Indenture and the documents reflecting the Trustee's security interest in the Collateral are available for inspection prior to the public sale by appointment (or by other means agreed upon by the Trustee).

## EXHIBIT A

## BID SHEET

Reference is hereby made to that certain Notice of Public Sale and Invitation to Bid, dated as of August 26, 2016 (the "Invitation to Bid") from U.S. Bank National Association ("U.S. Bank"), not in its individual capacity but solely as trustee (in such capacity, the "Trustee") under that certain Indenture, dated as of November 13, 2003 (as amended or supplemented, the "Indenture"), by and among Zohar CDO 2003-1, Limited, as issuer (the "Issuer"), Zohar CDO 2003-1, Corp, as co-issuer, Zohar 2003-1, LLC, as Zohar subsidiary, MBIA Insurance Corporation, as Credit Enhancer, CDC Financial Products Inc., as Class A-1 Note Agent, and U.S. Bank, as Trustee, all of the terms and conditions of which are hereby acknowledged by the undersigned (the "Bidder") and incorporated herein by reference and made a part of the Bid (as defined below).  All capitalized terms not defined herein but defined in the Invitation to Bid shall have the meanings given to such terms in the Invitation to Bid.

1.      In accordance with the terms and conditions set forth in the Invitation to Bid, the Bidder hereby submits to the Trustee the following offer or bid (the "Bid") to purchase, in the bid amount noted and marked by the Bidder on Annex I attached hereto and incorporated herein by reference, the Portfolio.

2.      Contact information for the Bidder (must be completed in full):

Name: _____

Company: _____ Tax ID: _____

Street Address: _____

City: _____ State: _____ Zip: _____

Phone: _____ Email: _____

Bloomberg Address:   YES   NO   If "Yes", please include: _____

3.      All Bids are subject to the terms and conditions set forth in the Invitation to Bid distributed in connection with this public sale.  The Bidder hereby understands and agrees that the Collateral is being sold strictly on an "AS IS, WHERE IS" basis, and without any representations or warranties (whether express or implied) of any kind made by any secured party, the Trustee, the Liquidation Agent or any other person acting for or on behalf of the Trustee, and without any recourse whatsoever against any such person.

4.      By submitting this bid, the Bidder represents and warrants to the Trustee that it (i) is a "qualified institutional buyer" as such term is defined in Rule 144A(a)(i) promulgated under the Act, (ii) has sufficient knowledge and experience in business and financial matters to evaluate properly the merits and risks of investment in the Collateral, (iii) has had such access to information concerning the Collateral as such bidder deems necessary to make an informed investment decision and, based on that information, has independently (and without reliance on the Trustee, Liquidation Agent or the Issuer) made its own analysis and decision to bid on the Collateral, (iv) has such knowledge and experience and has made investments of a similar nature so as to be aware of the risks and uncertainties related to an investment in such Collateral, (v) has sufficient financial ability and net worth to bear the economic risks involved in investment in such Collateral, (vi) acknowledges that no representation, express or implied, is made with respect to the accuracy, adequacy or completeness for its purposes of any information that such bidder may receive in connection with any bid on the Collateral, and (vii) confirms that the sale of the Collateral to the

Bidder will not violate the Act as a result of any actions taken by the Bidder or any breach of the representations contained herein and such Bidder is qualified to become a transferee of each such security under all transfer restrictions applicable to such security.

5.      By submitting this bid, the Bidder acknowledges and agrees that (i) it may not resell any securities acquired in the public sale without compliance with the registration requirements of the Act and the regulations of the Securities and Exchange Commission promulgated thereunder and applicable state securities laws, or pursuant to valid exemptions therefrom, (ii) some or all of the Collateral that are the subject of the public sale may be subject to additional transfer restrictions under the governing documents for such item of Collateral and/or applicable law, including but not limited to Investment Company Act restrictions and ERISA restrictions, and that the Bidder is qualified to become a transferee under all such transfer restrictions, and (iii) none of the Trustee, the Liquidation Agent nor any other person connected with the sale of Collateral is a fiduciary or investment advisor to the Bidder.

6.      There are no conditions or contingencies to this Bid.  This Bid Sheet shall be governed by and construed in accordance with the laws of the State of New York for all purposes and in all respects, without giving effect to the conflict of law provisions thereof.

Executed as of this _____ day of _____, 2016.

