## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ZOHAR CDO 2003-1, LIMITED,
ZOHAR II 2005-1 LIMITED, and
ZOHAR III, LIMITED,

        *Plaintiffs*,

    v.

CROSCILL HOME LLC, f/k/a
CROSCILL ACQUISITION, LLC,
DENALI ACQUISITION LLC,
DURA BUYER, LLC,
GLOBAL AUTOMOTIVE SYSTEMS,
GORHAM PAPER AND TISSUE,
IMG HOLDINGS, INC.,
JEWEL OF JANE LLC,
LVD ACQUISITION, LLC, d/b/a
OASIS INTERNATIONAL,
RM ACQUISITION, LLC,
SNELLING HOLDINGS, LLC,
STILA STYLES, LLC,
and LYNN TILTON,

        *Defendants*.

Civil Action No.: 17-01797-VAC-MPT

## DEFENDANTS' ANSWER TO PLAINTIFFS' AMENDED COMPLAINT

OF COUNSEL
Randy M. Mastro
Monica Loseman
Mary Beth Maloney
*Pro hac vice* applications forthcoming
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

*Attorneys for Defendant Lynn Tilton*

Edward J. Bennett
Ava V. Baker
*Pro hac vice* applications forthcoming
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
(202) 434-5000

*/s/ Kevin G. Abrams*
Kevin G. Abrams
  abrams@abramsbayliss.com
J. Peter Shindel, Jr.
  shindel@abramsbayliss.com
Abrams & Bayliss LLP
20 Montchanin Rd., Ste. 200
Wilmington, DE 19807
(302) 778-1000

*Attorneys for Defendants Lynn Tilton, Croscill
Home LLC, Denali Acquisition LLC, Dura
Buyer, LLC, Global Automotive Systems, LLC,
Gorham Paper and Tissue, LLC, IMG
Holdings, Inc., Jewel of Jane LLC, LVD
Acquisition, LLC, RM Acquisition, LLC,
Snelling Holdings, LLC, and Stila Styles, LLC*

*Attorneys for Defendants Croscill Home LLC, Denali Acquisition LLC, Dura Buyer, LLC, Global Automotive Systems, LLC, Gorham Paper and Tissue, LLC, IMG Holdings, Inc., Jewel of Jane LLC, LVD Acquisition, LLC, RM Acquisition, LLC, Snelling Holdings, LLC, and Stila Styles, LLC*

Dated: January 2, 2018

## **Table Of Contents**

DEFENDANT LYNN TILTON'S INTRODUCTION ....................................................................4

PLAINTIFFS' ALLEGATIONS AND DEFENDANTS' ANSWERS..........................................7

DEFENDANTS' AFFIRMATIVE DEFENSES ......................................................................110

Defendant Lynn Tilton, by and through undersigned counsel, answers the allegations contained in the Amended Complaint of Plaintiffs Zohar CDO 2003-1, Limited ("Zohar I"), Zohar II 2005-1, Limited ("Zohar II"), and Zohar III, Limited ("Zohar III," and, collectively, "Plaintiffs," the "Zohar Funds," or the "Funds"), and states her affirmative defenses.[*]

Defendants Croscill Home LLC ("Croscill"), Denali Acquisition LLC ("Denali Acquisition"), Dura Buyer, LLC ("Dura Buyer"), Global Automotive Systems, LLC ("GAS"), Gorham Paper and Tissue, LLC ("Gorham"), IMG Holdings, Inc. ("IMG"), Jewel of Jane LLC ("Jewel of Jane"), LVD Acquisition, LLC ("LVD/Oasis"), RM Acquisition, LLC ("RM"), Snelling Holdings, LLC ("Snelling Holdings"), and Stila Styles, LLC ("Stila") (each a "Company Defendant"), by and through their undersigned counsel, hereby answers the allegations contained in the Amended Complaint of Plaintiffs Zohar CDO 2003-1, Limited, Zohar II 2005-1, Limited and Zohar III, Limited (the "Zohar Funds"). Unless otherwise stated, the Company Defendants join the Answer of their Board Member or Manager, and in the case of Dura, GAS, Jane, and Stila, Chief Executive Officer, Lynn Tilton, as to facts within her knowledge.

Croscill joins Ms. Tilton's Answer to paragraphs 1 through 3, 5 through 7, 9, 12, 13, 24 through 72, 269 through 274, and 335 of the Amended Complaint. Croscill lacks knowledge and

---

[*] In the related action pending before the U.S. District Court for the Southern District of New York, *Zohar CDO 2003-1 v. Patriarch Partners, LLC*, No. 17-cv-307, (S.D.N.Y.) (the "SDNY Omnibus Action"), Ms. Tilton asserted counterclaims against the Zohar Funds and third-party claims against MBIA Insurance Corporation and MBIA, Inc. (collectively, "MBIA"), U.S. Bank, N.A. ("U.S. Bank"), Alvarez & Marsal Zohar Management ("AMZM"), as well as Credit Value Partners, LP, Halcyon Capital Management LP, Coöperatieve Rabobank U.A., and Värde Partners, Inc. Ms. Tilton is not asserting similar counterclaims here because this case should be transferred to the Southern District of New York and consolidated with that first-filed action. *See generally* Dkt. 10 (Defs.' Br. in Support of Mot. to Transfer Venue or Stay). In the event this Court keeps this matter, Ms. Tilton may seek leave to add her counterclaims and third-party claims at a later date.

therefore denies the allegations set forth in paragraphs 4, 8, 10, 11, 73 through 268, and paragraphs 275 through 334 of the Amended Complaint insofar as the allegations set forth in those paragraphs relate to companies other than Croscill.

Denali Acquisition joins Ms. Tilton's Answer to paragraphs 1 through 3, 5 through 7, 9, 10, 11, 12, 14, 24 through 51, 73 through 87, 275 through 280, and 335 of the Amended Complaint. Denali Acquisition lacks knowledge and therefore denies the allegations set forth in paragraphs 4, 8, 13, 15 through 23, 52 through 72, 88 through 274, and 281 through 334 of the Amended Complaint insofar as the allegations set forth in those paragraphs relate to companies other than Denali Acquisition.

Dura Buyer joins Ms. Tilton's Answer to paragraphs 1 through 3, 5 through 7, 9, 11, 12, 15, 24 through 51, 229 through 254, 323 through 328, and 335 of the Amended Complaint. Dura Buyer lacks knowledge and therefore denies the allegations set forth in paragraphs 4, 8, 10, 13, 14, 16 through 23, 52 through 228, 255 through 322, and 329 through 334 of the Amended Complaint insofar as the allegations set forth in those paragraphs relate to companies other than Dura Buyer.

GAS joins Ms. Tilton's Answer to paragraphs 1 through 3, 5 through 7, 9 through 12, 16, 24 through 51, 88 through 106, 281 through 286, and 335 of the Amended Complaint. GAS lacks knowledge and therefore denies the allegations set forth in paragraphs 4, 8, 13 through 15, 17 through 23, 52 through 87, 107 through 280, and 287 through 334 of the Amended Complaint insofar as the allegations set forth in those paragraphs relate to companies other than GAS.

Gorham joins Ms. Tilton's Answer to paragraphs 1 through 3, 5 through 7, 9, 12, 17, 24 through 51, 107 through 127, 287 through 292, and 335 of the Amended Complaint. Gorham lacks knowledge as to paragraphs 4, 8, 10, 11, 13 through 16, 18 through 23, 52 through 106, 128 through

286, and 293 through 334 insofar as the allegations set forth in those paragraphs relate to companies other than Gorham.

IMG joins Ms. Tilton's Answer to paragraphs 1 through 6, 8 through 12, 18, 24 through 51, 255 through 268, and 329 through 335 of the Amended Complaint.  IMG lacks knowledge and therefore denies the allegations set forth in paragraphs 7, 13 through 17, 19 through 23, 52 through 254, and 269 through 328 of the Amended Complaint insofar as the allegations set forth in those paragraphs relate to companies other than IMG.

Jewel of Jane joins Ms. Tilton's Answer to paragraphs 1 through 3, 5 through 7, 9, 11, 19, 24 through 51, 128 through 149, 293 through 298, and 335 of the Amended Complaint.  Jewel of Jane lacks knowledge and therefore denies the allegations set forth in paragraphs 4, 8, 10, 12 through 18, 20 through 23, 52 through 127, 150 through 292, and 299 through 334 of the Amended Complaint insofar as the allegations set forth in those paragraphs relate to companies other than Jewel of Jane.

LVD/Oasis joins Ms. Tilton's Answer to paragraphs 1 through 3, 5 through 7, 9 through 12, 20, 24 through 51, 150 through 168, 299 through 304, and 335 of the Amended Complaint.  LVD/Oasis lacks knowledge and therefore denies the allegations set forth in paragraphs 4, 8, 13 through 19, 21 through 23, 52 through 149, 169 through 298, and 305 through 334 of the Amended Complaint insofar as the allegations set forth in those paragraphs relate to companies other than LVD/Oasis.

RM joins Ms. Tilton's Answer to paragraphs 1 through 3, 5 through 7, 9 through 12, 21, 24 through 51, 169 through 189, 305 through 310, and 335 of the Amended Complaint.  RM lacks knowledge and therefore denies the allegations set forth in paragraphs 4, 8, 13 through 20, 22, 23,

52 through 168, 190 through 304, and 311 through 334 of the Amended Complaint insofar as the allegations set forth in those paragraphs relate to companies other than RM.

Snelling Holdings joins Ms. Tilton's Answer to paragraphs 1 through 3, 5 through 7, 9 through 12, 22, 24 through 51, 190 through 207, 311 through 316, and 335 of the Amended Complaint. Snelling Holdings lacks knowledge and therefore denies the allegations set forth in paragraphs 4, 8, 13 through 21, 23, 52 through 189, 208 through 310, and 317 through 334 of the Amended Complaint insofar as the allegations set forth in those paragraphs relate to companies other than Snelling Holdings.

Stila joins Ms. Tilton's Answer to paragraphs 1 through 3, 5 through 7, 9, 12, 23 through 51, 208 through 228, 317 through 322, and 335 of the Amended Complaint. Stila lacks knowledge and therefore denies the allegations in paragraphs 4, 8, 10, 11, 13 through 22, 52 through 207, 229 through 316, and 323 through 334 of the Amended Complaint insofar as the allegations set forth in those paragraphs relate to companies other than Stila.

Unless expressly admitted, all allegations in the Amended Complaint are denied. Nothing stated herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to this action.

## DEFENDANT LYNN TILTON'S INTRODUCTION

This recently filed action represents the latest front in Plaintiffs' desperate, multijurisdictional assault on Lynn Tilton, in which they seek to plunder assets and equity that have always and rightfully belonged to her, aided by procedural gamesmanship and blatant forum-shopping. This action is entirely duplicative of an action filed nearly a year ago by these same Plaintiffs—represented by the same counsel as in this action—in the United States District Court for the Southern District of New York (the "SDNY Omnibus Action"), asking for the very

same relief that they ask for here and involving the very same companies. Accordingly, as articulated in Defendants' recently filed Motion to Transfer Venue or Stay (Dkt. 8), this case should be transferred to the Southern District of New York, or stayed pending resolution of the first-filed SDNY Omnibus Action.[†] Dkt. 8 at 1-2.

In the past two years, Plaintiffs have filed numerous lawsuits against Ms. Tilton regarding many of the same (or overlapping) issues. Over a year ago, Plaintiffs filed an action in the Delaware Court of Chancery pursuant to 8 *Del. C.* § 225 seeking to obtain ownership and control over three of Ms. Tilton's portfolio companies (the "Section 225 Action"). Two months later, Plaintiffs filed the SDNY Omnibus Action against Ms. Tilton and her affiliated entities seeking to take control of dozens of portfolio companies, including the three at issue in the Section 225 Action and all of those at issue in this action. In the SDNY Omnibus Action, Plaintiffs asserted meritless federal racketeering claims (now dismissed), state law torts, and a declaratory judgment claim seeking "a declaration that [certain] amendments, proxies, and other documents or provisions [executed by each portfolio company] were void ab initio and are deemed unenforceable." *Id.* at 2. Ms. Tilton and the other defendants moved to dismiss, and in the face of Ms. Tilton's facially meritorious motion (now granted), the court denied Plaintiffs' request to expedite the case and permit discovery while the dismissal motion was pending.

---

[†] On December 29, 2017, the United States District Court for the Southern District of New York dismissed the plaintiffs' claims in the SDNY Omnibus Action but retained jurisdiction over the Third Party Complaint and Counterclaims asserted by Ms. Tilton and her affiliated entities pending further briefing from the parties. *See* Dkt. 105, *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, Case No. 1:17-cv-307 (S.D.N.Y. Dec. 29, 2017). As explained in Defendants' Opposition to Plaintiffs' Motion for Expedited Proceedings (Dkt. 13), the fact that Plaintiffs' RICO claims have been dismissed and the court declined to exercise supplemental jurisdiction over their state law claims in the SDNY Omnibus Action does not change the application of the first-filed rule. *See* Dkt. 13 at 2 n.2.

Almost a year later, Plaintiffs brought this new, entirely duplicative action in the Delaware Court of Chancery, now removed to this Court, seeking the very same relief—declarations that they own and control eleven of the same companies—that they sought in their own first-filed SDNY Omnibus Action.  *Id.* at 2-3.

Plaintiffs brought this new action in the Delaware Court of Chancery because, having obtained what they viewed as a favorable reception from that court in the Section 225 Action—and having not obtained any relief yet in the SDNY Omnibus Action—Plaintiffs have decided to attempt to steer a portion of their earlier-filed claims in the SDNY Omnibus Action to the Delaware Court of Chancery.  Plaintiffs seek, with this duplicative action, to steamroll their way to a victory not based on the merits but rather on procedural maneuvering and tactical mischief.  But there is no basis in law or equity for this Court to adjudicate the same claims these same Plaintiffs earlier chose to bring in a different forum.  Indeed, it would be supremely inequitable to subject Ms. Tilton and the other Defendants in both actions to the risk of inconsistent judgments and the significant costs of parallel litigation, and to reward Plaintiffs for the manner in which they have serially pressed identical claims in multiple jurisdictions.

## PLAINTIFFS' ALLEGATIONS AND DEFENDANTS' ANSWERS[‡]

### Nature Of The Action

1.     This is an action brought by the Plaintiff Zohar Funds to resolve ongoing disputes regarding their ownership and control over the Defendant Portfolio LLCs, each a Delaware limited liability company ("LLC"), and IMG, a Delaware corporation.  Specifically, the Zohar Funds own, collectively or individually, all of the outstanding membership interests, including voting interests, of nine of the ten Portfolio LLCs:  Croscill, Denali Acquisition, GAS, Gorham, Jewel of Jane, LVD/Oasis, RM, Snelling Holdings, and Stila.  For each of these Portfolio LLCs, one or more of the Zohar Funds are the only members named under their governing limited liability company agreements or operating agreement ("LLC agreements").  The Zohar Funds also own the majority of membership interests, including voting interests, in Dura Buyer, with an affiliate of Defendant Lynn Tilton, Ark II CLO 2001-1, Ltd. ("Ark II"),[1] holding a minority membership interest in Dura Buyer.  The Zohar Funds own all of the outstanding common stock of IMG.

**ANSWER:** Ms. Tilton admits that this action was initiated by the Zohar Funds purportedly

to resolve ongoing disputes regarding ownership and control over certain portfolio companies that

are organized as Delaware limited liability companies and one company that is incorporated in

Delaware.  With respect to Zohar I, which is nominally a Plaintiff here, its nominal collateral

manager, AMZM, no longer properly acts on its behalf in bringing this suit.  That is because Ms.

Tilton, through her affiliates, is the sole remaining Zohar I noteholder, as well as Zohar I's director

and owner (through her ownership of the Zohar I preference shares).  Ms. Tilton also admits the

allegations in footnote 1, which state that Ark II has no noteholders, is wholly owned by Ms. Tilton,

and is used as her personal investment vehicle.  Ms. Tilton denies the remaining allegations in

Paragraph 1, except admits that—consistent with a Securities and Exchange Commission ("SEC")

Administrative Law Judge's findings and based on Ms. Tilton's good faith belief and

understanding of the relevant facts—Ms. Tilton and entities she owns and controls are the

---

[‡]  For ease of reference, Ms. Tilton uses the same headings that are listed in Plaintiffs' Amended Complaint.  To the extent those headings contain substantive allegations, Ms. Tilton denies those allegations.

[1]  Upon information and belief, Ark II has no noteholders.  Ms. Tilton owns Ark II outright and she uses Ark II as her personal investment vehicle.

beneficial and ultimate owner of equity in the Portfolio LLCs and IMG and that the Zohar Funds'

designation as record holders of some of the membership interests or shares are, at most, equity

upside interests (*i.e.*, the net proceeds of sales of portfolio companies).   Indeed, in her recent

decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ

Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak

found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans

or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights

in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal

has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

2.     Ms. Tilton currently acts as the sole manager of each Portfolio LLC and the sole director of IMG.  She has contended that, notwithstanding that the Zohar Funds are exclusive or majority holders of the membership interests in the Portfolio LLCs and sole owners of the outstanding common stock of IMG, they are powerless to remove Ms. Tilton and appoint a new manager or director.  The Zohar Funds dispute Ms. Tilton's position and bring this action for entry of an order declaring that they may remove Ms. Tilton and replace her with a new manager or managers for each of the Portfolio LLCs and a new director or directors for IMG.

**ANSWER:**  Ms. Tilton admits that she is the sole manager of each Portfolio LLC and the

sole director of IMG.  Ms. Tilton further admits that the Zohar Funds cannot unilaterally remove

her as manager or director.  Ms. Tilton admits that the Zohar Funds are designated as members of

the Portfolio LLCs or owners of IMG insofar as they are record holders of some of the membership

interests or shares that are, at most, equity upside interests.  Ms. Tilton admits that the Zohar Funds

purport to bring this action seeking an order declaring that they may remove her as manager or

director and replace her with employees or affiliates of AMZM.  Ms. Tilton denies the remaining

allegations in Paragraph 2.

3.     Ms. Tilton's contention that the Zohar Funds may not remove her as manager for the Portfolio LLCs is predicated upon amendments to their governing LLC agreements that she caused to be drafted and executed—in most cases, on the eve of her removal as collateral manager of the Zohar Funds—that purport to transfer certain of the Zohar Funds' membership rights, including voting rights, to entities that are wholly controlled by Ms. Tilton.  These amendments

are substantively identical to the irrevocable proxies in respect of FSAR Holdings, Inc., Glenoit Universal Ltd., and UI Acquisition Holding Co. that were challenged by the Zohar Funds and tried to this Court in *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch. Ct.). As was the case for the irrevocable proxies in that action, the amendments at issue in this action are unenforceable as they constitute blatant acts of inequitable self-dealing by Ms. Tilton.  They are also unenforceable for the additional reason that the amendments' one-way transfer of valuable rights from the Zohar Funds to Ms. Tilton's entities provided absolutely nothing of value to the Zohar Funds in return and thus fail for lack of consideration.

**ANSWER:**  Paragraph 3 states legal arguments and conclusions to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 3, except admits that amendments to the Portfolio LLCs' LLC Agreements were drafted and executed.

4.     Ms. Tilton's contention that the Zohar Funds may not remove her as director of IMG arises from irrevocable proxies that are identical to those challenged by the Zohar Funds and tried to this Court in *FSAR Holdings*.  The irrevocable proxies related to IMG are unenforceable here for the same reasons as in *FSAR Holdings*; they are blatant acts of inequitable self-dealing by Ms. Tilton that purport to irrevocably transfer, for a term of twenty years, the voting rights of the Zohar Funds to entities she controls.  The IMG irrevocable proxies are also invalid because they are not properly coupled with an interest.

**ANSWER:**  Paragraph 4 states legal arguments and conclusions to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 4, except admits that the Zohar Funds cannot remove a director of IMG.

5.     On November 28, 2017, the Zohar Funds executed and delivered to each company written consents to remove the manager of each of the Portfolio LLCs and the director of IMG and to elect new managers for each of the Portfolio LLCs and a new director of IMG.

**ANSWER:**  Ms. Tilton admits that, on November 28, 2017, the Zohar Funds executed and delivered to Denali Acquisition LLC, RM Acquisition, LLC and Snelling Holdings, LLC legally invalid written consents purporting to remove her as the manager of those Portfolio LLCs.  Ms. Tilton lacks knowledge and information sufficient to admit or deny the remaining allegations in Paragraph 5, and denies those allegations on that basis.

6.     Accordingly, the Zohar Funds seek an order declaring that, consistent with the original governing agreement for each Portfolio LLC, as exclusive (or, for Dura Buyer, majority)

holder of the membership interests of each Portfolio LLC, the Zohar Funds have validly removed the manager for each Portfolio LLC and elected Alvarez & Marsal Zohar Management, LLC ("AMZM") as new manager for each Portfolio LLC. The Zohar Funds also seek an order declaring that as owners of all of IMG's outstanding common stock they have validly removed IMG's director and elected Tom Jones, Elizabeth LaPuma and Anthony McKiernan as new directors of IMG.

**ANSWER:** Paragraph 6 states legal arguments to which no response is required. To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 6, and admits only that Plaintiffs bring this action seeking declaratory relief.

### Jurisdiction

7.     This Court has jurisdiction over this matter in respect of the Portfolio LLCs under 6 *Del. C.* §§ 18-110, -111 because it is an application to determine the validity of an election and removal of a manager of a limited liability company and an action to "interpret, apply or enforce the provisions of a limited liability company agreement" and "the rights or powers of, or restrictions on, the limited liability company, members or managers."

