## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZOHAR CDO 2003-1, LIMITED, ZOHAR ) | |
| II 2005-1 LIMITED, and ZOHAR III, ) | |
| LIMITED, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 17-1797-JFB-SRF |
| ) | |
| CROSCILL HOME LLC, f/k/a CROSCILL ) | |
| ACQUISITION, LLC, DENALI ) | |
| ACQUISITION LLC, DURA BUYER, ) | |
| LLC, GLOBAL AUTOMOTIVE ) | |
| SYSTEMS, LLC, GORHAM PAPER AND ) | |
| TISSUE, LLC, IMG HOLDINGS, INC., ) | |
| JEWEL OF JANE LLC, LVD ) | |
| ACQUISITION, LLC, d/b/a OASIS ) | |
| INTERNATIONAL, RM ACQUISITION, ) | |
| LLC, SNELLING HOLDINGS, LLC, ) | |
| STILA STYLES, LLC, and LYNN ) | |
| TILTON, ) | |
| ) | |
| Defendants. ) | |

## **REPORT AND RECOMMENDATION**

### I. INTRODUCTION

Presently before the court in this declaratory judgment action concerning ownership and

control over certain Delaware limited liability companies ("LLCs") and a Delaware corporation

are the following motions: (1) plaintiffs Zohar CDO 2003-1, Ltd. ("Zohar I"), Zohar II 2005-1,

Ltd. ("Zohar II"), and Zohar III, Ltd.'s ("Zohar III") (collectively, the "Zohar Funds" or

"Plaintiffs") motion to remand the case to the Delaware Court of Chancery; (2) defendants

Croscill Home LLC, formally known as Croscill Acquisition, LLC ("Croscill"), Denali

Acquisition LLC ("Denali"), Dura Buyer, LLC ("Dura Buyer"), Global Automotive Systems,

LLC ("GAS"), Gorham Paper and Tissue, LLC ("Gorham"), Jewel of Jane LLC ("Jewel of Jane"), LVD Acquisition, LLC, doing business as Oasis International ("LVD/Oasis"), RM Acquisition, LLC ("RM"), Snelling Holdings, LLC ("Snelling Holdings"), Stila Styles, LLC ("Stila") (collectively, the "portfolio LLCs"), IMG Holdings, Inc. ("IMG"), and Lynn Tilton's ("Tilton") (collectively, "Defendants") motion to transfer venue or, in the alternative, to stay proceedings; and (3) Plaintiffs' motion for expedited proceedings. (D.I. 4; D.I. 7; D.I. 24)[1] For the following reasons, I recommend that the court grant Plaintiffs' motion to remand the case to the Delaware Court of Chancery, and award costs and attorney's fees incurred as a result of the removal of the case. Therefore, I recommend that the court deny as moot Defendants' motion to transfer venue, and Plaintiffs' motion for expedited proceedings.

## II.    BACKGROUND

### A. Parties

The Zohar Funds are Cayman Island exempt companies. (D.I. 1-1 at 203, ¶ 10; 204, ¶¶ 11-12) Croscill, Denali, Dura Buyer, GAS, Gorham, Jewel of Jane, LVD/Oasis, RM, Snelling Holdings, and Stila are Delaware limited liability companies. (*Id.* at 205-208, ¶¶ 13-16, 19-23) IMG is a Delaware corporation. (*Id.* at 207, ¶ 18) Tilton is the principal of Patriarch Partners, LLC and its affiliates, is the sole manager of each of the portfolio LLCs, and is the sole director of IMG. (*Id.* at 208, ¶ 24) Zohar I is a member of the following portfolio LLCs: GAS, LVD/Oasis, RM, and Snelling Holdings. (*Id.* at 203, ¶ 10) Zohar I owns 16.9% of the outstanding common stock of IMG. (*Id.*) Zohar II is a member of the following portfolio LLCs: Dura Buyer, GAS, Jewel of Jane, LVD/Oasis, RM, and Snelling Holdings. (*Id.* at 204, ¶ 11)

---

[1] All briefing and declarations associated with these motions can be found at D.I. 5; D.I. 6; D.I. 9; D.I. 10; D.I. 13; D.I. 14; D.I. 15; D.I. 16; D.I. 17; D.I. 18; D.I. 19; D.I. 21; D.I. 22; D.I. 24; D.I. 25; D.I. 26; D.I. 33.

Zohar II also owns 68.2% of the outstanding common stock of IMG. (*Id.*) Zohar III is a member of the following portfolio LLCs: Croscill, Denali, Dura Buyer, GAS, Gorham, LVD/Oasis, RM, Snelling Holdings, and Stila. (*Id.* at ¶ 12) Zohar III owns 14.8% of the outstanding common stock of IMG. (*Id.*)

The Zohar Funds are separate collateralized loan obligation ("CLO") investment vehicles created by Tilton that issued and sold notes, which entitled noteholders to interest payments over time and return of principal at the maturity date. The notes were sold to investors for cash and the proceeds were used to purchase a pool of assets to serve as collateral for the funds. (*Id.* at 208, ¶ 54) The Zohar Funds collectively raised over $2.5 billion from the sale of CLOs.[2] (*Id.*) Prior to March 2016, the Zohar Funds were managed by affiliates of Patriarch Partners, LLC ("Patriarch Managers"), an investment firm owned by Tilton.[3] (*Id.* at 209, ¶ 26) As collateral manager, the Patriarch Managers were tasked with managing the loans and other assets of the Zohar Funds. (*Id.* at ¶ 27) As with most secured transactions, the rights of the Zohar Funds' noteholders and the obligations of the Zohar Funds are set forth in indentures. (*Id.* at ¶ 27) The duties, responsibilities, and privileges of the collateral manager were set out in the Collateral Management Agreements ("CMAs") for each of the Zohar Funds. (*Id.*) In addition to selling notes to investors, the Zohar Funds issued preference shares, which are currently owned by an entity owned and controlled by Tilton.[4] (*Id.* at 214, ¶ 35)

---

[2] From the sale of notes, Zohar I raised approximately $530 million after launching in November 2003, Zohar II raised approximately $1 billion after launching in January 2005, and Zohar III raised approximately $1 billion after launching in April 2007. (D.I. 1-1 at 208, ¶ 25)