_____
*(Name of Institution)*


By: _____
Name:
Title:

A-2

## ANNEX I TO THE BID SHEET

### Public Sale

| Issuer | Bid | Bid for Portfolio |
|---|---|---|
| Zohar 2003-1, Limited | The Collateral [As Defined] | $XX.XX |

In addition to the foregoing Collateral, the winning bidder for all (but not less than all) of the Collateral will receive all of the Issuer's right, title and interest in, to and under (in each case wherever situated or located) any and all other Collateral, known or unknown, including without limitation all other property, rights, claims and assets of any type or nature owned by the Issuer (other than the Excluded Property), including, without limitation, (A) accounts, payment intangibles, general intangibles, letter-of-credit rights, chattel paper, electronic chattel paper, instruments, deposit accounts and investment property (each, as defined in the UCC), (B) any ownership, security interest, economic or other interest, right or entitlement in any entity, whether represented or documented through shares, equity, options, warrants, member interests or otherwise, and (C) all actions, causes of action, claims and demands, whatsoever, in law, equity, admiralty or otherwise, of every kind and nature, disclosed or undisclosed, known or unknown, asserted or unasserted, from the beginning of the world until the end of time (collectively, the "**Other Collateral**").  For the avoidance of doubt, the Collateral and the Other Collateral are intended to comprise all assets of the Issuer (other than Excluded Property) and to the extent that any additional assets (other than Excluded Property) ("**Other Assets**") are not included within the definitions of Collateral and Other Collateral, the winning bidder shall obtain title to such Other Assets to the extent the Trustee has the right and ability to transfer such Other Assets, including, but not limited to, and for the avoidance of any doubt, any commercial tort claims; provided however that all of the Accounts established by the Trustee pursuant to the Indenture and all funds on deposit in such Accounts shall in no event be included in the sale of the Collateral, the Other Collateral or the Other Assets.  The Trustee and the Liquidation Agent make no representation or warranty as to (i) whether any Other Collateral or Other Assets exist or, (ii) if any such Other Collateral or Other Assets exist, the value of or rights associated with any such Other Collateral or Other Assets.

## <u>EXHIBIT B</u>

**INVESTOR REPRESENTATIONS AND CONFIDENTIALITY AGREEMENT**

The undersigned has expressed an interest in participating in a public sale (the "<u>Public Sale</u>") under the Indenture, dated as of November 13, 2003 (as amended or supplemented, the "<u>Indenture</u>"), by and among Zohar CDO 2003-1, Limited, as issuer (the "<u>Issuer</u>"), Zohar CDO 2003-1, Corp., as co-issuer, Zohar CDO 2003-1, LLC, as Zohar Subsidiary, MBIA Insurance Corporation, as Credit Enhancer, CDC Financial Products Inc., as Class A-1 Note Agent, and U.S. Bank National Association, as trustee (the "<u>Trustee</u>"), and has asked that the Trustee or Duff & Phelps Securities, LLC (the "Liquidation Agent") provide certain information in the Trustee's or the Liquidation Agent's possession relating to certain assets included in the Collateral (as defined in the Indenture) to be sold at the Public Sale. The Trustee is prepared to permit such participation and to provide such information in the possession of the Trustee to the undersigned so long as the undersigned executes this Investor Representations and Confidentiality Agreement (this "<u>Agreement</u>").

1.      The undersigned hereby represents and warrants to the Trustee that (i) to the extent that the undersigned is the successful bidder at the Public Sale, the Collateral acquired thereby will be acquired for the account of the bidder and not with a view to resale or distribution except in compliance with applicable securities laws, (ii) the undersigned has sufficient business and investment knowledge and experience to effectively evaluate properly the merits and risks of investment in the Collateral which is the subject of the Public Sale, (iii) the undersigned has such knowledge and experience and has made investments of a similar nature so as to be aware of the risks and uncertainties related to an investment in such Collateral, (iv) the undersigned acknowledges that no representation, express or implied, is made with respect to the accuracy, adequacy or completeness for its purposes of any information that such bidder may receive in connection with any bid on the Collateral, (v) the undersigned acknowledges the Trustee and the Liquidation Agent have no continuing obligation to the undersigned to update any information previously provided to it, (vi) the undersigned has sufficient financial ability and net worth to bear the economic risks involved in investment in such Collateral, and (vii) the undersigned is aware of the fact that certain of the items of Collateral on which it is bidding have not been registered under the Securities Act of 1933, as amended (the "<u>Act</u>") or applicable state securities law. The undersigned hereby agrees that the undersigned may not resell any Collateral acquired at the Public Sale without compliance with the registration requirements of the Act, and the regulations of the Securities and Exchange Commission thereunder and applicable state securities laws or pursuant to valid exemptions therefrom.