**ANSWER:** Paragraph 7 states a legal conclusion to which no response is required. To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 7. Ms. Tilton also respectfully refers the Court to Defendants' Brief in Support of Their Motion to Transfer Venue or Stay, No. 17-01797, Dkt. 10.

8.     This Court has jurisdiction over this matter in respect of IMG under 8 *Del. C.* § 225 because it is an action to determine "the right of any person to hold or continue to hold" the office of director.

**ANSWER:** Paragraph 8 states a legal conclusion to which no response is required. To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 8. Ms. Tilton also respectfully refers the Court to Defendant's Brief in Support of Their Motion to Transfer Venue or Stay, No. 17-01797, Dkt. 10.

9.     This Court has the power to declare rights, status and other legal relations under 10 *Del. C.* § 6501 because an actual controversy exists between the parties.

**ANSWER:** Paragraph 9 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton admits that an actual controversy exists between the parties and denies the remaining allegations contained in Paragraph 9.

### The Parties

10.     Plaintiff Zohar I is a Cayman Island exempt company.  At all times relevant hereto, Zohar I has been a member of the following Portfolio LLCs, as evidenced by their LLC agreements:

| Company | Class | Percentage |
|---|---|---|
| 1. GAS | Common Interest | 18.760% |
| 2. LVD/Oasis | Common Interest | 14.69% |
| 3. RM | Common Interest | 17.09050% |
| | Series A Preferred Interest | 17.09050% |
| 4. Snelling Holdings | Membership Interest | 22.3% |

Zohar I also owns 16.9 percent of the outstanding common stock of IMG, consisting of 1,016.5 shares.

**ANSWER:** Ms. Tilton admits the first sentence of Paragraph 10.  Ms. Tilton further admits that Zohar I was listed as record holder, but was not the actual or beneficial owner, of certain membership interests the Portfolio LLCs listed in Paragraph 10 and shares in IMG.  To the extent Paragraph 10 purports to characterize the contents of the LLC Agreements of the Portfolio LLCs or any share certificates, stockholder or other agreement associated with IMG, Ms. Tilton respectfully refers the Court to those documents, and any amendments thereto, for a complete and accurate description of their contents.

11.     Plaintiff Zohar II is a Cayman Island exempt company.  At all times relevant hereto, Zohar II has been a member of the following Portfolio LLCs, as evidenced by their LLC agreements:

| Company | Class | Percentage |
|---|---|---|
| | | |

| 1. Dura Buyer | Common Interest | 52.49% |
|---|---|---|
| 2. GAS | Common Interest | 49.083% |
| 3. Jewel of Jane | Common Interest | 100% |
| | Series A Preferred Interest | 100% |
| 4. LVD/Oasis | Common Interest | 62.36% |
| 5. RM | Common Interest | 56.96833% |
| | Series A Preferred Interest | 56.96833% |
| 6. Snelling Holdings | Membership Interest | 63.8% |

Zohar II also owns 68.2 percent of the outstanding common stock of IMG, consisting of 4,093.0 shares.

**ANSWER:** Ms. Tilton admits the first sentence of Paragraph 11.  Ms. Tilton further admits that Zohar II is listed as record holder, but not the actual or beneficial owner, of certain membership interests the Portfolio LLCs listed in Paragraph 11 and shares in IMG.  To the extent Paragraph 11 purports to characterize the LLC Agreements of the Portfolio LLCs or any share certificates, stockholder or other agreement associated with IMG, Ms. Tilton respectfully refers the Court to those documents, and any amendments thereto, for a complete and accurate description of their contents.

12.     Plaintiff Zohar III is a Cayman Island exempt company.  At all times relevant hereto, Zohar III has been a member of the following Portfolio LLCs, as evidenced by their LLC agreements:

| Company | Class | Percentage |
|---|---|---|
| 1. Croscill | Common Interest | 100% |
| | Series A Preferred Interest | 100% |
| 2. Denali | Membership Interest | 100% |
| 3. Dura Buyer | Common Interest | 25.29% |
| 4. GAS | Common Interest | 32.157% |
| 5. Gorham | Common Interest | 100% |
| | Series A Preferred Interest | 100% |
| 6. LVD/Oasis | Common Interest | 22.95% |
| 7. RM | Common Interest | 25.94118% |
| | Series A Preferred Interest | 25.94118% |
| 8. Snelling Holdings | Membership Interest | 13.9% |
| 9. Stila | Common Interest | 100% |
| | Series A Preferred Interest | 100% |

Zohar III also owns 14.8 percent of the outstanding common stock of IMG, consisting of 890.5 shares.

**ANSWER:** Ms. Tilton admits the first sentence of Paragraph 12. Ms. Tilton further admits that Zohar III is listed as record holder, but not the actual or beneficial owner, of certain membership interests in the Portfolio LLCs listed in Paragraph 12 and shares in IMG. To the extent Paragraph 12 purports to characterize the contents of LLC Agreements of the Portfolio LLCs or any share certificates, stockholder or other agreement associated with IMG, Ms. Tilton respectfully refers the Court to those documents, and any amendments thereto, for a complete and accurate description of their contents.

13.     Defendant Croscill Home LLC (formerly known as Croscill Acquisition, LLC) (previously defined as "Croscill") is a Delaware limited liability company. Croscill's governing

agreement is the Limited Liability Company Agreement of Croscill Acquisition, LLC dated as of November 7, 2008 (the "Croscill LLC Agreement").

**ANSWER:**  Ms. Tilton admits the first sentence of Paragraph 13.  Ms. Tilton denies the

remaining allegations of Paragraph 13, except admits that Croscill is governed by a LLC

Agreement, as amended.

14.     Defendant Denali Acquisition LLC (previously defined as "Denali") is a Delaware limited liability company.  Denali's governing agreement is the Operating Agreement of Denali Acquisition LLC dated as of June 6, 2008 (the "Denali Acquisition Operating Agreement").

**ANSWER:**  Ms. Tilton admits the first sentence of Paragraph 14.  Ms. Tilton denies the

remaining allegations of Paragraph 14, except admits that Denali Acquisition is governed by a

LLC Agreement, as amended.

15.     Defendant Dura Buyer, LLC (previously defined as "Dura Buyer") is a Delaware limited liability company.  Dura Buyer's governing agreement is the Limited Liability Company Agreement of Dura Buyer, LLC dated as of November 10, 2009 (the "Dura Buyer LLC Agreement").

**ANSWER:**  Ms. Tilton admits the first sentence of Paragraph 15.  Ms. Tilton denies the

remaining allegations of Paragraph 15, except admits that Dura Buyer is governed by a LLC

Agreement, as amended.

16.     Defendant Global Automotive Systems, LLC (previously defined as "GAS") is a Delaware limited liability company.  GAS's governing agreement is the Amended and Restated Limited Liability Company Agreement of Global Automotive Systems, LLC dated as of March 9, 2013 (the "GAS LLC Agreement").

**ANSWER:**  Ms. Tilton admits the first sentence of Paragraph 16.  Ms. Tilton denies the

remaining allegations of Paragraph 16, except admits that GAS is governed by an Amended and

Restated LLC Agreement, as amended.

17.     Defendant Gorham Paper and Tissue, LLC (previously defined as "Gorham") is a Delaware limited liability company.  Gorham's governing agreement is the Limited Liability Company Agreement of Gorham Paper and Tissue, LLC dated as of May 13, 2011 (the "Gorham LLC Agreement").

**ANSWER:**  Ms. Tilton admits the first sentence of Paragraph 17.  Ms. Tilton denies the remaining allegations of Paragraph 17, except admits that Gorham is governed by a LLC Agreement, as amended.

18.     Defendant IMG Holdings, Inc. (previously defined as "IMG") is a Delaware corporation.  IMG's registered agent is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**  Admitted.

19.     Defendant Jewel of Jane LLC (previously defined as "Jewel of Jane") is a Delaware limited liability company.  Jewel of Jane's governing agreement is the Limited Liability Company Agreement of Jewel of Jane LLC dated as of December 24, 2009 (the "Jewel of Jane LLC Agreement").

**ANSWER:**  Ms. Tilton admits the first sentence of Paragraph 19.  Ms. Tilton denies the remaining allegations of Paragraph 19, except admits that Jewel of Jane is governed by a LLC Agreement, as amended.

20.     Defendant LVD Acquisition, LLC (doing business as Oasis International) (previously defined as "LVD/Oasis") is a Delaware limited liability company.  LVD/Oasis's governing agreement is the Limited Liability Company Agreement of LVD Acquisition, LLC dated as of March 31, 2009 (the "LVD/Oasis LLC Agreement").

**ANSWER:**  Ms. Tilton admits the first sentence of Paragraph 20.  Ms. Tilton denies the remaining allegations of Paragraph 20, except admits that LVD/Oasis  is governed by a LLC Agreement, as amended.

21.     Defendant RM Acquisition, LLC (previously defined as "RM") is a Delaware limited liability company.  RM's governing agreement is the First Amended and Restated Operating Agreement of RM Acquisition, LLC signed on April 29, 2008, and intended to be effective for all purposes as of December 2, 2007 (the "RM Operating Agreement").

**ANSWER:**  Ms. Tilton admits the first sentence of Paragraph 21.  Ms. Tilton denies the remaining allegations of Paragraph 21, except admits that RM is governed by a LLC Agreement, as amended.

22.     Defendant Snelling Holdings, LLC (previously defined as "Snelling Holdings") is a Delaware limited liability company.  Snelling Holding's governing agreement is the Operating

Agreement of Snelling Holdings, LLC dated as of October 1, 2007 (the "Snelling Holdings Operating Agreement").

**ANSWER:** Ms. Tilton admits the first sentence of Paragraph 22. Ms. Tilton denies the remaining allegations of Paragraph 22, except admits that Snelling Holdings is governed by a LLC Agreement, as amended.

23. Defendant Stila Styles, LLC (previously defined as "Stila") is a Delaware limited liability company. Stila's governing agreement is the Limited Liability Company Agreement of Stila Styles, LLC dated as of April 17, 2009 (the "Stila LLC Agreement").

**ANSWER:** Ms. Tilton admits the first sentence of Paragraph 23. Ms. Tilton denies the remaining allegations of Paragraph 23, except admits that Stila is governed by a LLC Agreement, as amended.

24. Defendant Lynn Tilton is, on information and belief, the principal of Patriarch and its affiliates, and is the sole manager of each of the Portfolio LLCs and sole director of IMG.[2]

**ANSWER:** Ms. Tilton admits the allegations in Paragraph 24. With respect to the allegations in footnote 3, Ms. Tilton respectfully refers the Court to the governing documents referenced above, and any amendments thereto, for a complete and accurate description of their contents.

## Background

### I.       Formation Of The Zohar Funds And Role Of The Patriarch Managers

25. The Zohar Funds are collateralized loan obligation ("CLO") transactions that raised capital through the sale of notes for the ostensible purpose of investing in corporate debt and other assets. The first Zohar Fund, Zohar I, launched in November 2003, raising approximately $530 million from the sale of notes. Zohar II and Zohar III followed in January 2005 and April 2007, respectively, each raising approximately $1 billion from the sale of notes.

---

[2] Summaries of the Zohar Funds' percentage ownership, organized by Portfolio LLC and IMG, and relevant removal provisions are appended to this verified amended complaint as Tables 1 and 2.

**ANSWER:**  Ms. Tilton admits that the Zohar Funds are similar in some ways to CLOs but have unique features that distinguish them from typical CLOs, the Zohar Funds were created to invest in distressed debt and were marketed as such, Zohar I launched in November 2003 and raised approximately $530 million from the sale of notes, Zohar II was created in January 2005 and raised approximately $1 billion from the sale of notes, and Zohar III was created in April 2007 and raised approximately $1 billion from the sale of notes.  Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 25.

26.     Prior to March 2016, the Zohar Funds were managed by affiliates of Patriarch Partners, LLC ("Patriarch"), an investment firm owned by Ms. Tilton.  Patriarch Partners VIII, LLC was Zohar I's collateral manager, Patriarch Partners XIV, LLC was Zohar II's collateral manager, and Patriarch Partners XV, LLC was Zohar III's collateral manager.  Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, and Patriarch Partners XV, LLC are collectively referred to below as the "Patriarch Managers."

**ANSWER:**  Admitted except to the extent the allegations imply the Patriarch Managers were solely the collateral managers for the Zohar Funds, as the Patriarch Managers were also the Managing Members of the Zohar Funds' equity owners.

27.     The rights of the Zohar Funds' Noteholders and the obligations of the Zohar Funds are set forth in Indentures.  The roles and obligations of the collateral manager were set out in the Collateral Management Agreements ("CMAs") for each of the Zohar Funds.[3] The Patriarch Managers were tasked with managing the loans and other assets of the Zohar Funds.  The CMAs set forth a "Standard of Care," requiring that the Collateral Manager "use reasonable care and the same degree of skill and attention" that, among other things, is "exercised by institutional investment managers of national standing generally in respect of assets of the nature and character of the Collateral and for clients having similar investment objections and restrictions." CMAs § 2.4.[4]

---

[3]  The CMAs are expressly made subject to the terms of the Indentures, with provisions of the Indentures controlling over conflicting provisions in the CMAs. See Zohar I CMA § 7.14; Zohar II CMAs, § 7.14; Zohar III CMA, § 7.13.

[4]  Citations to "CMAs" are to parallel sections in the Zohar I CMA, Zohar II CMA, and Zohar III CMA unless citation to a separate CMA is necessary. Likewise, citations to "Indentures" are to parallel sections in the Zohar I Indenture, Zohar II Indenture, and Zohar III Indenture,

**ANSWER:**  Ms. Tilton admits that the Zohar Funds are each governed by, among other documents, an Indenture, a Collateral Management Agreement, and a Collateral Administration Agreement, which include amendments.  To the extent Paragraph 27 purports to characterize the contents of these documents, Ms. Tilton respectfully refers the Court to those documents, and any amendments thereto, for a complete and accurate description of their contents.  Except as expressly admitted, Ms. Tilton denies the remaining allegations in Paragraph 27. Ms. Tilton admits the allegations in footnote 3.  The statements in footnote 4 do not require an admission, denial, or other response.  To the extent footnotes 3 and 4 purport to characterize the contents of the Collateral Management Agreements, Indentures, and other documents governing the Zohar Funds, Ms. Tilton respectfully refers the Court to those documents for a complete and accurate description of their contents.

28.     The CMAs also expressly prohibited any action by the Collateral Manager that would "cause the [Zohar Funds] to violate the terms of the Indenture," CMAs § 2.6, such as by "transfer[ring] . . . any part of the Collateral, except as expressly permitted by th[e] Indenture," Indentures § 7.8(a)(i).

**ANSWER:**  Paragraph 28 purports to characterize the contents of the Collateral Management Agreements and the Indentures.  Ms. Tilton respectfully refers the Court to those documents for a complete and accurate description of their contents.

29.     While Section 6.2 of the CMAs acknowledges that the Collateral Manager may have certain conflicts of interest, it does not provide exculpation for self-dealing transactions.[5] CMAs § 6.2.  Rather, Section 6.2(b) provides that nothing in Section 6.2 "shall be construed as altering the duties of the Collateral Manager as set forth in this Agreement or the Indenture nor the requirements of any law, rule or regulation applicable to the Collateral Manager."

---

and citations to "Preference Share Paying Agency Agreements" are to parallel sections in the Preference Share Paying Agency Agreement for each Zohar Fund, unless a separate citation is necessary.

[5]  Although the CMAs provide limited exculpation for the Collateral Manager and certain affiliates, they do not cover "acts or omissions constituting fraud, bad faith, willful misconduct, gross negligence or breach of fiduciary duty in the performance, or reckless disregard, of the duties of the Collateral Manager . . . ." CMAs § 4.4.

And Section 12.3 of the Indentures expressly provides that any transaction "if effected with the Collateral Manager . . . or any affiliate of [the Collateral Manager] shall be effected on terms as favorable to the Noteholders as would be the case if such Person were not so Affiliated." Indentures § 12.3(a). Thus, the Indentures expressly provide that transactions between the Zohar Funds and Patriarch or its affiliates must be on terms no less favorable than would be obtained in an arms-length transaction.

**ANSWER:** Paragraph 29 and footnote 5 purport to characterize the contents of the Collateral Management Agreements. Ms. Tilton respectfully refers the Court to those documents for a complete and accurate description of their contents. The last sentence of Paragraph 29 states a legal conclusion to which no response is required. To the extent a response is required, Ms. Tilton denies the allegations in the last sentence of Paragraph 29.

30.    Finally, like all investment advisers, the Patriarch Managers owed general fiduciary duties of care and loyalty to the Zohar Funds in providing advisory services and acting as the Zohar Funds' agent and attorney-in-fact in administering the Zohar Funds' investment activities. These common law and statutory fiduciary duties are in addition to the specific duties of care set forth in the CMAs.

**ANSWER:** Paragraph 30 states legal conclusions to which no response is required. To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 30.

## II.    The Zohar Funds' Creditors And Collateral

31.    The Zohar Funds are special purpose entities that have limited business purposes that include (i) issuing collateralized loan obligations ("Notes") and using the proceeds to acquire certain types of assets that are pledged as Collateral for the sole benefit of the Noteholders, (ii) managing the Collateral for the benefit of the Secured Parties (which includes the Noteholders and, for Zohar I and Zohar II, MBIA both as Noteholder and as Credit Enhancer), and (iii) repaying the Notes at or before their maturity from proceeds generated from the Collateral. Indentures § 7.12. The holders of Notes issued by the Zohar Funds (and the Credit Enhancer who insured certain Notes for Zohar I and Zohar II) are the Funds' primary Secured Party creditors.

**ANSWER:** Paragraph 31 purports to characterize the contents of the Indentures. Ms. Tilton respectfully refers the Court to those documents and any amendments thereto for a complete and accurate description of their contents. Ms. Tilton otherwise denies the allegations in Paragraph 31.

32.     The Zohar Funds' Indentures give the Secured Parties "a continuing security interest in, and lien on" the property of the Zohar Funds.  Indentures at 1.  The security interest and lien granted to the Noteholders and other Secured Parties is extremely broad, encompassing:

> all of [the Zohar Fund's] right, title and interest in, to and under, in each case, whether now owned or existing, or hereafter acquired or arising, all accounts, payment intangibles, general intangibles, letter-of-credit rights, chattel paper, electronic chattel paper, instruments, deposit accounts, investment property (each, as defined in the UCC), and any and all other property of any type or nature owned by it (other than Excluded Property) . . . .

Indentures at 1.  The "Excluded Property" as to which the Noteholders do not have a security interest consists solely of $1,500 in cash.  Zohar I Indenture at 28; Zohar II Indenture at 28; Zohar III Indenture at 26.

**ANSWER:**  Paragraph 32 purports to characterize the contents of the Indentures.  Ms. Tilton respectfully refers the Court to those documents, and any amendments thereto, for a complete and accurate description of their contents.  Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 32.

33.     The Zohar Funds were intended to have limited duration, as the Notes that the Funds issued had (in the case of Zohar I and Zohar II) and have (in the case of Zohar III) a Stated Maturity date on which they must be repaid.  Indentures § 2.2(b).  The Indentures contemplate that Collateral that does not mature prior to the Stated Maturity—essentially, all of the remaining property of the Funds—will be sold to generate proceeds to repay the Notes.  Zohar I Indenture § 12.2(e)[6]; Zohar II Indenture § 12.2(e); Zohar III Indenture § 12.2(d).  Moreover, upon an Event of Default and acceleration of the Notes—whether it is a nonpayment of interest or principal when due, or certain other Events of Default—the Trustee is empowered to cause the sale of the Collateral if the proceeds are sufficient to repay the Notes.  Indentures § 5.5(a)(i).  The Trustee must also sell the Collateral upon the Event of Default and acceleration of the Notes when the Controlling Party (or, in the case of Zohar III, the Controlling Class) directs it to— whether the proceeds of such a sale would be sufficient to repay the Notes in full or not.  Indentures §§ 5.4(a)(ii), 5.5(a)(ii).  Thus, the intent of the Indentures is clear:  unless and until the Notes are repaid, the Collateral is held solely for the benefit of the Secured Parties (primarily the Noteholders and, in the case of Zohar I and Zohar II, MBIA as Credit Enhancer).

---

[6]  On June 19, 2015, MBIA and Patriarch agreed to a Fifth Supplemental Indenture for Zohar I that amended Section 12.2(e) to permit (rather than require) the liquidation of Collateral.

**ANSWER:**  The first four sentences of Paragraph 33 and footnote 6 purport to characterize the Indentures.  Ms. Tilton respectfully refers the Court to those documents, and any amendments thereto, for a complete and accurate description of their contents.  The last sentence of Paragraph 33 states legal conclusions to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations in the last sentence of Paragraph 33.

34.     In turn, the Noteholders have recourse only to the Collateral.  Indentures § 2.6(i).  Following realization of the Collateral, "any claims of the Noteholders . . . shall be extinguished, and shall not thereafter revive." Indentures § 2.6(i).  Thus, Secured Parties' security interest in the Collateral—and the right of the Controlling Party or Controlling Class to cause the sale of the Collateral upon non-payment of principal at the Stated Maturity or upon any other Event of Default and acceleration of Notes—is not only critical to the Noteholders, but is inherent in the Zohar Funds' basic structure.