[3] Specifically, Patriarch Partners VIII, LLC was Zohar I's collateral manager; Patriarch Partners XIV, LLC was Zohar II's collateral manager; and Patriarch Partners XV, LLC was Zohar III's collateral manager. (D.I. 1-1 at 209, ¶ 26)

[4] Patriarch affiliate Octaluna, LLC holds Zohar I's preference shares. (D.I. 1-1 at 214, ¶ 36) Patriarch affiliate Octaluna II, LLC holds Zohar II's preference shares. (*Id.* at ¶ 37) Patriarch affiliate Octaluna III, LLC holds Zohar III's preference shares. (*Id.* at 215, ¶ 38)

Much of the collateral acquired by the Zohar Funds consisted of loans extended to small-to mid-sized manufacturing companies, with the aim of rehabilitating their businesses and maximizing profits. (*Id.* at 216, ¶ 41) The Zohar Funds loaned money under various arrangements. Some involved standard repayment of principal and interest while others included equity investments in portfolio companies. This equity was acquired either in the same transaction in which the Zohar Funds extended loans or through subsequent transactions in which those loans were restructured. (*Id.*) This arrangement of obtaining equity in exchange for a loan was of paramount importance to the Zohar Funds because it offset losses arising from a defaulted loan and had a lucrative upside if a portfolio company turned profitable. The entire consideration for the acquisition of these loans came from funds in the Zohar Funds' accounts. (*Id.*) These equity positions were titled and beneficially owned in the Zohar Funds' names and, thus, constituted part of the collateral under the Zohar Funds' indentures that served as security for repayment of the noteholders. (*Id.*)

In the case of the portfolio LLCs at issue in this action, the Zohar Funds extended one or more loans to each of the portfolio LLCs and simultaneously acquired equity interests. (*Id.* at ¶ 42) In each instance, that equity was in the form of membership interests titled in the name of the Zohar Funds pursuant to the governing LLC agreement for each portfolio LLC. (*Id.*) In the case of IMG, the Zohar Funds acquired common stock of IMG in a restructuring of loans extended to IMG and in a legal settlement with IMG's founders. (*Id.*)

**B. Facts**

**1. Zohar Funds' Failure to Repay Noteholders and the Replacement of Collateral Manager**

4

The Zohar Funds performed poorly under the Patriarch Managers. (*Id.* at 217, ¶ 43) On November 20, 2015, Zohar I defaulted on its obligation to repay the noteholders. (*Id.*) On March 2, 2016, the Patriarch Managers resigned as collateral managers for the Zohar Funds, and Alvarez & Marsal Zohar Management ("AMZM"), a Delaware limited liability company, was appointed as collateral manager for each of the Zohar Funds. (*Id.* at ¶ 44) On January 2, 2017, Zohar II defaulted on its obligation to repay the noteholders, and MBIA Insurance Corporation ("MBIA") paid approximately $770 million in claims on the outstanding principal and interest due. (*Id.* at ¶ 45) It is alleged that Zohar III faces imminent default on its obligation to repay noteholders on April 15, 2019. (*Id.* at ¶ 46)

When the Patriarch Managers resigned as the Zohar Funds' collateral managers, they were required by the CMAs to turn over collateral manager books and records to the Zohar Funds and AMZM. When the Patriarch Managers failed to do so, the Zohar Funds filed suit in Delaware Chancery Court on April 22, 2016 to enforce their contractual rights under the CMAs and against the Patriarch Managers. *See Zohar CDO 2003-1, LLC v. Patriarch Partners, LLC*, No. CV 12247-VCS, 2016 WL 6248461, at *6 (Del. Ch. Oct. 26, 2016), *aff'd*, 165 A.3d 288 (Del. 2017). After a two-day trial, Vice Chancellor Slights ruled in the Zohar Funds' favor and ordered Patriarch to turn over twelve categories of documents. *Id.* at **12-18. Enforcement of this judgment remains ongoing before Vice Chancellor Slights. (D.I. 33, Ex. A at 3)

### 2. Zohar I Auction Case

On September 12, 2016, Patriarch Partners XV, LLC and Octaluna LLC (together, "Auction Case Plaintiffs"), two of Tilton's affiliates, filed an action against U.S. Bank National Association ("U.S. Bank") and MBIA (together, the "Auction Case Defendants") in New York state court, seeking to enjoin the auction of certain assets which purportedly backed certain

defaulted debt issued by Zohar I ("the Auction Case"). (D.I. 1, Ex. B) U.S. Bank was Zohar I's trustee, and MBIA was one of Zohar I's three creditors (the Auction Case Plaintiffs being the other two creditors). (*Id.* at ¶ 1) Moreover, as the holder of the senior outstanding notes, MBIA was deemed the "controlling party" under the relevant indenture, and, as such, had the power to direct U.S. Bank, as it did, to begin a sale process and administer the auction. (*Id.* at ¶ 4) The Auction Case Plaintiffs asserted in the Auction Case, *inter alia*, that the Auction Case Defendants improperly attempted to sell equity interests ultimately owned by Tilton, not the Zohar Funds. (*Id.* at ¶ 8; D.I. 1 at ¶ 2) For example, an August 26, 2016 "Notice of Public Sale and Invitation to Bid" issued by U.S. Bank listed collateral purportedly being sold through the Zohar I Auction, including 757 shares of common stock of Defendant IMG ("IMG auction shares"). (D.I. 1-1, Ex. C)

On September 13, 2016, U.S. Bank removed the Auction Case to the District Court for the Southern District of New York ("SDNY") based on the Edge Act, 12 U.S.C. § 632, because it involved a party, U.S. Bank, "organized under the laws of the United States and ar[ose] out of 'international or foreign banking.'" (D.I. 1 at ¶ 3) While the Auction Case temporarily delayed the auction of Zohar I's assets, the SDNY court ultimately rejected the Auction Case Plaintiffs' attempt to enjoin the auction, and the assets were sold on December 21, 2016. (*Id.* at ¶ 7) MBIA purported to purchase the auction collateral, including the IMG auction shares, through a credit bid and, as such, MBIA now claims to own the equity interests in the auction collateral, including the IMG auction shares. (*Id.* at ¶ 7) On December 27, 2016, the Auction Case Plaintiffs sought leave to amend their complaint in the Auction Case, to add claims for money damages resulting from the completed auction and to add Tilton as a plaintiff. (D.I. 1, Ex. H) On December 30, 2016, the SDNY court denied leave to amend, noting that the Auction Case