2.      The undersigned acknowledges and agrees that all Collateral will be offered and sold by the Trustee without recourse, representations, warranties or covenants, express or implied, being made by the Trustee with respect to the Collateral (except as to title to the Collateral) or with respect to any other information then in the Trustee's possession, including without limitation any financial information.

3.      The undersigned agrees to maintain the confidentiality of the Information (as defined below), except that Information may be disclosed (i) to its and its affiliates' directors, officers, employees and agents, including accountants, legal counsel, sources of funding and other advisors (it being understood that the persons to whom such disclosure is made will be informed of the confidential nature of such Information and instructed to keep such Information confidential), (ii) to any client which agrees with the undersigned to maintain the confidentiality

of such Information in the same manner as provided herein, and the undersigned accepts responsibility for the fulfillment of such agreement by any such client, (iii) to the extent requested by any regulatory authority, or (iv) to the extent required by applicable laws or regulations or by any subpoena or similar legal process. The undersigned further agrees to use the Information solely for the purposes of evaluating whether or not it desires to participate in the Public Sale and for no other purpose whatsoever.  The undersigned further acknowledges that the Information may include material non-public information, access to which may restrict the ability of the undersigned from trading in other securities related to or backed by any of the Collateral.  For the purposes of this Agreement, "Information" means all information received by the undersigned relating to the Collateral from the Trustee or the Liquidation Agent which is the subject of the Public Sale; provided that "Information" shall not include any information which (i) is included in the "Invitation to Bid" related to such Public Sale, which includes the identity of the assets included in the sale, (ii) is publicly available information relating to a security included in the Collateral which has been issued pursuant to an effective registration statement under the Act, (iii) is or becomes publicly available other than as a result of a breach of this Agreement, or (iv) is or becomes available to the undersigned on a non-confidential basis from a source other than the Trustee or the Liquidation Agent.

4.     The undersigned hereby agrees to indemnify, defend and hold the Trustee and the Liquidation Agent harmless of, from and against any and all claims, demands, liabilities, causes of action, losses, damages, costs and expenses (including attorneys' fees) hereafter suffered or incurred by the Trustee arising out of, directly or indirectly, (i) any breach of the undersigned's representations and warranties given hereunder, (ii) the undersigned's failure to observe (and to cause its agents, contractors, employees and consultants to observe) and comply with the terms and provisions hereof, and (iii) without limiting the foregoing, any violation of the Act or other applicable securities law of any jurisdiction arising out of clauses (i) or (ii) above. The indemnification obligations of the undersigned contained herein shall survive the termination of this Agreement and shall bind the undersigned, its successors, trustees and assigns, irrespective of whether or not the undersigned elects to participate in the Public Sale or acquires any Collateral pursuant to the Public Sale.

5.     The undersigned agrees to either promptly destroy or return all Information to the Trustee or the Liquidation Agent on its behalf if it does not carry through on its evaluation or is not the successful bidder at the Public Sale for any item of Collateral for which it received Information. Notwithstanding the foregoing, to the extent required for legal or compliance purposes, the undersigned may retain any copy of the Information.

6.     This Agreement shall terminate, as it relates to any particular asset, upon the earlier of (i) undersigned's purchase of such asset or (ii) one (1) year from the date hereof.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflicts of laws provisions thereof.

Executed as of this _____ day of _____, 2016.

_____
*(Name of Institution)*

By: _____
     Name:
     Title:

# **EXHIBIT C**

## **[PURCHASE AGREEMENT]**

PURCHASE AGREEMENT

This PURCHASE AGREEMENT (this "***Agreement***") is made as of [_____] [__], 2016, between U.S. BANK NATIONAL ASSOCIATION ("***U.S. Bank***"), as Trustee pursuant to the Indenture (as hereinafter defined) (the "***Seller***"), and _____, as purchaser (the "***Purchaser***").