**ANSWER:**  Paragraph 34 purports to summarize contents of the Indentures.  Ms. Tilton respectfully refers the Court to those documents, and any amendments thereto, for a complete and accurate description of their contents.  Paragraph 34 also states a legal conclusion to which no response is required.  To the extent that a response is required, Ms. Tilton denies the allegations in Paragraph 34.

### III.     The Zohar Funds' Preference Shareholders

35.     In addition to selling Notes to investors, the Zohar Funds issued Preference Shares which are currently owned by an entity owned and controlled by Ms. Tilton.

**ANSWER:**  Denied, except admitted that certain Patriarch entities own preference shares issued by the Zohar Funds, and that those Patriarch entities are also managed by the Patriarch Managers.

36.     Patriarch affiliate Octaluna, LLC holds Zohar I's Preference Shares.  Octaluna, LLC has three classes of members:  Class A, Class B, and Class C.  The sole Class B Member of Octaluna (which is relevant here for reasons set forth below) is the original Collateral Manager of Zohar I, Patriarch Partners VIII, LLC.  Patriarch Partners VIII, LLC is also named the Managing Member of Octaluna, LLC.

**ANSWER:**  Admitted, except denied that Patriarch Partners VIII, LLC's status as the sole Class B Member of Octaluna is relevant for the reasons alleged by Plaintiffs.

37.     Patriarch affiliate Octaluna II, LLC holds Zohar II's Preference Shares.  Octaluna II, LLC has three classes of members:  Class A, Class B, and Class C.  The sole Class B Member of Octaluna II, LLC is the original Collateral Manager of Zohar II, Patriarch Partners XIV, LLC.  Patriarch Partners XIV, LLC is also named the Managing Member of Octaluna II, LLC.

**ANSWER:**  Admitted.

38.     Patriarch affiliate Octaluna III, LLC holds Zohar III's Preference Shares.  Octaluna III, LLC has three classes of members:  Class A, Class B, and Class C.  The Class B Members of Octaluna III, LLC are Ark II (58.3 percent), Patriarch Partners XV, LLC, the original Collateral Manager of Zohar III (25 percent), and Phoenix VIII, LLC (16.7 percent).  Patriarch XV, LLC is named the Managing Member of Octaluna III, LLC.

**ANSWER:**  Admitted.

39.     Octaluna I, LLC, Octaluna II, LLC, and Octaluna III, LLC, are collectively referred to herein as the "Octalunas."  The Class B Members of Octalunas are collectively referred to herein as the "Octaluna Class B Members."

**ANSWER:**  Admitted.

40.     The Preference Shareholder of each Zohar Fund is entitled only to a capped amount of dividends (that the Preference Shareholders have received) and whatever cash remains after the Notes are paid in full after the sale or self-liquidation of Collateral.  The Preference Shares' final distributions (if any) are payable solely from amounts on deposit in the Preference Share Distribution Account.  Preference Share Paying Agency Agreements § 2.6(c).  Any amounts deposited in the Preference Share Distribution Account are subordinated to the Notes' interest and principal, *id.* § 2.6(d), and come from the remaining funds in the last step in the Indenture interest and principal proceeds waterfall.  Zohar I Indenture § 11.1(a)(i)(M), (a)(ii)(J); Zohar II Indenture § 11.1(a)(i)(M), (a)(ii)(J); Zohar III Indenture § 11.1(a)(i)(P), (a)(ii)(I).

**ANSWER:**  Paragraph 40 purports to summarize contents of the Zohar Indentures.  Ms. Tilton respectfully refers the Court to those documents, and any amendments thereto, for a complete and accurate description for their contents.  Paragraph 40 also states legal conclusions to which no response is required.  To the extent that a response is required, Ms. Tilton denies the allegations in Paragraph 40.

## IV.        The Zohar Funds Acquisition Of Equity In The Portfolio LLCs And IMG

41.     Much of the Collateral acquired by the Zohar Funds consisted of loans extended to small- to mid-sized manufacturing companies.  The entire consideration for the acquisition of these loans came from funds in the Zohar Funds' accounts.  In many instances, either in the same transaction in which the Zohar Funds extended loans, or though subsequent transactions in which those loans were restructured, the Zohar Funds also acquired equity positions in the borrowers. These equity positions were titled and beneficially owned in the Zohar Funds' names and thus constituted part of the Collateral under the Zohar Funds' Indentures that served as security for repayment of the Noteholders (or, as appropriate in respect of Zohar I and Zohar II, the Credit Enhancer).

**ANSWER:**  Paragraph 41 states legal conclusions to which no response is required.  To

the extent that a response is required, Ms. Tilton denies the allegations in Paragraph 41 except

admits that Ms. Tilton has taken the position in litigation and other contexts, consistent with the

SEC Administrative Law Judge's findings and based on Ms. Tilton's good faith belief and

understanding of the relevant facts, that Ms. Tilton and entities she owns and controls are the

beneficial and ultimate owner of equity in the Portfolio LLCs and that the Zohar Funds' rights in

that equity are, at most, equity upside interests.  Indeed, in her recent decision in *In re Lynn Tilton*,

Exchange Act Release No. 1182, 2017 WL 4297256,  at *21 (ALJ Sept. 27, 2017), following a

three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar funds,

beyond their right to receive interest and principal payments on loans or other assets listed in the

Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."

The time for any appeal of that decision has expired and no appeal has been taken.  It is now a

final, binding precedent with collateral estoppel consequences here.

42.     In the case of each of the Portfolio LLCs at issue in this action, the Zohar Funds extended one or more loans to each of the Portfolio Companies and simultaneously acquired equity interests.  In each instance, that equity was in the form of membership interests titled in the name of the Zohar Funds pursuant to the governing LLC agreement for each Portfolio LLC.  In the case of IMG, the Zohar Funds acquired common stock of IMG in a restructuring of loans extended to IMG and in a legal settlement with IMG's founders.  Those equity positions, including the rights attendant to them, constituted Collateral under the Zohar Funds' Indentures.

**ANSWER:**  Ms. Tilton admits that the Zohar Funds extended loans to the Portfolio LLCs,

IMG, and other Portfolio Companies, but otherwise denies the allegations in the first sentence of

Paragraph 42.  Paragraph 42 states legal conclusions to which no response is required.  To the extent that a response is required, Ms. Tilton denies the allegations in Paragraph 42 except admits that Ms. Tilton has taken the position in litigation and other contexts, consistent with the SEC Administrative Law Judge's findings and based on Ms. Tilton's good faith belief and understanding of the relevant facts, that Ms. Tilton and entities she owns and controls are the beneficial and ultimate owner of equity in the Portfolio Companies (including the Portfolio LLCs and IMG) and that the Zohar Funds' rights in that equity are, at most equity upside interests. Indeed, in her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

## V.      The Zohar Funds' Failure To Repay Noteholders And Replacement Of The Patriarch Managers

43.      Under the management of the Patriarch Managers, the Zohar Funds performed dismally. On November 20, 2015, Zohar I defaulted on its obligation to repay Noteholders.  Zohar I's assets were subsequently sold by the Zohar I Trustee at auction to MBIA as the highest bidder.

**ANSWER:**  Paragraph 43 states legal conclusions to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 43 except admits that Zohar I defaulted in November 2015, and MBIA directed the Trustee to sell the Zohar I collateral, and other assets which were not owned by Zohar I, in a sham auction designed to benefit MBIA—an auction which is the subject of counterclaims and third-party claims in the SDNY Omnibus Action.

44.     On March 2, 2016, the Patriarch Managers resigned as Collateral Managers for the Zohar Funds.  AMZM was appointed as Collateral Manager for each of the Zohar Funds.

**ANSWER:**  Denied, except admitted that the Patriarch Managers ceased to be collateral managers upon their voluntary resignations that became effective in early March 2016, which resignations were premised on the understanding that Ms. Tilton would retain ownership and control of the portfolio companies and remain in her positions with them, and that AMZM was appointed to replace the Patriarch Managers as collateral manager for the Zohar Funds.

45.     On January 20, 2017, Zohar II defaulted on its obligation to repay Noteholders and MBIA paid approximately $770 million in claims on the outstanding principal and interest due to the Class A-1, Class A-2, and Class A-3 Noteholders and was subrogated to all of their rights.  It remains in default today.

**ANSWER:**  Paragraph 45 states legal conclusions to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 45, except admits that Zohar II defaulted in January 2017.

46.     Zohar III faces imminent default on its obligation to repay Noteholders on April 15, 2019.

**ANSWER:**  Ms. Tilton lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 46, and denies those allegations on that basis.   Ms. Tilton further denies that any purported default on a repayment obligation that does not arise until April 2019 could be characterized as "imminent" in any event.

**VI.      Ms. Tilton Engages In Self-Dealing Transactions To Improperly Entrench Her Control Over The Zohar-Owned Portfolio LLCs**

47.     As discussed above, the Zohar Funds' equity ownership is memorialized, among other places, in the LLC agreements setting forth the corporate governance of the Portfolio LLCs. The LLC agreement for each Portfolio LLC also provides for the process for removing and replacing the manager of each Portfolio LLC.  In two separate self-dealing transactions, Ms. Tilton caused the Zohar Funds to amend the LLC agreement for each Portfolio LLC and purportedly forfeit valuable membership interests, including their rights to remove and replace the manager of each Portfolio LLC.

**ANSWER:**  Ms. Tilton admits that the LLC, as amended, agreements memorialize the Zohar Funds as the record holders (but not the actual or beneficial owners) of equity interests in the Portfolio LLCs, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken. It is now a final, binding precedent with collateral estoppel consequences here.  The second sentence in Paragraph 47 purports to characterize the contents of the LLC agreements for each Portfolio LLC.  Ms. Tilton respectfully refers the Court to those documents, and any amendments thereto, for a complete and accurate statement of the LLC agreements' terms and contents.  Except as expressly admitted, Ms. Tilton denies the remaining allegations in Paragraph 47.

48.     In May 2011, Ms. Tilton caused the Zohar Funds to execute amendments to the LLC agreements that replaced the majority voting requirement for removal and replacement of the manager with a unanimous voting requirement.[7] These amendments sought to secure Ms. Tilton's ability to prevent her own removal as manager of the Portfolio LLCs even if she was removed as Collateral Manager whichever Zohar Fund independently owned a majority of the membership interests and thus could have unilaterally removed Tilton.  Moreover, in each instance, the Zohar Fund that gave up its ability to unilaterally exercise majority control received no consideration for this amendment.

**ANSWER:**  Paragraph 48 and footnote 7 thereto purport to characterize the contents of Amendments to the LLC Agreements of Portfolio LLCs.  Ms. Tilton respectfully refers the Court

---

[7]  This is true for eight of the Portfolio LLCs: (1) Croscill; (2) Denali Acquisition; (3) Dura Buyer; (4) Jewel of Jane; (5) LVD/Oasis; (6) RM; (7) Snelling Holdings; and (8) Stila. The LLC agreements for the two other Portfolio LLCs, GAS and Gorham, were executed in or after 2011. Thus, rather than cause GAS and Gorham to execute amendments, Ms. Tilton caused GAS and Gorham to enter into LLC agreements that required a unanimous vote of the Common Members to remove and replace the manager.

to those documents, and any further amendments, for a complete and accurate statement of the LLC Agreements' terms and contents.   The last sentence in Paragraph 48 states a legal conclusion to which no response is required.   To the extent a response is required, Ms. Tilton denies the remaining allegations in Paragraph 48 and footnote 7.

49.     With the exception of Dura Buyer, the Zohar Funds— individually or collectively—own 100 percent of the membership interests in the Portfolio LLCs.   Therefore, as the Zohar Funds are presently seeking in unison to remove Ms. Tilton, the imposition of a unanimous voting requirement in 2011, while improper, does not present a current impediment to the Zohar Funds' efforts, other than with regard to Dura Buyer.

**ANSWER:**  Ms. Tilton admits that with the exception of Dura Buyer, the Zohar Funds are the record holders (but not the actual or beneficial owners) of membership interests in the Portfolio LLCs, which are at most equity upside interests.   In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies." The time for any appeal of that decision has expired and no appeal has been taken.   It is now a final, binding precedent with collateral estoppel consequences here.   The second sentence in Paragraph 49 states a legal conclusion to which no response is required.   To the extent a response is required, Ms. Tilton denies the remaining allegations in Paragraph 49.

50.     In September 2015, when it became clear that Zohar I was on the verge of defaulting on its obligation to repay the principal amounts of the Notes it had issued, Ms. Tilton again sought to entrench herself as manager of the Portfolio LLCs.   At the time, Ms. Tilton conceded that she had already begun taking affirmative steps to prepare for her removal as manager following the Zohar I default.   One of those steps included an extreme, self-interested, defensive maneuver to entrench herself as manager of the Portfolio LLCs.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 50.

51.     Specifically, on September 22, 2015—one day after executing the irrevocable proxies at issue in *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch.

Ct.)—Ms. Tilton caused the Zohar Funds to execute amendments to the LLC agreements that purportedly transferred certain of the Zohar Funds' membership rights, including the right to remove Ms. Tilton as manager, to the Octaluna Class B Members—*i.e.*, Patriarch-affiliated entities that have never held any right or interest under the LLC agreements and that were entirely owned and controlled by Ms. Tilton.  Like the irrevocable proxies, these amendments claimed to implement the "original intent" of the parties, but no such original intent existed.  Ms. Tilton signed each of these amendments on behalf of all of the parties.  Moreover, the Zohar Funds received no consideration in exchange for this supposed transfer of their valuable membership interests to the Octaluna Class B Members under the 2015 amendments.

**ANSWER:**  Paragraph 51 purports to characterize the contents of Amendments to the LLC Agreements of Portfolio LLCs.  Ms. Tilton respectfully refers the Court to those documents, and any further amendments, for a complete and accurate statement of the LLC Agreements' terms and contents.  Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 51.

### A.    *Croscill Home LLC (formerly known as Croscill Acquisition, LLC)*

### 1.    **Operative 2008 Croscill LLC Agreement**

52.    Zohar III owns 100 percent of the outstanding Common Interests and Series A Preferred Interests of Croscill.  As a result, Zohar III is the sole Common Member and Series A Preferred Member of Croscill.  Zohar III executed the Croscill LLC Agreement, dated as of November 7, 2008.

**ANSWER:**  Ms. Tilton admits that Zohar III is the record holder (but not the actual or beneficial owner) of equity interests in Croscill, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.  Ms. Tilton further admits that Zohar III executed an LLC Agreement for Croscill that became

effective on November 7, 2008.  Except as expressly admitted, Ms. Tilton denies the allegations

in Paragraph 52.

53.     Section 1.1 of the Croscill LLC Agreement defines terms used therein. "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

**ANSWER:**  Paragraph 53 purports to characterize the contents of the LLC Agreement of

Croscill.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

54.     "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

**ANSWER:**  Paragraph 54 purports to characterize the contents of the LLC Agreement of

Croscill.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

55.     "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

**ANSWER:**  Paragraph 55 purports to characterize the contents of the LLC Agreement of

Croscill.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

56.     "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Croscill LLC Agreement.

**ANSWER:**  Paragraph 56 purports to characterize the contents of the LLC Agreement of

Croscill.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

57.     Exhibit A to the Croscill LLC Agreement lists Zohar III's Common Percentage as 100 percent.

**ANSWER:** Ms. Tilton respectfully refers the Court to Exhibit A to the LLC Agreement of Croscill, and any amendments thereto, for a complete and accurate statement of that document's contents. Ms. Tilton admits that Exhibit A to the LLC Agreement of Croscill lists Zohar III as the record holder (but not the actual or beneficial owner) of membership interests in Croscill. In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies." The time for any appeal of that decision has expired and no appeal has been taken. It is now a final, binding precedent with collateral estoppel consequences here.

58. "Series A Preferred Members" means "those Members from time to time holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

**ANSWER:** Paragraph 58 purports to characterize the contents of the LLC Agreement of Croscill. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

59. "Series A Preferred Percentage" means "for each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the Croscill LLC Agreement.

**ANSWER:** Paragraph 59 purports to characterize the contents of the LLC Agreement of Croscill. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

60. Exhibit A to the Croscill LLC Agreement lists Zohar III's Series A Preferred Percentage as 100 percent.

**ANSWER:**  Ms. Tilton respectfully refers the Court to Exhibit A to the LLC Agreement

of Croscill, and any amendments thereto, for a complete and accurate statement of that document's

contents.  Ms. Tilton admits that Exhibit A to the LLC Agreement of Croscill lists Zohar III as the

record holder (but not the actual or beneficial owner) of preferred membership interests in Croscill.

In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256,

at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol

Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal

payments on loans or other assets listed in the Trustee Reports, had no express equity ownership

or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has

expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel

consequences here.

61.  Section 5.8 of the Croscill LLC Agreement states, "The Common Members, upon
a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without
cause, remove and replace the Manager."

**ANSWER:**  Paragraph 61 purports to characterize the contents of the LLC Agreement of

Croscill.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

62.  Section 5.11 states, "Any action requiring the affirmative vote of the Common
Members or the Series A Preferred Members under this Agreement . . . may be taken . . . by a
written consent of a Majority-in-Interest of the Common Members or a Majority-in-Interest of the
Series A Preferred Members, as applicable, that would have been entitled to vote at such meeting
as permitted under Section 5.13."

**ANSWER:**  Paragraph 62 purports to characterize the contents of the LLC Agreement of

Croscill.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

63.  Section 5.13 states, "Any action permitted or required by the Act, the Certificate or
this Agreement to be taken by the Manager or the Members at a meeting may be taken without a
meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by

the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent shall have the same force and effect as a vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

**ANSWER:**  Paragraph 63 purports to characterize the contents of the LLC Agreement of

Croscill.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

64.    Section 11.1 of the Croscill LLC Agreement is an integration

clause, which states:

> This Agreement, together with its Exhibits, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.   There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

**ANSWER:**  Paragraph 64 purports to characterize the contents of the LLC Agreement of

Croscill.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

65.    Section 11.3 permits the Croscill LLC Agreement to be "amended or modified from time to time only by the Members."

**ANSWER:**  Paragraph 65 purports to characterize the contents of the LLC Agreement of

Croscill.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

## 2.    2015 Amendment To The Croscill LLC Agreement

66.    In September 2015, facing the imminent principal payment default of Zohar I and the similarly dire financial condition of Zohar II and Zohar III, Ms. Tilton anticipated the Patriarch Managers' imminent removal or resignation as Collateral Manager of the Zohar Funds.  With this in mind, on September 22, 2015, Ms. Tilton caused Zohar III, as sole Common Member and Series A Preferred Member of Croscill, to execute "Amendment No. 4 to Limited Liability Company

Agreement of Croscill Acquisition, LLC" ("Croscill Amendment Four").  Croscill Amendment Four sought to ensure Ms. Tilton would remain Manager of Croscill indefinitely by requiring her consent for her removal.  No consideration supported Croscill Amendment Four.

**ANSWER:**  Ms. Tilton admits that Zohar III executed an amendment to the LLC Agreement of Croscill on September 22, 2015.  Ms. Tilton denies the remaining allegations in Paragraph 66 and respectfully refers the Court to the September 22, 2015 Amendment for a complete and accurate statement of its terms and contents.

67.    The first recital of Croscill Amendment Four claims that the "original intent" of Zohar III was to give non-party Patriarch affiliates who are not Common Members or Series A Preferred Members of Croscill—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions." To manifest this supposed "original intent," Croscill Amendment Four purports to require "the consent of all [Octaluna] Class B Members" related to Zohar III for certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

**ANSWER:**  Paragraph 67 purports to characterize the contents of the LLC Agreement of Croscill.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

68.    In fact, no such original intent existed.  Rather, Croscill Amendment Four was a brazen attempt by Ms. Tilton to entrench herself as Manager of Croscill by conditioning her removal on her own consent.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 68.

69.    Through Croscill Amendment Four, Ms. Tilton caused Zohar III to purport to forfeit its right to remove the Manager.  Moreover, Zohar III received nothing in exchange for forfeiting this right.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 69.

### 3.    Croscill's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent

70.    Consistent with its rights under the Croscill LLC Agreement, on November 28, 2017, Zohar III, as Croscill's only Common Member and Series A Preferred Member, executed and delivered to Croscill a written consent removing Ms. Tilton as Croscill's Manager and electing AMZM as Croscill's new Manager (the "Croscill Consent").

**ANSWER:**  Paragraph 70 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies that Zohar III, "consistent with its rights under the Croscill LLC Agreement," could remove Ms. Tilton as Croscill's Manager.  Ms. Tilton lacks knowledge and information sufficient to admit or deny the remaining allegations in Paragraph 70, and denies those allegations on that basis.

71.    Under Sections 5.11 and 5.13 of the Croscill LLC Agreement, the Croscill Consent is a valid action of Croscill's Common Members and Series A Preferred Members.

**ANSWER:**  Paragraph 71 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 71.

72.    Nevertheless, Croscill and Ms. Tilton have refused to recognize the validity of the Croscill Consent.  Upon information and belief, Croscill and Ms. Tilton take the position that Croscill Amendment Four is valid and requires the consent of the Octaluna Class B Members related to Zohar III to remove and replace Croscill's Manager.

**ANSWER:**  Ms. Tilton admits that Amendment Four is valid and that the removal and replacement of Croscill's Manager requires the consent from the "Class B Members of the Holder of the Preference Shares of the Common Members" of Croscill.  Ms. Tilton lacks knowledge and information sufficient to admit or deny the remaining allegations in Paragraph 72, and denies the allegations on that basis.