6

Plaintiffs' proposal "to now seek damages in addition to injunctive relief ... would alter the entire case." (*Id.*, Ex. I) On January 20, 2017, the SDNY court dismissed the Auction Case as "moot," pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), in light of the completed auction. (*Id.*, Ex. J)

### 3. 2016 Chancery Case

On November 29, 2016, Zohar II and Zohar III brought suit in Delaware Chancery Court against Tilton and three portfolio companies[5] under 8 *Del. C.* § 225[6] seeking an order confirming the Zohar Funds' election, by written consent, of new directors to replace Tilton and others from the boards of the three portfolio companies that they claimed to beneficially own. (D.I. 6, Ex. A) The Zohar Funds allege that this action was limited to three companies because "Tilton's continued noncompliance with the books and records case judgment impeded the Zohar Funds from ascertaining the ownership of other companies." (D.I. 5 at 7) On December 20, 2016, Tilton asserted counterclaims arguing that she owned not just the equity in the three companies at issue, but all other portfolio companies as well. (D.I. 33 at 9)

The Chancery Court held a six day trial in the Spring of 2017. On November 30, 2017, the Chancery Court ruled against Tilton and found in favor of Zohar II and Zohar III on all

---

[5] The three portfolio companies named were FSAR Holdings, Inc., Glenoit Universal Ltd., and UI Acquisition Holding Co. (D.I. 6, Ex. A) These portfolios companies are not involved in the present action.

[6] "Upon application of any stockholder or director, or any officer whose title to office is contested, the Court of Chancery may hear and determine the validity of any election, appointment, removal or resignation of any director or officer of any corporation, and the right of any person to hold or continue to hold such office, and, in case any such office is claimed by more than 1 person, may determine the person entitled thereto; and to that end make such order or decree in any such case as may be just and proper, with power to enforce the production of any books, papers and records of the corporation relating to the issue." Del. Code Ann. tit. 8, § 225.

counts of the complaint, determined the Zohar Funds to be the beneficial owners of the equity in the three portfolio companies, and dismissed Tilton's counterclaim seeking a declaratory judgment that the Zohar Funds' written consents were invalid. *See Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, 2017 WL 5956877 (Del. Ch. Ct. Nov. 30, 2017). Specifically, the court found that "[t]he transactional documents...clearly show that the Zohar Funds acquired the [p]ortfolio [c]ompanies' equity," and "these agreements are unambiguous so extrinsic evidence is neither required nor admissible." *Id.* 2017 WL 5956877, at *33 n.316.

On December 20, 2017, the Chancery Court granted Tilton's motion for a stay of the judgment pending an appeal to the Delaware Supreme Court. (D.I. 14, Ex. 5) Tilton's additional counterclaims are stayed pending outcome of appeal.[7] (D.I. 33, Ex. A at 9)

### 4. RICO Case

On January 16, 2017, the Zohar Funds filed an action against Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Patriarch Partners XV, LLC, Octaluna LLC, Octaluna II LLC, Octaluna III LLC, Ark II CLO 2001-1, LLC, Ark Investment Partners II, L.P., and Tilton (collectively, the "RICO Defendants") in the Southern District of New York asserting, *inter alia*, violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") and various state law torts (the "RICO Case"). (D.I. 1 at ¶ 10) Additionally, the Zohar Funds sought a declaration that certain LLC agreement amendments and irrevocable proxies executed by Tilton were invalid, and that the Zohar Funds, not Tilton, own certain equity interests. (*Id.*) The complaint lists the specific LLC agreement amendments and proxies that the Zohar Funds seek to have declared invalid,

---

[7] Tilton's remaining counterclaims are for tortious interference of contract, unjust enrichment, breach of fiduciary duty, injunction and declaratory judgment to enforce gift conditions, and resulting trust. (D.I. 33, Ex. A at 9-11)

including those executed by the eleven portfolio LLCs in the action *sub judice*. (D.I. 9, Ex. 1 at ¶¶ 73-74, nn.9, 10)

On March 6, 2017, the RICO Defendants filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *Zohar CDO 2003-1, Ltd., et al. v. Patriarch Partners, LLC, et al.*, 17-cv-307-WHP (S.D.N.Y. Mar. 6, 2017), ECF No. 53. In the motion dismiss, Tilton argued that "there is no basis of federal jurisdiction" over the RICO Case, including its claims concerning beneficial ownership, "requiring dismissal of th[e] case in its entirety." *Zohar CDO 2003-1, Ltd., et al. v. Patriarch Partners, LLC, et al.*, 17-cv-307-WHP (S.D.N.Y. Mar. 6, 2017), ECF No. 54 at 31.

On November 27, 2017, while the motion to dismiss was still pending before the court, the RICO Defendants filed an answer, counterclaims, and third-party claims. (D.I. 1, Ex. L) The RICO Defendants' third-party claims include causes of action against various parties, including MBIA and U.S. Bank,[8] seeking, *inter alia*, the rescission of any purported transfer of the IMG auction shares through the Zohar I Auction, damages resulting from any improper and illegal purported transfer of equity, including the IMG auction shares, and a declaration that Tilton, not Zohar I or MBIA, is the ultimate beneficial owner of the portfolio company equity at issue, including the IMG auction shares. (*Id.*)

On December 29, 2017, the SDNY court granted the RICO Defendants' motion to dismiss, and dismissed the Zohar Funds' RICO claims based on the Private Securities Litigation Reform Act of 1995, and declined supplemental jurisdiction over the remainder of the Zohar

---

[8] All third-party defendants named in the RICO Defendants' third-party claims include: MBIA Insurance Corporation, MBIA, Inc., AMZM, U.S. Bank, Credit Value Partners, L.P., Halcyon Capital Management, L.P., Cooperatieve Rabobank U.A., and Varde Partners, Inc. (D.I. 1, Ex. L)

Funds' state law claims. (D.I. 18, Ex. B) As to the RICO Defendants' counterclaims and third-party claims, the court directed the parties to submit additional briefing by January 26, 2018, explaining why the court should retain jurisdiction over the third-party claims and why these claims qualify as an impleader action under Federal Rule of Civil Procedure 14. (*Id.* at 35-36)