WITNESSETH:

WHEREAS, U.S. Bank is the Trustee pursuant to that certain Indenture, dated as of November 13, 2003 (as amended, supplemented or otherwise modified from time to time the "***Indenture***"), by and among Zohar CDO 2003-1, Limited, as Issuer (the "***Issuer***"), Zohar CDO 2003-1, Corp, as Co-Issuer (the "***Co-Issuer***", and, together with the Issuer, the "***Issuers***"), Zohar CDO 2003-1, LLC (the "***Subsidiary***"), MBIA Insurance Corporation, as Credit Enhancer, CDC Financial Products Inc., as Class A-1 Note Agent, and U.S. Bank, as Trustee, pursuant to which the Issuers have issued certain debt securities (the "***Notes***"), and capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Indenture;

WHEREAS, the Seller, as required by the Indenture, conducted an auction (the "***Auction***") of certain loans and other assets (the "***Assets***") owned by the Issuer and the Subsidiary on [_____] [__], 2016 (the "***Auction Date***");

WHEREAS, the sale of the Assets is subject to the satisfaction of the conditions described in this Agreement and in the Notice of Public Sale and Invitation to Bid, dated [_____] [__], 2016, from the Seller; and

WHEREAS, the Seller desires to sell the Assets identified on Exhibit I attached hereto (collectively, the "***Purchaser Assets***") to the Purchaser;

NOW THEREFORE, in consideration of the foregoing, the parties hereto agree as follows:

1.    <u>Agreement to Purchase and Sell</u>.  Subject to all of the other conditions set forth herein, upon receipt by the Trustee prior to 5:00 p.m. (Eastern Time ("***ET***")) on [_____] [__], 2016 (the "***Settlement Date***") of $[PURCHASE PRICE] from the Purchaser (such amount, the "***Purchase Price***") the Trustee hereby irrevocably agrees to transfer, assign, grant, set over, deposit with and otherwise convey to the Purchaser, without recourse, and the Purchaser hereby irrevocably agrees to purchase and accept on the Settlement Date, all the right, title and interest of the Trustee, the Issuer and the Subsidiary in and to all of the Purchaser Assets and all payments of principal of and interest on the Purchaser Assets after the Settlement Date. Payments or distributions (whether received by set off or otherwise) of cash (including interest), notes, securities, or other property or proceeds under or in respect of the Purchaser Assets made after the Settlement Date (the "***Payments***") and received by the Trustee, on behalf of the Issuer (the "***Recipient***"), shall be remitted to the Purchaser (in accordance with its instructions) by the Recipient within a reasonable time after receipt thereof by the Recipient; *provided* that the economic benefit of not-otherwise-scheduled permanent repayments of principal and any non-ordinary course fees made after the Auction Date shall be paid to the Purchaser; *provided further* that such Payment, if received by the Seller shall be held on behalf and for the sole benefit of the Purchaser and none of the Trustee, the Issuer or the Subsidiary shall have an equitable or beneficial interest in such Payment.  If a Payment received by the Recipient includes securities or other non-cash Payment, the Recipient shall, to the extent permitted by law, endorse (without recourse, representation or warranty) or use commercially reasonable efforts (at the Purchaser's sole expense) to assist the Purchaser to cause to be registered in the Purchaser's name, or such name as the Purchaser may direct, and deliver such securities to the Purchaser or to such entity as the Purchaser may direct as soon as reasonably practicable.

2.     Payment.  On the Settlement Date, the Purchaser shall wire transfer to the Seller in immediately available funds an amount equal to the Purchase Price prior to 5:00 p.m. ET according to the following wiring instructions:

Trustee Wire Instructions:
Bank:          US Bank
ABA #:         091000022
Account Name: Zohar 1
Account #:     1731-0332-2199
FFC:           743771-201
Ref:           [_____]
Attention:     [_____]

(a)     Conditions Precedent to Sale.  Notwithstanding anything to the contrary, the Seller's obligation to sell the Purchaser Assets to the Purchaser is subject to the Seller's determination that after receipt of notice as required pursuant to the Indenture, no Holder of a Class B Note or Holder of a Class C Note issued pursuant to the Indenture has exercised its right under the Indenture to arrange for a Person to purchase the Assets, within three Business Days of such notice, in an amount equal to or more favorable to the Issuer than the amount described in such notice.  In the event the foregoing condition is not satisfied in the reasonable determination of the Seller, (i) the sale of the Assets to the Purchaser shall be cancelled, and (ii) this Agreement shall automatically terminate (a "***Failed Settlement***").