### B.    *Denali Acquisition LLC*

### 1.    **Operative 2008 Denali Acquisition Operating Agreement**

73.    Zohar III owns 100 percent of the outstanding Membership Interests of Denali Acquisition.  As a result, Zohar III is the sole Member of Denali Acquisition.  Zohar III executed the Denali Acquisition Operating Agreement, dated as of June 6, 2008.

**ANSWER:**  Ms. Tilton admits that Zohar III is the record holder (but not the actual or beneficial owner) of equity interests in Denali Acquisition, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law

Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.  Ms. Tilton admits that Zohar III executed an Operating Agreement for Denali Acquisition that became effective on June 6, 2008.  Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 73.

74.    Section 1.1 of the Denali Acquisition Operating Agreement defines terms used therein. "Manager" has the meaning given to it in Section 5.1, which states that "the powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, managers ('Managers')" and "the Managers may make all decisions and take all actions for the Company not otherwise provided for in this Agreement." Section 5.3 states, "The initial Manager of the Company shall be Lynn Tilton.  The number of Managers of the Company shall be determined by time to time by action of the Member."

**ANSWER:**    Paragraph 74 purports to characterize the contents of the Operating Agreement of Denali Acquisition.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Operating Agreement's terms and contents.

75.    "Member" means "any Person executing this Agreement as of the date of this Agreement as a member or hereafter admitted to the Company as a member."

**ANSWER:**    Paragraph 75 purports to characterize the contents of the Operating Agreement of Denali Acquisition.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Operating Agreement's terms and contents.

76.    "Membership Interest" means "the interests of a Member in the Company, including, without limitation, rights to distributions (liquidating or otherwise) and allocations."

**ANSWER:** Paragraph 76 purports to characterize the contents of the Operating Agreement of Denali Acquisition. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Operating Agreement's terms and contents.

77. Zohar III is the only Person who executed the Denali Acquisition Operating Agreement as a Member and Exhibit A to the Denali Acquisition Operating Agreement lists Zohar III as the only Member.

**ANSWER:** Ms. Tilton admits that Zohar III executed the Operating Agreement of Denali Acquisition as a Member. Ms. Tilton respectfully refers the Court to the Operating Agreement of Denali Acquisition, and any amendments thereto, for a complete and accurate statement of that document's contents. Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 77.

78. Section 5.4 of the Denali Acquisition Operating Agreement states, "The Member may, at any time and with or without cause, terminate the term of office of all or any of the Managers. Such removal shall be effective immediately upon Member action even if successors are not elected simultaneously."

**ANSWER:** Paragraph 78 purports to characterize the contents of the Operating Agreement of Denali Acquisition. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Operating Agreement's terms and contents.

79. Section 11.3 of the Denali Acquisition Operating Agreement is an integration clause, which states, "This Agreement constitutes the entire governing agreement of the Company and supersedes all prior governing agreements of the Company, whether oral or written."

**ANSWER:** Paragraph 79 purports to characterize the contents of the Operating Agreement of Denali Acquisition. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Operating Agreement's terms and contents.

36

80.     Section 11.5 permits the Denali Acquisition Operating Agreement to be "amended or modified from time to time only by the Member."

**ANSWER:**   Paragraph 80 purports to characterize the contents of the Operating Agreement of Denali Acquisition.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Operating Agreement's terms and contents.

### 2.     2015 Amendment To The Denali Acquisition Operating Agreement

81.     On September 22, 2015, the same date as Croscill Amendment Four and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar III, as sole Member of Denali Acquisition, to execute "Amendment No. 2 to Limited Liability Company Agreement [sic] of Denali Acquisition, LLC" ("Denali Acquisition Amendment Two"). Denali Acquisition Amendment Two sought to ensure Ms. Tilton would remain Manager of Denali Acquisition indefinitely by requiring her consent for her removal.  No consideration supported Denali Acquisition Amendment Two.

**ANSWER:**   Ms. Tilton admits that Zohar III executed an amendment to the Operating Agreement of Denali Acquisition on September 22, 2015.  Ms. Tilton denies the remaining allegations in Paragraph 81 and respectfully refers the Court to the September 22, 2015 Amendment for a complete and accurate statement of its terms and contents.

82.     Denali Acquisition Amendment Two is an exact replica of Croscill Amendment Four.  The first recital claims that the same "original intent" of Zohar III:  that it wanted to give non-party Patriarch affiliates who are not Members of Denali Acquisition—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)— "control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions." Like Croscill Amendment Four, Denali Acquisition Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to Zohar III to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

**ANSWER:**   Paragraph 82 purports to characterize the contents of the Operating Agreement of Denali Acquisition.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Operating Agreement's terms and contents.

83.    In fact, no such original intent existed.  Rather, Denali Acquisition Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of Denali Acquisition by conditioning her removal on her own consent.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 83.

84.    Through Denali Acquisition Amendment Two, Ms. Tilton caused Zohar III to purport to forfeit its right to remove the Manager.  Moreover, Zohar III received nothing in exchange for forfeiting this right.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 84.

### 3.    Denali Acquisition's Members' November 28, 2017 Written Consent

85.    Consistent with its rights under the Denali Acquisition Operating Agreement, on November 28, 2017, Zohar III, as Denali Acquisition's only Member, executed and delivered to Danali [sic] Acquisition a written consent removing Ms. Tilton as Denali Acquisition's Manager and electing AMZM as Denali Acquisition's new Manager (the "Denali Acquisition Member Action").

**ANSWER:**  Paragraph 85 states a legal conclusion to which no response is required.  To

the extent a response is required, Ms. Tilton denies that Zohar III, "consistent with its rights under

the Denali Acquisition Operating Agreement," could remove Ms. Tilton as Denali Acquisition's

Manager.  Ms. Tilton admits that AMZM purports to have executed a written consent on behalf of

Zohar III removing Ms. Tilton as Denali Acquisition's Manager and electing AMZM as Denali

Acquisition's new Manager.

86.    Under Section 5.4 of the Denali Acquisition Operating Agreement, the Denali Acquisition Member Action is the only valid action required to remove and replace Denali Acquisition's manager.

**ANSWER:**  Paragraph 86 states a legal conclusion to which no response is required.  To

the extent a response is required, Ms. Tilton denies the allegations in Paragraph 86.

87.    Nevertheless, Denali Acquisition and Ms. Tilton have refused to recognize the validity of the Denali Acquisition Member Action.  Upon information and belief, Denali Acquisition and Ms. Tilton take the position that Denali Acquisition Amendment Two is valid and requires the consent of the Octaluna Class B Members related to Zohar III to remove and replace Denali Acquisition's Manager.

**ANSWER:**  Admitted.

C.     *Global Automotive Systems, LLC*

1.     **Operative 2013 GAS LLC Agreement**

88.     The Zohar Funds own 100 percent of GAS.  Zohar I owns 18.760 percent, Zohar II owns 49.083 percent, and Zohar III owns 32.157 percent of the Common Interests.  The Zohar Funds are the only Members of GAS.

**ANSWER:**  Ms. Tilton admits that the Zohar Funds are record holders (but not the actual or beneficial owners) of equity interests in GAS, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.  Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 88.

89.     The Zohar Funds executed the GAS LLC Agreement on March 9, 2013.

**ANSWER:**  Ms. Tilton admits that the Zohar Funds, among others, executed an LLC Agreement for GAS that became effective on May 31, 2005.  Ms. Tilton also admits that the Zohar Funds executed an Amended and Restated LLC Agreement for GAS that became effective on March 9, 2013.  Except as expressly admitted, Ms. Tilton denies the remaining allegations in Paragraph 89.

90.     Section 1.1 of the GAS LLC Agreement defines terms used therein. "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The Manager is Lynn Tilton."

**ANSWER:**  Ms. Tilton admits that she is the Manager of GAS.  Paragraph 90 purports to characterize the contents of the Amended and Restated LLC Agreement for GAS.  Ms. Tilton

respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated LLC Agreement's terms and contents.

91.    "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

**ANSWER:**   Paragraph 91 purports to characterize the contents of the Amended and Restated LLC Agreement for GAS.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated LLC Agreement's terms and contents.

92.    "All of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages equal one hundred percent (100%) of the aggregate Common Percentages of all Common Members at such time."

**ANSWER:**   Paragraph 92 purports to characterize the contents of the Amended and Restated LLC Agreement for GAS.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated LLC Agreement's terms and contents.

93.    "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage' on" Exhibit A, appended to the GAS LLC Agreement.

**ANSWER:**   Paragraph 93 purports to characterize the contents of the Amended and Restated LLC Agreement for GAS.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated LLC Agreement's terms and contents.

94.    Exhibit A to the GAS LLC Agreement listed Zohar I's Common Percentage as 18.760 percent, Zohar II's Common Percentage as 49.083 percent, and Zohar III's Common Percentage as 32.157 percent.

**ANSWER:**   Ms. Tilton respectfully refers the Court to Schedule A to the Amended and Restated LLC Agreement for GAS, and any amendments thereto, for a complete and accurate

statement of that document's contents.  Ms. Tilton admits that Schedule A to the Amended and

Restated LLC Agreement for GAS lists the Zohar Funds as record holders (but not the actual or

beneficial owners) of membership interests in GAS.  In her recent decision in *In re Lynn Tilton*,

Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a

three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds,

beyond their right to receive interest and principal payments on loans or other assets listed in the

Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."

The time for any appeal of that decision has expired and no appeal has been taken.  It is now a

final, binding precedent with collateral estoppel consequences here.

95.     Section 5.9 of the GAS LLC Agreement states, "The Common Members, by vote
of All of the Common Members, may, at any time and with or without cause, remove and replace
the Manager."

**ANSWER:**   Paragraph 95 purports to characterize the contents of the Amended and

Restated LLC Agreement for GAS.  Ms. Tilton respectfully refers the Court to that document, and

any amendments thereto, for a complete and accurate statement of the Amended and Restated LLC

Agreement's terms and contents.

96.     Section 5.12 states, "To be effective, any vote or other action permitted or required
by this Agreement to be taken by the Common Members, unless otherwise specified herein, must
be taken by the affirmative vote at a meeting (or, in lieu thereof, as permitted under Section 5.13,
by written consent) of All of the Common Members."

**ANSWER:**   Paragraph 96 purports to characterize the contents of the Amended and

Restated LLC Agreement for GAS.  Ms. Tilton respectfully refers the Court to that document, and

any amendments thereto, for a complete and accurate statement of the Amended and Restated LLC

Agreement's terms and contents.

97.     Section 5.13 states, "Any action permitted or required by the Act, the Certificate or
this Agreement to be taken by the Manager or the Members at a meeting may be taken without a
meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by
the Members having not less than the minimum voting power that would be necessary to authorize

or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent shall have the same force and effect as a vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

**ANSWER:**   Paragraph 97 purports to characterize the contents of the Amended and Restated LLC Agreement for GAS.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated LLC Agreement's terms and contents.

98.     Section 11.1 of the GAS LLC Agreement is an integration clause, which states:

> This Agreement, together with <u>Schedule A</u> hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.  There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

**ANSWER:**   Paragraph 98 purports to characterize the contents of the Amended and Restated LLC Agreement for GAS.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated LLC Agreement's terms and contents.

99.     Section 11.3 permits the GAS LLC Agreement to be "amended or modified from time to time only upon approval by the Common Members, by vote of All of the Common Members."

**ANSWER:**   Paragraph 99 purports to characterize the contents of the Amended and Restated LLC Agreement for GAS.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated LLC Agreement's terms and contents.

**2.      2015 Amendment To The GAS LLC Agreement**

100.    On September 22, 2015, the same date as other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as Common Members of GAS, to execute "Amendment No. 1 to Amended and Restated Limited Liability Company Agreement of Global Automotive Systems, LLC" ("GAS Amendment One").  GAS Amendment One sought to ensure Ms. Tilton would remain Manager of GAS indefinitely by requiring her consent for her removal.  No consideration supported GAS Amendment One.

**ANSWER:**  Ms. Tilton admits that the Zohar Funds executed an amendment to the

Amended and Restated LLC Agreement for GAS on September 22, 2015.  Ms. Tilton denies the

remaining allegations in Paragraph 100 and respectfully refers the Court to the Amended and

Restated LLC Agreement for GAS, along with any amendments thereto, for a complete and

accurate statement of the Amended and Restated LLC Agreement's terms and contents.

101.    GAS Amendment One is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Common Members of GAS—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions." Like the other 2015 amendments, GAS Amendment One attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

**ANSWER:**  Paragraph 101 purports to characterize the contents of an Amendment to the

Amended and Restated LLC Agreement for GAS.  Ms. Tilton respectfully refers the Court to that

document, and any further amendments, for a complete and accurate statement of the Amended

and Restated LLC Agreement's terms and contents.

102.    In fact, no such original intent existed.  Rather, GAS Amendment One was a brazen attempt by Ms. Tilton to entrench herself as Manager of GAS by conditioning her removal on her own consent.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 102.

103.    Through GAS Amendment One, Ms. Tilton caused the Zohar Funds to forfeit their right to remove the Manager.  Moreover, the Zohar Funds received nothing in exchange for forfeiting this right.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 103.

### 3.     GAS's Common Members' November 28, 2017 Written Consent

104.     Consistent with its rights under the GAS LLC Agreement, on November 28, 2017, the Zohar Funds, as GAS's only Common Members, executed and delivered to GAS a written consent removing Ms. Tilton as GAS's Manager and electing AMZM as GAS's new Manager (the "GAS Consent").

**ANSWER:**  Paragraph 104 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies that the Zohar Funds, "consistent with [their] rights under the GAS LLC Agreement," could remove Ms. Tilton as GAS's Manager.  Ms. Tilton lacks knowledge and information sufficient to admit or deny the remaining allegations in Paragraph 104, and denies those allegations on that basis.

105.     Under Sections 5.12 and 5.13 of the GAS LLC Agreement, the GAS Consent is a valid action of GAS's Common Members.

**ANSWER:**  Paragraph 105 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 105.

106.     Nevertheless, GAS and Ms. Tilton have refused to recognize the validity of the GAS Consent.  Upon information and belief, GAS and Ms. Tilton take the position that GAS Amendment One is valid and requires the consent of the Octaluna Class B Members related to the Zohar Funds to remove and replace GAS's Manager.

**ANSWER:**  Admitted.

### D.     *Gorham Paper and Tissue, LLC*

### 1.     Operative 2011 Gorham LLC Agreement

107.     Zohar III owns 100 percent of the outstanding Common Interests and Series A Preferred Interests of Gorham.  As a result, Zohar III is the sole Common Member and Series A Preferred Member of Gorham.  Zohar III executed the Gorham LLC Agreement, dated as of May 13, 2011.

**ANSWER:**  Ms. Tilton admits that Zohar III is the record holder (but not the actual or beneficial owner) of equity interests in Gorham, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21

(ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox

Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments

on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial

rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no

appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences

here.  Ms. Tilton admits that Zohar III executed an LLC Agreement for Gorham that became

effective on May 13, 2011.  Except as expressly admitted, Ms. Tilton denies the allegations in

Paragraph 107.

108.    Section 1.1 of the Gorham LLC Agreement defines terms used therein. "Manager"
means "the Person appointed by the Common Members to serve as a Manager pursuant to Article
V below.  The initial Manager is Lynn Tilton."

**ANSWER:**  Paragraph 108 purports to characterize the contents of the LLC Agreement of

Gorham.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

109.    "Common Members" means "those Members from time to time holding Common
Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

**ANSWER:**  Paragraph 109 purports to characterize the contents of the LLC Agreement of

Gorham.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

110.    "All of the Common Members" means "at any particular time, Common Members
whose aggregate Common Percentages equal one hundred percent (100%) of the aggregate
Common Percentages of all Common Members at such time."

**ANSWER:**  Paragraph 110 purports to characterize the contents of the LLC Agreement of

Gorham.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

111.    "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage' on" Exhibit A, appended to the Gorham LLC Agreement.

**ANSWER:**  Paragraph 111 purports to characterize the contents of the LLC Agreement of Gorham.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

112.    Exhibit A to the Gorham LLC Agreement listed Zohar III's Common Percentage as 100 percent.

**ANSWER:**  Ms. Tilton respectfully refers the Court to Exhibit A to the LLC Agreement of Gorham, and any amendments thereto, for a complete and accurate statement of that document's contents.  Ms. Tilton admits that Exhibit A to the LLC Agreement of Gorham lists Zohar III as the record holder (but not the actual or beneficial owner) of membership interests in Gorham.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

113.    "All of the Series A Preferred Members" means "at any particular time, Series A Preferred Members whose aggregate Series A Preferred Percentages equal one hundred percent (100%) of the aggregate Series A Preferred Percentages of all Series A Preferred Members at such time."

**ANSWER:**  Paragraph 113 purports to characterize the contents of the LLC Agreement of Gorham.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

46

114.    "Series A Preferred Percentage" means "with respect to each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage' on" Exhibit A, appended to the Gorham LLC Agreement.

**ANSWER:**  Paragraph 114 purports to characterize the contents of the LLC Agreement of Gorham.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

115.    Exhibit A to the Gorham LLC Agreement listed Zohar III's Series A Preferred Percentage as 100 percent.

**ANSWER:**  Ms. Tilton respectfully refers the Court to Exhibit A to the LLC Agreement of Gorham, and any amendments thereto, for a complete and accurate statement of that document's contents.  Ms. Tilton admits that Exhibit A to the LLC Agreement of Gorham lists Zohar III as the record holder (but not the actual or beneficial owner) of preferred membership interests in Gorham.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

116.    Section 5.9 of the Gorham LLC Agreement states, "The Common Members, by vote of All of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

**ANSWER:**  Paragraph 116 purports to characterize the contents of the LLC Agreement of Gorham.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

117.    Section 5.12 states, "To be effective, any vote or other action permitted or required by this Agreement to be taken by the Common Members [or by the Series A Preferred Members],

unless otherwise specified herein, must be taken by the affirmative vote at a meeting (or, in lieu thereof, as permitted under Section 5.13, by written consent) of All of the Common Members [or All of the Series A Preferred Members]."

**ANSWER:** Paragraph 117 purports to characterize the contents of the LLC Agreement of Gorham. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

118.   Section 5.14 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum voting power that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be. Such consent shall have the same force and effect as a vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

**ANSWER:** Paragraph 118 purports to characterize the contents of the LLC Agreement of Gorham. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

119.   Section 11.1 of the Gorham LLC Agreement is an integration clause, which states:

> This Agreement, together with Exhibit A hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof. There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

**ANSWER:** Paragraph 119 purports to characterize the contents of the LLC Agreement of Gorham. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

120.   Section 11.3 permits the Gorham LLC Agreement to be "amended or modified from time to time only upon approval by (a) the Common Members, by vote of All of the Common Members, and (b) the Series A Preferred Members, by vote of All of the Series A Preferred Members."

**ANSWER:** Paragraph 120 purports to characterize the contents of the LLC Agreement of Gorham.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

### 2.   2015 Amendment To The Gorham LLC Agreement

121.   On September 22, 2015, the same date as other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar III, as sole Common Member and Series A Preferred Member of Gorham, to execute "Amendment No. 1 to Limited Liability Company Agreement of Gorham Paper & Tissue, LLC" ("Gorham Amendment One").  Gorham Amendment One sought to ensure Ms. Tilton would remain Manager of Gorham indefinitely by requiring her consent for her removal.  No consideration supported Gorham Amendment One.

**ANSWER:**   Ms. Tilton admits that Zohar III executed an amendment to the LLC Agreement of Gorham on September 22, 2015.  Ms. Tilton denies the remaining allegations in Paragraph 121 and respectfully refers the Court to the September 22, 2015 Amendment for a complete and accurate statement of its terms and contents.

122.   Gorham Amendment One is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of Zohar III was to give non-party Patriarch affiliates who are not Common Members of Gorham—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions." Like the other 2015 amendments, Gorham Amendment One attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to Zohar III to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

**ANSWER:**   Paragraph 122 purports to characterize the contents of the LLC Agreement of Gorham.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

123.   In fact, no such original intent existed.  Rather, Gorham Amendment One was a brazen attempt by Ms. Tilton to entrench herself as Manager of Gorham by conditioning her removal on her own consent.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 123.

124.    Through Gorham Amendment One, Ms. Tilton caused Zohar III to forfeit its right to remove the Manager.  Moreover, Zohar III received nothing in exchange for forfeiting this right.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 124.

### 3.    Gorham's Common Members' November 28, 2017 Written Consent

125.    Consistent with its rights under the Gorham LLC Agreement, on November 28, 2017, Zohar III, as Gorham's only Common Member, executed and delivered to Gorham a written consent removing Ms. Tilton as Gorham's Manager and electing AMZM as Gorham's new Manager (the "Gorham Consent").

**ANSWER:**  Paragraph 125 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies that Zohar III, "consistent with its rights under the Gorham LLC Agreement," could remove Ms. Tilton as Gorham's Manager.  Ms. Tilton lacks knowledge and information sufficient to admit or deny the remaining allegations in Paragraph 125, and denies those allegations on that basis.

126.    Under Sections 5.12 and 5.14 of the Gorham LLC Agreement, the Gorham Consent is a valid action of Gorham's Common Members.

**ANSWER:**  Paragraph 126 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 126.

127.    Nevertheless, Gorham and Ms. Tilton have refused to recognize the validity of the Gorham Consent.  Upon information and belief, Gorham and Ms. Tilton take the position that Gorham Amendment One is valid and requires the consent of the Octaluna Class B Members related to Zohar III to remove and replace Gorham's Manager.