### 5. Tilton's State Court Actions

On November 13, 2017, Tilton, Octaluna, LLC, Octaluna II, LLC, Patriarch Partners VIII, LLC, and Patriarch Partners XIV, LLC filed an action in the Superior Court of Arizona against Zohar I, Zohar II, and AMZM seeking a declaratory judgment that Tilton is the beneficial owner of the stock in MD Helicopters, Inc. (D.I. 33, Ex. A at 23) On November 22, 2017, Tilton and her affiliated entities filed a motion to expedite the declaratory relief proceeding, which remains pending with the state court. (*Id.*) The named defendants filed a motion to dismiss on January 12, 2018 for lack of personal jurisdiction and *forum non conveniens*, which remains pending with the court. (*Id.*)

On November 13, 2017, Tilton, Octaluna III, LLC, and Patriarch Partners XV, LLC filed an action in California state court against Zohar III and AMZM seeking a declaratory judgment that Tilton is the beneficial owner of Stila. (*Id.* at 24) On January 12, 2018, Zohar III and AMZM filed a motion to dismiss for lack of personal jurisdiction and *forum non conveniens*, which remains pending with the court. (*Id.*) A hearing on the motion to dismiss, as well as Tilton's motion for trial preference, is scheduled for March 5, 2018. (*Id.*)

On November 13, 2017, Tilton, Octaluna, LLC, Octaluna II, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, and Patriarch Partners XV, LLC filed an action in Michigan state court against the Zohar Funds and AMZM seeking a declaratory judgment that Tilton is the beneficial owner of Dura Buyer and GAS. (*Id.* at 25) Tilton filed a motion to

expedite the declaratory relief proceeding on November 22, 2017. (*Id.*) A hearing on this motion was scheduled for February 2, 2018. (*Id.*) On January 12, 2018, the Zohar Funds and AMZM filed a motion to dismiss for lack of personal jurisdiction and *forum non conveniens*, which is still pending with the court. (*Id.*)

### 6. The Removed Action

On November 14, 2017, the Zohar Funds filed the removed action in Delaware Chancery Court against Defendants, asserting claims under 6 *Del. C.* § 18-110,[9] 6 *Del. C.* § 18-111,[10] and 8 *Del. C.* § 225 (the "Removed Action").[11] (D.I. 1-1 at 70-81) The Removed Action seeks an order validating written consents executed by the Zohar Funds, as equity owners of the portfolio LLCs and IMG, which remove Tilton as the sole manager or director of those companies and replace her with Zohar Fund appointees. The Zohar Funds simultaneously filed a motion for expedited proceedings. (D.I. 1-1 at 88-99) On November 29, 2017, the Zohar Funds filed an

---

[9] 6 *Del. C.* § 18-110 provides that "[u]pon application of any member or manager, the Court of Chancery may hear and determine the validity of ... election, appointment, removal or resignation of a manager of a limited liability company, and the right of any person to become or continue to be a manager of a limited liability company, and, in case the right to serve as a manager is claimed by more than 1 person, may determine the person or persons entitled to serve as managers."

[10] 6 *Del. C.* § 18-111 provides that "[a]ny action to interpret, apply or enforce the provisions of a limited liability company agreement, or the duties, obligations or liabilities of a limited liability company to the members or managers of the limited liability company, or the duties, obligations or liabilities among members or managers and of members or managers to the limited liability company, or the rights or powers of, or restrictions on, the limited liability company, members or managers, or any provision of this chapter, or any other instrument, document, agreement or certificate contemplated by any provision of this chapter, may be brought in the Court of Chancery."

[11] The Zohar Funds argued at oral argument that they filed the Removed Action in direct response to Tilton's filing three state court actions on November 13, 2017. The Zohar Funds "sought to centralize ownership issues to Delaware." (Tr. at 46:1-14)

amended complaint. (D.I. 1-1 at 196) The Zohar Funds contend that on December 14, 2017, Vice Chancellor Slights scheduled an oral argument on the motion to expedite. (D.I. 5 at 17)

On December 14, 2017, Defendants removed the case to this court. (D.I. 1) Also on December 14, 2017, the Zohar Funds filed the pending motion to expedite. (D.I. 7) On December 19, 2017, the Zohar Funds filed the pending motion to remand (D.I. 4), and Defendants filed the pending motion to transfer (D.I. 7). The court heard oral argument on the pending motions on January 30, 2018.

### 7. Related Case

On January 12, 2018, Zohar I and Zohar II filed an action against Octaluna, LLC, Octaluna II, LLC, Patriarch Partners VIII, LLC and Patriarch Partners XIV, LLC ("Related Case Defendants") in Delaware Chancery Court. (C.A. 18-108-JFB-SRF, D.I. 1, Ex. A) The complaint seeks declarations that Zohar I and Zohar II are the owners of controlling stock interests in MD Helicopters, Inc. and Vulcan Engineering Company. (*Id.*) On January 18, 2018, the Related Case Defendants removed the action to this court. (C.A. 18-108-JFB-SRF, D.I. 1) On February 2, 2018, the Related Case Defendants filed a motion to dismiss or stay the related case pending resolution of the RICO Case and Tilton's Arizona state court action, or, in the alternative, to transfer venue to the SDNY. (*Id.*, D.I. 4) On February 7, 2018, Zohar I and Zohar II filed a motion to remand the case to Delaware Chancery Court. (*Id.*, D.I. 6) As of the date of this Report and Recommendation, these motions remain pending before the court.

### III. LEGAL STANDARD

#### A. Remand

To remove a case to federal district court, a party must establish that the district court has original jurisdiction by either a federal question or diversity of citizenship. 28 U.S.C. §§ 1331,

1332, 1441. "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Kline v. Security Guards, Inc.*, 386 F.3d 246, 252 (3d Cir. 2004) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). If the case could not have been filed originally in federal court, then removal under 28 U.S.C. § 1441 is improper and remand is appropriate. *Id.* (citations omitted). "The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 251 (3d Cir. 2004) (internal citations and quotation marks omitted).

A federal court must remand a removed case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The party seeking removal bears the burden of demonstrating that removal is proper. *Steel Valley Auth. v. Union Switch Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987); *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 602 (D. Del. 2002). According to the Third Circuit Court of Appeals, it "is settled that the removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). In determining whether remand based on improper removal is appropriate, the court "must focus on the plaintiff's complaint at the time the petition for removal was filed." *Id.*; *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985).