3.     Registration of Transfer of the Purchaser Assets.  Except as otherwise agreed to by the Seller and the Purchaser, the Purchaser agrees to use its best efforts to promptly take all actions necessary to cause the transfer and assignment of the Purchaser Assets to be effected pursuant to the underlying instruments governing such Purchaser Assets (the "***Underlying Instruments***") on the Settlement Date, including without limitation, (i) preparing, executing and delivering such transfer certificates, assignments, endorsements, administrative questionnaires and such other documents or instruments as may be required by the Underlying Instruments, (ii) obtaining such necessary consents to such transfer as may be required under the Underlying Instruments, (iii) paying any transfer and assignment fees as may be required to effect such transfer, (iv) providing such notices and legal opinions to any persons as may be required pursuant to the Underlying Instruments, in each case regardless of whether such obligation to take such action is on the part of the transferor or the transferee of such Purchaser Asset pursuant to the applicable Underlying Instruments.  In the event any such requirements require actions on the part of the Seller which cannot be performed by the Purchaser as agreed to above, the Seller agrees to cooperate with the Purchaser, at the Purchaser's request and expense, to cause such transfer, including without limitation the agreement of the Seller to execute such assignments, endorsements, certificates and such other documentation reasonably requested by the Purchaser and required to effect such transfer.  Except as otherwise provided in this Section 4, in no event shall the Seller be liable to the Purchaser in any manner arising from the transfer of any Purchaser Assets, it being acknowledged and agreed that the Purchaser shall have full responsibility to cause such transfer.  Upon completing the transfer of the Purchaser Assets in the name of the Purchaser, the Purchaser agrees to provide prompt notice thereof to the Seller (which notice may be given by email).

4.     Failed Transfer.  (a)  Without limiting the obligation of the Purchaser to use its best efforts to promptly cause the transfer of all Purchaser Assets pursuant to the Underlying Instruments as provided in Section 4 above, in the event the Purchaser fails to effect such transfer on the Settlement Date (a "***Failed Transfer***"), the Purchaser shall continue to use its best efforts after the Settlement Date to cause the transfer and assignment of the Purchaser Assets to be effected pursuant to the Underlying Instruments in the manner provided in Section 4 above.  Upon completing the transfer of all Purchaser Assets pursuant to the Underlying Instruments, the Purchaser agrees to provide prompt notice thereof to the Seller in writing (which notice may be given by email).

C-2

(b)  Without limiting any of the Purchaser's obligations hereunder, during the period following the Settlement Date for which a Failed Transfer has occurred and is continuing in respect of any Purchaser Asset (a "***Participation Period***"), the assignment and transfer in Section 2 above, during such Participation Period, shall be deemed to be the grant and conveyance of an undivided 100% participation interest in and to such Purchaser Asset (a "***Participation Interest***") subject in each case to the provisions of the relevant Underlying Instruments.  The Purchaser agrees to take such further action as may be necessary (or as otherwise reasonably requested by the Seller) to effect such participation pursuant to such Underlying Instruments, including without limitation entering into a participation agreement that is satisfactory to the Seller in its sole discretion; *provided* that such participation agreement shall terminate upon a successful transfer and assignment as contemplated in Section 2 above.  Promptly after the commencement of the Participation Period, the Seller shall use commercially reasonable efforts to cause all amounts owing to the Purchaser as a result of the Participation Interest to be sent directly to the Purchaser; *provided, however*, that if the Seller receives (i) any notice or other document with respect to such Purchaser Asset, then the Seller shall provide such notice or other document to the Purchaser within a reasonable time after receipt thereof or (ii) Payments with respect to such Purchaser Asset, the Seller shall (x) accept and hold such Payment for the account and sole benefit of the Purchaser, (y) have no equitable or beneficial interest in such Payment and (z) deliver such Payment (free of any withholding, setoff, recoupment, or deduction of any kind except as required by law or as may be agreed to by the Seller and the Purchaser) promptly after receipt thereof.  If a Payment received by the Seller includes securities or other non-cash Payment, the Seller shall, to the extent permitted by law, endorse (without recourse, representation or warranty) or use commercially reasonable efforts (at the Purchaser's sole expense) to assist the Purchaser to cause to be registered in the Purchaser's name, or such name as the Purchaser may direct, and deliver such securities to the Purchaser or to such entity as the Purchaser may direct as soon as reasonably practicable.  No adjustment to the Purchase Price paid by the Purchaser hereunder shall be made as result of a Failed Transfer.