**ANSWER:**  Admitted.

### E.    *Jewel of Jane LLC*

### 1.    Operative 2009 Jewel Of Jane LLC Agreement

128.    Zohar II owns 100 percent of the outstanding Common Interests and Series A Preferred Interests of Jewel of Jane.  As a result, Zohar II is the sole Common Member and Series A Preferred Member of Jewel of Jane.  Zohar II executed the Jewel of Jane LLC Agreement, dated as of December 24, 2009.

**ANSWER:**  Ms. Tilton admits that Zohar II is the record holder (but not the actual or beneficial owner) of equity interests in Jewel of Jane, which are at most equity upside interests.  In

her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at

*21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox

Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments

on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial

rights in the Portfolio Companies." The time for any appeal of that decision has expired and no

appeal has been taken. It is now a final, binding precedent with collateral estoppel consequences

here. Ms. Tilton admits that Zohar II executed an LLC Agreement for Jewel of Jane that became

effective on December 24, 2009. Except as expressly admitted, Ms. Tilton denies the allegations

in Paragraph 128.

129.    Section 1.1 of the Jewel of Jane LLC Agreement defines terms used therein.
"Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant
to Article V below. The initial Manager is Lynn Tilton."

**ANSWER:** Paragraph 129 purports to characterize the contents of the LLC Agreement of

Jewel of Jane. Ms. Tilton respectfully refers the Court to that document, and any amendments

thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

130.    "Common Members" means "those Members from time to time holding Common
Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

**ANSWER:** Paragraph 130 purports to characterize the contents of the LLC Agreement of

Jewel of Jane. Ms. Tilton respectfully refers the Court to that document, and any amendments

thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

131.    "Majority-in-Interest of the Common Members" means "at any particular time,
Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the
aggregate Common Percentages of all Common Members at such time."

**ANSWER:** Paragraph 131 purports to characterize the contents of the LLC Agreement of

Jewel of Jane. Ms. Tilton respectfully refers the Court to that document, and any amendments

thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

132.   "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Jewel of Jane LLC Agreement.

**ANSWER:**  Paragraph 132 purports to characterize the contents of the LLC Agreement of Jewel of Jane.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

133.   Exhibit A to the Jewel of Jane LLC Agreement lists Zohar II's Common Percentage as 100 percent.

**ANSWER:**  Ms. Tilton respectfully refers the Court to Exhibit A to the LLC Agreement of Jewel of Jane, and any amendments thereto, for a complete and accurate statement of that document's contents.  Ms. Tilton admits that Exhibit A to the LLC Agreement of Jewel of Jane lists Zohar II as the record holder (but not the actual or beneficial owner) of membership interests in Jewel of Jane.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

134.   "Series A Preferred Members" means "those Members from time to time holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

**ANSWER:**  Paragraph 134 purports to characterize the contents of the LLC Agreement of Jewel of Jane.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

135.    "Series A Preferred Percentage" means "for each Series A Preferred Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the Jewel of Jane LLC Agreement.

**ANSWER:** Paragraph 135 purports to characterize the contents of the LLC Agreement of Jewel of Jane.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

136.    Exhibit A to the Jewel of Jane LLC Agreement lists Zohar II's Series A Preferred Percentage as 100 percent.

**ANSWER:** Ms. Tilton respectfully refers the Court to Exhibit A to the LLC Agreement of Jewel of Jane, and any amendments thereto, for a complete and accurate statement of that document's contents.  Ms. Tilton admits that Exhibit A to the LLC Agreement of Jewel of Jane lists Zohar II as the record holder (but not the actual or beneficial owner) of preferred membership interests in Jewel of Jane.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

137.    Section 5.8 of the Jewel of Jane LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

**ANSWER:** Paragraph 137 purports to characterize the contents of the LLC Agreement of Jewel of Jane.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

138.    Section 5.11 states that "any action requiring the affirmative vote under this Agreement of the Common Members[ or] the Series A Preferred Members . . . may be taken by a

53

vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common Members[ or] a Majority-in-Interest of the Series A Preferred Members . . . , as applicable."

**ANSWER:** Paragraph 138 purports to characterize the contents of the LLC Agreement of Jewel of Jane. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

139.    Section 5.13 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be. Such consent will have the same force and effect as a vote at a meeting . . . and the execution of such consent will constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

**ANSWER:** Paragraph 139 purports to characterize the contents of the LLC Agreement of Jewel of Jane. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

140.    Section 11.1 of the Jewel of Jane LLC Agreement is an integration clause, which states:

> This Agreement, together with Exhibit A hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof. There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

**ANSWER:** Paragraph 140 purports to characterize the contents of the LLC Agreement of Jewel of Jane. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

141.    Section 11.3 permits the Jewel of Jane LLC Agreement to be "amended or modified from time to time only with the consent of a Majority-in-Interest of the Common Members" so long as the amendments do not "materially and adversely alter[] the powers, preferences or special rights" provided to the Series A Preferred Members or any other Membership Interests.

**ANSWER:** Paragraph 141 purports to characterize the contents of the LLC Agreement of Jewel of Jane. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

### 2.   2015 Amendment To The Jewel Of Jane LLC Agreement

142.   On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar II, as Common Member and Series Preferred A Member of Jewel of Jane, to execute "Amendment No. 2 to Limited Liability Company Agreement of Jewel of Jane, LLC" ("Jewel of Jane Amendment Two").[8] Jewel of Jane Amendment Two sought to ensure Ms. Tilton would remain Manager of Jewel of Jane indefinitely by requiring her consent for her removal. No consideration supported Jewel of Jane Amendment Two.

**ANSWER:** Ms. Tilton admits that Zohar II executed an amendment to the LLC Agreement of Jewel of Jane on September 22, 2015. Ms. Tilton denies the remaining allegations in Paragraph 142 and respectfully refers the Court to the September 22, 2015 Amendment for a complete and accurate statement of its terms and contents.

143.   Jewel of Jane Amendment Two is an exact replica of the other 2015 amendments. The first recital claims that the same "original intent" of Zohar II: that it wanted to give a non-party Patriarch affiliate—the Octaluna Class B Member related to Zohar II (*i.e.*, Patriarch Partners XIV, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."

**ANSWER:** Paragraph 143 purports to characterize the contents of the LLC Agreement of Jewel of Jane. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

---

[8]   An error exists in the numbering of amendments to the Jewel of Jane LLC Agreement. An amendment titled "Amendment No. 2 to Limited Liability Company Agreement of Jewel of Jane LLC," dated May 31, 2011, extends the Redemption Date of the Series A Preferred Interests from December 24, 2014, to December 31, 2016. A different amendment titled "Amendment No. 2 to Limited Liability Company Agreement of Jewel of Jane LLC," dated September 22, 2015, purports to transfer Zohar II's membership interests to the Octaluna Class B Members. It is the amendment executed on September 22, 2015, that is the subject of this action.

144.    Like the other 2015 amendments, Jewel of Jane Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to Zohar II to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

**ANSWER:**  Paragraph 144 purports to characterize the contents of the LLC Agreement of

Jewel of Jane.  Ms. Tilton respectfully refers the Court to that document, and any amendments

thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

145.    In fact, no such original intent existed.  Rather, Jewel of Jane Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of Jewel of Jane by conditioning her removal on her own consent.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 145.

146.    Through Jewel of Jane Amendment Two, Ms. Tilton caused Zohar II to purport to forfeit its right to remove the Manager.  Moreover, Zohar II received nothing in exchange for forfeiting this right.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 146.

### 3.    Jewel of Jane's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent

147.    Consistent with its rights under the Jewel of Jane LLC Agreement, on November 28, 2017, Zohar II, as Jewel of Jane's only Common Member and Series A Preferred Member, executed and delivered to Jewel of Jane a written consent removing Ms. Tilton as Jewel of Jane's Manager and electing AMZM as Jewel of Jane's new Manager (the "Jewel of Jane Consent").

**ANSWER:**  Paragraph 147 states a legal conclusion to which no response is required.  To

the extent a response is required, Ms. Tilton denies that Zohar II, "consistent with its rights under

the Jewel of Jane LLC Agreement," could remove Ms. Tilton as Jewel of Jane's Manager.  Ms.

Tilton lacks knowledge and information sufficient to admit or deny the remaining allegations in

Paragraph 147, and denies those allegations on that basis.

148.    Under Sections 5.11 and 5.13 of the Jewel of Jane LLC Agreement, the Jewel of Jane Consent is a valid action of Jewel of Jane's Common Members and Series A Preferred Members.

**ANSWER:** Paragraph 148 states a legal conclusion to which no response is required. To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 148.

149.     Nevertheless, Jewel of Jane and Ms. Tilton have refused to recognize the validity of the Jewel of Jane Consent. Upon information and belief, Jewel of Jane and Ms. Tilton take the position that Jewel of Jane Amendment Two is valid and requires the consent of the Octaluna Class B Members related to Zohar II to remove and replace Jewel of Jane's Manager.

**ANSWER:** Admitted.

### F.     LVD Acquisition, LLC (doing business as Oasis International)

### 1.     Operative 2009 LVD/Oasis LLC Agreement

150.     The Zohar Funds own 100 percent of the outstanding Common Interests of LVD/Oasis. Zohar I owns 14.69 percent, Zohar II owns 62.36 percent, and Zohar III owns 22.95 percent of the Common Interests of LVD/Oasis. The Zohar Funds are the only Common Members of LVD/Oasis. The Zohar Funds executed the LVD/Oasis LLC Agreement, dated as of March 31, 2009.

**ANSWER:** Ms. Tilton admits that the Zohar Funds are record holders (but not the actual or beneficial owners) of equity interests in LVD/Oasis, which are at most equity upside interests. In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies." The time for any appeal of that decision has expired and no appeal has been taken. It is now a final, binding precedent with collateral estoppel consequences here. Ms. Tilton also admits that the Zohar Funds executed an LLC Agreement of LVD/Oasis that became effective on March 31, 2009. Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 150.

151.     Section 1.1 of the LVD/Oasis LLC Agreement defines terms used therein. "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below. The initial Manager is Lynn Tilton."

**ANSWER:**  Paragraph 151 purports to characterize the contents of the LLC Agreement of LVD/Oasis.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

152.    "Common Members" means "those Members holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

**ANSWER:**  Paragraph 152 purports to characterize the contents of the LLC Agreement of LVD/Oasis.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

153.    "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

**ANSWER:**  Paragraph 153 purports to characterize the contents of the LLC Agreement of LVD/Oasis.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

154.    "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the LVD/Oasis LLC Agreement.

**ANSWER:**  Paragraph 154 purports to characterize the contents of the LLC Agreement of LVD/Oasis.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

155.    Exhibit A to the LVD/Oasis LLC Agreement lists Zohar I's Common Percentage as 14.69 percent, Zohar II's Common Percentage as 62.36 percent, and Zohar III's Common Percentage as 22.95 percent.

**ANSWER:**  Ms. Tilton respectfully refers the Court to Exhibit A to the LLC Agreement of LVD/Oasis, and any amendments thereto, for a complete and accurate statement of that document's contents.  Ms. Tilton admits that Exhibit A to the LLC Agreement of LVD/Oasis lists the Zohar Funds as record holders (but not the actual or beneficial owners) of membership interests

in LVD/Oasis.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."   The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

156.   Section 5.8 of the LVD/Oasis LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

**ANSWER:**  Paragraph 156 purports to characterize the contents of the LLC Agreement of LVD/Oasis.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

157.   Section 5.11 states, "Any action requiring the affirmative vote of the Common Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common Members that would have been entitled to vote at such meeting as permitted under Section 5.12."

**ANSWER:**  Paragraph 157 purports to characterize the contents of the LLC Agreement of LVD/Oasis.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

158.   Section 5.12 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent will have the same force and effect as a vote at a meeting . . . and the execution of such consent will constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

**ANSWER:** Paragraph 158 purports to characterize the contents of the LLC Agreement of LVD/Oasis. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

159. Section 11.1 of the LVD/Oasis LLC Agreement is an integration clause, which states:

> This Agreement, together with its Exhibits, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof. There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

**ANSWER:** Paragraph 159 purports to characterize the contents of the LLC Agreement of LVD/Oasis. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

160. Section 11.3 permits the LVD/Oasis LLC Agreement to be "amended or modified from time to time only by the Members."

**ANSWER:** Paragraph 160 purports to characterize the contents of the LLC Agreement of LVD/Oasis. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

## 2. 2015 Amendment To The LVD/Oasis LLC Agreement

161. On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as the only Common Members of LVD/Oasis, to execute "Amendment No. 2 to LLC Agreement of LVD Acquisition, LLC" ("LVD/Oasis Amendment Two"). LVD/Oasis Amendment Two sought to ensure Ms. Tilton would remain Manager of LVD/Oasis indefinitely by requiring her consent for her removal. No consideration supported LVD/Oasis Amendment Two.

**ANSWER:** Ms. Tilton admits that the Zohar Funds executed an amendment to the Limited Liability Company Agreement of LVD/Oasis on September 22, 2015. Ms. Tilton denies the

remaining allegations in Paragraph 161 and respectfully refers the Court to the September 22, 2015

Amendment for a complete and accurate statement of its terms and contents.

162.    LVD/Oasis Amendment Two is an exact replica of the other 2015 amendments. The first recital claims that the same "original intent" of the Zohar Funds: that they wanted to give non-party Patriarch affiliates who are not Common Members of LVD/Oasis—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."

**ANSWER:**  Paragraph 162 purports to characterize the contents of the LLC Agreement of

LVD/Oasis.  Ms. Tilton respectfully refers the Court to that document, and any amendments

thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

163.    Like the other 2015 amendments, LVD/Oasis Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

**ANSWER:**  Paragraph 163 purports to characterize the contents of the LLC Agreement of

LVD/Oasis.  Ms. Tilton respectfully refers the Court to that document, and any amendments

thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.  Ms.

Tilton admits that she is the initial Manager of LVD/Oasis.  Except as expressly admitted, Ms.

Tilton denies the allegations in Paragraph 163.

164.    In fact, no such original intent existed.  Rather, LVD/Oasis Amendment Two was a brazen attempt by Ms. Tilton to entrench herself as Manager of LVD/Oasis by conditioning her removal on her own consent.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 164.

165.    Through LVD/Oasis Amendment Two, Ms. Tilton caused the Zohar Funds to purport to forfeit their right to remove the Manager.  Moreover, the Zohar Funds received nothing in exchange for forfeiting this right.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 165.

    **3.**      **LVD/Oasis's Common Members' November 28, 2017 Written Consent**

166.    Consistent with its rights under the LVD/Oasis LLC Agreement, on November 28, 2017, the Zohar Funds, as LVD/Oasis's only Common Members, executed and delivered to LVD/Oasis a written consent removing Ms. Tilton as LVD/Oasis's Manager and electing AMZM as LVD/Oasis's new Manager (the "LVD/Oasis Consent").

**ANSWER:**  Paragraph 166 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies that the Zohar Funds, "consistent with [their] rights under the LVD/Oasis LLC Agreement," could remove Ms. Tilton as LVD/Oasis's Manager.  Ms. Tilton lacks knowledge and information sufficient to admit or deny the remaining allegations in Paragraph 166, and denies those allegations on that basis.

167.    Under Sections 5.11 and 5.12 of the LVD/Oasis LLC Agreement, the LVD/Oasis Consent is a valid action of LVD/Oasis's Common Members.

**ANSWER:**  Paragraph 167 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 167.

168.    Nevertheless, LVD/Oasis and Ms. Tilton have refused to recognize the validity of the LVD/Oasis Consent.  Upon information and belief, LVD/Oasis and Ms. Tilton take the position that LVD/Oasis Amendment Two is valid and requires the consent of the Octaluna Class B Members related to the Zohar Funds to remove and replace LVD/Oasis's Manager.

**ANSWER:**  Admitted.

### G.    *RM Acquisition, LLC*

### 1.    **Operative 2008 RM Operating Agreement**

169.    The Zohar Funds own 100 percent of the outstanding Common Interests and Series A Preferred Interests of RM.  Zohar I owns 17.09050 percent, Zohar II owns 56.96833 percent, and Zohar III owns 25.94118 percent of the Common Interests and Series A Preferred Interests of RM.  The Zohar Funds are the only Common Members and Series A Preferred Members of RM.  The Zohar Funds executed the RM Operating Agreement, dated as of April 29, 2008.

**ANSWER:**  Ms. Tilton admits that the Zohar Funds are record holders (but not the actual or beneficial owners) of equity interests in RM, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox

Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.  Ms. Tilton also admits that the Zohar Funds executed an Operating Agreement for RM that became effective on December 2, 2007.  In addition, Ms. Tilton admits that the Zohar Funds executed an Amended and Restated Operating Agreement for RM that became effective on April 29, 2008.  Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 169.

170.    Section 1.1 of the RM Operating Agreement defines terms used therein. "Manager" means "the Person appointed by the Members to serve as a Manager pursuant to Article V below. The initial Manager is Lynn Tilton."

**ANSWER:**  Paragraph 170 purports to characterize the contents of the Amended and Restated Operating Agreement of RM.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated Operating Agreement's terms and contents.

171.    "Common Members" means "those Members holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

**ANSWER:**  Paragraph 171 purports to characterize the contents of the Amended and Restated Operating Agreement of RM.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated Operating Agreement's terms and contents.

172.    "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

**ANSWER:**  Paragraph 172 purports to characterize the contents of the Amended and Restated Operating Agreement of RM.  Ms. Tilton respectfully refers the Court to that document,

and any amendments thereto, for a complete and accurate statement of the Amended and Restated

Operating Agreement's terms and contents.

173.   "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the RM Operating Agreement.

**ANSWER:**   Paragraph 173 purports to characterize the contents of the Amended and

Restated Operating Agreement of RM.   Ms. Tilton respectfully refers the Court to that document,

and any amendments thereto, for a complete and accurate statement of the Amended and Restated

Operating Agreement's terms and contents.

174.   Exhibit A to the RM Operating Agreement lists Zohar I's Common Percentage as 17.09050 percent, Zohar II's Common Percentage as 56.96833 percent, and Zohar III's Common Percentage as 25.94118 percent.

**ANSWER:**   Ms. Tilton respectfully refers the Court to Exhibit A to the Amended and

Restated Operating Agreement of RM, and any amendments thereto, for a complete and accurate

statement of that document's contents.   Ms. Tilton admits that Exhibit A to the Amended and

Restated Operating Agreement of RM lists the Zohar Funds as record holders (but not the actual

or beneficial owners) of membership interests in RM.   In her recent decision in *In re Lynn Tilton*,

Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a

three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds,

beyond their right to receive interest and principal payments on loans or other assets listed in the

Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."

The time for any appeal of that decision has expired and no appeal has been taken.   It is now a

final, binding precedent with collateral estoppel consequences here.

175.   "Series A Preferred Members" means "those Members holding Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and not in any other capacity."

**ANSWER:** Paragraph 175 purports to characterize the contents of the Amended and Restated Operating Agreement of RM.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated Operating Agreement's terms and contents.

176.   "Series A Preferred Percentage" means "for each Series A Preferred Member, the amount listed as such Series A Preferred Member's 'Series A Preferred Percentage'" on the Exhibit A, appended to the RM Operating Agreement.

**ANSWER:** Paragraph 176 purports to characterize the contents of the Amended and Restated Operating Agreement of RM.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated Operating Agreement's terms and contents.

177.   Exhibit A to the RM Operating Agreement lists Zohar I's Series A Preferred Percentage as 17.09050 percent, Zohar II's Series A Preferred Percentage as 56.96833 percent, and Zohar III's Series A Preferred Percentage as 25.94118 percent.

**ANSWER:** Ms. Tilton respectfully refers the Court to Exhibit A to the Amended and Restated Operating Agreement of RM, and any amendments thereto, for a complete and accurate statement of that document's contents.  Ms. Tilton admits that Exhibit A to the Amended and Restated Operating Agreement of RM lists the Zohar Funds as record holders (but not the actual or beneficial owners) of preferred membership interests in RM.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken. It is now a final, binding precedent with collateral estoppel consequences here.

178.    Section 5.8 of the RM Operating Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, terminate the term of office of the Manager."

**ANSWER:**   Paragraph 178 purports to characterize the contents of the Amended and Restated Operating Agreement of RM.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated Operating Agreement's terms and contents.

179.    Section 5.11 states, "Any action requiring the affirmative vote of the Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common Members that would have been entitled to vote at such meeting."

**ANSWER:**   Paragraph 179 purports to characterize the contents of the Amended and Restated Operating Agreement of RM.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated Operating Agreement's terms and contents.

180.    Section 5.13 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken at a meeting of the Manager and/or the Members may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or all the Members, as the case may be.  Such consent shall have the same force and effect as a unanimous vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

**ANSWER:**   Paragraph 180 purports to characterize the contents of the Amended and Restated Operating Agreement of RM.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated Operating Agreement's terms and contents.

181.    Section 11.1 of the RM Operating Agreement is an integration clause, which states, "This Agreement constitutes the entire governing regulations of the Company and supersedes all prior governing rules and regulations of the Company, whether oral or written."

**ANSWER:**   Paragraph 181 purports to characterize the contents of the Amended and Restated Operating Agreement of RM.  Ms. Tilton respectfully refers the Court to that document,

and any amendments thereto, for a complete and accurate statement of the Amended and Restated Operating Agreement's terms and contents.

182.    Section 11.3 permits the RM Operating Agreement to be "amended or modified from time to time only by the Members."

**ANSWER:**  Paragraph 182 purports to characterize the contents of the Amended and Restated Operating Agreement of RM.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated Operating Agreement's terms and contents.