### B. Transfer of Venue

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Much has

been written about the legal standard for motions to transfer under 28 U.S.C. § 1404(a). *See, e.g., In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995); *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367 (D. Del. 2012).

Referring specifically to the analytical framework described in *Helicos*, the court starts with the premise that a defendant's state of incorporation has always been "a predictable, legitimate venue for bringing suit" and that "a plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'" 858 F. Supp. 2d at 371 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Indeed, the Third Circuit in *Jumara* reminds the reader that "[t]he burden of establishing the need for transfer . . . rests with the movant" and that, "in ruling on defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." 55 F.3d at 879 (citation omitted).

The Third Circuit goes on to recognize that,

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three
> enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or
> interests of justice), and, indeed, commentators have called on the courts to "consider all
> relevant factors to determine whether on balance the litigation would more conveniently
> proceed and the interests of justice be better served by transfer to a different forum."

*Id.* (citation omitted). The Court then describes some of the "many variants of the private and public interests protected by the language of § 1404(a)." *Id.*

> The private interests have included: plaintiff's forum of preference as
> manifested in the original choice; the defendant's preference; whether
> the claim arose elsewhere; the convenience of the parties as indicated
> by their relative physical and financial condition; the convenience of
> the witnesses – but only to the extent that the witnesses may actually
> be unavailable for trial in one of the fora; and the location of books
> and records (similarly limited to the extent that the files could not be
> produced in the alternative forum).

> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted).

## IV. DISCUSSION

### A. Motion to Remand

Before this court addresses the motions to transfer venue and expedite proceedings, the court must determine whether it has jurisdiction to do so. *See Minker v. HSB Indus. Risk Insurers*, 2000 WL 291542, at *2 (D. Del. Mar. 14, 2000). The Zohar Funds assert that this court lacks subject matter jurisdiction and, therefore, should remand the case to Delaware Chancery Court. (D.I. 5 at 13) In turning to the jurisdictional analysis, for the reasons set forth below, the court recommends that Plaintiffs' motion to remand be granted.

Defendants removed this case pursuant to the federal removal statute, 28 U.S.C. § 1441. Defendants' primary basis for removal of the case is federal question jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Defendants argue that this action arises under the laws of the United States and presents a federal question because commencing this action in Delaware Chancery Court was the Zohar Funds' attempt to "artfully escape federal jurisdiction by seeking a defensive declaratory judgment in anticipation of Tilton's affirmative federal claims under the Edge Act." (D.I. 1 at ¶ 19) These alleged "affirmative federal claims" concern "the damages Tilton and her affiliated entities suffered at the hands of Zohar I, U.S. Bank, and MBIA resulting from the improper and illegal purported transfer of the IMG auction

shares (as well as significant additional equity in other portfolio companies) to MBIA through the Zohar I Auction." (*Id.*)

Generally, federal question jurisdiction turns on the face of the plaintiff's well-pleaded complaint. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9-10 (1983). "Plaintiff's claim must present a federal question 'unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'" *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950). However, application of the well-pleaded complaint rule is particularly difficult in declaratory judgment actions.[12] The Supreme Court has found that a narrow exception to this rule exists in the context of certain "coercive" actions for declaratory judgment. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014). In such instances, courts look not only to the declaratory plaintiff's complaint, but also to the "character of the threatened action" that the declaratory defendant "could bring" in considering federal question jurisdiction. *Id.* "That is to say, they ask whether 'a coercive action' brought by 'the declaratory judgment defendant ... would necessarily present a federal question.'" *Id.* (quoting *Franchise Tax*, 463 U.S. at 19).

"In many actions for declaratory judgment, the realistic position of the parties is reversed." *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952). When

---

[12] The Zohar Funds argue that in order for the coercive action doctrine to apply, the suit must be only a declaratory judgment action, and the complaint in the Removed Action "does not seek solely declaratory relief." (D.I. 5 at 15) That is, the Zohar Funds argue that the complaint seeks "coercive relief" beyond a declaratory judgment. The Zohar Funds seek coercive relief in "removing Tilton as manager of the portfolio companies at issue and installing Plaintiffs' appointees into office." *Id.* The court assumes the "coercive relief" the Zohar Funds attempt to argue refers to additional claims for relief, such as for equitable or injunctive relief, or money damages in addition to a declaration from the court. The court does not need to address the Zohar Funds' argument because application of the coercive action doctrine to the facts of the case in issue does not affect the recommendation that the case return to Delaware Chancery Court.

determining jurisdiction, the court must examine the structure of the suit by conceptually realigning the declaratory judgment claims and parties, as they would appear in a coercive suit. If the coercive suit could not be brought in federal court, there is no federal court jurisdiction in the related declaratory judgment action. But, "[w]here the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Id.* A common application of this doctrine occurs in suits between patent holders and alleged patent infringers. *See, e.g., Medtronic Inc.*, 134 S. Ct. at 843. In such suits, an alleged infringer may file an action seeking a declaratory judgment that he is not violating any patents, or that the patents at issue are invalid. Because this declaratory judgment is meant to defend against an eventual claim against the declaratory judgment plaintiff for patent infringement, federal courts have consistently recognized jurisdiction on the theory that an infringement suit by the defendant would clearly raise a federal question. *See Franchise Tax*, 463 U.S. at 27 n.19.