5.  <u>Representations of the Purchaser and the Seller</u>. The Purchaser hereby represents and warrants to the Seller that:

(a)  the Purchaser is qualified under applicable law to become a transferee of the Purchaser Assets;

(b)  the Purchaser acknowledges that no representation, express or implied, is made with respect to the accuracy, adequacy or completeness for its purposes of any information that the Purchaser may have received in connection with any bid on the Purchaser Assets;

(c)  the Purchaser has determined that it satisfies and meets all the necessary qualifications, requirements and other conditions necessary to become a transferee of the Purchaser Assets (other than any necessary third-party consents required to be provided by third-parties under the Underlying Instruments);

(d)  the Purchaser is duly authorized to execute, deliver and perform this Agreement;

(e)  the Purchaser is an entity duly existing under the laws of the United States or the jurisdiction of its organization;

(f)  this Agreement constitutes the legal, valid and binding obligation of the Purchaser enforceable against the Purchaser in accordance with its terms (subject to bankruptcy, insolvency and similar laws affecting creditor's rights generally and subject, as to enforceability, to general principals of equity);

(g)  the Purchaser acknowledges that none of the Seller nor any other party connected with the sale of the Assets is a fiduciary or investment advisor to the Purchaser in connection with its purchase of the Purchaser Assets and the Purchaser has not relied upon any advice or recommendation of the Seller or any of its

affiliates, and is making its own investment decision based upon its own judgment and upon advice of such professional advisers, either employed or independently retained by the Purchaser, as it has deemed necessary to consult;

(h)     no material consent, approval, order or authorization of, or declaration, filing or registration with, any governmental entity is required to be obtained or made by the Purchaser in connection with the execution, delivery or performance by the Purchaser of this Agreement, or the consummation by it of the transactions contemplated hereby;

(i)     the sale of the Purchaser Assets to the Purchaser pursuant to this Agreement will not violate the laws or regulations of any jurisdiction applicable to it, and is permitted under the Purchaser's governing documents and internal policies;

(j)     the Purchaser understands the terms, conditions and risks of the Purchaser Assets and the Purchaser is able to provide the certificates, assignments and other applicable transfer documentation required to effect a transfer of the Purchaser Assets; and

(k)     the Purchaser acknowledges and agrees that (a) the Seller may obtain or be in possession of non-public information regarding the Purchaser Assets, the obligors under such Purchaser Assets, and the Underlying Instruments, which may not be made available to any Purchaser, (b) the Seller makes no representations with respect to any Purchaser Asset, the obligors under any Purchaser Asset, the Underlying Instruments, or the accuracy or completeness of any information regarding the foregoing, and (c) the Seller will not be obliged to disclose to the Purchaser the existence of or details of any information or documentation relating thereto, including without limitation, any and all non-public information.

The Seller hereby represents and warrants to the Purchaser that:

(a)     the Seller is duly authorized to execute, deliver and perform this Agreement;

(b)     the Seller is a national banking association duly existing under the laws of the United States of America; and

(c)     this Agreement constitutes the legal, valid and binding obligation of the Seller enforceable against the Seller in accordance with its terms (subject to bankruptcy, insolvency and similar laws affecting creditor's rights generally and subject, as to enforceability, to general principals of equity).

6.     Costs.  Each party shall bear its own costs and expenses except as provided herein.  The Purchaser will pay any commissions due its brokers, the legal fees and expenses of its attorneys, all expenses relating to any review of the Assets performed by the Purchaser and any transfer and assignment fees relating to the transfer of the Purchaser Assets, including expenses incurred with respect to the gathering of information and the preparation and execution of any documents and instruments necessary to effect such transfer to the Purchaser.

7.     Counterparts.  The signature pages to this Agreement may be executed by the Seller and the Purchaser, as the case may be, in separate counterparts. Facsimile signatures and signature pages provided in the form of a "pdf" or similar imaged document transmitted by electronic mail shall be deemed original signatures for all purposes hereunder.