## 2.    2015 Amendment To The RM Operating Agreement

183.    On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as the only Common Members and Series A Preferred Members of RM, to execute "Amendment No. 4 to First Amended and Restated Limited Liability Company Agreement [sic] of RM Acquisition, LLC" ("RM Amendment Four").  RM Amendment Four sought to ensure Ms. Tilton would remain Manager of RM indefinitely by requiring her consent for her removal.  No consideration supported RM Amendment Four.

**ANSWER:**  Ms. Tilton admits that the Zohar Funds executed an amendment to the Amended and Restated Operating Agreement of RM on September 22, 2015.  Ms. Tilton denies the remaining allegations in Paragraph 183 and respectfully refers the Court to the September 22, 2015 Amendment for a complete and accurate statement of its terms and contents.

184.    RM Amendment Four is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Common Members or Series A Preferred Members of RM— the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)— "control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions." Like the other 2015 amendments, RM Amendment Four attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

**ANSWER:**  Paragraph 184 purports to characterize the contents of the Amended and Restated Operating Agreement of RM.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the Amended and Restated Operating Agreement's terms and contents.  Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 184.

185.    In fact, no such original intent existed.  Rather, RM Amendment Four was a brazen attempt by Ms. Tilton to entrench herself as Manager of RM by conditioning her removal on her own consent.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 185.

186.    Through RM Amendment Four, Ms. Tilton caused the Zohar Funds to purport to forfeit their right to remove the Manager.  Moreover, the Zohar Funds received nothing in exchange for forfeiting this right.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 186.

### 3.    RM's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent

187.    Consistent with its rights under the RM Operating Agreement, on November 28, 2017, the Zohar Funds, as RM's only Common Members and Series A Preferred Members, executed and delivered to RM a written consent removing Ms. Tilton as RM's Manager and electing AMZM as RM's new Manager (the "RM Consent").

**ANSWER:**  Paragraph 187 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies that the Zohar Funds, "consistent with [their] rights under the RM Operating Agreement," could remove Ms. Tilton as RM's Manager.  Ms. Tilton admits that AMZM purports to have executed a written consent on behalf of the Zohar Funds removing Ms. Tilton as RM's Manager and electing AMZM as RM's new Manager.

188.    Under Sections 5.11 and 5.13 of the RM Operating Agreement, the RM Consent is a valid action of RM's Common Members and Series A Preferred Members.

**ANSWER:**  Paragraph 188 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 188.

189.     Nevertheless, RM and Ms. Tilton have refused to recognize the validity of the RM Consent.  Upon information and belief, RM and Ms. Tilton take the position that RM Amendment Four is valid and requires the consent of the Octaluna Class B Members related to the Zohar Funds to remove and replace RM's Manager.

**ANSWER:**  Admitted.

### H.      *Snelling Holdings, LLC*

### 1.      **Operative 2007 Snelling Holdings Operating Agreement**

190.     The Zohar Funds own 100 percent of the outstanding Membership Interests of Snelling Holdings.  Zohar I owns 22.3 percent, Zohar II owns 63.8 percent, and Zohar III owns 13.9 percent of the Membership Interests of Snelling Holdings.  The Zohar Funds are the only Members of Snelling Holdings.  The Zohar Funds executed the Snelling Holdings Operating Agreement, dated as of October 1, 2007.

**ANSWER:**  Ms. Tilton admits that Zohar I, Zohar II, and Zohar III are listed as record

holders (but not the actual or beneficial owners) of equity interests in Snelling Holdings, which

are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act

Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial,

SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right

to receive interest and principal payments on loans or other assets listed in the Trustee Reports,

had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for

any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding

precedent with collateral estoppel consequences here.

Ms. Tilton further admits that Zohar I, Zohar II, and Zohar III, among others, executed an

LLC Agreement for Snelling Holdings that is dated October 1, 2007.  To the extent Paragraph 190

purports to characterize the contents of the LLC Agreement for Snelling Holdings, Ms. Tilton

respectfully refers the Court to that document, and any amendments thereto, for a complete and

accurate statement of the LLC Agreement's terms and contents.

Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 190.

191.    Section 1.1 of the Snelling Holdings Operating Agreement defines terms used therein. "Manager" means "the Person or Persons appointed by the Members to serve as a Manager pursuant to Article V below.  The initial Managers shall be Lynn Tilton and Peter Harris."[9]

**ANSWER:**    Ms. Tilton admits that she is the sole Manager of Snelling Holdings. Paragraph 191 and footnote 9 purport to characterize the contents of the LLC Agreement for Snelling Holdings and a Unanimous Written Consent dated June 21, 2012.  Ms. Tilton respectfully refers the Court to those documents, and any amendments thereto, for a complete and accurate statement of their terms and contents.  To the extent not expressly admitted, Ms. Tilton denies the remaining allegations in Paragraph 191 and footnote 9.

192.    "Member" means "any Person executing this Agreement as a member as of the date of this Agreement or hereafter admitted to the Company as a member as provided in this Agreement. . . .  The initial Members shall be Zohar I, Zohar II, and Zohar III."

**ANSWER:**    Paragraph 192 purports to characterize the contents of the LLC Agreement for Snelling Holdings.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

193.    "Majority-in-Interest of the Members" means "at any particular time, Members whose aggregate Percentage Interests exceed fifty percent (50%) of the aggregate Percentage Interests of all Common Members at such time."

**ANSWER:**    Paragraph 193 purports to characterize the contents of the LLC Agreement for Snelling Holdings.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

---

[9]  Upon information and belief, Ms. Tilton caused herself to be appointed sole Manager by unanimous written consent of the Zohar Funds on June 21, 2012.

194.    "Percentage Interests" means "with respect to each Member, the Percentage Interest listed for such Member set forth adjacent to its name in Exhibit A," appended to the Snelling Holdings Operating Agreement.

**ANSWER:**  Paragraph 194 purports to characterize the contents of the LLC Agreement for Snelling Holdings.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

195.    Exhibit A to the Snelling Holdings Operating Agreement lists Zohar I's Percentage Interest as 22.3 percent, Zohar II's Percentage Interest as 63.8 percent, and Zohar III's Percentage Interest as 13.9 percent.

**ANSWER:**  Paragraph 195 purports to characterize the contents of Exhibit A to the LLC Agreement for Snelling Holdings.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

Ms. Tilton admits that Exhibit A to the LLC Agreement for Snelling Holdings lists Zohar I, Zohar II, and Zohar III as record holders (but not the actual or beneficial owners) of membership interests in Snelling Holdings.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

196.    Section 5.8 of the Snelling Holdings Operating Agreement states, "The Members, upon a vote of a Majority-in-Interest of the Members, may, at any time and with or without cause, terminate the term of office of all or any of the Manager."

**ANSWER:**  Paragraph 196 purports to characterize the contents of the LLC Agreement for Snelling Holdings.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

197.    Section 5.11 states, "Any action requiring the affirmative vote of the Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Members that would have been entitled to vote at such meeting."

**ANSWER:**  Paragraph 197 purports to characterize the contents of the LLC Agreement for Snelling Holdings.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

198.    Section 5.12 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken at a meeting of the Manager and/or the Members may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by all the Managers or all the Members, as the case may be.  Such consent shall have the same force and effect as a unanimous vote at a meeting . . . and the execution of such consent shall constitute attendance or presence in person at a meeting of the Managers or Members, as the case may be."

**ANSWER:**  Paragraph 198 purports to characterize the contents of the LLC Agreement for Snelling Holdings.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

199.    Section 11.1 of the Snelling Holdings Operating Agreement is an integration clause, which states, "This Agreement constitutes the entire governing regulations of the Company and supersedes all prior governing rules and regulations of the Company, whether oral or written."

**ANSWER:**  Paragraph 199 purports to characterize the contents of the LLC Agreement for Snelling Holdings.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

200.    Section 11.3 permits the Snelling Holdings Operating Agreement to be "amended or modified from time to time only by the Members."

**ANSWER:**  Paragraph 200 purports to characterize the contents of the LLC Agreement for Snelling Holdings.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

### 2.    2015 Amendment To The Snelling Holdings Operating Agreement

201.    On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused the Zohar Funds, as the only Members of Snelling Holdings, to execute "Amendment No. 2 to Limited Liability Company Agreement [sic] of Snelling Holdings, LLC" ("Snelling Holdings Amendment Two").  Snelling Holdings Amendment Two sought to ensure Ms. Tilton would remain Manager of Snelling Holdings indefinitely by requiring her consent for her removal.  No consideration supported Snelling Holdings Amendment Two.

**ANSWER:**  Ms. Tilton admits that the Zohar Funds executed Amendment No. 2 to the LLC Agreement for Snelling Holdings on September 22, 2015.  Ms. Tilton denies the remaining allegations in Paragraph 201 and respectfully refers the Court to the LLC Agreement for Snelling Holdings, along with any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

202.    Snelling Holdings Amendment Two is an exact replica of the other 2015 amendments.  The first recital claims that the same "original intent" of the Zohar Funds:  that they wanted to give non-party Patriarch affiliates who are not Members of Snelling Holdings—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)— "control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions." Like the other 2015 amendments, Snelling Holdings Amendment Two attempts to implement this supposed "original intent" by purporting to require "the consent of all [Octaluna] Class B Members" related to all of the Zohar Funds to carry out certain actions, including "remov[ing]  or  replac[ing]  an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

**ANSWER:**  Paragraph 202 purports to characterize the contents of Amendment No. 2 to the LLC Agreement for Snelling Holdings.  Ms. Tilton respectfully refers the Court to that

document, and any further amendments, for a complete and accurate statement of the LLC

Agreement's terms and contents.  Except as expressly admitted, Ms. Tilton denies the allegations

in Paragraph 202.

203.    In fact, no such original intent existed.  Rather, Snelling Holdings Amendment Two
was a brazen attempt by Ms. Tilton to entrench herself as Manager of Snelling Holdings by
conditioning her removal on her own consent.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 203.

204.    Through Snelling Holdings Amendment Two, Ms. Tilton caused the Zohar Funds
to purport to forfeit their right to remove the Manager.  Moreover, the Zohar Funds received
nothing in exchange for forfeiting this right.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 204.

### 3.    Snelling Holdings' Members' November 28, 2017 Written Consent

205.    Consistent with its rights under the Snelling Holdings Operating Agreement, on
November 28, 2017, the Zohar Funds, as Snelling Holdings' only Members, executed and
delivered to Snelling Holdings a written consent removing Ms. Tilton as Snelling Holdings'
Manager and electing AMZM as Snelling Holdings' new Manager (the "Snelling Holdings
Consent").

**ANSWER:**  Paragraph 205 states a legal conclusion to which no response is required.  To

the extent a response is required, Ms. Tilton denies that the Zohar Funds, "consistent with [their]

rights under the s LLC Agreement," could remove Ms. Tilton as Snelling Holdings' Manager.  Ms.

Tilton admits that, on November 28, 2017, the Zohar Funds' purported to execute and deliver "to

Snelling Holdings a written consent removing Ms. Tilton as Snelling Holdings' Manager and

electing AMZM as Snelling Holdings' new Manager."  To the extent not expressly admitted, Ms.

Tilton denies the allegations in Paragraph 205.

206.    Under Sections 5.11 and 5.12 of the Snelling Holdings Operating Agreement, the
Snelling Holdings Consent is a valid action of Snelling Holdings' Members.

**ANSWER:**  Paragraph 206 states a legal conclusion to which no response is required.  To

the extent a response is required, Ms. Tilton denies the allegations in Paragraph 206.

207.    Nevertheless, Snelling Holdings and Ms. Tilton have refused to recognize the validity of the Snelling Holdings Consent.  Upon information and belief, Snelling Holdings and Ms. Tilton take the position that Snelling Holdings Amendment Two is valid and requires the consent of the Octaluna Class B Members related to the Zohar Funds to remove and replace Snelling Holdings' Manager.

**ANSWER:** Admitted.

I.    *Stila Styles, LLC*

1.    **Operative 2009 Stila LLC Agreement**

208.    Zohar III owns 100 percent of the outstanding Common Interests and Series A Preferred Interests in Stila.  As a result, Zohar III is the sole Common Member and Series A Preferred Member of Stila.  Zohar III executed the Stila LLC Agreement, dated as of April 17, 2009.

**ANSWER:** Ms. Tilton denies the allegations in the first sentence of Paragraph 208, except admits that Zohar III is a record holder (but not the actual or beneficial owner) of Common Interests in Stila, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken. It is now a final, binding precedent with collateral estoppel consequences here.

Ms. Tilton further admits that Zohar III, among others, executed an LLC Agreement for Stila that became effective April 17, 2009.  To the extent Paragraph 208 purports to characterize the contents of the LLC Agreement for Stila, Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 208.

209.    Section 1.1 of the Stila LLC Agreement defines terms used therein. "Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant to Article V below.  The initial Manager is Lynn Tilton."

**ANSWER:**  Ms. Tilton admits that she is the Manager of Stila.  Paragraph 209 purports to characterize the contents of the LLC Agreement for Stila.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

210.    "Common Members" means "those Members from time to time holding Common Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

**ANSWER:**  Paragraph 210 purports to characterize the contents of the LLC Agreement for Stila.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

211.    "Majority-in-Interest of the Common Members" means "at any particular time, Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the aggregate Common Percentages of all Common Members at such time."

**ANSWER:**  Paragraph 211 purports to characterize the contents of the LLC Agreement for Stila.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

212.    "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Stila LLC Agreement.

**ANSWER:**  Paragraph 212 purports to characterize the contents of the LLC Agreement for Stila.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

213.    Exhibit A to the Stila LLC Agreement lists Zohar III's Common Percentage as 100 percent.

**ANSWER:**  Paragraph 213 purports to characterize the contents of Exhibit A to the LLC Agreement for Stila.  Ms. Tilton respectfully refers the Court to that document, and any

amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and

contents.  Ms. Tilton admits that Exhibit A to the LLC Agreement for Stila lists Zohar III as a

record holder (but not the actual or beneficial owners) of membership interests in Stila.  In her

recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21

(ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox

Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments

on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial

rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no

appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences

here.

214.    "Series A Preferred Members" means "those Members from time to time holding
Series A Preferred Interests, solely in their capacity as holders of Series A Preferred Interests and
not in any other capacity."

**ANSWER:**  Paragraph 214 purports to characterize the contents of the LLC Agreement

for Stila.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

215.    "Series A Preferred Percentage" means "with respect to each Series A Preferred
Member, the percentage listed as such Series A Preferred Member's 'Series A Preferred
Percentage'" on the Exhibit A, appended to the Stila LLC Agreement.

**ANSWER:**  Paragraph 215 purports to characterize the contents of the LLC Agreement

for Stila.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

216.    Exhibit A to the Stila LLC Agreement lists Zohar III's Series A Preferred
Percentage as 100 percent.

**ANSWER:**  Paragraph 216 purports to characterize the contents of Exhibit A to the LLC

Agreement for Stila.   Ms. Tilton respectfully refers the Court to that document, and any

amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents. Ms. Tilton admits that Exhibit A to the LLC Agreement for Stila lists Zohar III as a record holder (but not the actual or beneficial owners) of membership interests in Stila. In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies." The time for any appeal of that decision has expired and no appeal has been taken. It is now a final, binding precedent with collateral estoppel consequences here.

217. Section 5.8 of the Stila LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

**ANSWER:** Paragraph 217 purports to characterize the contents of the LLC Agreement for Stila. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

218. Section 5.11 states, "Any action requiring the affirmative vote of the Common Members or the Series A Preferred Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common Members or a Majority-in- Interest of the Series A Preferred Members, as applicable, that would have been entitled to vote at such meeting as permitted under Section 5.13."

**ANSWER:** Paragraph 218 purports to characterize the contents of the LLC Agreement for Stila. Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

219. Section 5.13 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were

present and voted, as the case may be.  Such consent will have the same force and effect as a unanimous vote at a meeting . . . and the execution of such consent will constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

**ANSWER:**  Paragraph 219 purports to characterize the contents of the LLC Agreement

for Stila.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

220.    Section 11.1 of the Stila LLC Agreement is an integration clause, which states:

> This Agreement, together with <u>Exhibit A</u> hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.  There are no agreements, arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

**ANSWER:**  Paragraph 220 purports to characterize the contents of the LLC Agreement

for Stila.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

221.    Section 11.3 permits the Stila LLC Agreement to be "amended or modified from time to time only by the Members."

**ANSWER:**  Paragraph 221 purports to characterize the contents of the LLC Agreement

for Stila.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto,

for a complete and accurate statement of the LLC Agreement's terms and contents.

## 2.    2015 Amendment To The Stila LLC Agreement

222.    On September 22, 2015, the same date as the other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar III, as sole Member of Stila, to execute "Amendment No. 3 to Limited Liability Company Agreement of Stila Styles, LLC" ("Stila Amendment Three").  Stila Amendment Three sought to ensure Ms. Tilton would remain Manager of Stila indefinitely by requiring her consent for her removal.  No consideration supported Stila Amendment Three.

**ANSWER:** Ms. Tilton admits that the Zohar Funds executed Amendment No. 3 to the LLC Agreement for Stila on September 22, 2015. Ms. Tilton denies the remaining allegations in Paragraph 222 and respectfully refers the Court to the LLC Agreement for Stila, along with any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

223.    The first recital of Stila Amendment Three claims that the "original intent" of Zohar III was to give non-party Patriarch affiliates who are not Common Members or Series A Preferred Members of Stila—the Octaluna Class B Members related to Zohar III (*i.e.*, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions." To manifest this supposed "original intent," Stila Amendment Three purports to require "the consent of all [Octaluna] Class B Members" related to Zohar III to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

**ANSWER:** Paragraph 223 purports to characterize the contents of an Amendment to the LLC Agreement for Stila. Ms. Tilton respectfully refers the Court to that document, and any further amendments, for a complete and accurate statement of the LLC Agreement's terms and contents.

224.    In fact, no such original intent existed. Rather, Stila Amendment Three was a brazen attempt by Ms. Tilton to entrench herself as Manager of Stila by conditioning her removal on her own consent.

**ANSWER:** Ms. Tilton denies the allegations in Paragraph 224.

225.    Through Stila Amendment Three, Ms. Tilton caused Zohar III to forfeit its right to remove the Manager. Moreover, Zohar III received nothing in exchange for forfeiting this right.

**ANSWER:** Ms. Tilton denies the allegations in Paragraph 225.

### 3.    Stila's Common Members' And Series A Preferred Members' November 28, 2017 Written Consent

226.    Consistent with its rights under the Stila LLC Agreement, on November 28, 2017, Zohar III, as Stila's only Common Member and Series A Preferred Member, executed and delivered to Stila a written consent removing Ms. Tilton as Stila's Manager and electing AMZM as Stila's new Manager (the "Stila Consent").

**ANSWER:**  Paragraph 226 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies that Zohar III, "consistent with its rights under the s LLC Agreement," could remove Ms. Tilton as Stila's Manager.  Ms. Tilton lacks knowledge and information sufficient to admit or deny the remaining allegations in Paragraph 226, and denies those allegations on that basis.

227.    Under Sections 5.11 and 5.13 of the Stila LLC Agreement, the Stila Consent is a valid action of Stila's Common Members and Series A Preferred Members.

**ANSWER:**  Paragraph 227 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 227.

228.    Nevertheless, Stila and Ms. Tilton have refused to recognize the validity of the Stila Consent.  Upon information and belief, Stila and Ms. Tilton take the position that Stila Amendment Three is valid and requires the consent of the Octaluna Class B Members related to Zohar III to remove and replace Stila's Manager.

**ANSWER:**  Admitted.

**J.    *Dura Buyer, LLC***

**1.    Operative 2009 Dura Buyer LLC Agreement**

229.    Dura Buyer is owned by Zohar II, Zohar III, and Patriarch affiliate Ark II.  Zohar II owns 52.5 percent of the Common Interests in Dura Buyer, Zohar III owns 25.3 percent of the Common Interests in Dura Buyer, and Ark II owns 22.2 percent of the Common Interests in Dura Buyer.

**ANSWER:**  Ms. Tilton admits that Zohar II, and Zohar III are record holders (but not the actual or beneficial owners) of equity interests in Dura Buyer, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that

decision has expired and no appeal has been taken.  It is now a final, binding precedent with

collateral estoppel consequences here.  Ms. Tilton avers that Ark II is both the record and beneficial

owner of equity interests in Dura Buyer.  Except as expressly admitted, Ms. Tilton denies the

allegations in Paragraph 229.

230.    Upon information and belief, Ark II has no noteholders. Ms. Tilton owns Ark II
outright and she uses Ark II as her personal investment vehicle.

**ANSWER:**  Admitted.

231.    Zohar II, Zohar III, and Ark II executed the Dura Buyer LLC Agreement, dated as
of November 10, 2009.

**ANSWER:**  Ms. Tilton admits that Ark II, Zohar II, and Zohar III, among others, executed

an LLC Agreement for Dura Buyer that became effective November 10, 2009.

232.    Section 1.1 of the Dura Buyer LLC Agreement defines terms used therein.
"Manager" means "the Person appointed by the Common Members to serve as a Manager pursuant
to Article V below.  The initial Manager is Lynn Tilton."

**ANSWER:**  Ms. Tilton admits that she is the Manager of Dura Buyer.  Paragraph 232

purports to characterize the contents of the LLC Agreement for Dura Buyer.  Ms. Tilton

respectfully refers the Court to that document, and any amendments thereto, for a complete and

accurate statement of the LLC Agreement's terms and contents.

233.    "Common Members" means "those Members from time to time holding Common
Interests, solely in their capacity as holders of the Common Interests and not in any other capacity."