The U.S. Supreme Court first considered the coercive action doctrine in *Wycoff*, ultimately concluding there was no basis to support a declaratory judgment action filed in federal court in defense of heading off impending or threatened state court litigation. *Wycoff*, 344 U.S. at 249. The court ruled that if the defendant in a declaratory judgment action threatens to assert a cause of action that does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for declaratory judgment establishing a defense to the threatened claim. *Id.* at 248. In *Wycoff*, the plaintiff, an entity engaged in transportation of films and newsreels in Utah, brought a declaratory judgment action in federal court against the Utah Public Service Commission seeking a declaration that such transportation constituted interstate

commerce. *Id.* at 239. However, the Supreme Court could see no purpose to the declaratory judgment action other than to guard against a potential state court suit by the Public Service Commission to hinder the transportation entity from operating under its certificate from the Interstate Commerce Commission. Questioning whether a justiciable controversy even existed, the Supreme Court focused on the character of the threatened action by the declaratory judgment defendant. *Id.* at 248. A declaratory judgment action has the practical effect of reversing the alignment of a plaintiff and defendant in a suit. *Id.* Thus, when the declaratory judgment plaintiff seeks, in essence, to assert a defense to an impending or threatened state court action, it is the character of the threatened action, the "coercive action," and not of the declaratory complaint, which will determine if federal question jurisdiction exists. *Id.* In other words, a federal court will not "seize" litigation from state court merely because one, normally a defendant, goes to federal court to begin his federal law defense before litigation begins in state court under state law. *Id.*

In the instant case, Defendants argue for application of the coercive action doctrine to a state declaratory judgment action removed to federal court. The U.S. Supreme Court declined to extend the coercive action doctrine in such a case. *See Franchise Tax*, 463 U.S. at 28. In *Franchise Tax*, a state tax board filed a state court declaratory judgment action against a labor union trust for money damages due to the trust's alleged failure to pay certain tax levies of a nominal amount and for a declaration that state statutes authorizing the lax levies were not preempted by the Employment Retirement Security Act of 1974 ("ERISA") as asserted by the defendant trust. *Id.* at 5-7. The Supreme Court followed the "well-pleaded complaint rule" emphasizing that it "has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated

in the plaintiff's complaint and even if both parties admit that the defense is the only question truly at issue." *Id.* at 14. The Court ruled that settled law did not change just because the removed case was a declaratory judgment action and the question of federal law was a necessary element of the declaratory judgment claim. *Id.* The Court held that the suit by state tax authorities to enforce its levies and to declare the levies notwithstanding ERISA, was neither a creature of ERISA itself nor a suit turning on a question of federal law. *Id.* at 25-27. Relying upon the limitations of federal court jurisdiction pronounced in *Skelly Oil*, the Court held that federal courts do not have jurisdiction, originally or upon removal, of a state declaratory judgment action that presents a federal question which would be barred by *Skelly Oil* if the plaintiff had sought a federal declaratory judgment. *Id.* at 19. Thus, it remains the case that the only relevant inquiry is whether the declaratory judgment action sets forth claims arising under federal law.

Although the Court of Appeals for the Third Circuit has never directly addressed the coercive action doctrine,[13] it has favorably cited another circuit's interpretation of the coercive action doctrine. *See Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 502 Fed. Appx. 201 at n.4 (3d Cir. 2012) (citing *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 863 (11th Cir. 2008) ("Federal question

---

[13] In *La Chemise Lacoste v. Alligator Co., Inc.*, an opinion pre-dating *Franchise Tax*, the court appeared to reject the doctrine. 506 F.2d 339, 342-45 (3d Cir. 1974), *cert. denied*, 421 U.S. 937 (1975) (holding that *Wycoff* does not apply to removal cases because the declaratory proceeding in *Wycoff* originated in federal court and given the "congressional policy of severe abridgment" of the right of removal). However, after *Franchise Tax*, it is at best questionable whether that aspect of *Lacoste* is still good law. *See City of Pittsburgh v. UPMC*, 2013 WL 4010990, at *4 (W.D. Pa. Aug. 6, 2013) ("Since this court is bound by the subsequent decision of the Supreme Court in *Franchise Tax*, the court concludes that, although *Lacoste* has never been explicitly overruled, the holding in *Franchise Tax* implicitly calls its holding into question."); *see also Nw. Cent. Pipeline Corp. v. Mesa Petroleum Co.*, 576 F. Supp. 1495, 1501 (D. Del. 1983) ("It is unclear after *Franchise Tax* whether that aspect of *Lacoste* is still good law.").

jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant *could* file a coercive action arising under federal law.") (emphasis in original)); *see also Metropolitan Life Ins. Co. v. Price*, 501 F.3d 271, 277 n. 4 (3d Cir. 2007) (noting that, in "the declaratory judgment context, '[f]ederal courts have regularly taken original jurisdiction over ... suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.'") (alterations in original) (quoting *Franchise Tax*, 463 U.S. at 19).

Following the well-pleaded complaint rule and first looking at the face of the Zohar Funds' complaint, the Zohar Funds' claims do not arise under federal law, and arise purely under Delaware law. Specifically, the complaint brings causes of action pursuant to 6 *Del. C.* §§ 18-110, 18-111, and 8 *Del. C.* § 225. (D.I. 1-1 at 274-286) Because the "law that creates the cause of action" is state law, this court does not have jurisdiction to sustain removal. *Franchise Tax*, 463 U.S. at 13. The parties do not dispute this. Rather, Defendants argue that the coercive action doctrine applies in this instance, and that the court must instead look to the "character of the threatened action" that Defendants "could bring" in determining whether this court has federal question jurisdiction. *See Medtronic*, 134 S. Ct. at 848. Defendants argue that the Zohar Funds filed this action in state court in order to "artfully escape federal jurisdiction" for the coercive action claims Defendants could – and did – bring against Zohar I, U.S. Bank, and MBIA for the damages Tilton and her affiliated entities suffered as a result of the "improper and illegal purported transfer of the IMG auction shares to MBIA through the Zohar I Auction and related claims." (D.I. 1 at ¶ 19) Defendants argue that Tilton has claims arising out of the Zohar I Auction against U.S. Bank and, therefore, the Edge Act provides the court jurisdiction in the

present action.[14] Defendants claim that Tilton "threatened" to bring this coercive action, and on December 27, 2016 sought leave to amend the Auction Case complaint to add claims for money damages resulting from the completed auction and to add Tilton as a plaintiff. (D.I. 1, Ex. H) The SDNY court denied leave to amend, and dismissed the case. (*Id.*, Exs. I, J) Thus, according to Defendants, the Zohar Funds were aware that "Tilton's federal claims remained, waiting to be filed elsewhere." (D.I. 17 at 11)

There is no precedent for Defendants' argument that a federal court must retain federal question jurisdiction of a removed declaratory judgment action in which it is alleged that the federal question is intentionally sidestepped through the plaintiff's "artful pleading." In the case at bar, it is undisputed that the declaratory judgment action avers claims over the ownership and control of Delaware business entities under Delaware law. At oral argument, Defendants argued that the Zohar Funds purposely "peeled away" U.S. Bank from this case in order to avoid federal jurisdiction pursuant to the Edge Act. (Tr. at 33:9-15) However, the Zohar Funds do not have a claim against U.S. Bank, nor do they have a basis to initiate the Removed Action in federal court. This action relates to the ownership and control of the portfolio Delaware LLCs, which the Zohar Funds and Tilton have often litigated in state forums. For example, the Zohar Funds first filed the 2016 Chancery Case over the ownership and control of three portfolio companies. In response, Tilton asserted counterclaims that she owned the equity not only to those three companies, but to all other portfolio companies as well. (D.I. 33 at 9) And, prior to the Zohar Funds' initiating this Removed Action, Tilton filed three state court actions in Arizona,

---

[14] The Edge Act provides for federal subject matter jurisdiction over suits to which "any corporation organized under the laws of the United States shall be a party" that arise out of "transactions involving international or foreign banking... or out of other international or foreign financial operations" of such corporation. 12 U.S.C. § 632.