8.     GOVERNING LAW.  THIS AGREEMENT, AND ALL CLAIMS OR CAUSES OF ACTION (WHETHER IN CONTRACT OR TORT) THAT MAY BE BASED UPON, ARISE OUT OF OR RELATE TO THIS AGREEMENT, OR THE NEGOTIATION, EXECUTION OR PERFORMANCE OF THIS

AGREEMENT (INCLUDING ANY CLAIM OR CAUSE OF ACTION BASED UPON, ARISING OUT OF OR RELATED TO ANY REPRESENTATION OR WARRANTY MADE IN OR IN CONNECTION WITH THIS AGREEMENT OR AS AN INDUCEMENT TO ENTER INTO THIS AGREEMENT), SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

9.    <u>WAIVER OF JURY TRIAL</u>.  EACH OF THE PARTIES HERETO HEREBY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, BETWEEN EITHER OF THEM RELATING TO OR INCIDENTAL TO THE RELATIONSHIP BETWEEN THEM IN CONNECTION WITH THIS AGREEMENT.

10.    <u>NO RECOURSE</u>.  THE SALE OF THE PURCHASER ASSETS TO THE PURCHASER WILL BE MADE WITHOUT RECOURSE AND ON AN "AS IS AND WHERE IS" BASIS, WITHOUT ANY REPRESENTATIONS OR WARRANTIES (WHETHER EXPRESSED OR IMPLIED) OF ANY KIND MADE BY THE SELLER (OR ANY OTHER PERSON ACTING FOR OR ON BEHALF OF THE SELLER OR ANY OTHER PARTY) AND WITHOUT ANY RECOURSE WHATSOEVER AGAINST THE SELLER (OR ANY OTHER PERSON ACTING FOR OR ON BEHALF OF THE SELLER).

11.    <u>Information Provided to Purchaser</u>.  Without limiting Section 10 above, the Seller (and any of its officers, directors, employees and agents) (collectively, the "***Information Providers***") shall have any no liability whatsoever for any information or documents provided (or not provided) to the Purchaser, including any information contained in (or omitted from) any materials relating to the Auction of the Assets and any information made available including by access to information on any of the Information Providers' web-sites. The Purchaser acknowledges that the Seller has not made and is not making any representation or warranty as to the Purchaser Assets, including, without limitation, as to the completeness, accuracy or sufficiency thereof or as to the documentation and information relating to the Purchaser Assets.

12.    <u>Indemnity</u>.  Upon the transfer, assignment and conveyance of the Purchaser Assets as contemplated herein, including in Section 3 or Section 4, the Purchaser, its successors and assigns shall at all times indemnify and hold harmless the Seller and each of its directors, officers, employees, counsel, affiliates and agents ("***Indemnified Persons***") from and against any and all claims, actions and suits of others, and from and against any and all liabilities, losses, damages, costs, charges, reasonable counsel fees and other reasonable expenses, in each case arising out of the terms of this Agreement, the Purchaser Assets and any agreement related thereto, except to the extent (i) that such arises from such Indemnified Person's gross negligence, willful misconduct or bad faith or (ii) that such arose prior to the date hereof.

13.    <u>Release</u>.  The Purchaser, on behalf of itself and any successors and assigns, hereby releases the Seller from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or equity in any way related to this Agreement, the Purchaser Assets and any agreement related thereto, which against the Seller the Purchaser ever had, now has or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing arising directly or indirectly from its execution of this Agreement.  Nothing in this Section 13 is intended to release the Purchaser's rights under this Agreement.

14.    <u>Survival</u>.  The provisions of Sections 6, 7, 8, 9, 10, 11, 12, 13, and 15 shall survive the termination of this Agreement.

15.     <u>Benefits of Agreement</u>.   Nothing in this Agreement, express or implied, shall give to any person, other than the parties hereto, any benefit or any legal or equitable right, remedy or claim hereunder. The Indemnified Persons are express third-party beneficiaries to this Agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective duly authorized officers as of the day and year first written above.

U.S. BANK NATIONAL ASSOCIATION, as Trustee pursuant to the Indenture, as Seller

By: _____

Name: _____

Title: _____

_____,

as Purchaser

By: _____

Name: _____

Title: _____

[Signature Page to Purchase Agreement, dated as of [_____] [__], 2016]

EXHIBIT I

| Item # | Obligor Name | Asset Type | Purchase Price |
|--------|--------------|------------|----------------|
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |
|        |              |            |                |