**ANSWER:**  Paragraph 233 purports to characterize the contents of the LLC Agreement

for Dura Buyer.  Ms. Tilton respectfully refers the Court to that document, and any amendments

thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

234.    "Majority-in-Interest of the Common Members" means "at any particular time,
Common Members whose aggregate Common Percentages exceed fifty percent (50%) of the
aggregate Common Percentages of all Common Members at such time."

**ANSWER:** Paragraph 234 purports to characterize the contents of the LLC Agreement for Dura Buyer.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

235.   "Common Percentage" means "with respect to each Common Member, the percentage listed as such Common Member's 'Common Percentage'" on Exhibit A, appended to the Dura Buyer LLC Agreement.

**ANSWER:** Paragraph 235 purports to characterize the contents of the LLC Agreement for Dura Buyer.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

236.   Exhibit A to the Dura Buyer LLC Agreement lists Zohar II's Common Percentage as 52.49 percent, Zohar III's Common Percentage as 25.29 percent, and Ark II's Common Percentage as 22.22 percent.

**ANSWER:** Paragraph 236 purports to characterize the contents of Exhibit A to the LLC Agreement for Dura Buyer.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.  Ms. Tilton admits that Exhibit A to the LLC Agreement for Dura Buyer lists Ark II, Zohar II, and Zohar III as record holders (but not the actual or beneficial owners) of membership interests in Dura Buyer.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

237.   Thus, Zohar II alone constitutes a Majority-in-Interest of the Common Members.

**ANSWER:** Paragraph 237 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 237.

238.    Section 5.8 of the Dura Buyer LLC Agreement states, "The Common Members, upon a vote of a Majority-in-Interest of the Common Members, may, at any time and with or without cause, remove and replace the Manager."

**ANSWER:** Paragraph 238 purports to characterize the contents of the LLC Agreement for Dura Buyer.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

239.    Section 5.11 states, "Any action requiring the affirmative vote of the Common Members under this Agreement . . . may be taken by a vote at a meeting or, in lieu thereof, by a written consent of a Majority-in-Interest of the Common Members that would have been entitled to vote at such meeting as permitted under Section 5.12."

**ANSWER:** Paragraph 239 purports to characterize the contents of the LLC Agreement for Dura Buyer.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

240.    Section 5.12 states, "Any action permitted or required by the Act, the Certificate or this Agreement to be taken by the Manager or the Members at a meeting may be taken without a meeting if a consent in writing, setting forth the action to be taken, is signed by the Manager or by the Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted, as the case may be.  Such consent will have the same force and effect as a unanimous vote at a meeting . . . and the execution of such consent will constitute attendance or presence in person at a meeting of the Manager or such Members, as the case may be."

**ANSWER:** Paragraph 240 purports to characterize the contents of the LLC Agreement for Dura Buyer.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

241.    Section 11.1 of the Dura Buyer LLC Agreement is an integration clause, which states:

> This Agreement, together with Exhibit A hereto, contains the entire understanding between the parties and supersedes any prior understanding and agreements between them regarding the subject matter hereof.   There are no agreements,

arrangements or understandings, oral or written, between and among the parties hereto relating to the subject matter of this Agreement that are not set forth or expressly referred to herein.

**ANSWER:**  Paragraph 241 purports to characterize the contents of the LLC Agreement for Dura Buyer.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

242.    Section 11.3 permits the Dura Buyer LLC Agreement to be "amended or modified from time to time only by the Members."

**ANSWER:**  Paragraph 242 purports to characterize the contents of the LLC Agreement for Dura Buyer.  Ms. Tilton respectfully refers the Court to that document, and any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

### 2.    2011 Amendment To The Dura Buyer LLC Agreement

243.    Sometime in May 2011, Ms. Tilton caused Zohar II, Zohar III, and Ark II as Common Members of Dura Buyer, to execute "Amendment No. 1 to Limited Liability Company Agreement of Dura Buyer LLC" ("Dura Buyer Amendment One").  No consideration supported Dura Buyer Amendment One.

**ANSWER:**  Ms. Tilton admits that Ark II, Zohar II, and Zohar III executed Amendment No. 1 to the Limited Liability Company Agreement for Dura Buyer in May 2011.  Ms. Tilton denies the remaining allegations in Paragraph 243 and respectfully refers the Court to the LLC Agreement for Dura Buyer, along with any amendments thereto, for a complete and accurate statement of the LLC Agreement's terms and contents.

244.    Dura Buyer Amendment One added a new section 5.17 to Article V of the Denali Acquisition Operating Agreement that required unanimous consent of the Common Members for certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

**ANSWER:**  Paragraph 244 purports to characterize the contents of an Amendment to the LLC Agreement for Dura Buyer.  Ms. Tilton respectfully refers the Court to that document, and

any further amendments, for a complete and accurate statement of the LLC Agreement's terms

and contents.  .

245.    Through Dura Buyer Amendment One, Zohar II forfeited its right to remove the Manager at any time, with or without cause.  Moreover, Zohar II received nothing in exchange for forfeiting this right.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 245.

246.    Dura Buyer Amendment One is an inequitable self-dealing transaction that Ms. Tilton implemented to entrench herself as Manager of Dura Buyer.  Dura Buyer Amendment One is also void for lack of consideration because Zohar II forfeited its right to remove and replace the Manager unilaterally, but received nothing in exchange.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 246.

### 3.    2015 Amendment To The Dura Buyer LLC Agreement

247.    On September 22, 2015, the same date as other 2015 amendments and facing the same existential threats to her and Patriarch's roles with Zohar Funds, Ms. Tilton caused Zohar II, Zohar III, and Ark II as Common Members of Dura Buyer, to execute "Amendment No. 2 to Limited Liability Company Agreement of Dura Buyer, LLC" ("Dura Buyer Amendment Two").  Dura Buyer Amendment Two sought to ensure Ms. Tilton would remain Manager of Dura Buyer indefinitely by requiring her consent for her removal.  No consideration supported Dura Buyer Amendment Two.

**ANSWER:**  Ms. Tilton admits that the Zohar Funds executed Amendment No. 2 to the

LLC Agreement for Dura Buyer on September 22, 2015.  Ms. Tilton denies the remaining

allegations in Paragraph 247 and respectfully refers the Court to the LLC Agreement for Dura

Buyer, along with any amendments thereto, for a complete and accurate statement of the LLC

Agreement's terms and contents.

248.    Dura Buyer Amendment Two is an exact replica of the other 2015 amendments. The first recital claims that the same "original intent" of Zohar II, Zohar III, and Ark II:  that they wanted to give non-party Patriarch affiliates who are not Common Members of Dura Buyer—the Octaluna Class B Members related to Zohar II and Zohar III (*i.e.*, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, Phoenix VIII, LLC) and the Member of Ark II (Patriarch Partners II, LLC)—"control over changes in the Manager, directions to the Manager, dissolution of the Company and other actions."

**ANSWER:**  Paragraph 248 purports to characterize the contents of an Amendment to the LLC Agreement for Dura Buyer.  Ms. Tilton respectfully refers the Court to that document, and any further amendments, for a complete and accurate statement of the LLC Agreement's terms and contents.

249.    Like the other 2015 amendments, Dura Buyer Amendment Two attempts to implement this supposed "original intent" by purporting to amend the section added in 2011 by Dura Buyer Amendment One to require "the consent of all [Octaluna] Class B Members/Members" of Zohar II, Zohar III, and Ark II to carry out certain actions, including "remov[ing] or replac[ing] an existing Manager or appoint[ing] any additional manager" or "amend[ing] this Agreement."

**ANSWER:**  Paragraph 249 purports to characterize the contents of an Amendment to the LLC Agreement for Dura Buyer.  Ms. Tilton respectfully refers the Court to that document, and any further amendments, for a complete and accurate statement of the LLC Agreement's terms and contents.

250.    In fact, no such original intent existed.  Rather, Dura Buyer Amendment Two was a further brazen attempt by Ms. Tilton to entrench herself as Manager of Dura Buyer by conditioning her removal on her own consent.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 250.

251.    Like Dura Buyer Amendment One, through Dura Buyer Amendment Two, Ms. Tilton caused Zohar II and Zohar III to purport to forfeit their right to remove Dura Buyer's Manager.  Zohar II and Zohar III received nothing in exchange for forfeiting this right.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 251.

### 4.    Dura Buyer's Common Members' November 28, 2017 Written Consent

252.    Consistent with its rights under the Dura Buyer LLC Agreement, on November 28, 2017, Zohar II and Zohar III, as the Majority-in- Interest of the Common Members of Dura Buyer, executed and delivered to Dura Buyer a written consent removing Ms. Tilton as Dura Buyer's Manager and electing AMZM as Dura Buyer's new Manager (the "Dura Buyer Consent").

**ANSWER:**  Paragraph 252 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies that Zohar II and Zohar III, "consistent with [their] rights under the s LLC Agreement," could remove Ms. Tilton as Dura Buyer's Manager.

Ms. Tilton lacks knowledge and information sufficient to admit or deny the remaining allegations in Paragraph 252, and denies those allegations on that basis.

253.    Under Sections 5.11 and 5.12 of the Dura Buyer LLC Agreement, the Dura Buyer Consent is a valid action of Dura Buyer's Common Members.

**ANSWER:**  Paragraph 253 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 253.

254.    Nevertheless, Dura Buyer and Ms. Tilton have refused to recognize the validity of the Dura Buyer Consent.  Upon information and belief, Dura Buyer and Ms. Tilton take the position that Dura Buyer Amendments One and Two are valid and require the consent of the Octaluna Class B Members related to Zohar II and Zohar III to remove and replace Dura Buyer's Manager.

**ANSWER:**  Admitted.

### VII.    Ms. Tilton Engages In Self-Dealing Transactions To Improperly Entrench Her Control Over IMG

255.    The Zohar Funds own all of the outstanding common stock in IMG. Zohar I owns 1,016.5 shares or 16.9 percent of outstanding common stock.  Zohar II owns 4,093.00 shares or 68.2 percent of outstanding common stock.  Zohar III owns 890.50 shares or 14.8 percent of outstanding common stock.

**ANSWER:**  Ms. Tilton admits that Zohar I, Zohar II, and Zohar III are (or were) record holders (but not the actual or beneficial owners) of equity interests in IMG, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.  Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 255.

256.    Under 8 *Del. C.* § 141(k), "Any director or the entire board of directors may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors . . . ."[10] Zohar II's ownership of 4,093 shares of IMG stock constitutes a majority of the outstanding shares of common stock of IMG entitled to vote to remove and elect directors.

**ANSWER:**  Paragraph 256, and footnote 10 thereto, state legal conclusions to which no

response is required.  To the extent a response is required, Ms. Tilton denies the allegations in

Paragraph 256 and footnote 12.  Moreover, to the extent Paragraph 256 and footnote 12 purport to

characterize the contents of 8 *Del. C.* § 141(k), Ms. Tilton respectfully refers the Court to that

section of the Delaware Code for a complete and accurate statement of its terms and contents.

257.    On September 21, 2015, the day before Ms. Tilton caused the Zohar Funds to execute the purported 2015 amendments to the LLC agreements of the Portfolio LLCs, Ms. Tilton purported to cause the Zohar Funds to execute irrevocable proxies just like the irrevocable proxies challenged by the Zohar Funds and tried to this Court in *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, C.A. No. 12946-VCS (Del. Ch. Ct.).

**ANSWER:**  Ms. Tilton admits that the Zohar Funds executed irrevocable proxies on

September 21, 2015 granting, inter alia, exclusive voting rights to Ms. Tilton, through certain of

her affiliates, with respect to any shares of stock in IMG recorded in the Zohar Funds' names.  Ms.

Tilton further admits and alleges that the irrevocable proxies honored the intent of all of the Zohar

Fund stockholders to vest full authority to manage and control IMG with Ms. Tilton—who was at

all times their beneficial and ultimate owner.  Except as expressly admitted, Ms. Tilton denies the

allegations in Paragraph 257.

258.    Specifically, and just like the 2015 amendments to the LLC agreements, the second recital claims that it was the Zohar Funds' "original intent" to give non-party Patriarch affiliates who are not shareholders of IMG—the Octaluna Class B Members related to all of the Zohar Funds (*i.e.*, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Ark II, Patriarch Partners XV, LLC, and Phoenix VIII, LLC)—"the right to vote and act for the" Zohar Funds.

---

[10]  IMG does not have a classified board or cumulative voting, so neither exception requiring cause for removal listed in 8 *Del. C.* § 141(k) applies.

**ANSWER:**  Paragraph 258 purports to characterize the contents of three irrevocable proxies relating to shares in IMG recorded in the names of the Zohar Funds.  Ms. Tilton respectfully refers the Court to those documents for a complete and accurate statement of their terms and contents.  Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 258.

259.    Like the 2015 amendments to the LLC agreements, the IMG irrevocable proxies attempt to implement this supposed "original intent" by purporting to "authorize the [Octaluna Class B Members] to vote for the [Zohar Funds], as the [Zohar Funds'] proxy, at any and all meetings of the stockholders of the Company and, as the [Zohar Funds'] proxy, to consent or dissent without a meeting . . . including but not limited to the following matters: (i) The election or removal of directors of the Company; (ii) Any amendments to the Company's certificate or articles of incorporation or by-laws . . . ."

**ANSWER:**  Paragraph 259 purports to characterize the contents of three irrevocable proxies relating to shares in IMG recorded in the names of the Zohar Funds.  Ms. Tilton respectfully refers the Court to those documents for a complete and accurate statement of their terms and contents.

260.    In fact, no such original intent existed.  Rather, the IMG irrevocable proxies were a brazen attempt by Ms. Tilton to entrench herself as director of IMG by conditioning her removal on her own consent.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 260.

261.    Through the IMG irrevocable proxies, Ms. Tilton caused Zohar II to forfeit its right to remove the director.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 261.

262.    The IMG irrevocable proxies are legally invalid because they are not coupled with an interest sufficient to support an irrevocable proxy under Delaware law.  The IMG irrevocable proxies are also equitably invalid because they are the result of a self-dealing transaction designed to entrench herself as IMG's director.

**ANSWER:**  Paragraph 262 states legal conclusions to which no responses are required. To the extent a response is required, Ms. Tilton denies the allegations in Paragraph 262.

263.    Section 228(a) of the Delaware General Corporation Law provides:

Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting which all shares entitled to vote thereon were present and voted an[d] shall be delivered to the corporation by delivery to its registered office in this State, its principal place of business or an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded.   Delivery made to a corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

**ANSWER:**  Aside from a minor typographical error (noted above), Ms. Tilton admits that Plaintiffs accurately quoted Section 228(a) of Delaware General Corporation Law.  Ms. Tilton respectfully refers the Court to that section of the Delaware Code for a complete and accurate statement of its terms and contents.

264.    IMG's Certificate of Incorporation does not prohibit stockholder action by written consent.

**ANSWER:**  Admitted.

265.    IMG elects directors by a vote of the majority of the outstanding common stock.

**ANSWER:**  Admitted.

266.    On November 28, 2017, the Zohar Funds, as owners of all of the outstanding common stock in IMG, executed and delivered to IMG a written consent removing Ms. Tilton as IMG's director and electing Tom Jones, Elizabeth LaPuma and Anthony McKiernan as IMG's new directors (the "IMG Consent").

**ANSWER:**  Ms. Tilton admits that the Zohar Funds have alleged that they executed and delivered a written consent purporting to remove Ms. Tilton as IMG's director and elect Tom Jones, Elizabeth LaPuma, and Anthony McKiernan as IMG's new directors.  Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 266.

267.    Under 8 *Del. C.* § 228 and settled Delaware law, the IMG Consent was effective upon its delivery to IMG on November 28, 2017, and IMG's former director was removed and replaced as director of IMG by Tom Jones, Elizabeth LaPuma and Anthony McKiernan.

**ANSWER:**  Paragraph 267 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 267.

268.    Nevertheless, IMG and Ms. Tilton have refused to recognize the validity of the IMG Consent.  Upon information and belief, IMG and Ms. Tilton take the position that the irrevocable proxies are valid and transfer the voting rights of the Zohar Funds to the Octaluna Class B Members related to the Zohar Funds.

**ANSWER:**  Ms. Tilton admits that the Zohar Funds executed valid irrevocable proxies on September 21, 2015 granting, inter alia, exclusive voting rights to Ms. Tilton, through certain of her affiliates, with respect to any shares of stock in IMG recorded in the Zohar Funds' names.  Ms. Tilton further admits and alleges that the irrevocable proxies honored the intent of all of the Zohar Fund stockholders to vest full authority to manage and control IMG with Ms. Tilton—who was at all times their beneficial and ultimate owner.  Except as expressly admitted, Ms. Tilton denies the allegations in Paragraph 268.

## Causes Of Action

### Count I
(Against Croscill And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

269.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**   Ms. Tilton repeats and realleges her answer to each of the preceding paragraphs as if fully set forth herein.

270.    Plaintiff Zohar III is the sole Common Member of Croscill.  Under the Croscill LLC Agreement, Zohar III could remove Croscill's Manager at any time, with or without cause.

**ANSWER:**   Ms. Tilton admits that Zohar III is a record holder (but not the actual or beneficial owner) of equity interests in Croscill, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

Unless expressly admitted, Ms. Tilton denies the allegations in Paragraph 270.

271.    Through Croscill Amendment Four, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Croscill's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

**ANSWER:**   Ms. Tilton denies the allegations in Paragraph 271.

272.    Zohar III received no consideration for the transfer of its valuable membership rights, including voting rights, under Croscill Amendment Four and it is, therefore, legally invalid. Croscill Amendment Four is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Croscill at the expense of Zohar III.

93

**ANSWER:**  Paragraph 272 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 272.

273.    Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Croscill Amendment Four is invalid, void, and of no force or effect, that it removed Ms. Tilton as Croscill's Manager under the provisions of the Croscill LLC Agreement, by vote of a simple majority of Common Members, and that its election of AMZM as Croscill's new Manager is valid.

**ANSWER:**  Paragraph 273 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 273.

274.    Plaintiff Zohar III has no adequate remedy at law.

**ANSWER:**  Paragraph 274 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 274.

## Count II
(Against Denali Acquisition And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

275.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**  Ms. Tilton repeats and realleges her answer to each of the preceding paragraphs as if fully set forth herein.

276.    Plaintiff Zohar III is the sole Member of Denali Acquisition.  Under the Denali Acquisition Operating Agreement, Zohar III could remove Denali Acquisition's Manager at any time, with or without cause.

**ANSWER:**  Ms. Tilton admits that Zohar III is a record holder (but not the actual or beneficial owner) of equity interests in Denali Acquisition, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity

ownership or beneficial rights in the Portfolio Companies." The time for any appeal of that decision has expired and no appeal has been taken. It is now a final, binding precedent with collateral estoppel consequences here.

Unless expressly admitted, Ms. Tilton denies the allegations in Paragraph 276.

277.    Through Denali Acquisition Amendment Two, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Denali Acquisition's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 277.

278.    Zohar III received no consideration for the transfer of its valuable membership rights, including voting rights, under Denali Acquisition Amendment Two and it is, therefore, legally invalid. Denali Acquisition Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Denali Acquisition at the expense of Zohar III.

**ANSWER:**  Paragraph 278 states a legal conclusion to which no response is required. To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 278.

279.    Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Denali Acquisition Amendment Two is invalid, void, and of no force or effect, that it removed Ms. Tilton as Denali Acquisition's Manager under the provisions of the Denali Acquisition Operating Agreement, by Member action, and that its election of AMZM as Denali Acquisition's new Manager is valid.

**ANSWER:**  Paragraph 279 states a legal conclusion to which no response is required. To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 279.

280.    Plaintiff Zohar III has no adequate remedy at law.

**ANSWER:**  Paragraph 280 states a legal conclusion to which no response is required. To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 280.

## Count III
(Against GAS And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

281.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**   Ms. Tilton repeats and realleges her answer to each of the preceding paragraphs as if fully set forth herein.

282.    Plaintiffs are the only Common Members of GAS.  Plaintiffs constitute All of the Common Members.  Under the GAS LLC Agreement, Plaintiffs could remove GAS's Manager at any time, with or without cause.

**ANSWER:**   Ms. Tilton admits that Zohar I, Zohar II, and Zohar III are record holders (but not the actual or beneficial owners) of equity interests in GAS, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

Unless expressly admitted, Ms. Tilton denies the allegations in Paragraph 282.

283.    Through GAS Amendment One, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove GAS's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

**ANSWER:**   Ms. Tilton denies the allegations in Paragraph 283.

284.    The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under GAS Amendment, and it is, therefore, legally invalid.  GAS Amendment One is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of GAS at the expense of the Zohar Funds.

**ANSWER:**   Paragraph 284 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 284.

285.    Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that GAS Amendment One is invalid, void, and of no force or effect, that they removed Ms. Tilton as

GAS's Manager under the provisions of the GAS LLC Agreement, by vote of All of the Common Members, and that their election of AMZM as GAS's new Manager is valid.

**ANSWER:** Paragraph 285 states a legal conclusion to which no response is required. To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 285.

286.   Plaintiffs have no adequate remedy at law.

**ANSWER:** Paragraph 286 states a legal conclusion to which no response is required. To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 286.

## Count IV
(Against Gorham And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

287.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

**ANSWER:** Ms. Tilton repeats and realleges her answer to each of the preceding paragraphs as if fully set forth herein.

288.   Plaintiff Zohar III is the sole Common Member of Gorham. Zohar III constitutes All of the Common Members. Under the Gorham LLC Agreement, Plaintiffs could remove Gorham's Manager at any time, with or without cause.