California, and Michigan over the ownership and control of four portfolio companies, three of which are at issue here. Therefore, the Zohar Funds did not "artfully plead" their claims in order to avoid federal court jurisdiction.[15] The court finds no legal authority to justify a recommendation that federal question jurisdiction exists due to a potential defense that may involve a potential third-party subject to a federal statute, the Edge Act, despite the fact that the transactions forming the basis of the state law claims, on the face of the complaint, do not turn on a question of federal law.

Moreover, the coercive action doctrine does not confer federal question jurisdiction for any and all claims that may relate to a declaratory judgment action. Rather, when there is a declaratory judgment action, it is to be closely related to a viable federal coercive claim.[16] Here, the court finds that there is no nexus between the Zohar Funds' declaratory judgment action and Defendants' alleged coercive action claims. According to Defendants, because a portion of the IMG auction shares were voted to replace Tilton as IMG's director by written consent, this means any claim related to ownership or control of IMG must be a preemptive strike against

---

[15] The court finds Defendants' contention that the Zohar Funds' claims were "artful[ly] plead[ed]"... "to keep this case away from a federal court in New York" (D.I. 17 at 12-13) ironic, considering Defendants initiated their own state court actions regarding the ownership of the portfolio companies, three of which are at issue here. Judge Pauley addressed this in his December 29, 2017 opinion dismissing the Zohar Funds' RICO Case claims. *See Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, No. 17CV307, 2017 WL 6628609, at \*14 (S.D.N.Y. Dec. 29, 2017) ("Also...worth noting is the irony behind [d]efendants' contention that Zohar has engaged in 'gamesmanship'...That they would stymie the Zohar's efforts to litigate these corporate control cases elsewhere, yet at the same time file their own claims in far-flung state forums, underscores this [c]ourt's determination that absent a valid RICO claim, the remaining common law claims should be resolved by state courts.").

[16] The parties refer to this notion as the "mirror image rule." (D.I. 5 at 15; D.I. 17 at 9-18; D.I. 25 at 3-8) Because the Supreme Court cases discussed herein (*see Wycoff*, 344 U.S. 237; *Franchise Tax*, 463 U.S. 1; and *Medtronic*, 134 S. Ct. 843) do not use this terminology in determining the coercive action underlying the declaratory judgment suit at issue, the court declines to use such terminology.

their alleged Auction Case claims. The facts here, and the Supreme Court cases on which Defendants rely, do not support such an argument. U.S. Bank is not a party to this action, and Tilton and the Zohar Funds were not named parties in the Auction Case. (D.I. 1, Ex. B) Despite the foregoing, Defendants argue that federal question jurisdiction exists because "the cases instruct that the relevant question is the nature of the 'coercive *action*' or '*suit*' available to the declaratory judgment defendant, not the claims available against the declaratory judgment plaintiff or any other specific party." (D.I. 17 at 14) (emphasis in original)  In support of this argument, Defendants cite to *Franchise Tax* and *Medtronic*.[17]  (*Id.*)  However, neither *Franchise Tax* nor *Medtronic* make such an expansive holding, and the coercive actions that the declaratory judgment defendants "could have brought" were against the declaratory judgment plaintiffs.

Even if the court found some nexus between Defendants' Auction Case claims against U.S. Bank and the Zohar Funds' filing of this action, the court cannot hold, as Defendants contend, that this suit necessarily anticipated the "federal" causes of action raised in Defendants' third-party claims filed in the RICO Case. *See Nw. Cent. Pipeline*, 576 F. Supp. at 1503. First, while the Auction Case Plaintiffs sought leave to amend the Auction Case complaint in order to add Tilton as a plaintiff and raise claims for damages, the SDNY denied this request and dismissed the action eleven months before the Zohar Funds brought this Removed Action.

---

[17] Defendants also cite to a Second Circuit case as additional support of their argument that the relevant question is the nature of the "coercive action" available to the declaratory judgment defendant, not the claims available against the declaratory judgment plaintiff or any other specific party. *See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59 (2d Cir. 2012). However, in *Garanti*, the court held that "a complaint seeking a declaratory judgment is to be tested, for purposes of the well-pleaded complaint rule, as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff." *Id.* at 68. As in *Franchise Tax* and *Medtronic*, the court determined it had federal jurisdiction because the "hypothetical coercive suit" the declaratory judgment *defendant* could bring against the declaratory judgment *plaintiff* was under federal admiralty law. *Id.* at 71 (emphasis added).

Second, prior to the filing of this complaint, Tilton and her affiliates brought their own state court claims regarding the ownership of four portfolio companies, one of which – MD Helicopters, Inc. – was listed on the auction notice, in addition to IMG, in the Auction Case, yet U.S. Bank is not a named party.[18] (D.I. 1, Ex. E at 5) Finally, Defendants did not originally raise the alleged Auction Case claims in the Zohar Funds' RICO Case; they moved to dismiss the action. Only after the Zohar Funds filed the complaint in this Removed Action, and while Defendants' motion to dismiss was still pending, did the RICO Defendants file their answer, counterclaims, and third-party claims relating to their alleged Auction Case damages. (D.I. 1, Ex. L) This was contrary to the RICO Defendants' original position wherein they challenged the SDNY court's subject matter jurisdiction, and contrary to traditional procedure under the Federal Rules of Civil Procedure.[19] Thus, the court does not find that the Zohar Funds initiated this suit in anticipation of Defendants' "threatened" federal causes of action.