**ANSWER:** Ms. Tilton admits that Zohar III is a record holder (but not the actual or beneficial owner) of equity interests in Gorham, which are at most equity upside interests. In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies." The time for any appeal of that decision has expired and no appeal has been taken. It is now a final, binding precedent with collateral estoppel consequences here.

Unless expressly admitted, Ms. Tilton denies the allegations in Paragraph 288.

289.     Through Gorham Amendment One, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Gorham's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 289.

290.     Zohar III received no consideration for the transfer of its valuable membership rights, including voting rights, under Gorham Amendment One and it is, therefore, legally invalid. Gorham Amendment One is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Gorham at the expense of Zohar III.

**ANSWER:**  Paragraph 290 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 290.

291.     Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Gorham Amendment One is invalid, void, and of no force or effect, that it removed Ms. Tilton as Gorham's Manager under the provisions of the Gorham LLC Agreement, by vote of a All of the Common Members, and that its election of AMZM as Gorham's new Manager is valid.

**ANSWER:**  Paragraph 291 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 291.

292.     Plaintiff Zohar III has no adequate remedy at law.

**ANSWER:**  Paragraph 292 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 292.

### Count V
(Against Jewel of Jane And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

293.     Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**  Ms. Tilton repeats and realleges her answer to each of the preceding paragraphs as if fully set forth herein.

294.     Plaintiff Zohar II is the sole Common Member of Jewel of Jane.  Under the Jewel of Jane LLC Agreement, Zohar II could remove Jewel of Jane's Manager at any time, with or without cause.

**ANSWER:**  Ms. Tilton admits that Zohar II is a record holder (but not the actual or beneficial owner) of equity interests in Jewel of Jane, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

Unless expressly admitted, Ms. Tilton denies the allegations in Paragraph 294.

295.    Through Jewel of Jane Amendment Two, Ms. Tilton purported to cause Zohar II to relinquish its right to remove Jewel of Jane's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 295.

296.    Zohar II received no consideration for the transfer of its valuable membership rights, including voting rights, under Jewel of Jane Amendment Two and it is, therefore, legally invalid.  Jewel of Jane Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Jewel of Jane at the expense of Zohar II.

**ANSWER:**  Paragraph 296 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 296.

297.    Plaintiff Zohar II is therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Jewel of Jane Amendment Two is invalid, void, and of no force or effect, that it removed Ms. Tilton as Jewel of Jane's Manager under the provisions of the Jewel of Jane LLC Agreement, by vote of a simple majority of Common Members, and that its election of AMZM as Jewel of Jane's new Manager is valid.

**ANSWER:**  Paragraph 297 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 297.

298.    Plaintiff Zohar II has no adequate remedy at law.

**ANSWER:** Paragraph 298 states a legal conclusion to which no response is required. To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 298.

## Count VI
(Against LVD/Oasis And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

299.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

**ANSWER:** Ms. Tilton repeats and realleges her answer to each of the preceding paragraphs as if fully set forth herein.

300.    Plaintiffs are the only Common Members of LVD/Oasis. Under the LVD/Oasis LLC Agreement, Plaintiffs could remove LVD/Oasis's Manager at any time, with or without cause.

**ANSWER:** Ms. Tilton admits that Zohar I, Zohar II, and Zohar III are record holders (but not the actual or beneficial owners) of equity interests in LVD/Oasis, which are at most equity upside interests. In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies." The time for any appeal of that decision has expired and no appeal has been taken. It is now a final, binding precedent with collateral estoppel consequences here.

Unless expressly admitted, Ms. Tilton denies the allegations in Paragraph 300.

301.    Through LVD/Oasis Amendment Two, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove LVD/Oasis's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

**ANSWER:** Ms. Tilton denies the allegations in Paragraph 301.

302.    The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under LVD/Oasis Amendment Two and it is, therefore,

legally invalid.  LVD/Oasis Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of LVD/Oasis at the expense of the Zohar Funds.

**ANSWER:**  Paragraph 302 states a legal conclusion to which no response is required.  To

the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 302.

303.    Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that LVD/Oasis Amendment Two is invalid, void, and of no force or effect, that they removed Ms. Tilton as LVD/Oasis's Manager under the provisions of the LVD/Oasis LLC Agreement, by vote of a simple majority of Common Members, and that their election of AMZM as LVD/Oasis's new Manager is valid.

**ANSWER:**  Paragraph 303 states a legal conclusion to which no response is required.  To

the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 303.

304.    Plaintiffs have no adequate remedy at law.

**ANSWER:**  Paragraph 304 states a legal conclusion to which no response is required.  To

the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 304.

**Count VII**
(Against RM And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

305.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**   Ms. Tilton repeats and realleges her answer to each of the preceding

paragraphs as if fully set forth herein.

306.    Plaintiffs are the only Common Members of RM.   Under the RM Operating Agreement, Plaintiffs could remove RM's Manager at any time, with or without cause.

**ANSWER:**  Ms. Tilton admits that Zohar I, Zohar II, and Zohar III are record holders (but

not the actual or beneficial owners) of equity interests in RM, which are at most equity upside

interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL

4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law

Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and

principal payments on loans or other assets listed in the Trustee Reports, had no express equity

ownership or beneficial rights in the Portfolio Companies."   The time for any appeal of that

decision has expired and no appeal has been taken.   It is now a final, binding precedent with

collateral estoppel consequences here.

Unless expressly admitted, Ms. Tilton denies the allegations in Paragraph 306.

307.    Through RM Amendment Four, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove RM's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 307.

308.    The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under RM Amendment Four and it is, therefore, legally invalid.  RM Amendment Four is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of RM at the expense of the Zohar Funds.

**ANSWER:**  Paragraph 308 states a legal conclusion to which no response is required.  To

the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 308.

309.    Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that RM Amendment Four is invalid, void, and of no force or effect, that they removed Ms. Tilton as RM's Manager under the provisions of the RM Operating Agreement, by vote of a simple majority of Common Members, and that their election of AMZM as RM's new Manager is valid.

**ANSWER:**  Paragraph 309 states a legal conclusion to which no response is required.  To

the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 309.

310.    Plaintiffs have no adequate remedy at law.

**ANSWER:**  Paragraph 310 states a legal conclusion to which no response is required.  To

the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 310.

## **Count VIII**
### (Against Snelling Holdings And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

311.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**  Ms. Tilton repeats and realleges her answer to each of the preceding paragraphs as if fully set forth herein.

312.    Plaintiffs are the only Members of Snelling Holdings.  Under the Snelling Holdings Operating Agreement, Plaintiffs could remove Snelling Holdings' Manager at any time, with or without cause.

**ANSWER:**  Ms. Tilton admits that Zohar I, Zohar II, and Zohar III are record holders (but not the actual or beneficial owners) of equity interests in Snelling Holdings, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

Unless expressly admitted, Ms. Tilton denies the allegations in Paragraph 312.

313.    Through Snelling Holdings Amendment Two, Ms. Tilton purported to cause Plaintiffs to relinquish their right to remove Snelling Holdings' Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 313.

314.    The Zohar Funds received no consideration for the transfer of their valuable membership rights, including voting rights, under Snelling Holdings Amendment Two and it is, therefore, legally invalid.  Snelling Holdings Amendment Two is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Snelling Holdings at the expense of the Zohar Funds.

**ANSWER:**  Paragraph 314 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 314.

315.    Plaintiffs are therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Snelling Holdings Amendment Two is invalid, void, and of no force or effect, that they removed Ms. Tilton as Snelling Holdings' Manager under the provisions of the Snelling Holdings Operating

Agreement, by vote of a simple majority of Members, and that their election of AMZM as Snelling Holdings' new Manager is valid.

**ANSWER:**  Paragraph 315 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 315.

316.    Plaintiffs have no adequate remedy at law.

**ANSWER:**  Paragraph 316 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 316.

## Count IX
### (Against Stila And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

317.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**  Ms. Tilton repeats and realleges her answer to each of the preceding paragraphs as if fully set forth herein.

318.    Plaintiff Zohar III is the only Common Member of Stila.  Under the Stila LLC Agreement, Zohar III could remove Stila's Manager at any time, with or without cause.

**ANSWER:**  Ms. Tilton admits that Zohar III is a record holder (but not the actual or beneficial owner) of equity interests in Stila, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

Unless expressly admitted, Ms. Tilton denies the allegations in Paragraph 318.

319.    Through Stila Amendment Three, Ms. Tilton purported to cause Zohar III to relinquish its right to remove Stila's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 319.

320.    Zohar III received no consideration for the transfer of its valuable membership rights, including voting rights, under Stila Amendment Three and it is, therefore, legally invalid. Stila Amendment Three is inequitable because it is the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Stila at the expense of Zohar III.

**ANSWER:**  Paragraph 320 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 320.

321.    Plaintiff Zohar III is therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Stila Amendment Three is invalid, void, and of no force or effect, that it removed Ms. Tilton as Stila's Manager under the provisions of the Stila LLC Agreement, by vote of a simple majority of Common Members, and that its election of AMZM as Stila's new Manager is valid.

**ANSWER:**  Paragraph 321 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 321.

322.    Plaintiff Zohar III has no adequate remedy at law.

**ANSWER:**  Paragraph 322 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 322.

### Count X
(Against Dura Buyer And Lynn Tilton Under 6 *Del. C.* §§ 18-110, -111)

323.    Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**  Ms. Tilton repeats and realleges her answer to each of the preceding paragraphs as if fully set forth herein.

324.    Plaintiffs Zohar II and Zohar III are Common Members of Dura Buyer.  Zohar II alone constitutes the Majority-in-Interest of the Common Members.  Under the Dura Buyer LLC Agreement, Plaintiffs Zohar II and Zohar III could remove Dura Buyer's Manager at any time, with or without cause.

**ANSWER:**  Ms. Tilton admits that Zohar II and Zohar III are record holders (but not the actual or beneficial owners) of equity interests in Dura Buyer, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

Unless expressly admitted, Ms. Tilton denies the allegations in Paragraph 324.

325.    Through Dura Buyer Amendment One and Dura Buyer Amendment Two, Ms. Tilton purported to cause Plaintiffs Zohar II and Zohar III to relinquish their right to remove Dura Buyer's Manager at any time, with or without cause, and to require the consent of non-Member Patriarch affiliates owned by Ms. Tilton.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 325.

326.    Zohar II and Zohar III received no consideration for the transfer of their valuable membership rights, including voting rights, under Dura Buyer Amendment One and Dura Buyer Amendment Two and these amendments are, therefore, legally invalid.  Dura Buyer Amendment One and Dura Buyer Amendment Two are inequitable because they are the product of conflicted, self- dealing transactions by Ms. Tilton designed to entrench herself as the Manager of Dura Buyer at the expense of Zohar II and Zohar III.

**ANSWER:**  Paragraph 326 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 326.

327.    Plaintiffs Zohar II and Zohar III are therefore entitled to a declaration under 6 *Del. C.* §§ 18-110, -111 that Dura Buyer Amendment One and Dura Buyer Amendment Two are invalid, void, and of no force or effect, that they removed Ms. Tilton as Dura Buyer's Manager under the provisions of the Dura Buyer LLC Agreement, by vote of a simple majority of Common Members, and that their election of AMZM as Dura Buyer's new Manager is valid.

**ANSWER:**  Paragraph 327 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 327.

328.   Plaintiffs Zohar II and Zohar III have no adequate remedy at law.

**ANSWER:**  Paragraph 328 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 328.

## Count XI
### (Against IMG And Lynn Tilton Under 8 *Del. C.* § 225)

329.   Plaintiffs repeat and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

**ANSWER:**  Ms. Tilton repeats and realleges her answer to each of the preceding paragraphs as if fully set forth herein.

330.   Plaintiffs Zohar Funds own all of the outstanding common stock of IMG.  Zohar II constitutes the majority of outstanding voting stock in IMG.  Under the 8 *Del. C.* § 141(k), Plaintiff Zohar II could remove IMG's sole director at any time, with or without cause.

**ANSWER:**  Ms. Tilton admits that Zohar I, Zohar II, and Zohar III are record holders (but not the actual or beneficial owners) of equity interests in IMG, which are at most equity upside interests.  In her recent decision in *In re Lynn Tilton*, Exchange Act Release No. 1182, 2017 WL 4297256, at *21 (ALJ Sept. 27, 2017), following a three-week trial, SEC Administrative Law Judge Carol Fox Foelak found that "the Zohar Funds, beyond their right to receive interest and principal payments on loans or other assets listed in the Trustee Reports, had no express equity ownership or beneficial rights in the Portfolio Companies."  The time for any appeal of that decision has expired and no appeal has been taken.  It is now a final, binding precedent with collateral estoppel consequences here.

Moreover, Paragraph 330 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 330.

331.   Through the IMG irrevocable proxies, Ms. Tilton purported to cause Plaintiffs Zohar Funds to relinquish their right to remove IMG's sole director at any time, with or without cause, and to grant that right to Patriarch affiliates owned by Ms. Tilton.

**ANSWER:**  Ms. Tilton denies the allegations in Paragraph 331.

332.    The IMG irrevocable proxies are legally invalid because they purport to be irrevocable but are not coupled with an interest sufficient under Delaware law.  The IMG irrevocable proxies are inequitable because they are the product of conflicted, self-dealing transactions by Ms. Tilton designed to entrench herself as the sole director of IMG at the expense of the Zohar Funds.

**ANSWER:**  Paragraph 332 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 332.

333.    Plaintiffs Zohar Funds are therefore entitled to a declaration under 8 *Del. C.* § 225 that the IMG irrevocable proxies are invalid, void, and of no force or effect, that they removed IMG's sole director under 8 *Del. C.* § 225, by vote of "the holders of a majority of the shares then entitled to vote at an election of directors," and that their election of Tom Jones, Elizabeth LaPuma and Anthony McKiernan as IMG's new directors is valid.

**ANSWER:**  Paragraph 333 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 333.

334.    Plaintiffs Zohar Funds have no adequate remedy at law.

**ANSWER:**  Paragraph 334 states a legal conclusion to which no response is required.  To the extent a response is required, Ms. Tilton denies the allegations contained in Paragraph 334.

**Prayer For Relief**

335.    WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request an order:

A.    Declaring that Croscill Amendment Four is invalid, void, and of no force or effect, and that Plaintiff Zohar III validly removed and replaced Croscill's Manager under the provisions of the Croscill LLC Agreement, by vote of a simple majority of Common Members.

B.    Declaring that Denali Acquisition Amendment Two is invalid, void, and of no force or effect, and that Plaintiff Zohar III validly removed and replaced Denali Acquisition's Manager under the provisions of the Denali Acquisition Operating Agreement, by vote of its Member.

C.    Declaring that GAS Amendment One is invalid, void, and of no force or effect, and that Plaintiffs validly removed and replaced GAS's Manager under the provisions of the GAS LLC Agreement, by vote of All of the Common Members.

D.      Declaring that Gorham Amendment One is invalid, void, and of no force or effect, and that Plaintiff Zohar III validly removed and replaced Gorham's Manager under the provisions of the Gorham LLC Agreement, by vote of All of the Common Members.

E.      Declaring that Jewel of Jane Amendment Two is invalid, void, and of no force or effect, and that Plaintiff Zohar II validly removed and replaced Jewel of Jane's Manager under the provisions of the Jewel of Jane LLC Agreement, by vote of a simple majority of Common Members.

F.      Declaring that LVD/Oasis Amendment Two is invalid, void, and of no force or effect, and that Plaintiffs validly removed and replaced LVD/Oasis's Manager under the provisions of the LVD/Oasis LLC Agreement, by vote of a simple majority of Common Members.

G.      Declaring that RM Amendment Four is invalid, void, and of no force or effect, and that Plaintiffs validly removed and replaced RM's Manager under the provisions of the RM Operating Agreement, by vote of a simple majority of Common Members.

H.      Declaring that Snelling Holdings Amendment Two is invalid, void, and of no force or effect, and that Plaintiffs validly removed and replaced Snelling Holdings' Manager under the provisions of the Snelling Holdings Operating Agreement, by vote of a simple majority of Members.

I.      Declaring that Stila Amendment Three is invalid, void, and of no force or effect, and that Plaintiff Zohar III validly removed and replaced Stila's Manager under the provisions of the Stila LLC Agreement, by vote of a simple majority of Common Members.

J.      Declaring that Dura Buyer Amendment One and Dura Buyer Amendment Two are invalid, void, and of no force or effect, and that Plaintiffs Zohar II and III validly removed and replaced Dura Buyer's Manager under the provisions of the Dura Buyer LLC Agreement, by vote of a simple majority of Common Members.

K.      Declaring that the IMG irrevocable proxies are invalid, void, and of no force or effect, and that Plaintiffs Zohar Funds validly removed and replaced IMG's sole director under the provisions of the Delaware General Corporate Law, by vote of a "majority of the share then entitled to vote at an election of directors."

L.      Awarding to Plaintiffs their costs, including attorney's fees, incurred in bring this action; and

M.      Granting such other and further relief as this Court may deem appropriate.

**ANSWER:**  Ms. Tilton admits that Plaintiffs purport to seek the relief described in Paragraph 335.  Ms. Tilton denies the allegations in Paragraph 335, including the allegations in subparts A–M.

## DEFENDANTS' AFFIRMATIVE DEFENSES

Without assuming any burden of proof she would not otherwise bear, Ms. Tilton asserts the following affirmative defenses, while reserving the right to amend this Answer and to add defenses as this case and/or discovery proceeds:

### First Affirmative Defense

The Amended Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiffs' claims are barred by the doctrines of collateral estoppel and issue preclusion.

### Third Affirmative Defense

Plaintiffs' claims are barred by the doctrines of estoppel, waiver, acquiescence, and ratification.

### Fourth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of unclean hands and *in pari delicto* and because of inequitable conduct by Plaintiffs, their collateral manager, AMZM, and others that direct AMZM.

### Fifth Affirmative Defense

Plaintiffs' claims are barred because they violate valid and enforceable Amendments to the LLC Agreements of Portfolio Company LLCs and a valid Irrevocable Proxy entered into by IMG.

<u>Sixth Affirmative Defense</u>

Plaintiffs' claims are barred because they are based on purported written consents from Plaintiffs, dated November 28, 2017, which are legally invalid.  In addition, the written consents were required to be delivered to Defendants and, upon information and belief, only three of the written consents—for Denali, Snelling Holdings, and RM—actually were delivered to Defendants. The written consents purported to vote the membership interests or shares in the Defendant Companies that are recorded in Plaintiffs' names, in order to remove Ms. Tilton as Manager or certain directors of the Defendant Companies and replace her/them with AMZM or employees or affiliates of AMZM.  But those purported consents are unenforceable because Plaintiffs did not have a right to vote any such shares under the Amendments and the Irrevocable Proxy and because the shares are beneficially and ultimately owned by Ms. Tilton, through certain of her affiliated entities.

<u>Seventh Affirmative Defense</u>

Plaintiffs' claims are barred by the doctrine of laches.

<u>Eighth Affirmative Defense</u>

Plaintiffs' claims are barred by the doctrine of unjust enrichment.

<u>Ninth Affirmative Defense</u>

Plaintiffs' claims are barred by the terms of Indentures entered into by Plaintiffs and by the terms of the collateral management agreements entered into by Plaintiffs and affiliates of Ms. Tilton.

<u>Tenth Affirmative Defense</u>

Plaintiffs' claims are barred because they are inequitable, in consequence of which the Court should impose a resulting or constructive trust.

## Eleventh Affirmative Defense

Plaintiffs' claims are barred because there are no proximately caused damages.

## Twelfth Affirmative Defense

Plaintiffs' Amended Complaint is wholly insubstantial, frivolous, and not advanced in good faith.

## Thirteenth Affirmative Defense

Defendants have insufficient knowledge or information upon which to form a belief as to whether they may have as yet unstated separate and additional defenses available. Defendants reserve the right to amend this Answer to add, delete, or modify defenses based upon legal theories that may or will be divulged through clarification or amendment of Plaintiffs' Amended Complaint, through discovery, or through further legal analysis of Plaintiffs' claims and positions in this litigation.

Dated: January 2, 2018

OF COUNSEL

Randy M. Mastro
Monica Loseman
Mary Beth Maloney
*Pro hac vice* applications forthcoming
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-3909

*Attorneys for Defendant Lynn Tilton*

Edward J. Bennett
Ava V. Baker
*Pro hac vice* applications forthcoming
WILLIAMS & CONNOLLY LLP

/s/ Kevin G. Abrams
Kevin G. Abrams
J. Peter Shindel, Jr.
Abrams & Bayliss LLP
20 Montchanin Rd., Ste. 200
Wilmington, DE 19807
(302) 778-1000

*Attorneys for Defendants Lynn Tilton, Croscill Home LLC, Denali Acquisition LLC, Dura Buyer, LLC, Global Automotive Systems, LLC, Gorham Paper and Tissue, LLC, IMG Holdings, Inc., Jewel of Jane LLC, LVD Acquisition, LLC, RM Acquisition, LLC, Snelling Holdings, LLC, and Stila Styles, LLC*

112

725 Twelfth Street NW
Washington, DC 20005
(202) 434-5000

*Attorneys for Defendants Croscill Home
LLC, Denali Acquisition LLC, Dura Buyer,
LLC, Global Automotive Systems, LLC,
Gorham Paper and Tissue, LLC, IMG
Holdings, Inc., Jewel of Jane LLC, LVD
Acquisition, LLC, RM Acquisition, LLC,
Snelling Holdings, LLC, and Stila Styles,
LLC*