The court finds it telling that, before filing the purported coercive action Edge Act third-party claims against the Zohar Funds in the SDNY, Defendants argued lack of subject matter jurisdiction of the RICO Case in the SDNY court, the very venue where Defendants now seek to transfer this action. While the pending motions in this Removed Action were still *sub judice*, the SDNY issued an opinion dismissing the Zohar Funds' RICO Case claims. In the opinion, Judge Pauley declined to exercise supplemental jurisdiction over the Zohar Funds' remaining state law

---

[18] At oral argument, Defendants argued that they "are not suggesting that there is Edge Act jurisdiction there [in Tilton's Arizona state court action], and the reason that U.S. Bank is not in that case is because those are the very claims that [Defendants] anticipated filing in the Federal Court in the Southern District [of New York]." (Tr. at 37:7-11)

[19] Federal Rule of Civil Procedure 12(a)(4) provides that the filing of a motion under Rule 12 tolls the time to respond to a complaint until fourteen days after the motion is decided. Fed. R. Civ. P. 12(a)(4).

claims, reasoning that those claims were more appropriately addressed in Delaware Chancery

Court. The court stated:

> [T]he simple fact that Zohar filed an action in Delaware Chancery Court similar
> to the one here does not militate in favor of this [c]ourt's exercise of supplemental
> jurisdiction. If anything, permitting the state law claims here to proceed in a
> Delaware state court would uphold values of comity and fairness. The Delaware
> Chancery Court seems best positioned to adjudicate the remaining state law
> claims since an action predating this case – the November 2016 [Chancery Case]
> – already raised issues pertaining to Zohar's ownership and control over three
> portfolio companies, and the latest November 2017 Delaware Action [this
> Removed Action] implicates purported control of eleven of the portfolio
> companies... The Delaware court is an ideal forum to resolve those equity-related
> questions because Defendants filed counterclaims in the November 2016
> Delaware Action concerning the equity ownership of several other companies –
> including companies that are the subject of Plaintiffs' [Removed Action]
> complaint and Defendants' new state-court complaints in three other states...
> There is substantial overlap between the factual and legal questions invoked by
> each of the parties' claims in the November 2016 and November 2017 Delaware
> Actions. And all such claims are pending before the same judge in Delaware
> Chancery Court, who is eminently qualified to resolve them.[20]

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, No. 17CV307, 2017 WL 6628609, at *14

(S.D.N.Y. Dec. 29, 2017). In addition to dismissing the Zohar Funds' claims, the SDNY court

questioned whether it has an independent basis for federal jurisdiction over Defendants' third-

party complaint, which asserted RICO and the Edge Act as grounds for jurisdiction. *Id.* at *15.

But because the court dismissed the RICO claim, it ruled that Defendants may not rely on the

RICO statute to create an independent jurisdictional basis for their own claims. As to the Edge

Act, the court found Defendants' reliance "unavailing" because, under the well-pleaded

---

[20] At oral argument, Defendants argued that this holding may have been based on Judge Pauley's
"erroneous impression" that this Removed Action "was still pending in Delaware Chancery
Court," although it had been removed. (Tr. at 49:7-17) However, the court finds that Judge
Pauley's holding is relevant even though the Removed Action was no longer pending in
Delaware Chancery Court. Even if the Delaware Chancery Court only had one case before it –
the 2016 Chancery Case – that action relates to the equity as to all the portfolio companies due to
Tilton's asserted counterclaims.

complaint rule, "federal question jurisdiction exists only if plaintiff's statement of his own cause of action shows that it is based on federal law... 'a defendant may not evade this rule by raising a federal question in its responsive pleadings.'" *Id.* at \*16 (internal citations omitted). As a result, Judge Pauley directed Defendants "to explain why th[e] [c]ourt should exercise jurisdiction over the [t]hird [p]arty [c]omplaint and why the claims therein qualify for an impleader action under Federal Rule of Civil Procedure 14." *Id.* at \*16. As of the date of this Report and Recommendation, this issue remains pending in the SDNY.

Because the Zohar Funds' complaint does not raise a federal question on its face, the complaint was not "artfully pled" to avoid federal jurisdiction, and Defendants do not have a coercive action against the Zohar Funds that invokes federal question jurisdiction, I recommend that this case be remanded to Delaware Chancery Court.

### 1. Plaintiffs' Request for Fees

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." When removal of an action is improper, the plaintiff may be entitled to recover attorney's fees, costs, and expenses associated with opposing removal, regardless of whether the action was removed in bad faith. *See Mints v. Educational Testing Serv.*, 99 F.3d 1253, 1259 (3d Cir. 1996). However, an award of fees is appropriate only when "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "[A] district court has broad discretion and may be flexible in determining whether to require the payment of fees under section 1447(c)." *Mints*, 99 F.3d at 1260.

Having considered the record presently before the court and the parties' submissions, the court concludes that Defendants' notice of removal is objectively unreasonable. Specifically,

Defendants' notice of removal is based solely on its third-party claims against U.S. Bank, who is not a party in this case, stemming from an unrelated action where Plaintiffs were not a party. No authority cited by Defendants supports the expansive interpretation of the coercive action doctrine that federal subject matter jurisdiction can be established as a result of *any* claim a declaratory judgment defendant may have, even if it is not against the declaratory judgment plaintiff. Consequently, the court recommends granting Plaintiffs' request for fees.

On or before **February 28, 2018**, Plaintiffs are to provide the court and opposing counsel with an accounting of attorneys' fees and costs, limited to expenses incurred as the result of the removal. Plaintiffs are to attach a form of Order for the relief requested. Defendants may file a response, if any, on or before **March 14, 2018**.

### B. Motion to Transfer

Having concluded that remand is warranted, I recommend that the court deny as moot Defendants' motion to transfer venue. (D.I. 7)

### C. Motion to Expedite Proceedings

Having concluded that remand is warranted, I recommend that the court deny as moot Plaintiffs' motion to expedite the proceedings. (D.I. 24)

## V. CONCLUSION

For the foregoing reasons, I recommend the court grant Plaintiffs' motion to remand and request for fees, and deny as moot Defendants' motion to transfer and Plaintiffs' motion to expedite proceedings. (D.I. 4; D.I. 7; D.I. 24)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed.

R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 14 , 2018

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE